Trenton R. Kashima (SBN No. 291405)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
402 West Broadway St., Suite 1760
San Diego, CA 92101
Tel: (619) 810-7047
tkashima@milberg.com

*Attorneys for Plaintiffs and the Class*

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHELSEA GARLAND, TONYA HUGHES, NATASHA HERNANDEZ, GEANEEN COJUM, ARSENIO PELAYO, ALBERT FITCH, PAULEEN MARA, LORA PREMO, URCELINA MEDEIROS, RUBY SMITH, individually and on behalf of all those similarly situated,<br>        Plaintiffs,<br><br>v.<br><br>DUNKIN DONUTS LLC, a Delaware Corporation,<br><br>        Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

CLASS ACTION COMPLAINT

Plaintiffs, CHELSEA GARLAND, GEANEEN COJUM, TONYA HUGHES, NATASHA HERNANDEZ, ARSENIO PELAYO, ALBERT FITCH, PAULEEN MARA, LORA PREMO, UNCELINA MEDEIROS and RUBY SMITH (referred to individually as "Plaintiff" or collectively as "Plaintiffs") brings this Class Action Complaint against the above-named DUNKIN DONUTS LLC, a Delaware Corporation, ("Defendant" or "Dunkin"), and in support thereof states the following:

## **INTRODUCTION**

1. Plaintiffs bring this action against Dunkin on behalf of all consumers in California, New York, Texas, Colorado, Massachusetts and Hawaii and in the United States who, within four years of the filing of this lawsuit, have purchased coffee-based drinks, tea-based drinks, or other beverages from Dunkin that contained non-dairy milk alternatives ("Non-Dairy Alternatives") and paid a surcharge for the Non-Dairy Alternatives, including plant-based or lactose-free milk.

2. Plaintiffs suffer from lactose intolerance and milk allergies. It is medically necessary for persons like Plaintiffs to avoid consuming drinks that contain milk. Plaintiffs ordered coffee-based, tea-based, and other drinks at Dunkin retail coffee shops in their respective states of residence from at least 2018 to the present.

3. When Plaintiffs visited Dunkin coffee shops, they ordered drinks that included milk as part of the regular menu item. Plaintiffs requested to substitute milk for Non-Dairy Alternatives, specifically soy, oat, coconut, or almond "milk," and were charged an extra $0.50 - $2.15 surcharge by Dunkin for the substitution, depending on the date and the location of the store.

4. Dunkin charged from $0.50 to $2.15 surcharge ("Surcharge") to its customers who were lactose intolerant to substitute milk for Non-Dairy Alternative products in its beverages throughout the class period.

5. Defendant's Surcharge is the same for all Non-Dairy Alternatives, making no distinction among the costs of the various different Non-Dairy Alternatives. In fact, Dunkin created a separate, higher-priced menu, aimed at customers who cannot ingest milk.

6. In 2023, the average price of a Dunkin crafted coffee drink was $3.25, therefore the Surcharge could be up to 40% of the average drink price. Also, milk is not the only ingredient in a

drink at Dunkin, therefore the Surcharge represents an even higher percentage proportional to the price of milk (up to 200%).

7.      There is no material difference between the price of lactose-containing milks and the price of Non-Dairy Alternatives that would support levying the Surcharge to substitute for a Non-Dairy Alternative in Dunkin drinks.

8.      Dunkin's standard offering in most beverages is 2% cow's milk.

9.      Dunkin will substitute whole milk, or fat-free skim milk for the 2% milk ingredient to its beverages at no additional charge.

10.     Dunkin offers several options when it comes to the content of fat in the milk but does not offer a lactose-free milk option.

11.     Dunkin will modify its regular beverage offerings to remove caffeine or make caffeine-free beverages at no additional charge for persons with a variety of conditions, including hypertension.

12.     Dunkin will modify its regular beverage offerings to remove sugar or use sugar-free sweeteners at no additional charge for those persons with diabetes or who need to control weight.

13.     Dunkin advises customers to inform the "server" if there is a food allergy and informs them that their products may contain or may have come in contact with allergens. However, they only accommodate those with lactose intolerance or allergies to milk by imposing a surcharge.

 

"Allergen statement" displayed in a Dunkin store

14.     There is no expertise or additional work required of Dunkin employees that would substitute whole milk or fat-free milk in place of 2% regular milk, or who would make caffeine-free

CLASS ACTION COMPLAINT

or sugar-free beverages, to also be able to substitute Non-Dairy Alternatives such as soy, almond, coconut, oat, or other lactose-free "milk" in place of 2% regular milk.

15.     Lactose intolerance is a disability.

16.     A milk allergy is a disability.

17.     Dunkin charges customers with lactose intolerance and milk allergies an excessively high Surcharge to substitute Non-Dairy Alternatives in its drinks.

18.     In this way, Defendant's conduct violates the Americans with Disabilities Act, California Unruh Civil Rights Act, Colorado Anti-Discrimination Act, Hawaii Anti-Discrimination Act, Texas Human Resource Code, Massachusetts Anti-Discrimination Law, New York Civil Rights Law and constitutes common law Unjust Enrichment.

19.     Defendant discriminates against Plaintiffs and the putative class members by levying a Surcharge for its Non-Dairy Alternatives in the form of Non-Dairy Alternatives added to its coffee-based drinks and other beverages.

20.     Plaintiffs also seek declaratory and injunctive relief to ensure that Defendant charges the same price to lactose intolerant customers and customers with milk allergies for the same menu items as regular customers and that it does not add a Surcharge for Non-Dairy Alternatives such as soy, almond, coconut, oat, or other lactose-free "milk."

## JURISDICTION AND VENUE

21.     This Court has jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1332(d). This is a putative class action where: (i) the proposed nationwide class consists of more than 100 members; (ii) at least one class member has a different citizenship from Defendant; and (iii) the claims of the proposed class exceed $5,000,000 in the aggregate. The Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367(a).

22.     The Court has personal jurisdiction over the Defendant due to its continuous and systemic contacts with the State of California. Defendant operates retail stores in the San Francisco Bay area, Walnut Creek, Half Moon Bay, South San Francisco and Fremont, all within the State of California and the Northern District of California.

23.     Plaintiffs Hughes, Hernandez, Garland, and Gojum reside in California. A

- 4 -

1   substantial part of the events or omissions giving rise to the claim occurred in the State of

2   California.

3       24.    Venue is proper in the Northern District of California, pursuant to 28 U.S.C. §

4   1391(b)(4).

5                                    **THE PARTIES**

6   **A.    Plaintiffs**

7       25.    Plaintiff Chelsea Garland is and was at all times material a resident of the State of

8   California. Ms. Garland has purchased items, including coffee drinks, at various Dunkin' locations

9   in San Diego County and throughout the state of California. As a result of her lactose intolerance,

10  Ms. Garland is substantially impaired in several major life activities and is required to consume

11  non-dairy milk alternatives. Ms. Garland has consumed Dunkin beverages at various Dunkin retail

12  outlets in California and plans to continue to do so in the future.

13      26.    Plaintiff Tonya Hughes is and was at all times material a resident of the State of

14  California. Ms. Hughes has purchased items, including coffee drinks, at various Dunkin' locations

15  in Alameda County and throughout the state of California. As a result of her lactose intolerance,

16  Ms. Hughes is substantially impaired in several major life activities and is required to consume non-

17  dairy milk alternatives. Ms. Hughes has consumed Dunkin beverages at various Dunkin retail

18  outlets in California and plans to continue to do so in the future.

19      27.    Plaintiff Natasha Hernandez is and was at all times material a resident of the State of

20  California. Ms. Hernandez has purchased items, including tea-based drinks, at various Dunkin'

21  locations in Pittsburg County and throughout the state of California. As a result of her lactose

22  intolerance, Ms. Hernandez is substantially impaired in several major life activities and is required

23  to consume non-dairy milk alternatives. Ms. Hernandez has consumed Dunkin beverages at various

24  Dunkin retail outlets in California and plans to continue to do so in the future.

25      28.    Plaintiff Geaneen Cojum is and was at all times material a resident of the State of

26  California. Ms. Cojum has purchased items, including coffee drinks, at various Dunkin' locations in

27  San Diego County and throughout the state of California. As a result of her lactose intolerance, Ms.

28  Cojum is substantially impaired in several major life activities and is required to consume non-dairy

milk alternatives. Ms. Cojum has consumed Dunkin beverages at various Dunkin retail outlets in California and plans to continue to do so in the future.

29.   Plaintiff Arsenio Pelayo is and was at all times material a resident of the State of Hawaii. Mr. Pelayo has purchased items, including coffee drinks, at various Dunkin' locations in Hawaii. As a result of his lactose intolerance, Mr. Pelayo is substantially impaired in several major life activities and is required to consume non-dairy milk alternatives. Mr. Pelayo has consumed Dunkin beverages at various Dunkin retail outlets in California and plans to continue to do so in the future.

30.   Plaintiff Albert Fitch is and was at all times material a resident of the State of New York. Mr. Fitch has purchased items, including coffee drinks, at various Dunkin' locations in New York. As a result of his lactose intolerance, Mr. Fitch is substantially impaired in several major life activities and is required to consume non-dairy milk alternatives. Mr. Fitch has consumed Dunkin beverages at various Dunkin retail outlets in New York and plans to continue to do so in the future.

31.   Plaintiff Pauleen Mara is and was at all times material a resident of the State of New York. Ms. Mara has purchased items, including coffee drinks, at various Dunkin' locations in New York. As a result of her lactose intolerance, Ms. Mara is substantially impaired in several major life activities and is required to consume non-dairy milk alternatives. Ms. Mara has consumed Dunkin beverages at various Dunkin retail outlets in New York and plans to continue to do so in the future.

32.   Plaintiff Lora Premo is and was at all times material a resident of the State of Colorado. Ms. Premo has purchased items, including coffee drinks, at various Dunkin' locations in Colorado. As a result of her lactose intolerance and diagnosed milk allergy, Ms. Premo is substantially impaired in several major life activities and is required to consume non-dairy milk alternatives. Ms. Premo has consumed Dunkin beverages at various Dunkin retail outlets in Colorado and plans to continue to do so in the future.

33.   Plaintiff Urcelina Medeiros is and was at all times material a resident of the State of Massachusetts. Ms. Medeiros has purchased items, including coffee drinks, at various Dunkin' locations in Massachusetts. As a result of her lactose intolerance, Ms. Medeiros is substantially impaired in several major life activities and is required to consume non-dairy milk alternatives. Ms.

Medeiros has consumed Dunkin beverages at various Dunkin retail outlets in Massachusetts and plans to continue to do so in the future.

34.     Plaintiff Ruby Smith is and was at all times material a resident of the State of Texas. Ms. Smith has purchased items, including coffee drinks, at various Dunkin' locations in Texas. As a result of her lactose intolerance, Ms. Smith is substantially impaired in several major life activities and is required to consume non-dairy milk alternatives. Ms. Smith has had medical treatment related to her lactose intolerance including, but not limited to, an emergency room visit. Ms. Smith has consumed Dunkin beverages at various Dunkin retail outlets in Texas and plans to continue to do so in the future.

**B.     Defendant**

35.     Defendant Dunkin Donuts LLC is incorporated in the State of Delaware and its principal place of business is located at 130 Royall Street, Canton, MA 02021. Dunkin operates over 9,500 coffee stores in the United States and over 125 in the state of California.

## BACKGROUND FACTS

36.     Plaintiffs are lactose intolerant or have a milk allergy, requiring that they each consume drinks that do not contain lactose or lactose-based products, which includes milk and many milk-containing products.

37.     Plaintiffs will suffer adverse health effects if they ingest milk or milk-containing products, including stomach pain, digestive tract inflammation, bloating, bowel irregularities and vomiting. As a result, Plaintiffs must pay very careful attention to the drinks they consume and can only consume non-dairy products in drinks that contain Non-Dairy Alternatives including lactose-free milk.

38.     Plaintiffs' disability limits the major life activities of drinking (and the nutritional benefits from ingesting drinks), and digestion.

39.     Lactose intolerance is a disability that makes it difficult to digest lactose. Lactose is a type of natural sugar found in milk and dairy products.

40.     When lactose moves through the large intestine without being properly digested, it can cause gas, bloating, belly pain and diarrhea. Many people who have a lactose intolerance cannot

CLASS ACTION COMPLAINT

eat or drink any amount of milk or milk-containing products.

41.     Persons with lactose intolerance and milk allergies experience various levels of reactions to the ingestion of milk and milk-containing products, including a bloated stomach, intestinal gas, nausea and vomiting, stomach pain and cramping, and diarrhea.

42.     Lactose intolerance occurs when the small intestine does not make enough of an enzyme called lactase. The body needs lactase to break down and digest lactose. A person's body may stop making lactase after a short-term illness such as an infection or as part of a lifelong chronic disease such as cystic fibrosis.

43.     A dairy allergy, or milk allergy, occurs when the immune system overreacts to the presence of proteins in milk. When a person with a dairy allergy encounters products containing dairy, it results in their immune system overreacting.

44.     A main type of milk allergy, Immunoglobulin E (IgE) refers to a type of antibody that the immune system may produce after recognizing a foreign substance, the presence of milk and dairy products.

45.     With IgE, the immune system mistakenly determines that dairy proteins are harmful and responds by releasing chemicals, such as histamine. This release of chemicals causes symptoms of an allergic response, which occur immediately. The symptoms may include swelling, breathing problems, rashes, loss of consciousness and anaphylaxis.

46.     A second type of milk allergy, non-IgE, may be confused with lactose intolerance in some people because often reactions do not appear as quickly and can cause gastrointestinal systems such as vomiting, bloating and diarrhea.

47.     Because of their milk allergies, Plaintiffs must order Non-Dairy Alternatives at Dunkin containing Non-Dairy Alternatives such as soy, almond, coconut, oat, or other lactose-free "milk." Plaintiffs have, on every occasion, been levied the Surcharge by Dunkin for Non-Dairy Alternatives in their coffee drinks ordered and consumed from Defendant's stores in numerous states, including California, Colorado, Massachusetts, New York and Hawaii.

48.     The Non-Dairy Alternative Surcharge has real and practical consequences for consumers suffering from lactose intolerance and milk allergies. A consumer will pay at least

$0.50-$2.15 more for a coffee-based drink at Dunkin for Non-Dairy Alternatives. Non-Dairy Alternatives, which do not contain lactose, are medically necessary for individuals with lactose intolerance and milk allergies. For those persons, the use of these Non-Dairy Alternatives is not a choice.

49. And this surcharge is not justified by the costs of the Non-Dairy Alternatives. There are no additional labor costs associated with using a Non-Dairy Alternative Surcharge in a beverage. Additionally, the retail cost of Non-Dairy Alternatives is not significantly more than dairy products (if at all). For example, as of the filing of this complaint, Whole Milk was priced at between $0.03-05 per fluid ounce, Half & Half between $0.09-19 per fluid ounce, and Heavy Cream between $0.17-32 per fluid ounce. Yet, coconut, oat and soy milk only sells for between $0.06-07 per fluid ounce. Similarly, almond milk sells for between $0.04-07 per fluid ounce. Accordingly, the retail price of Whole Milk, Half & Half, and Heavy Cream (which is provided for free by Defendant) is the same, if not more, than their Non-Dairy Alternatives.

50. Accordingly, Non-Dairy Alternative Surcharges are not to defray the added costs of use of these ingredients. Instead, the Surcharges are designed to profit from those consumers with lactose intolerance and milk allergies. Indeed, only Non-Dairy Alternative incur a surcharge, when cream may be more expensive than any other Non-Dairy Alternative.

51. Without the availability of Non-Dairy Alternatives options, consumers with lactose intolerance and milk allergies are deprived of the opportunity to enjoy consuming Dunkin' coffee beverages and drinks with their friends, family, and business associates.

52. Upon information and belief, Dunkin sells approximately 3 million coffee-based drinks per day.

53. Various studies in the United States concluded that the portion of the U.S. population that is lactose intolerant is at least 12% and may be as high as 48%.

54. Lactose intolerance is common in adults, almost 30 million persons in the United States have it by the age of 20.

55. Dairy allergies are one of the most common allergies. In the United States, greater than 15 million people have a milk or dairy allergy.

CLASS ACTION COMPLAINT

1    56.    Dunkin's annual revenue in 2021 exceeded $1.4 billion dollars.

2    57.    Dunkin is one of the largest coffee chains in the world.

3    58.    Because of its size, Dunkin has the power to control the manufacturing costs for Non-Dairy Alternatives.

5    59.    Upon information and belief, Dunkin has earned over $250 million dollars in the United States as a result of its discriminatory and illegal levying of the Surcharge during the class period.

## CLASS ALLEGATIONS

60.    Plaintiff brings this action as a class pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following classes:

**National Class**: All persons who (1) suffer from lactose intolerance, or an intolerance to milk or milk-containing products; and (2) who purchased drinks or other items from Dunkin within four years prior to the filing of the Complaint and continuing to the present.

**California Subclass**: All persons who (1) are citizens of California; (2) suffer from lactose intolerance, or an intolerance to milk or milk-containing products; and (3) who purchased drinks or other items from Dunkin in California within two years prior to the filing of the Complaint and continuing to the present.

**Hawaii Subclass**: All persons who (1) are citizens of Hawaii; (2) suffer from lactose intolerance, or an intolerance to milk or milk-containing products; and (3) who purchased drinks or other items from Dunkin in Hawaii within two years prior to the filing of the Complaint and continuing to the present.

**New York Subclass**: All persons who (1) are citizens of New York; (2) suffer from lactose intolerance, or an intolerance to milk or milk-containing products; and (3) who purchased drinks or other items from Dunkin in New York within two years prior to the filing of the Complaint and continuing to the present.

**Colorado Subclass**: All persons who (1) are citizens of Colorado; (2) suffer from lactose intolerance, or an intolerance to milk or milk-containing products; and (3) who purchased drinks or other items from Dunkin in Colorado within two years prior to the filing of the Complaint and continuing to the present.

**Massachusetts Subclass**: All persons who (1) are citizens of Massachusetts; (2) suffer from lactose intolerance, or an intolerance to milk or milk-containing products; and (3) who purchased drinks or other items from Dunkin in Massachusetts within two years prior to the filing of the Complaint and continuing to the present.

**Texas Subclass**: All persons who (1) are citizens of Texas; (2) suffer from lactose intolerance, or an intolerance to milk or milk-containing products; and (3) who

purchased drinks or other items from Dunkin in Texas within two years prior to the filing of the Complaint and continuing to the present.

The classes exclude counsel representing the class, governmental entities, Defendant, any entity in which Defendant has a controlling interest, Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other putative class members.

61.     Plaintiff reserves the right to amend or modify the class descriptions with greater particularity or further division into subclasses or limitation to particular issues.

62.     This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 because it is a well-defined community of interest in the litigation and the class is readily and easily ascertainable.

63.     The potential members of the class are so numerous that joinder of all members of the class is impractical. Although the precise number of putative class members has not been determined at this time, Plaintiffs are informed and believe that the proposed classes include hundreds of thousands of members.

64.     There are common questions of law and fact that predominate over any questions affecting only individual putative class members.

65.     Plaintiffs' claims are typical of the claims of the members of the putative class because Plaintiff ordered and consumed drinks at Defendant's stores, ordered Non-Dairy Alternatives and incurred a Surcharge for that alternative milk during the applicable class period. Plaintiffs and each class member sustained similar injuries arising out of Defendant's conduct in violation of law. The injuries of each member of the class were caused directly by Defendant's wrongful conduct. In addition, the factual underpinning of Defendant's misconduct is common to all members of the putative class and represents a common thread of misconduct resulting in injury to all members of the class. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of putative class members and are based on the same legal theory.

66.     A class action is superior to other available means for the fair and efficient

CLASS ACTION COMPLAINT

adjudication of this controversy. Individual joinder of putative class members is not practicable and questions of law and fact common to the class members predominate over any questions affecting only individual putative class members.

67.    Each member of the putative class has been damaged and is entitled to recovery by reason of Defendant's illegal acts.

68.    Class action treatment will allow those similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

69.    Plaintiffs are unaware of any difficulties that are likely to be construed in the management of this action that would preclude its maintenance as a class action.

70.    The disposition of all claims of the members of the class in a class action, rather than individual actions, benefits the parties and the Court. The interests of the class members in controlling prosecution of separate claims against the Defendant is small when compared to the efficiency of a class action.

71.    Plaintiffs will fairly and adequately represent and protect the interests of the class. Plaintiffs' Counsel and for the putative class members are experienced and competent in litigating class actions.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF TITLE III OF AMERICANS
### WITH DISABILITIES ACT
(On Behalf of all Plaintiffs and all other similarly situated National Class Members)

72.    The allegations contained in Paragraphs 1-71 of the Complaint are incorporated by reference as if fully set out herein.

73.    Plaintiffs assert this count on their own behalf and on behalf of all other similarly situated persons members of the National Class.

74.    Defendant is a public accommodation under the Americans with Disabilities Act ("ADA"), see 42 U.S.C. § 12181 (7)(B), and consequently Defendant is prohibited from discriminating against Plaintiffs and other members of the putative class on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges and advantages provided by

CLASS ACTION COMPLAINT

Defendant.

75.     The ADA requires that a "public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford good, services, facilities, privileges, advantages or accommodations to individuals with disabilities[.]". 28 C.F.R. § 36.302(a). *See also* 42 U.S.C. § 12182(b)(2)(A)(ii) (stating that discrimination includes failing to make reasonable modifications when necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities).

76.     The ADA makes it discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage or accommodation that is not equal to that afforded to other individuals[.]" 42 U.S.C. § 12182(a)(i). *See also* 42 U.S.C. § 12182(b)(i) (making it discriminatory for a public accommodation to deny disabled persons the opportunity to participate in or benefit from goods, services, privileges, advantages, or accommodations).

77.     The ADA requires that a "public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities[.]" 28 C.F.R. § 36.302(a).

78.     Under the ADA, if an establishment already makes alterations or modifications, or takes special orders for its customers, it must do so for the disabled customer requests as well. *See* 28 C.F.R. § 36.307(a) & (b) ("A public accommodation shall order accessible or special goods at the request of an individual with disabilities, if, in the normal course of its operation, it makes special orders on requests for unstocked goods, and if the accessible or special goods can be obtained from a supplier with who the public accommodation customarily does business.").

79.     Most importantly, the ADA provides that a "public accommodation may not impose a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids, barrier removal, alternatives to barrier removal, and reasonable modifications in policies, practices, or procedures, that are

CLASS ACTION COMPLAINT

required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part." 28 C.F.R. § 36.301.

80.     The ADA Amendments Act of 2008 ("ADAAA") was passed to restore the intent and protections of the Americans with Disabilities Act of 1990. The ADAAA contained specific Congressional Findings that the amendments were intended to address and reject United States Supreme Court decisions that had incorrectly found in individual cases that people with a range of substantially limiting impairments are not people with disabilities. Specifically, the ADAAA cited to the following holdings as having been incorrectly decided: 1) *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999); and 2) *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002).

81.     The clear Congressional intent of the ADAAA was to expand and broaden the disabilities that are included for protection under the ADA.

82.     Section 4(a) of the ADAAA amends Section 3 of the ADA to include the following language under Section 4 Rules of Construction Regarding the Definition of Disability: (A) the definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act.

83.     Lactose intolerance is a disability under the ADA. The ADA defines a disability, in pertinent part, as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1). An impairment means "[a]ny physiological disorder or condition that affects "one or more body systems," such as the neurological, digestive, or immune systems. 28 C.F.R. 36.105(b)(1)(i). An impairment is a disability if it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."

84.     Drinking beverages, including coffee drinks, is a major life activity.

85.     Digestion is a major and vital life activity.

86.     Defendant violates the ADA because, as alleged above, it fails to make modifications to persons with lactose intolerance but instead imposes a surcharge on this group of persons, purportedly to cover the costs of such measures, even though there is no material difference between the costs of regular milk and Non-Dairy Alternatives.

CLASS ACTION COMPLAINT

87.     As a direct result of Defendant's violation of the ADA, Plaintiffs and class members have suffered injury, including but not limited to the violation of their statutory rights and loss of money as a result of Defendant's illegal price discrimination. Therefore, Plaintiffs and the putative class members are entitled to damages and injunctive relief.

88.     Defendant's actions were willful, wanton, malicious, and intentional, and were done in willful and conscious disregard of the rights of Plaintiffs and the putative class members. Defendant's actions were done with the express knowledge, consent, and ratification of Defendant's managerial employees and thereby justify the awarding of punitive and exemplary damages in an amount to be determined at trial.

**COUNT II**
**VIOLATION OF CALIFORNIA'S UNRUH**
**CIVIL RIGHTS ACT (CA)**
(On Behalf of Chelsea Garland, Geaneen Cojom, Tonya Hughes,
Natasha Hernandez, and all other similarly situated California Subclass Members)

89.     The allegations contained in paragraphs 1-71 of the Complaint are incorporated by reference as if fully set out herein. Plaintiffs Garland and Cojum assert this count on her own behalf and on behalf of the California subclass, as defined above.

90.     California's Unruh Act provides, "All persons within the jurisdiction of this state are free and equal, and no matter their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).

91.     The Unruh Act prohibits businesses from engaging in unreasonable, arbitrary, or invidious discrimination, including through the unequal treatment of patrons. For example, businesses may not offer discounts to some classes of patrons but require full price from other patrons, where the price difference is based on arbitrary, class-based generalizations (such as gender).

92.     The Unruh Act provides that whoever "denies, aids or incites a denial, or makes any discrimination or distinction contrary to [the Act]" is liable for each and every offense, up to three

times the amount of actual damages but in no case less than $4,000 plus attorneys' fees. *Id* at § 52(a).

93.   Defendant's conduct constitutes a violation of California's Unruh Act, Cal. Civ. Code § 51, *et seq.* Defendant's practice of surcharging Non-Dairy Alternatives purchased by consumers who are lactose intolerant constitutes price discrimination in violation of the Unruh Act.

**<u>Intentional Discrimination</u>**

94.   The Surcharge constitutes intentional discrimination against persons with lactose intolerance. Defendant created a surcharge targeted to persons with lactose intolerance, because Defendant accommodates other customers' dietary preferences and allergies free of charge but imposes a surcharge only on persons with lactose intolerance.

95.   As alleged above, Defendant provides modifications or substitutes for persons with heart conditions (caffeine-free) or diabetes (sugar-free) at no additional charge. Consumers with these dietary preferences pay no additional money for the accommodations Defendant affords them.

96.   Consumers who need Non-Dairy Alternatives because of their disability, specifically lactose intolerance, are targeted for the Surcharge because of their specific medical condition.

97.   Defendant is making a choice to impose the Surcharge for necessary beverage modifications for one class of persons with a specific disability, lactose intolerance, while at the same time not imposing any extra charge for those persons with another medical condition. This is the essence of intentional discrimination.

98.   Defendant is disproportionately profiting from their customers with lactose intolerance.

99.   Defendant's Surcharge greatly exceeds the amount of any minimal difference in costs associated with Non-Dairy Alternatives.

100.   Defendant's Surcharge is the same for all Non-Dairy Alternatives, making no distinction among the costs of the various different Non-Dairy Alternatives.

101.   Defendant is intentionally profiting from the sale of Non-Dairy Alternatives at the expense of those persons with lactose intolerance.

CLASS ACTION COMPLAINT

**Violations of the ADA**

102.    A violation of the federal Americans with Disabilities Act (*see* 42 U.S.C. § 12111(9), 42 U.S.C. § 12182(a)) also constitutes a violation of the Unruh Act, Cal Civ. Code § 51(f).

103.    Defendant is a public accommodation under the ADA, (*see* 42 U.S.C. § 12181(7)(B), and consequently Defendant is prohibited from discriminating against Plaintiff and other members of the putative class on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, and advantages offered by Defendant.

104.    The ADA requires that "a public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford good, services, facilities, privileges, advantages, or accommodations to individuals with disabilities[.]" 28 C.F.R. 36.302(a). *See also* 42 U.S.C. § 12182(b)(2)(A)(ii) (stating that discrimination includes failing to make reasonable modifications when necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities).

105.    The ADA makes it "discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit form a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals[.]". 42 U.S.C. § 12182(a)(i). *See also* 42 U.S.C. § 12182(b)(i) (making it discriminatory for a public accommodation to deny disabled persons the opportunity to participate in or benefit from goods, services, privileges, advantages or accommodations).

106.    The ADA requires that "a public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities[.]" 28 C.F.R. § 36.302(a).

107.    Under the ADA, if an establishment already makes alterations or modifications, or takes special orders for its customers, it must do so for disabled customer requests as well. *See* 28 C.F.R. § 36.307(a) & (b) ("A public accommodation shall order accessible or special goods at the request of an individual with disabilities, if, in the normal course of its operation, it makes special

orders on request for unstacked goods, and if the accessible or special goods can be obtained from a supplier with whom the public accommodation customarily does business."). Special foods are expressly included among special orders. *See* 28 C.F.R. § 36.307(c) ("Examples of accessible or special goods includes items such as Braille versions of books, books on audio cassettes, closed-captioned video tapes, special sizes or lines of clothing, and special foods to meet particular dietary needs.")

108.    Importantly, the ADA provides that "a public accommodation may not impose a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids, barrier removal, alternatives to barrier removal, and reasonable modifications in policies, practices, or procedures, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part." 28 C.F.R. § 36.301.

109.    Defendant violates the ADA because, as alleged above, it fails to make modifications that are necessary to afford goods and services to persons with lactose intolerance but instead imposes a surcharge on this group, purportedly to cover the cost of such measures.

110.    Moreover, also as alleged above, although Defendant already offers modifications to non-disabled customers free of charge, it fails to offer persons with lactose intolerance this same goods and services free of charge.

111.    Finally, Defendant's policy of charging all customers a surcharge for Non-Dairy Alternatives disproportionately affects persons with lactose intolerance, regardless of any express intent by Defendant to discriminate against this group.

112.    As a direct and proximate cause of Defendant's violation of the Unruh Act, Plaintiff Garland and California Subclass members have suffered injury, including but not limited to the violation of their statutory rights and loss of money as the result of the illegal Surcharge. Therefore, they are entitled to damages and injunctive relief.

113.    The aforementioned acts of Defendant were willful, wanton, malicious, intentional, oppressive, and despicable and were done in willful and conscious disregard of the rights of Plaintiffs and class members, and were done by managerial agents and employees of Defendant, or

with the express knowledge, consent, and ratification of managerial employees of Defendant, and thereby justify the awarding of punitive and exemplary damages in an amount to be determined at the time of the trial.

114.    Under the Unruh Act, a Plaintiff is entitled to recover actual damages and an amount up to three times the actual damages for each violation of the Unruh Act, "but in no case less than $4,000…" for each and every offense (Cal. Civ. Code § 52(a).

115.    Plaintiff and Class members are entitled to actual and treble damages for Defendant's violation of the Unruh Act.

**COUNT III**
**HAWAII DISCRIMINATION**
(On Behalf of Plaintiff Arsenio Pelayo and Hawaii Subclass Members
for violation of Hawaii Revised Statutes, Chapter 489)

116.    Plaintiff Pelayo realleges and incorporates by reference the allegations in paragraphs 1-71 of this Complaint as if fully set forth herein.

117.    Hawaii law prohibits "unfair discriminatory practices which deny, or attempt to deny, a person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation on the basis of race, sex, color, religion, ancestry, or disability…" Haw. Rev. Stat. § 489-3.

118.    "Place of public accommodation means a business … of any kind whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold or otherwise made available to the general public as customers, clients, or visitors." *Id* at § 489-2. The list of examples includes "any establishment that sells goods or services at retail." *Id* at § 489-2(4).

119.    Dunkin stores are places of public accommodation as defined in the statute. *See* § 489-2.

120.    Plaintiff Pelayo and the Hawaii Subclass Members who were levied the Surcharge for Non-Dairy Alternatives at Dunkin retail stores seek minimum damages under § 489-7.5(a)(1).

121.    Defendant's Surcharge for Non-Dairy Alternatives discriminates against people with disabilities and, through their actions described herein, Dunkin has, directly denied to Plaintiff Pelayo and the Hawaii Subclass Members, because of their disabilities, the full and equal enjoyment

of its goods, services, privileges, advantages and accommodations.

122.   Plaintiff Pelayo and the Hawaii Subclass Members have been damaged and will continue to be damaged by this discrimination as more fully set forth herein.

**<u>COUNT IV</u>**
**NEW YORK DISCRIMINATION**
(On Behalf of Plaintiffs Albert Fitch, Pauleen Mara
and New York Subclass Members for violation of New York Civil Rights Law)

123.   Plaintiffs Fitch and Mara reallege and incorporate by reference the allegations in paragraphs 1-71 of this Complaint as if fully set forth herein.

124.   New York states that "[a]ll persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations…" *N.Y. Civ. Rights § 40.*

125.   New York prohibits "any person … because of the race, creed, color, national origin, sexual orientation, military status, sex, or disability or marital status of any person, directly or indirectly … [to deny] such person any of the accommodations, advantages, facilities, or privileges thereof…" N.Y. Exec § 296(2)(a).

126.   A place of public accommodation "shall be deemed to include … retail stores and establishments …" N.Y. Civ. Rights § 40.

127.   Dunkin stores are a place of public accommodation as defined in § 40.

128.   Plaintiffs Fitch and Mara, and the New York Subclass Members who were charged the Surcharge for Non-Dairy Alternatives, seek minimum statutory damages under § 40-d.

129.   Defendant's Surcharge for Non-Dairy Alternatives discriminates against people with disabilities and, through their actions described herein, Dunkin has, directly denied to Plaintiffs Fitch, Mara and the New York Subclass Members, because of their disabilities, the full and equal enjoyment of its goods, services, privileges, advantages and accommodations.

130.   Plaintiffs Fitch, Mara, and the New York Subclass Members have been damaged and will continue to be damaged by this discrimination as more fully set forth herein.

CLASS ACTION COMPLAINT

### COUNT V
### MASSACHUSETTS DISCRIMINATION
(On Behalf of Plaintiff Urcelina Medeiros and Massachusetts
Subclass Members for violation of Massachusetts Anti-Discrimination Law)

131.    Plaintiff Medeiros realleges and incorporates by reference the allegations in paragraphs 1-71 of this Complaint as if fully set forth herein.

132.    Massachusetts prohibits "… any distinction, discrimination or restriction on account of physical or mental disability, … [in] his treatment in any place of public accommodation…" *Mass Gen. Laws ch. 272, § 98.*

133.    A place of public accommodation is any place "which is open to and accepts or solicits the patronage of the general public" and includes a "retail store or establishment." *Id.* 272, §§ 92A & 92A(3).

134.    Dunkin stores are a public accommodation as defined in 272, §§ 92A.

135.    Plaintiff Mederios and the Massachusetts Subclass Members who were charged the Surcharge for Non-Dairy Alternatives seek minimum statutory damages under 272, § 98.

136.    Defendant's Surcharge for Non-Dairy Alternatives discriminates against people with disabilities and, through their actions described herein, Dunkin has, directly denied to Plaintiff Medeiros, and the Massachusetts Subclass Members, because of their disabilities, the full and equal enjoyment of its goods, services, privileges, advantages and accommodations.

137.    Plaintiff Medeiros and the Massachusetts Subclass Members have been damaged and will continue to be damaged by this discrimination as more fully set forth herein.

### COUNT VI
### COLORADO DISCRIMINATION
(on behalf of Plaintiff Lora Premo and Colorado Subclass
Members for violation of Colorado Anti-Discrimination Act)

138.    Plaintiff Premo realleges and incorporates by reference the allegations in paragraphs 1-71 of this Complaint as if fully set forth herein.

139.    The Colorado Anti-Discrimination Act ("CADA") states, "It is a discriminatory practice and unlawful for a person, directly or indirectly, to refuse withhold from, or deny to an individual or a group, because of disability, race, creed, color, sex, marital status, national origin, or

CLASS ACTION COMPLAINT

ancestry, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation …" Colo. Rev. Stat. § 24-34-601(2).

140.    CADA defines a "place of public accommodation" to include "any place of business engaged in any sales to the public and any place offering services, facilities, privileges, advantages, or accommodations to the public, including but not limited to any business offering wholesale or retail sales to the public…" *Id*. § 24-34-601(1).

141.    Dunkin stores are places of public accommodation as defined in CADA. Defendant is prohibited from discriminating against Plaintiff and other members of the putative class on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, and advantages offered by Defendant.

142.    Plaintiff Premo and the Colorado Subclass Members who were charged the Surcharge for Non-Dairy Alternatives seek minimum statutory damages under § 24-34-602.

143.    Defendant's Surcharge for Non-Dairy Alternatives discriminates against people with disabilities and, through their actions described herein, Dunkin has, directly denied to Plaintiff Premo and the Colorado Subclass Members, because of their disabilities, the full and equal enjoyment of its goods, services, privileges, advantages and accommodations.

144.    Plaintiff Premo and the Colorado Subclass Members have been damaged and will continue to be damaged by this discrimination as more fully set forth herein.

**COUNT VII**
**TEXAS DISCRIMINATION**
(On Behalf of Plaintiff Ruby Smith and Texas Subclass
Members for violation of the Texas Human Resource Code)

145.    Plaintiff Ruby Smith realleges and incorporates by reference the allegations in paragraphs 1-71 of this Complaint as if fully set forth herein.

146.    The Texas code states "[p]ersons with disabilities have the same rights as the able-bodied to the full use and enjoyment of any public facility in the state." Tex. Hum. Res. Code Ann. § 121.003(a).

147.    "'Public facilities' includes … any other place of public accommodation, …[or] convenience, … to which the general public or any classification of persons from the general public

CLASS ACTION COMPLAINT

is regularly, normally, or customarily invited." *Id.* § 121.002(5).

148.    Dunkin stores are public facilities as defined in § 121.002(5). Defendant is prohibited from discriminating against Plaintiff and other members of the putative class on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, and advantages offered by Defendant.

149.    Plaintiff Smith and the Texas Subclass Members who were charged the Surcharge for Non-Dairy Alternatives seek minimum statutory damages under § 121.004(b).

150.    Defendant's Surcharge for Non-Dairy Alternatives discriminates against people with disabilities and, through their actions described herein, Dunkin has, directly denied to Plaintiff Smith and the Texas Subclass Members, because of their disabilities, the full and equal enjoyment of its goods, services, privileges, advantages and accommodations.

151.    Plaintiff Smith and the Texas Subclass Members have been damaged and will continue to be damaged by this discrimination as more fully set forth herein.

## COUNT VIII
## UNJUST ENRICHMENT/RESTITUTION

152.    The allegations contained in paragraphs 1-71 of the Complaint are incorporated by reference as if fully set out herein. The named Plaintiffs assert this count on their own behalf and on behalf of the National class, as defined above.

153.    Plaintiffs conferred a benefit to Defendant by allowing them to collect a surcharge in exchange for providing Plaintiffs with non-dairy alternatives such as lactose-free milk.

154.    The Defendant enriched itself at the expense of Plaintiffs and the putative class members by its illegal levying of the Surcharge for Non-Dairy Alternatives.

155.    Plaintiffs and putative class members continue to suffer injuries as a result of the Defendant's illegal and discriminatory behavior. If the Defendant does not compensate the Plaintiffs, it would be unjustly enriched as a result of its unlawful acts or practices.

156.    It is an equitable principle that no one should be allowed to profit from his own wrongdoing, therefore it would be inequitable for the Defendant to retain said benefit and reap unjust enrichment.

157.  Since the Defendant unjustly enriched itself at the expense of the Plaintiffs and putative class members, Plaintiffs request the disgorgement of these illegally obtained monies.

158.  Due to Defendant's conduct, Plaintiffs and the putative class members are entitled to damages according to proof, but in no event less than $5,000,000.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, CHELSEA GARLAND, TONYA HUGHES, NATASHA HERNANDEZ, GEANEEN COJUM, ARSENIO PELAYO, ALBERT FITCH, PAULEEN MARA, LORA PREMO, UNCELINA MEDEIROS and RUBY SMITH, respectfully request that this Court enter judgment in their favor and in favor of those similarly situated, as follows:

1.    Certifying and maintaining this action as a class action, with the named Plaintiffs as designated class representative and with their counsel appointed as class counsel;

2.    A declaration that Defendant is in violation of each of the Counts set forth above;

3.    Award Plaintiffs and those similarly situated statutory, compensatory, and treble damages;

4.    Award Plaintiffs and those similarly situated liquidated damages;

5.    Order the disgorgement of illegally obtained monies;

6.    Award each named Plaintiff a service award;

7.    Award attorneys' fees and costs; and

8.    Grant such further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial of the claims asserted in this Class Action Complaint.

Dated: December 26, 2023                    Respectfully submitted,

                                            /s/ Trenton R. Kashima

                                            Trenton R. Kashima (SBN No. 291405)
                                            MILBERG COLEMAN BRYSON
                                            PHILLIPS GROSSMAN PLLC
                                            402 West Broadway, Suite 1760
                                            San Diego, CA 92101
                                            Telephone: (619) 810-7047
                                            Email: tkashima@milberg.com

CLASS ACTION COMPLAINT

1                                  Bogdan Enica (*Pro Hac Vice* to be filed)

2                                  KEITH GIBSON LAW, P.C.
66 West Flagler St., Ste. 937

3                                  Miami, FL 33130
Telephone: (305) 539-9206

4                                  Email: bogdan@keithgibsonlaw.com

5                                  Keith L. Gibson (*Pro Hac Vice* to be filed)

6                                  KEITH GIBSON LAW, P.C.
490 Pennsylvania Avenue Suite 1

7                                  Glen Ellyn, IL 60137
Telephone: (630) 677-6745

8                                  Email: keith@keithgibsonlaw.com

9                                  Rachel L. Soffin (*Pro Hac Vice* to be filed)

10                                MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC

11                                3833 Central Avenue
St. Petersburg, FL 33713

12                                Telephone: (865) 247-0080
Email: rsoffin@milberg.com

13

14                                *Counsel for Plaintiffs and the Putative Class*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT