David B. Carpenter (*pro hac vice*)
Brett E. Coburn (*pro hac vice*)
**ALSTON & BIRD LLP**
1201 West Peachtree Street, Suite 4900
Atlanta, Georgia 30309
Telephone: (404) 881-7000
Facsimile:  (404) 881-7777
david.carpenter@alston.com
brett.coburn@alston.com

Meghan M. McBerry (SBN 334464)
**ALSTON & BIRD LLP**
560 Mission Street, Suite 2100
San Francisco, CA 94105
Telephone: (415) 243-1000
Facsimile:  (415) 243-1001
meghan.mcberry@alston.com

Attorneys for Defendant
**DUNKIN' DONUTS LLC**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHELSEA GARLAND, TONYA HUGHES, NATASHA HERNANDEZ, GEANEEN COJUM, ARSENIO PELAYO, ALBERT FITCH, PAULEEN MARA, LORA PREMO, URCELINA MEDEIROS, RUBY SMITH, individually and on behalf of all those similarly situated,<br><br>                         Plaintiffs,<br><br>    v.<br><br>DUNKIN' DONUTS LLC, a Delaware Corporation,<br><br>                         Defendant. | Case No.: 3:23-CV-06621-SI<br><br>**DEFENDANT DUNKIN' DONUTS LLC'S MOTION TO DISMISS**<br><br>**Judge:** Hon. Susan Illston<br>**Date:** April 19, 2024<br>**Time:** 10:00 a.m. PT<br>**Location:** San Francisco Courthouse Courtroom 1 – 17th Floor 450 Golden Gate Avenue San Francisco, CA 94102<br><br>Complaint filed: December 26, 2023 |

**TO THE COURT, ALL INTERESTED PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on April 19, 2024 at 10:00 a.m. before the Hon. Susan Illston, District Judge in the U.S. District Court, Northern District of California, located at San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Dunkin' Donuts LLC ("Dunkin'") will present a motion to dismiss Plaintiffs' Complaint with prejudice.[1]

Pursuant to Federal Rule of Civil Procedure 12(b)(2), this Court lacks personal jurisdiction over Dunkin' as Plaintiffs' allegations involve Dunkin'-branded stores that are owned and operated by franchisees and Dunkin' is not the franchisor entity. Accordingly, all claims against Dunkin' should be dismissed for lack of personal jurisdiction. Additionally, under to Federal Rule of Civil Procedure 12(b)(6), Plaintiffs have failed to properly state any claims under applicable law, and the Complaint should therefore be dismissed.

This Motion is supported by the accompanying Memorandum of Points and Authorities and the Declaration of Brett Coburn.

For all foregoing reasons, Dunkin' Donuts LLC hereby requests the Court dismiss this action.

DATED: March 4, 2024

DAVID B. CARPENTER
BRETT E. COBURN
MEGHAN M. MCBERRY
**ALSTON & BIRD LLP**

/s/ *Meghan M. McBerry*
Meghan M. McBerry

Attorneys for Defendant
Dunkin' Donuts LLC

---

[1] Dunkin' understands that this hearing will be conducted via Zoom in accordance with the "NOTICE IN ALL CIVIL AND CRIMINAL MATTERS PENDING BEFORE JUDGE SUSAN ILLSTON OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA."

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................................1

I.      INTRODUCTION .................................................................................................1

II.     FACTUAL BACKGROUND ................................................................................2

        A.      Relevant Allegations in the Complaint. ................................................2

        B.      Additional Relevant Facts Regarding Dunkin'.....................................3

        C.      Notable Omissions from the Complaint. ...............................................4

III.    RULE 12(B)(2) ARGUMENT .............................................................................5

        A.      This Court Lacks Personal Jurisdiction Over Dunkin'. .........................5

                1.      Dunkin' Has Not Purposefully Availed Itself of the Privilege of Conducting Activities Within California..................................................................6

                2.      Plaintiffs' Claims Do Not Arise Out of or Relate to Dunkin's Conduct in California ...............................................................................................7

IV.     RULE 12(B)(6) ARGUMENTS ...........................................................................8

        A.      Dunkin' Is Not a Place of Public Accommodation...............................8

        B.      Plaintiffs Fail to Sufficiently Plead that They Are Disabled. ..................10

        C.      Plaintiffs Never Put Dunkin' on Notice of Their Condition, Need for a Modification, or Preferred Modification................................................12

        D.      Plaintiffs' ADA Claim Fails as a Matter of Law. ..................................14

                1.      The ADA Does Not Require Public Accommodations to Offer Accessible Goods or Sell Them at the Same Price as Non-Accessible Goods. .......................14

                2.      The Upcharge for Non-Dairy Alternatives Is Not a Prohibited Surcharge Under the ADA. ..........................................................................................17

        E.      Plaintiffs Fail to State a Claim for Intentional Discrimination Under the Unruh Act.................................................................................................18

        F.      Plaintiffs Fail to State a Claim for Unjust Enrichment. ...............................19

V.      CONCLUSION....................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.F. v. Starbucks Corp.*,
    No. 3:17-cv-1582-SI, 2018 U.S. Dist. LEXIS 35413 (D. Or. Mar. 5, 2018)...............................13

*A.L. v. Walt Disney Parks & Resorts US, Inc.*,
    469 F. Supp. 3d 1280 (M.D. Fla. 2020), *aff'd sub nom. A.L. v. Walt Disney Parks & Resorts
    U.S., Inc.*, 50 F.4th 1097 (11th Cir. 2022) ...................................................................................16

*AirWair Int'l Ltd. v. Fewstone Pty Ltd.*,
    No. 19-cv-06332-SI, 2020 U.S. Dist. LEXIS 28337 (N.D. Cal. Feb. 19, 2020) .............................7

*Alexander v. Choate*,
    469 U.S. 287 (1985)......................................................................................................................15

*Anderson v. Macy's, Inc.*,
    943 F. Supp. 2d 531 (W.D. Pa. 2013)......................................................................................17, 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).........................................................................................................................9

*Belton v. Comcast Cable Holdings, LLC*,
    151 Cal. App. 4th 1224 (2007) ....................................................................................................19

*Betancourt v. Federated Dep't Stores*,
    732 F. Supp. 2d 693 (W.D. Tex. 2010)........................................................................................14

*Briskin v. Shopify, Inc.*,
    87 F.4th 404 (9th Cir. 2023) ......................................................................................................7, 8

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*,
    582 U.S. 255 (2017).........................................................................................................................7

*Brundage v. Hahn*,
    57 Cal. App. 4th 228 (2000) ...................................................................................................12, 13

*Cardinal Health Sols., Inc. v. Valley Baptist Med. Ctr.*,
    643 F. Supp. 2d 883 (S.D. Tex. 2008) .........................................................................................10

*Credos Indus. Supplies & Rentals, LLC v. Targa Pipeline Mid-Continent WestTex LLC (In re KP
    Eng'g, LP)*,
    No. H-22-00664, 2022 U.S. Dist. LEXIS 145150 (S.D. Tex. Aug. 15, 2022) ..............................20

*CZ Servs. v. Anthem Ins. Cos.*,
    No. 19-cv-04453-JD, 2022 U.S. Dist. LEXIS 163160 (N.D. Cal. Sept. 9, 2022) ........................7, 8

*Dare v. Cal.*,
191 F.3d 1167 (9th Cir. 1999) ...................................................................................17, 18

*Doe v. Mut. of Omaha Ins. Co.*,
179 F.3d 557 (7th Cir. 1999) ...........................................................................................16

*Doe v. Unocal Corp.*,
248 F.3d 915 (9th Cir. 2001) ..............................................................................................3

*Earll v. eBay Inc.*,
No. 5:11-CV-00262-EJD, 2012 U.S. Dist. LEXIS 111632 (N.D. Cal. Aug. 8, 2012) ..................18

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
141 S. Ct. 1017 (2021) ...........................................................................................5, 6, 7

*Ford v. Schering-Plough Corp.*,
145 F.3d 601 (3d Cir. 1998) .............................................................................................15

*Fortyune v. Am. Multi-Cinema, Inc.*,
364 F.3d 1075 (9th Cir. 2004) ....................................................................................13, 14

*Gitson v. Trader Joe's Co.*,
No. 13-CV-01333-VC, 2015 U.S. Dist. LEXIS 170401 (N.D. Cal. Dec. 1, 2015) .......................15

*Gram v. Intelligender, LLC*,
No. CV 10-4210 ABC, 2010 U.S. Dist. LEXIS 153099 (C.D. Cal. Oct. 8, 2010) ..................19, 20

*Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*,
742 F.3d 414 (9th Cir. 2014) ...........................................................................................18

*HTK Haw. Inc. v. Sun*,
No. 15-00114 JMS-RLP, 2016 U.S. Dist. LEXIS 8437, at *34-35 (D. Haw. Jan. 25, 2016) ........20

*Johnson v. Gambrinus Co./Spoetzl Brewery*,
116 F.3d 1052 (5th Cir. 1997) .........................................................................................13

*Keeton v. Hustler Mag., Inc.*,
465 U.S. 770 (1984) .........................................................................................................5

*Koebke v. Bernardo Heights Country Club*,
36 Cal. 4th 824 (2005) ....................................................................................................19

*Labonte v. Riverside Park Enters.*,
No. 3:22-cv-30046-KAR, 2022 U.S. Dist. LEXIS 213367 (D. Mass. Nov. 28, 2022) ................11

*Lemmons v. Ace Hardware Corp.*,
No. 12-cv-03936-JST, 2014 U.S. Dist. LEXIS 91347 (N.D. Cal. July 3, 2014) ...........................9

*Lentini v. Cal. Ctr. for the Arts, Escondido*,
370 F.3d 837 (9th Cir. 2004) .............................................................................................9

*McNeil v. Time Ins. Co.*,
    205 F.3d 179 (5th Cir. 2000) .................................................................................16

*Mussat v. IQVIA, Inc.*,
    953 F.3d 441 (7th Cir. 2020) ...................................................................................7

*Nears v. Holiday Hosp. Franchising, Inc.*,
    295 S.W.3d 787 (Tex. Civ. App. 2009) .................................................................10

*Neff v. Am. Dairy Queen Corp.*,
    58 F.3d 1063 (5th Cir. 1995) ..............................................................................9, 10

*O'Byrne v. Reed*,
    No. 09-CV-08406-DMG, 2010 U.S. Dist. LEXIS 153616 (C.D. Cal. Aug. 6, 2010) ...................10

*Painter v. Blue Diamond Growers*,
    757 F. App'x 517 (9th Cir. 2018) ...........................................................................15

*Peterson v. Cellco P'ship*,
    164 Cal. App. 4th 1583 (2008) ...............................................................................20

*Philip v. G.O.L.A., Inc.*,
    187 A.D.3d 652 (App. Div. 1st Dept. 2020) ..........................................................20

*Precis E-Business Sys., LLC v. L Larowe*,
    LLC, No. 14CV30820, 2015 Colo. Dist. LEXIS 922 (D. Colo. Apr. 2, 2015) ............20

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ...................................................................................5

*Se. Cmty. College v. Davis*,
    442 U.S. 397 (1979).................................................................................................15

*Shaywitz v. American Bd. of Psychiatry & Neurology*,
    848 F. Supp. 2d 460 (S.D.N.Y. 2012)..........................................................12, 13, 14

*Slawsby v. Champion Petfoods USA, Inc.*,
    No. 18-10701-GAO, 2023 U.S. Dist. LEXIS 51309 (D. Mass. Mar. 27, 2023).............20

*Smith v. Pride Mobility Prod. Corp.*,
    No. 16-CV-04411-LHK, 2017 U.S. Dist. LEXIS 20195 (N.D. Cal. Feb. 12, 2017), *aff'd in relevant part*, 700 F. App'x 583 (9th Cir. 2017) .........................................18

*Spitzer v. Good Guys, Inc.*,
    80 Cal. App. 4th 1376 (2000) .................................................................................13

*State v. Hosijo*,
    102 Haw. 307 (2003) ..............................................................................................10

iv

*Suazo v. Bluemercury, Inc.*,
    No. 3:22-cv-06307-JD, 2023 U.S. Dist. LEXIS 65927 (N.D. Cal. Apr. 14, 2023) .................5, 6, 8

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ...............................................................................................3

*Turner v. Ass'n of Am. Med. Colls.*,
    167 Cal. App. 4th 1401 (2008) ........................................................................................19

*United States v. Days Inns of Am.*,
    No. 96-CV-260-WBS, 1998 U.S. Dist. LEXIS 21945 (E.D. Cal. Jan. 12, 1998) .........10

*Weyer v. Twentieth Century Fox Films Corp.*,
    198 F.3d 1104 (9th Cir. 1990) ....................................................................................15, 16

*Zamora v. Wendy's Int'l, LLC*,
    No. 19-CV-06133-LHK, 2020 U.S. Dist. LEXIS 111636 (N.D. Cal. June 25, 2020) ..........8, 9, 10

**RULES**

Federal Rule of Civil Procedure 4(k) ...........................................................................................5

Federal Rule of Civil Procedure 12(b)(2) ....................................................................................5

Federal Rule of Civil Procedure 12(b)(6) ....................................................................................8

**STATUTES**

42 U.S.C. 12182(a) (1990)............................................................................................................8

42 U.S.C. § 12102 (1990) ......................................................................................................10, 11

Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 (1990) ...............................passim

Cal. Civ. Code § 51(b) ...........................................................................................................10, 11

Cal. Civ. Code § 56(e)(1) ............................................................................................................11

Cal. Code Civ. Proc. § 410.10 ......................................................................................................5

Cal. Gov. Code § 12926(n) ..........................................................................................................11

Colo. Rev. Stat. § 24-34-301 ..................................................................................................10, 11

Haw. Rev. Stat. § 489-2 ...............................................................................................................11

Mass. Gen. Laws ch. 272 § 92A .................................................................................................10

N.Y. Exec. Law § 296(2)(a).........................................................................................................10

NY Exec. Law § 292(21) .............................................................................................................11

Tex. Hum. Res. Code § 121.002(4) ....................................................................................12

**OTHER AUTHORITIES**

28 C.F.R. pt. 36, App'x C (July 26, 1991)........................................................................15

28 C.F.R. § 36.302(a) (Aug. 11, 2016) .............................................................................15

28 C.F.R. § 36.307 (July 26, 1991)...................................................................................14

29 C.F.R § 1630.2(j) (Mar. 25, 2011) ..........................................................................10, 11

§ III-4.1400 Surcharges, https://www.ada.gov/resources/title-iii-manual/..........................17

DEFENDANT DUNKIN' DONUTS LLC'S MOTION TO DISMISS
CASE NO. 3:23-CV-06621-SI

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2
3

Dunkin' Donuts LLC ("Dunkin'") respectfully requests that the Court dismiss this matter in its entirety with prejudice.

4

## I.    <u>INTRODUCTION</u>

5
6
7
8
9

Plaintiffs insist that the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 (1990) ("ADA") requires Dunkin' to charge the same price for cow's milk ("Dairy Milk") and items like soy, oat, coconut, or almond milk ("Non-Dairy Alternatives") because their alleged disability requires it. This specious theory has no support in the law, is factually flawed in a number of critical ways, and should be rejected out of hand.

10
11
12
13
14
15
16
17

As an initial matter, the Court lacks personal jurisdiction over Dunkin' because it is not subject to general jurisdiction in California and because it has not engaged in any activities that would render it subject to specific jurisdiction in California. Indeed, Dunkin' has no role in this matter. It does not own, operate, or lease any Dunkin'-branded restaurants, the vast majority of which are franchised (all Dunkin'-branded restaurants in California are franchised). Even if Dunkin' is subject to personal jurisdiction for the claims brought by the Plaintiffs who reside in and/or allegedly visited restaurants in California, the Court lacks specific personal jurisdiction over Dunkin' with respect to the claims of Plaintiffs who do not live in California and did not allegedly suffer harm in California.

18
19
20
21
22
23
24
25
26
27
28

Plaintiffs' ADA claim and corresponding state-law claims also fail on the merits for multiple reasons. *First*, Dunkin' is not a place of public accommodation with respect to any of the Dunkin'-branded restaurants that Plaintiffs allegedly visited. Plaintiffs have not substantively alleged that Dunkin' owned, operated, or leased any of the restaurants they allegedly visited, nor could they, given that all Dunkin'-branded restaurants in Plaintiffs' home states are owned and operated by franchisees. *Second*, Plaintiffs have failed to plead that they are actually disabled within the meaning of the ADA or relevant state laws. While they allege that they are all lactose intolerant, they have not pled whether or how this condition substantially limits one or more major life activities. Instead, they rely only on generic statements about lactose intolerance that are not connected to their individual conditions or experiences. *Third*, Plaintiffs do not allege that they ever put anyone at the restaurants they allegedly visited on notice of their lactose intolerance, their claimed need for a modification to any policies, or their requested modification. And

*fourth*, their ADA claim fails because the ADA does not require public accommodations to offer or sell accessible goods, if offered, at the same price as non-accessible goods. The entire premise underlying Plaintiffs' primary theory in this case is directly contrary to the ADA, its implementing regulations, and a robust collection of caselaw addressing this issue.

Plaintiffs' other claims are also fatally flawed. Plaintiffs' Unruh Act claim fails because Plaintiffs have not alleged any acts of intentional discrimination directed at them and because the law is clear that an Unruh claim for intentional discrimination cannot be premised on a disparate impact theory. Plaintiffs' claim for unjust enrichment similarly fails because Plaintiffs have not alleged the specific legal source of this claim, and because Plaintiffs admit that they did, in fact, receive the Non-Dairy Alternatives for which they paid. For these reasons, this entire case should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(6) for failure to state a claim.

## II.   FACTUAL BACKGROUND

### A.   Relevant Allegations in the Complaint.

Plaintiffs Hughes, Hernandez, Garland, and Gojum reside in California. (Dkt. 1 ¶ 23.) Plaintiff Pelayo resides in Hawaii; Fitch and Mara reside in New York; Premo resides in Colorado; Medeiros resides in Massachusetts; and Smith resides in Texas. (*Id.* ¶¶ 29-34.) They claim to be lactose intolerant, and that they must "consume drinks that do not contain lactose or lactose-based products."[2] (*Id.* ¶ 36.)

Plaintiffs allege that they purchased items, including coffee and tea-based drinks, at Dunkin' locations in California, Hawaii, New York, Colorado, Massachusetts, and Texas. (*Id.* ¶¶ 25-34.) When Plaintiffs ordered drinks with milk, they requested the drinks be made with Non-Dairy Alternatives. (*Id.* ¶ 3.) Plaintiffs acknowledge that Dunkin' charges **all** customers who order Non-Dairy Alternatives (not

---

[2] Plaintiff Premo also alleges she has a "diagnosed milk allergy," (Dkt. 1 ¶ 32), but Plaintiffs do not treat this as materially different from lactose intolerance for purposes of their claims, (*see, e.g.*, *id.* ¶¶ 47 (conflating lactose intolerance and milk allergies when stating "[b]ecause of their milk allergies"), 60 (defining the purported classes as including persons who have lactose intolerance "or any intolerance to milk or milk-containing products"), 83 (only alleging that lactose intolerance is a disability under the ADA), 86 (alleging that Dunkin' violates the ADA only because it allegedly fails to make modifications for lactose intolerant people)). Even if this difference were significant, all arguments herein apply equally to Premo's alleged milk allergy.

just lactose intolerant customers) between $0.50 and $2.15 extra (the "Upcharge") for those products. (*Id.* ¶¶ 4, 48, 111.)

**B.      Additional Relevant Facts Regarding Dunkin'.**[3]

All of the Dunkin'-branded restaurants in Plaintiffs' home states are owned and operated by franchisees, and the franchisor is not Dunkin' Donuts LLC. (Ex. 1 at 1 (identifying a different entity as the franchisor for Dunkin'-branded restaurants), 94-97 (Table 3, breaking down Dunkin'-branded restaurants by state and owner, and Table 4, describing status of all company-owned Dunkin' restaurants, all 31 of which are in Ohio), 102-105 (Table 3, breaking down combo-branded restaurants by location and owner, and Table 4, describing status of all company-owned combo-branded restaurants, of which there are none), Exhibit I (listing current Dunkin' restaurant franchises by state), Exhibit J (listing former Dunkin' restaurant franchises by state).) Under the franchise agreements between the franchisor and franchisees, franchisees retain the authority to set prices for the products they sell. (Ex. 1 at Exhibit C-1 (Dunkin' Franchise Agreement), § 7.3 ("Except as we may be permitted by law to require a particular price, you are free to determine the prices you charge for the products you sell."), Exhibit C-2 (Combo Franchise Agreement), § 7.3 (same).) The FDD makes the franchisees aware of their obligation to comply with the ADA (Ex. 1 at 5, 51), and the franchise agreements also place the burden on the franchisees to ensure compliance with all applicable laws in the operation of their restaurants.  (Ex. 1 at Exhibit C-1, § 7.1 ("You agree to comply with all civil and criminal laws, ordinances, rules, regulations and orders of public authorities pertaining to the occupancy, operation and maintenance of Restaurants and Premises."), Exhibit C-2, § 7.1 (same).)

---

[3] When adjudicating a motion to dismiss brought pursuant to Rule 12(b)(2), a district court may consider evidence outside of the pleadings, including affidavits, declarations, and other materials submitted by the parties. *See Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (internal citation omitted). "In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). Ex. 1 is Dunkin' Donuts Franchising LLC's Franchise Disclosure Document ("FDD"), dated March 24, 2023, and attached to the Declaration of Brett Coburn. It is subject to Dunkin's request for judicial notice, filed concurrently with its Motion to Dismiss. Dunkin' will supplement its request for judicial notice promptly after the FDD for 2024 is completed and made publicly available.

1    ### C.    Notable Omissions from the Complaint.

2        The Complaint is perhaps most notable for what it does *not* say. As relevant to the arguments

3    presented below, the Complaint does not contain any substantive, non-conclusory allegations regarding

4    any of the following:

5        •    Which Dunkin'-branded restaurants Plaintiffs allegedly visited;

6        •    That Plaintiffs visited any Dunkin'-branded stores outside of their respective states of

7            residence, California, Hawaii, New York, Colorado, Massachusetts, and Texas;

8        •    The fact that Dunkin'-branded restaurants are primarily owned and operated by

9            franchisees, including all of the ones in Plaintiffs' respective states of residence;

10       •    Whether Dunkin' owns or leases any of the restaurants that Plaintiffs allegedly visited;

11       •    Whether Dunkin' exercises control over the relevant policies and practices (i.e., those

12           relating to pricing of Non-Dairy Alternatives, or to ADA compliance generally) at any of

13           the restaurants that Plaintiffs allegedly visited;

14       •    Non-conclusory allegations describing how being lactose intolerant actually substantially

15           impairs their ability to engage in the major life activities of drinking and digestion;[4]

16       •    Whether Plaintiffs put any employees of the restaurants they allegedly visited on notice

17           of the fact that they were lactose intolerant; that such condition required the restaurant to

18           make any modification to its policies; or that the preferred modification was the use of

19           Non-Dairy Alternatives for free;

20       •    Whether any of the restaurants that Plaintiffs allegedly visited charged Plaintiffs more for

21           Non-Dairy Alternatives than they charged to other customers who were not lactose

22           intolerant;

23       •    Indicating that any of the restaurants that Plaintiffs allegedly visited engaged in

24           intentional discrimination directed at Plaintiffs; or

25

26   _____

27   [4] Plaintiffs allege that their alleged lactose intolerance "limits the major life activities of drinking (and the

28   nutritional benefits from ingesting drinks), and digestion," (Dkt. 1 ¶ 38), but they do not allege how their
     lactose intolerance actually substantially impairs their ability to engage in any major life activities.

- Indicating that Plaintiffs did not receive the Non-Dairy Alternatives for which they paid the Upcharge.

## III.   RULE 12(B)(2) ARGUMENT

### A.   This Court Lacks Personal Jurisdiction Over Dunkin'.

"Federal Rule of Civil Procedure 4(k) governs personal jurisdiction in federal court." *Suazo v. Bluemercury, Inc.*, No. 3:22-cv-06307-JD, 2023 U.S. Dist. LEXIS 65927, at *6 (N.D. Cal. Apr. 14, 2023) (citation omitted). Where, as here, no federal statute governs personal jurisdiction, the Court applies its state's laws. *See id.* California's long-arm statute, Cal. Code Civ. Proc. § 410.10, is coextensive with the limits of the Fourteenth Amendment's Due Process Clause; accordingly, the Court must ensure that the clause permits the exercise of jurisdiction over Dunkin'. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004).

"Personal jurisdiction comes in two varieties, general and specific." *Suazo*, 2023 U.S. Dist. LEXIS 65927, at *6. General jurisdiction is available only when a defendant is "essentially at home" in the state. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1024 (2021). A corporation is "home" in states where it is incorporated or where its principal place of business is located. *Id.* Plaintiffs admit that Dunkin' is incorporated in Delaware and that its principal place of business is in Massachusetts. (Dkt. 1 ¶ 35.) Accordingly, Dunkin' is not at "home" in California, and the Court cannot exercise general jurisdiction over it. *See Ford Motor Co.*, 141 S. Ct. at 1024.[5]

Specific jurisdiction allows a court to exercise jurisdiction based on the defendant's contacts with the state. *See id.* The Fourteenth Amendment's Due Process Clause requires that "a State's assertion of personal jurisdiction over a nonresident defendant be predicated on 'minimum contacts' between the defendant and the State." *Suazo*, 2023 U.S. Dist. LEXIS 65927, at *6 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)).

> As the Supreme Court recently summarized, specific personal jurisdiction requires that: (1) a defendant must purposefully avail itself of the privilege of conducting activities within the forum state; and (2) a plaintiff's claims must arise out of or relate to the defendant's contacts with the forum state.

---

[5] Plaintiffs do not appear to dispute this. (*See* Dkt. 1 ¶ 22 (alleging personal jurisdiction only on the basis of Dunkin's "contacts" with California).)

5

*Id.* at \*6-7 (citing *Ford Motor Co.*, 141 S. Ct. at 1019).

      **1.**    **Dunkin' Has Not Purposefully Availed Itself of the Privilege of Conducting Activities Within California.**

      Plaintiffs allege that the Court has jurisdiction over Dunkin' "due to its continuous and systemic contacts with the State of California." (Dkt. 1 ¶ 22.) The only factual allegation concerning "continuous and systemic contacts" is that "Defendant operates retail stores . . . within the State of California." (*Id.* ¶¶ 22, 35.) But this is just not true. All of the Dunkin'-branded restaurants in California are owned and operated by franchisees, not by Dunkin'. (Ex. 1 at 94-97 (Table 3, breaking down Dunkin'-branded restaurants by location and owner, and Table 4, describing status of all company-owned Dunkin' restaurants, all 31 of which are in Ohio), 102-105 (Table 3, breaking down combo-branded restaurants by location and owner, and Table 4, describing status of all company-owned combo-branded restaurants, of which there are none), Exhibit I (listing current Dunkin' restaurant franchises by state), Exhibit J (listing former Dunkin' restaurant franchises by state).) And Dunkin' Donuts LLC is not even the franchisor for these restaurants. (Ex. 1 at 1 (identifying a different entity as the franchisor for Dunkin'-branded restaurants).)

      Moreover, as the FDD makes clear, franchisees retain control over the policies or practices at issue here. The core of Plaintiffs' Complaint is their objection to the Upcharge for Non-Dairy Alternatives. (Dkt. 1 ¶¶ 17-20.) But under the franchise agreements for Dunkin'-branded restaurants and combo-branded restaurants the franchisees have the authority to set prices for the products they sell. (Ex. 1 at Exhibit C-1 (Dunkin' Franchise Agreement), § 7.3 ("Except as we may be permitted by law to require a particular price, you are free to determine the prices you charge for the products you sell."), Exhibit C-2 (Combo Franchise Agreement), § 7.3 (same).) In addition, the FDD make franchisees aware of their obligation to comply with the ADA (Ex. 1 at 5, 51), and the franchise agreements also place the burden on the franchisees to ensure compliance with all applicable laws in the operation of their restaurants. (Ex. 1 at Exhibit C-1, § 7.1 ("You agree to comply with all civil and criminal laws, ordinances, rules, regulations and orders of public authorities pertaining to the occupancy, operation and maintenance of Restaurants and Premises."), Exhibit C-2, § 7.1 (same).)

As there are no other allegations in the Complaint to support specific jurisdiction, the Court should dismiss this action.

### 2. Plaintiffs' Claims Do Not Arise Out of or Relate to Dunkin's Conduct in California.

Even if the Court were to determine that Dunkin' "purposefully avail[ed] itself of the privilege of conducting activities" within the forum state, Plaintiffs still cannot show that their claims "arise out of or relate to the defendant's contacts with the forum" state. *Ford Motor Co.*, 141 S. Ct. at 1026. To satisfy this prong of the specific jurisdiction inquiry, there must be a "but for" causal relationship or "strong, direct connection between the defendant's forum-related activities and the plaintiff's claims." *Briskin v. Shopify, Inc.*, 87 F.4th 404, 413-14 (9th Cir. 2023). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's *unconnected* activities in the State." *AirWair Int'l Ltd. v. Fewstone Pty Ltd.*, No. 19-cv-06332-SI, 2020 U.S. Dist. LEXIS 28337, at *7 (N.D. Cal. Feb. 19, 2020) (Illston, J.) (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 264 (2017) (emphasis in original)). In other words, "[g]eneral business contacts that defendants might have had in California will not in themselves give rise to specific personal jurisdiction." *CZ Servs. v. Anthem Ins. Cos.*, No. 19-cv-04453-JD, 2022 U.S. Dist. LEXIS 163160, at *4 (N.D. Cal. Sept. 9, 2022); *accord Briskin*, 87 F.4th at 415 ("To the extent Briskin suggests that Shopify's broader business actions in California set the wheels in motion for Shopify to eventually inflict privacy-related harm on him in California, such a butterfly effect theory of specific jurisdiction would be far too expansive to satisfy due process.").

Additionally, "in a Rule 23 class action, each unnamed member of the class must separately establish specific personal jurisdiction over a defendant." *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020); *see also Bristol-Myers Squibb Co.*, 582 U.S. at 264-65 (holding, as a matter of Fourteenth Amendment due process, California courts lack specific jurisdiction over claims brought by nonresident plaintiffs who did not suffer harm in California even if the court had jurisdiction over similar claims brought by resident plaintiffs in the same mass tort suit).

Here, there is no causal relationship or "strong, direct connection" between any of the named Plaintiffs' allegations of unfair surcharges based on their lactose intolerance and the franchise agreements

in California, as the latter do not provide Dunkin' (or even the franchisor entity) with control over the prices its franchisees charge for Non-Dairy Alternatives and they place all obligations for ADA compliance squarely on the franchisees. *See supra* at pp. 3, 6; *see also Briskin*, 87 F.4th at 413-15; *CZ Servs.*, 2022 U.S. Dist. LEXIS 163160, at *4-5.

Moreover, the only Plaintiffs to have alleged contact with Dunkin'-branded products in California are the California residents: Garland, Hughes, Hernandez, and Cojum. (Dkt. 1 ¶¶ 25-28.) The out-of-state plaintiffs—Pelayo from Hawaii,[6] Fitch and Mara from New York, Premo from Colorado, Medeiros from Massachusetts, and Smith of Texas, (*id.* ¶¶ 29-34)—only allege encountering Dunkin'-branded products in their home states. Because there is nothing in the Complaint to connect their claims to Dunkin's conduct in California, their claims should easily be dismissed. *See Suazo*, 2023 U.S. Dist. LEXIS 65927, at *10. Accordingly, the Court should dismiss all Plaintiffs' claims for lack of specific jurisdiction, or at the very least, the claims of the non-Californian Plaintiffs.

## IV.   RULE 12(B)(6) ARGUMENTS

### A.   Dunkin' Is Not a Place of Public Accommodation.

"Title III's prohibition of discrimination applies to 'any person who owns, leases (or leases to), or operates a place of public accommodation." *Zamora v. Wendy's Int'l, LLC*, No. 19-CV-06133-LHK, 2020 U.S. Dist. LEXIS 111636, at *11 (N.D. Cal. June 25, 2020) (quoting 42 U.S.C. 12182(a) (1990)). As such, Plaintiffs must allege facts to show that Dunkin' (1) owns, (2) leases, or (3) operates the locations where Plaintiffs claim they have experienced alleged discrimination. Plaintiffs, however, fail to adequately plead that Dunkin' owned, leased, or operated any of the restaurants they alleged visited. Indeed, the Complaint alleges only that Plaintiffs "visited Dunkin' coffee shops" without specifying the specific locations visited; makes no reference whatsoever to the franchised nature of Dunkin'-branded restaurants; and makes no effort to distinguish between Dunkin', the franchisor entity, and the unnamed franchisees responsible for running the restaurants in question.

---

[6] While ¶ 29 of the Complaint alleges that Pelayo "has consumed Dunkin' beverages at various Dunkin' retail outlets in California," this appears to be a typo, given that all other references in the Complaint to Pelayo exclusively reference his presence in Hawaii. (*See* Dkt. 1 ¶ 2 (alleging Plaintiffs ordered drinks at Dunkin'-branded stores "in their respective states of residence").)

To start, Plaintiffs do not allege Dunkin' *owns* or *leases* the specific restaurants where they allegedly experienced discrimination. (*See generally* Dkt. 1.) As a result, insofar as Plaintiffs seek to hold Dunkin' liable as an owner or lessee of the relevant Dunkin'-branded restaurants, the Complaint does not contain *any* allegations to do so.

Plaintiffs also do not adequately plead that Dunkin' *operates* the relevant restaurants. In the context of Title III, "[t]he Ninth Circuit has interpreted the term 'to operate' as 'to put or keep in operation,' 'to control or direct the functioning of,' or 'to conduct the affairs of; manage.'" *Lemmons v. Ace Hardware Corp.*, No. 12-cv-03936-JST, 2014 U.S. Dist. LEXIS 91347, at *19 (N.D. Cal. July 3, 2014) (quoting *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 849 (9th Cir. 2004)). Specifically "[t]o be considered an 'operator' under this definition, a person or entity must have an active and significant degree of control over the access[] related aspects of the facility in question." *Id.* (citing *Lentini*, 370 F.3d at 849). Thus, in the franchise context, to sufficiently allege that Dunkin', which is not the franchisor, "operates" the relevant restaurants, the complaint must plead that Dunkin' "specifically control[led] the modification of the franchises to improve their accessibility to the disabled." *Zamora*, 2020 US Dist. LEXIS 111636, at *14 (citing *Neff v. Am. Dairy Queen Corp.*, 58 F.3d 1063, 1066 (5th Cir. 1995)).

Here, Plaintiffs allege only that "Defendant operates retail stores in the San Francisco Bay area, Walnut Creek, Half Moon Bay, South San Francisco and Fremont," and that "Dunkin' operates over 9,500 coffee stores in the United States and over 125 in the state of California." (Dkt. 1 ¶¶ 22, 35.) Such conclusory statements are, however, "not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Nor are there any "well-pleaded, *nonconclusory* factual allegations" that support the claim. *Id.* at 680 (emphasis added). Plaintiffs fail to allege that Dunkin' operates the specific restaurants they visited, provides ADA-related policies to its franchisees (or in what manner franchisees are required to follow any such policies), or dictates prices for Non-Dairy Alternatives. Nor could they, given that the franchise agreements give the franchisees, not Dunkin' (or even the franchisor entity), the right to set the prices they charge for items sold, and place the obligation to comply with the ADA on the franchisees. *See supra* at pp. 3, 6. Plaintiffs thus fail to allege that Dunkin' "specifically control[led] the modification of the franchises to improve their accessibility to the disabled." *Zamora*, 2020 US Dist. LEXIS 111636, at *14; *see also O'Byrne v. Reed*, No. 09-CV-08406-DMG, 2010 U.S. Dist. LEXIS 153616, at *7 (C.D.

Cal. Aug. 6, 2010) ("Thus, while Defendants 'conduct the affairs of' or 'manage' the vacation rentals in a limited sense, they do not 'operate' the vacation rentals in the sense relevant to ADA liability, i.e., their operation of the vacation rentals does not impact the discrimination at issue."); *United States v. Days Inns of Am.*, No. 96-CV-260-WBS, 1998 U.S. Dist. LEXIS 21945, at *15 (E.D. Cal. Jan. 12, 1998) ("Therefore, even if Days Inn were [sic] found to 'control' individual hotels' day-to-day activities, *Neff* and other courts that have considered the issue appropriately deem the relevant inquiry to be the control over the discriminatory conditions.").

Because Plaintiffs have failed to adequately allege that Dunkin' owns, leases, or operates any of the restaurant locations that they claim violated the ADA, their ADA claim must be dismissed.[7]

## B.    Plaintiffs Fail to Sufficiently Plead that They Are Disabled.

To invoke protection under the ADA, plaintiffs must show that they suffer from a "disability" as defined in the ADA. Under the ADA, "disability" is defined in relevant part as "a physical . . . impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1) (1990). "[S]ubstantially limits" is defined as being restricted in performing a major life activity as compared to most people in the general population. 29 C.F.R § 1630.2(j) (Mar. 25, 2011). To determine if an impairment substantially limits a major life activity, the Court considers "(i) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2) (Mar. 25, 2011).

---

[7] The result is the same under the state laws of each Plaintiffs' home state. *See State v. Hosijo*, 102 Haw. 307, 318 (2003) (concluding liability attaches under Haw. Rev. Stat. Chapter 489 "to a person that is an owner, operator, lessee, agent, or employee of a public accommodation"); N.Y. Exec. Law § 296(2)(a) ("the owner, lessee, proprietor, manager, superintendent, agent or employee"); Mass. Gen. Laws ch. 272 § 92A ("owner, lessee, proprietor, manager, superintendent, agent or employee); Colo. Rev. Stat. § 24-34-301(16) (stating public accommodation has the same meaning as set forth in Title III of the ADA). Further, Plaintiffs fail to allege any facts showing that Dunkin' is a business establishment under the Unruh Act. Cal. Civ. Code § 51(b). And it is clear under Texas law that franchisors are generally not liable for the acts of their franchisees. *See Cardinal Health Sols., Inc. v. Valley Baptist Med. Ctr.*, 643 F. Supp. 2d 883, 888 (S.D. Tex. 2008); *see also Nears v. Holiday Hosp. Franchising, Inc.*, 295 S.W.3d 787, 796 (Tex. Civ. App. 2009) ("Quality control standards for operating a franchise should not be construed to create an agency relationship.").

Here, Plaintiffs contend, in a conclusory fashion, that lactose intolerance is a disability under the ADA, (Dkt. 1 ¶¶ 15, 83), and they each allege, again in a conclusory manner, that they are "substantially impaired in several major life activities," namely, drinking and digestion, (*id.* ¶¶ 25-34, 38). Even if a milk allergy or lactose intolerance could theoretically "substantially limit" these major life activities, the conclusory allegations here fall short of establishing any such limits. 42 U.S.C. §§ 12102(1), 12102(2)(A) (1990). Plaintiffs do not allege how being lactose intolerant specifically affects each of them individually if they consume dairy products—that is, they do not plead facts sufficient to allow the Court to determine if their specific experience with dairy products amounts to a disability. Instead, they rely only on general assertions of the types of symptoms and conditions that ingesting milk *can* cause. (*See* Dkt. 1 ¶¶ 40 ("When lactose moves through the large intestine without being properly digested, it *can cause* gas, bloating, belly pain and diarrhea." (emphasis added)), 41 ("Persons with lactose intolerance and milk allergies experience *various levels of reactions* to the ingestion of milk and milk-containing products, including a bloated stomach, intestinal gas, nausea and vomiting, stomach pain and cramping, and diarrhea." (emphasis added)); *see also id.* ¶¶ 45-46 (describing the types of symptoms that "*may*" occur due to a milk allergy (emphasis added)).) Such generalized allegations are insufficient to show that Plaintiffs, as impacted by their own experiences with lactose intolerance, are substantially limited in any major life activities, and thus are insufficient to plead that each Plaintiff is disabled.[8]

---

[8] The result is the same under the state laws of each Plaintiff's home state. *See* Haw. Rev. Stat. § 489-2 (defining disability to mean "the state of having a physical or mental impairment which substantially limits one or more major life activities"); *Labonte v. Riverside Park Enters.*, No. 3:22-cv-30046-KAR, 2022 U.S. Dist. LEXIS 213367, at *21 (D. Mass. Nov. 28, 2022) (looking to the ADA to define "disability"); Colo. Rev. Stat. § 24-34-301(7) (stating "disability" has the same meaning as set forth in the ADA). Plaintiffs have also failed to allege how they are disabled under the Unruh Act's definitions of "medical condition" or "disability." Cal. Civ. Code § 51(b). First, they do not allege they have a medical condition or that lactose intolerance is a medical condition. Second, their conclusory allegations that they are substantially impaired are insufficient to show they are disabled under Unruh. Cal. Civ. Code § 56(e)(1) (defining disability as meaning "any physical disability as defined in Sections 12926 and 12916.1 of the Government Code); Cal. Gov. Code § 12926(n) (incorporating by reference the ADA definition of disability to the extent it is broader). The same is true with respect to Plaintiffs' claim under the New York Civil Rights Law and Texas Human Resource Code. *See* NY Exec. Law § 292(21) (defining disability as "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques"); Tex. Hum. Res. Code § 121.002(4)

C.      **Plaintiffs Never Put Dunkin' on Notice of Their Condition, Need for a Modification, or Preferred Modification.**

Even if Dunkin' is a place of public accommodation and Plaintiffs have sufficiently pled that they are disabled, their claims still fail because they fail to allege, and cannot allege, that they put restaurant employees on notice of any condition or duty.[9] Specifically, Plaintiffs fail to allege that any restaurant employee knew or should have known that (1) any Plaintiff was lactose intolerant, (2) his or her condition required Dunkin' to make a modification, and (3) the preferred modification was the use of Non-Dairy Alternatives for free. *See Shaywitz v. American Bd. of Psychiatry & Neurology*, 848 F. Supp. 2d 460, 466-67 (S.D.N.Y. 2012) ("Although courts . . . do not always explicitly list notice of the alleged disability as an element of a Title III failure to accommodate claim, it is an assumed prerequisite . . . . Reason dictates that in order for a defendant to be liable for discrimination, 'on the basis of disability,' the defendant must have had adequate knowledge of the plaintiff's disability.") (citations omitted).

First, Plaintiffs fail to allege that they ever told the restaurants they allegedly visited that they were lactose intolerant, which is a latent, non-obvious condition. Instead, they simply allege, independently, that they are lactose intolerant, ordered a Non-Dairy Alternative, and were required to pay the Upcharge. (Dkt. 1 ¶¶ 2-3, 47, 65.) But as far as any restaurant employee could guess, Plaintiffs could have been ordering a Non-Dairy Alternative for any number of reasons that have nothing to do with lactose intolerance. Common experience readily generates a lengthy and wide-ranging list of such reasons: taste, consistency/texture, nutritional content, environmental impact, voluntary dietary restrictions, manufacturing practices, or agricultural policy stances. Thus, simply ordering a Non-Dairy Alternative is insufficient to put the restaurant on notice that an individual is lactose intolerant, and it is unreasonable to impute knowledge of such a condition onto the restaurant (much less Dunkin', which is not the franchisor entity) in this scenario. *See Brundage v. Hahn*, 57 Cal. App. 4th 228, 237 (2000) ("While knowledge of the disability can be inferred from the circumstances, knowledge will only be imputed to the employer

_____

defining "[p]erson with a disability" to mean a person who has a mental or physical disability). Regardless of the law applied, Plaintiffs' allegations are simply too generalized and conclusory to support a claim.
[9] Dunkin' does not have anything to do with owning, operating, or leasing the restaurants allegedly visited. *See supra* at pp. 3, 8-10.

1   when the fact of disability is the only reasonable interpretation of the known facts."). If Dunkin' had no
2   knowledge of any disability, then there cannot be a viable Title III claim. *See Shaywitz*, 848 F. Supp. 2d
3   at 467 (noting for a defendant to be liable under Title III, the defendant must have had adequate knowledge
4   of the plaintiff's disability).

5   Second, Plaintiffs fail to allege that they notified restaurant employees that they require a
6   modification. "Vague or conclusory statements revealing an unspecified incapacity are not sufficient to
7   put an employer on notice of its obligations under the [statute]." *Brundage*, 57 Cal. App. 4th at 237; *see*
8   *also Spitzer v. Good Guys, Inc.*, 80 Cal. App. 4th 1376, 1384 (2000) ("An employee whose disability is
9   not apparent is therefore obliged to tender a specific request for a necessary accommodation."). This is
10  underscored by Plaintiffs' own allegations that persons with lactose intolerance experience "various levels
11  of reactions" to the ingestion of milk and milk-containing products. (Dkt. 1 ¶¶ 40-41.) Again, common
12  experience readily generates examples of "degrees" of lactose intolerance, including individuals who can
13  have some, but not a lot of, dairy without any adverse effects; individuals who can have only some types
14  of dairy products, such as ice cream, but not cheese; and individuals who cannot have any dairy without
15  experiencing some mild discomfort, but who still choose to consume dairy products and bear the (mild)
16  consequences. Simply advising a restaurant that one is lactose intolerant does not provide notice that a
17  modification must be made. Absent allegations that Dunkin' knew that Plaintiffs' condition required a
18  modification, there can be no viable Title III claim.

19  Third, Plaintiffs fail to claim that they made and were denied a request for their preferred
20  modification, specifically, the inclusion of a Non-Dairy Alternative for free. Before bringing a claim under
21  Title III, a plaintiff must actually notify a public accommodation of his or her need for a reasonable
22  modification and be denied such request. *See Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082
23  (9th Cir. 2004) (an individual alleging discrimination under Title III must show that the public
24  accommodation failed to make a requested reasonable modification); *Johnson v. Gambrinus Co./Spoetzl*
25  *Brewery*, 116 F.3d 1052, 1059 (5th Cir. 1997) (Title III plaintiff "has the burden of proving that a
26  modification was requested and that the requested modification is reasonable"); *A.F. v. Starbucks Corp.*,
27  No. 3:17-cv-1582-SI, 2018 U.S. Dist. LEXIS 35413, at *14 (D. Or. Mar. 5, 2018) (granting motion to
28  dismiss in part because plaintiff failed to allege any facts to suggest that defendant's employees knew

13

1    about plaintiff's disability); *Shaywitz*, 848 F. Supp. 2d at 466-67; *Betancourt v. Federated Dep't Stores*,

2    732 F. Supp. 2d 693, 711 (W.D. Tex. 2010) (finding plaintiff failed to state claim based on failure to

3    provide auxiliary aids and services or failure to make reasonable modifications to policies where, among

4    other things, she did not allege that she requested any such modification). Here, although Plaintiffs allege

5    they requested Non-Dairy Alternatives, (Dkt. 1 ¶ 3), they do not allege they ever asked any employee to

6    provide Non-Dairy Alternatives *for free as a modification because of their condition* (*see, e.g.*, *id.* ¶¶ 3,

7    47, 65). This omission is material because as noted above, a customer may ask for Non-Dairy Alternatives

8    for any number of reasons that have nothing to do with lactose intolerance. Without a specific request,

9    there can be no denial. And without a denial, there can be no viable Title III claim. *See Fortyune*, 364 F.3d

10    at 1082.[10]

11            **D.**     **Plaintiffs' ADA Claim Fails as a Matter of Law.**

12          Even if the Court were to overlook the fatal threshold pleading issues with Plaintiffs' ADA claim,

13    their claim still fails because the ADA does not require Dunkin'-branded restaurants to substitute Non-

14    Dairy Alternatives for Dairy Milk free of charge as a "reasonable modification," and the prices charged

15    by restaurants for Non-Dairy Alternatives are not a prohibited surcharge.

16            **1.**     **The ADA Does Not Require Public Accommodations to Offer Accessible**

17                    **Goods or Sell Them at the Same Price as Non-Accessible Goods.**

18          The ADA "does not require a public accommodation to alter its inventory to include accessible or

19    special goods that are designed for, or facilitate use by, individuals with disabilities." 28 C.F.R.

20    § 36.307(a) (July 26, 1991). Examples of "accessible or special goods" include "special foods to meet

21    particular dietary needs." 28 C.F.R. § 36.307(c) (July 26, 1991).

22          In its official commentary to 28 C.F.R. § 36.302 (the reasonable modification provision cited by

23    Plaintiffs), the U.S. Department of Justice ("DOJ") stated that "§ 36.302 *would not* require the inventory

24    of goods provided by a public accommodation to be altered to include goods with accessibility features."

25    28 C.F.R. pt. 36, App'x C (July 26, 1991) (emphasis added). The DOJ further explained that "[t]he rule

26

27

28

---

[10] These individualized inquiries – not to mention the individualized threshold determination of which lactose intolerant individuals purchased Non-Dairy Alternatives at Dunkin' franchisee restaurants – make it clear that a class can never be certified in this case.

enunciated in § 36.307 is consistent with the 'fundamental alteration' defense to the reasonable modifications requirement of § 36.302."[11] *Id.* By tying 28 C.F.R. § 36.307 to the "fundamental alteration" defense, DOJ established that requiring public accommodations to provide special goods is *always* a fundamental alteration of the goods provided. *See Weyer v. Twentieth Century Fox Films Corp.*, 198 F.3d 1104, 1115 (9th Cir. 1990) ("The ordinary meaning of [Title III] is that whatever goods or services the place provides, it cannot discriminate on the basis of disability in providing enjoyment of those goods and services, just nondiscriminatory enjoyment of those that are provided. . . . Thus, a bookstore cannot discriminate against disabled people in granting access, but need not assure that the books are available in Braille as well as print."); *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 612 (3d Cir. 1998) ("The fact that an insurance office is a public accommodation, however, does not mean that the insurance policies offered at that location are covered by Title III. . . . [A]n insurance office must be physically accessible to the disabled but need not provide insurance that treats the disabled equally with the non-disabled.").

Plaintiffs' allegation that Non-Dairy Alternatives are mere substitutes for Dairy Milk, (Dkt. 1 ¶¶ 3-4, 7) is a legal conclusion not entitled to any presumption of truth. Moreover, it misstates the law, as courts, including the Ninth Circuit, have held that Non-Dairy Alternatives and Dairy Milk are different products altogether. *See Painter v. Blue Diamond Growers*, 757 F. App'x 517, 519 (9th Cir. 2018) (almond milk and dairy milk are "two distinct food products"); *Gitson v. Trader Joe's Co.*, No. 13-CV-01333-VC, 2015 U.S. Dist. LEXIS 170401, at *4 (N.D. Cal. Dec. 1, 2015) (soy milk and dairy milk were "two distinct products"). Common experience also dictates that these are different products, akin to white and red wine, soda and juice, or coffee and tea. Just because both Dairy Milk and Non-Dairy Alternatives can be added to coffee does not mean they are the same product.

---

[11] The DOJ's implementing regulations explain that while a place of public accommodation is required under the ADA to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, it is not required to do so if "making the modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations." 28 C.F.R. § 36.302(a) (Aug. 11, 2016). A "fundamental alteration" is one that would "compromise[] the essential nature of" the offered good. *Alexander v. Choate*, 469 U.S. 287, 300 (1985) (quoting *Se. Cmty. College v. Davis*, 442 U.S. 397, 410 (1979)).

Plaintiffs will likely argue that they are not seeking to compel Dunkin' to sell Non-Dairy Alternatives, but that if it chooses to do so, then it must sell it at the same price as Dairy Milk. The consequences of adopting Plaintiffs' radical theory are far-reaching and cannot be ignored. Under this theory, to accommodate gluten sensitivities, grocery stores and restaurants would need to lower their prices for gluten-free items to match the prices of items with gluten, regardless of any additional material, supply chain, or labor costs. Similarly, supermarkets would have to offer organic produce as a substitute for non-organic produce to shoppers who claim they are allergic to pesticides. Restaurants would have to substitute steak for customers who are allergic to shrimp. In short, businesses would face a Hobson's choice: accept claims of disability status at face value and sell alternative and dissimilar products at reduced prices or face litigation over a customer's alleged disability and whether the proposed substitution and corresponding price reduction constitutes a fundamental alteration of the product being sold.[12] Adopting Plaintiffs' position would open the floodgates to future litigation in which courts must determine the goods a retailer must carry under the ADA and the appropriate price for those goods. Nothing in the ADA supports this chaos, and the DOJ's commentary establishing 28 C.F.R. § 36.307 as a limit to § 36.302's reasonable modifications requirement affirmatively rejects Plaintiffs' desired interpretation of the ADA.

It is no surprise then, that courts around the country have refused to adopt such a theory. *See Weyer*, 198 F.3d at 1115; *A.L. v. Walt Disney Parks & Resorts US, Inc.*, 469 F. Supp. 3d 1280, 1305 (M.D. Fla. 2020), *aff'd sub nom. A.L. v. Walt Disney Parks & Resorts U.S., Inc.*, 50 F.4th 1097 (11th Cir. 2022) (rejecting demand that Disney give special priority access to rides on a standard ticket to accommodate inability to wait in line because "[i]t is hardly a feasible judicial function to decide whether shoe stores should sell single shoes to one-legged persons and if so at what price"); *Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 560 (7th Cir. 1999) (finding insurer not obligated to offer equivalent policy limits for certain medical conditions at the same price because "a policy with a $25,000 limit is a different product from one with a $1 million limit"); *McNeil v. Time Ins. Co.*, 205 F.3d 179, 186, 188-89 (5th Cir. 2000) (holding

---

[12] A third unpalatable option—stop selling accessible goods altogether—would harm customers and businesses equally, limiting options for all customers and diminishing businesses' customer base.

plain language of Title III "demonstrates that a business is not required to alter or modify the goods or services it offers to satisfy Title III"; therefore, because an insurance policy offered the same terms to those with and without AIDS, the policy's limit did not discriminate on the basis of disability). The Court should hold that the ADA does not require restaurants to charge the same price for different products, such as Dairy Milk and Non-Dairy Alternatives.

### 2. The Upcharge for Non-Dairy Alternatives Is Not a Prohibited Surcharge Under the ADA.

Plaintiffs allege Dunkin'-branded restaurants acted discriminatorily in violation of 28 C.F.R. § 36.301(c) by effectively imposing a "surcharge" on customers with lactose intolerance by imposing the Upcharge for Non-Dairy Alternatives. (*See* Dkt. 1 ¶¶ 79, 86.) According to the ADA Title III Technical Assistance Manual, "[a]lthough compliance may result in some additional cost, a public accommodation may not place a surcharge only on particular individuals with disabilities or groups of individuals with disabilities to cover these expenses."[13] § III-4.1400 Surcharges, https://www.ada.gov/resources/title-iii-manual/. "In order to evaluate whether a cost constitutes a surcharge that violates Title III of the ADA, a court considers whether it (1) is used to cover the costs of ADA-mandated measures and (2) is . . . a charge that nondisabled people would not incur[]." *Anderson v. Macy's, Inc.*, 943 F. Supp. 2d 531, 545 (W.D. Pa. 2013) (citing *Dare v. Cal.*, 191 F.3d 1167, 1171 (9th Cir. 1999)). Plaintiffs' claim fails on both prongs.

As for the first prong, the regulation only forbids surcharges for measures "required" by the ADA. *Dare*, 191 F.3d at 1171. Where a measure is "not required under the ADA, the inquiry ends." *Id.*; *see also, e.g.*, *Anderson*, 943 F. Supp. 2d at 546 (finding first prong was not met because defendant was not required to carry plus-sized clothing and citing additional cases in support). Here, the ADA and its implementing regulations do not require restaurants to carry Non-Dairy Alternatives. *See supra* at pp. 14-15. Therefore,

---

[13] An example of a prohibited surcharge would be a pharmacy owner deciding to provide home delivery rather than making a two-story walkup accessible to those in a wheelchair and then charging individuals who use a wheelchair for the cost of providing the home delivery. Or a medical provider passing along to their patients with disabilities the cost of obtaining an interpreter, even if the individual cancels his or her appointment. The medical provider may, however, charge for the missed appointment if all other patients are subject to such a charge. *See* § III-4.1400 Surcharges, https://www.ada.gov/resources/title-iii-manual/.

the Upcharge for Non-Dairy Alternatives logically cannot be a charge used to cover the costs of ADA-*mandated* measures. *See Dare*, 191 F.3d at 1171; *Anderson*, 943 F. Supp. 2d at 546.

As for the second prong, the Ninth Circuit has held that "[i]f nondisabled people pay the same fee for an equivalent service, the charge to disabled people would not constitute a surcharge on a 'required' measure." *Dare*, 191 F.3d at 1171. Here, Plaintiffs admit that the Upcharge for Non-Dairy Alternatives applies to *all* customers, not only those who are lactose intolerant. (*See* Dkt. 1 ¶¶ 48, 111.) There are no allegations (nor could there be) that lactose intolerant persons are charged a higher price than non-lactose intolerant persons for the same Non-Dairy Alternatives, or that only lactose intolerant persons consume Non-Dairy Alternatives. Any price difference between Dairy Milk and Non-Dairy Alternatives is thus not an unlawful "surcharge" under the ADA. *See Dare*, 191 F.3d at 1171.

**E.    Plaintiffs Fail to State a Claim for Intentional Discrimination Under the Unruh Act.**

Plaintiffs bring an Unruh Act claim on a theory of intentional discrimination.[14] (Dkt. 1 ¶¶ 94-101.) This claim fails as a matter of law. To plead an Unruh Act claim distinct from an ADA claim, Plaintiffs must allege intentional discrimination. Policies that apply to everyone but that have a disparate impact on a particular group cannot support an intentional discrimination claim under the Unruh Act. *See, e.g., Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014) (intentional discrimination under the Unruh Act "contemplates 'willful, affirmative misconduct on the part of those who violate the Act' and . . . a plaintiff must therefore allege, and show, more than the disparate impact of a facially neutral policy"); *Smith v. Pride Mobility Prod. Corp.*, No. 16-CV-04411-LHK, 2017 U.S. Dist. LEXIS 20195, at *13-14 (N.D. Cal. Feb. 12, 2017), *aff'd in relevant part*, 700 F. App'x 583 (9th Cir. 2017) (dismissing intentional discrimination claim under Unruh because there were "no allegations to suggest that Defendant offered anything 'separate' or different to disabled individuals than Defendant offered to non-disabled individuals, that Defendant charged disabled individuals a different price for Defendant's products and services than Defendant charged non-disabled individuals, or that Defendant otherwise 'intentionally discriminate[d] by targeting customers with' a disability"); *Earll*

---

[14] For the reasons discussed above, Plaintiffs' Unruh Act claim that is expressly predicated on their ADA claim fails. (Dkt. 1 ¶ 102.)

*v. eBay Inc.*, No. 5:11-CV-00262-EJD, 2012 U.S. Dist. LEXIS 111632, at *13-14 (N.D. Cal. Aug. 8, 2012) (dismissing Unruh Act claim as plaintiff's allegations merely described a facially neutral verification process with a disparate impact on the deaf community, but they did not demonstrate intentional discrimination); *Turner v. Ass'n of Am. Med. Colls.*, 167 Cal. App. 4th 1401, 1408 (2008); *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1238 (2007); *Koebke v. Bernardo Heights Country Club*, 36 Cal. 4th 824, 853-54 (2005).

Under these controlling precedents, Plaintiffs' claim fails for the simple reason that—under their allegations—all customers who order drinks with Non-Dairy Alternatives incur the Upcharge, not just persons with lactose intolerance. (*See* Dkt. 1 ¶¶ 48 ("A consumer will pay at least $0.50-$2.15 more for a coffee-based drink at Dunkin' for Non-Dairy Alternatives."), 111 (alleging Dunkin' has a "policy of charging *all* customers a surcharge for Non-Dairy Alternatives" (emphasis added)).)

Plaintiffs attempt to plead around this fatal flaw by alleging the Upcharge is "targeted to persons with lactose intolerance" because Dunkin' allegedly "will modify its regular beverage offerings to remove caffeine" or "to remove sugar . . . at no additional charge" for persons with "hypertension" or "diabetes." (Dkt. 1 ¶¶ 11-12, 94-95.) Plaintiffs argue, in effect, that Dunkin' is offering modifications for some disabilities but not others. But even if hypertension or diabetes qualified as "disabilities" under the Act, and even if the caffeine-free and sugar-free offerings were "modifications" for those disabilities (as opposed to menu offerings to satisfy common dietary preferences of the general public), there is nothing in the text of the Act or the relevant caselaw to suggest that a failure to accommodate different disabilities in the same manner (and at the same price) states a claim of intentional discrimination.

### F.    Plaintiffs Fail to State a Claim for Unjust Enrichment.

In Count VIII, Plaintiffs attempt to plead an "Unjust Enrichment/Restitution" claim but do not identify the source of the legal claim. (Dkt. 1 ¶¶ 152-158.) Failure to specify the law(s) on which an unjust enrichment claim is predicated is grounds for dismissal under Rule 12(b)(6). *See Gram v. Intelligender, LLC*, No. CV 10-4210 ABC (VBKx), 2010 U.S. Dist. LEXIS 153099, at *11-12 (C.D. Cal. Oct. 8, 2010) (dismissing unjust enrichment claim in putative class action for failure to identify applicable law). As the Court noted in *Gram*, "[n]ot only does such a pleading practice deny defendants notice of the claim brought against them, but it also makes it impossible for the Court to assess whether the claim has been

adequately pled." *Id.* at \*11 (internal citations omitted). Indeed, courts in the Ninth Circuit routinely "reject[] attempts to plead nationwide unjust enrichment claims without specification of the state law involved." *Id.* (citing cases).

Even if the Court were to apply the laws of each Plaintiff's home state to Count VIII, Plaintiffs would still fail to state a claim. Plaintiffs' sole basis of their unjust enrichment/restitution claim is the alleged illegality (presumably under the ADA and its state counterparts) of the Upcharge. (Dkt. 1 ¶ 154.) But this is irrelevant for purposes of stating an unjust enrichment claim. Rather, the focus must be on whether Plaintiffs received the benefit of the bargain they thought they had made—and if they did, no recovery is available. *See Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1591, 1593 (2008) (dismissing unjust enrichment claim requesting return of insurance premiums due to defendant's unlicensed status because "plaintiffs received the benefit of the bargain[,]" namely, "the bargained for insurance at the bargained for price"); *Precis E-Business Sys., LLC v. L Larowe*, LLC, No. 14CV30820, 2015 Colo. Dist. LEXIS 922, \*29 (D. Colo. Apr. 2, 2015) (dismissing counterclaim for unjust enrichment because, although cost of website services was more than original estimate, Larowe received substantial benefit of services provided by Precis); *HTK Haw. Inc. v. Sun*, No. 15-00114 JMS-RLP, 2016 U.S. Dist. LEXIS 8437, at \*34-35 (D. Haw. Jan. 25, 2016) (dismissing HTK's unjust enrichment claim because "nowhere . . . does HTK allege any facts showing that Defendants were unjustly enriched by accepting [$99,077.62] payment (i.e., that HTK did not receive the intended benefit of its payment)"); *Slawsby v. Champion Petfoods USA, Inc.*, No. 18-10701-GAO, 2023 U.S. Dist. LEXIS 51309, at \*9 (D. Mass. Mar. 27, 2023) (dismissing unjust enrichment claim because Slawsby "failed to allege facts that would demonstrate that she did not receive what she paid for or that Champion retained a benefit that would be inequitable for it to retain"); *Philip v. G.O.L.A., Inc.*, 187 A.D.3d 652, 652 (App. Div. 1st Dept. 2020) (affirming dismissal of unjust enrichment claim because "Kempner received the benefit of his bargain. In exchange for the nonrefundable deposit, he locked in the price until the due date"); *Credos Indus. Supplies & Rentals, LLC v. Targa Pipeline Mid-Continent WestTex LLC (In re KP Eng'g, LP)*, No. H-22-00664, 2022 U.S. Dist. LEXIS 145150, \*17 (S.D. Tex. Aug. 15, 2022) (dismissing an unjust enrichment claim because plaintiff's allegations failed to show that defendant was "unjustly enriched" where defendant paid for labor received).

Here, Plaintiffs expressly allege that the Upcharges Plaintiffs paid to Dunkin' were "in exchange for providing" them with "non-dairy alternatives such as lactose-free milk." (Dkt. 1 ¶ 153.) And Plaintiffs do not allege that they did not receive the Non-Dairy Alternatives that they paid for. (*See generally id.* ¶¶ 152-158.) Accordingly, there is nothing in the Complaint indicating that Plaintiffs were denied the benefit of their bargain, and indeed, the only supportable inference is that Plaintiffs *did* receive the Non-Dairy Alternatives they paid for. (*See id.* ¶¶ 1, 25-34 (alleging Plaintiffs "purchased [Dunkin' products] that contained non-dairy milk alternatives…and paid a surcharge for [them]" and that they "consumed Dunkin' beverages").)

## V.   **CONCLUSION**

For these reasons, the Court should grant Dunkin's motion and dismiss this action in its entirety with prejudice.

DATED: March 4, 2024

DAVID B. CARPENTER
BRETT E. COBURN
MEGHAN M. MCBERRY
**ALSTON & BIRD LLP**

/s/ *Meghan M. McBerry*
Meghan M. McBerry

Attorneys for Defendant
Dunkin' Donuts LLC