1   Trenton R. Kashima (SBN No. 291405)
2   **MILBERG COLEMAN BRYSON**
    **PHILLIPS GROSSMAN PLLC**
3   402 West Broadway St., Suite 1760
    San Diego, CA 92101
4   Tel: (619) 810-7047
    tkashima@milberg.com
5
6   Keith L. Gibson (*Pro Hac Vice*)
    **KEITH GIBSON LAW P.C.**
7   490 Pennsylvania Avenue Suite 1
    Glen Ellyn, IL 60137
8   Telephone: (630) 677-6745
    Email: keith@keithgibsonlaw.com
9
10  *Attorneys for Plaintiffs and the Class*
11
    [Additional Counsel Listed on Signature Page]
12
13              **UNITED STATES DISTRICT COURT**
14             **NORTHERN DISTRICT OF CALIFORNIA**
15
16  CHELSEA GARLAND, TONYA HUGHES,          Case No.: 3:23-cv-06621-SI
    NATASHA HERNANDEZ, GEANEEN
17  COJUM, ARSENIO PELAYO, ALBERT           **PLAINTIFFS' OPPOSITION TO**
    FITCH, PAULEEN MARA, LORA PREMO,        **MOTION TO DISMISS**
18  URCELINA MEDEIROS, RUBY SMITH,
    individually and on behalf of all those  **Date:** April 19, 2024
19  similarly situated,                      **Time:** 10:00 a.m.
            Plaintiffs,                      **Dept:** Courtroom 1 – 17th Floor
20                                           **Judge:** Hon. Susan Illston
    v.
21                                           Complaint filed: December 26, 2023
    DUNKIN DONUTS LLC, a Delaware
22  Corporation,
23          Defendant.
24
25
26
27
28

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL BACKGROUND ..................................................................................2

III.  ARGUMENT ..........................................................................................................4

    A.   Motion to Dismiss Standard.............................................................................4

    B.   This Court has Personal Jurisdiction over Defendant.....................................5

         1.   Defendant's personal jurisdiction arguments are arguments on the merits
              inappropriate on a motion to dismiss...................................................5

         2.   Defendant's *Bristol-Myers* Argument Also Fails. ..................................7

    C.   PLAINTIFFS STATE A CLAIM FOR VIOLATION OF THE ADA...................9

         1.   Plaintiffs have alleged that Defendant is a place of public accommodation
              under the ADA. .......................................................................................10

         2.   Plaintiffs have alleged that they are disabled under the ADA. ..............10

              a.   The 2008 Amendments were Designed to Expand the Scope of the
                   ADA. ..........................................................................................10

              b.   As alleged in the Complaint, lactose intolerance and milk allergies are
                   disabilities under the ADA as amended by ADAAA. ..................11

         3.   Defendant's argument that Plaintiffs were required to notify Defendant's
              employees fails........................................................................................13

         4.   Defendant's argument that the ADA does not require them to accommodate
              Plaintiffs is incorrect. ............................................................................14

         5.   Plaintiffs have alleged that Defendant has imposed a discriminatory
              surcharge prohibited under the ADA.......................................................17

    D.   Plaintiffs have stated a claim under the Unruh Act. ......................................19

    E.   Plaintiffs have stated a claim for unjust enrichment......................................20

IV.   CONCLUSION......................................................................................................21

**TABLE OF AUTHORITIES**

Page(s)

Cases

*A.L. by and through D.L. v. Walt Disney Parks and Resorts US, Inc.*,
    469 F. Supp. 3d 1280 (M.D. Fla. 2020) ................................................................ 17
*Action Embroidery Corp. v Atlantic Embroidery, Inc.*,
    368 F.3d 1174 ............................................................................................................... 9
*Anderson v. Macy's, Inc.*,
    943 F. Supp. 2d 531 (W.D. Pa. 2013) ................................................................. 18
*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................. 4
*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................. 4
*Bluemercury, Inc.*,
    No. 3:22-cv-06307-JD, 2023 WL 2959997 (N.D. Cal. April 14, 2023) ................ 8
*Bristol Myers Squibb Co. v. Superior Court of California*,
    582 U.S. 255 (2017) ............................................................................................. 7, 8
*Brundage v. Hahn*,
    57 Cal.App.4th 228 (2000) ................................................................................... 13
*Cahill v. Liberty Mut. Ins. Co.*,
    80 F.3d 336 (9th Cir. 1996) ................................................................................. 4, 5
*Cervantes v. City of San Diego*,
    5 F.3d 1273 (9th Cir. 1993) ................................................................................... 5
*Crawford v. Uber Tech., Inc.*,
    No. 17-cv-02664-RS, 2018 WL 1116725 (N.D. Cal. March 1, 2018) ......... 7, 14, 16
*Dare v. California*,
    191 F.3d 1167 (9th Cir. 1999) .............................................................................. 18
*Doe v. Mut. of Omaha Ins. Co.*,
    179 F.3d 557 (7th Cir. 1999) ................................................................................ 17
*Eminence Cap., LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ........................................................................... 4, 21
*Foman v. Davis*,
    371 U.S. 178 (1962) ................................................................................................. 4
*Gitson v. Trader Joe's Co.*,
    No. 13-CV-01333-VC, 2015 WL 9121232 (N.D. Cal. Dec. 1, 2015) .................. 17
*Harris v. Adams*,
    No. A157443, 2020 WL 5835149 (Cal. Ct. App., Oct. 1, 2020) ......................... 12
*Hebert v. CEC Entm't, Inc.*,
    6:16-CV-00385, 2016 WL 5003952 (W.D. La. July 6, 2016) ............................. 12
*Herrera v. Cathay Pacific Airways, Ltd.*,
    94 F.4th 1083 (9th Cir. 2024) .............................................................................. 14
*In re Boon Glob. Ltd.*,
    923 F.3d 643 (9th Cir. 2019) .................................................................................. 4

*In re ZF-TRW Airbag Control Units Products Liability Litigation,*
  601 F.Supp.3d 625 (C.D. Cal. 2022) ............................................................................. 9
*Johnson v. Winchester Campbell Properties, LLC,*
  18-cv-04153-VKD,2018 WL 6619940 (N.D. Cal. Dec. 18, 2018) ......................... 6, 20
*L.A. Cty. v. Humphries,*
  562 U.S. 29, 131 S.Ct. 447, 178 L.Ed.2d 460 (2010)..................................................... 14
*Lee v. City of Los Angeles,*
  250 F.3d 668 (9th Cir. 2001) .......................................................................................... 6
*Lentini v. Cal. Center for the Arts, Escondido,*
  370 F.3d 837 (9th Cir. 2004) ..................................................................................... 5, 19
*Mavrix Photo, Inc. v. Brand Technologies, Inc.,*
  647 F.3d 1218 (9th Cir. 2011) ....................................................................................... 4
*McNeil v. Time Ins. Co,*
  205 F.3d 179 (5th 2000)................................................................................................ 17
*Moser v. Benefytt, Inc.,*
  8 F.4th 872 (9th Cir. 2021) ............................................................................................ 7
*Munson v. Del Taco, Inc.,*
  (2009) 46 Cal.4th 661 [94 Cal.Rptr.3d 685, 208 P.3d 623]......................................... 20
*Oetiker v. Jurid Werke, G.m.b.H.,*
  556 F.2d 1 (D.C. Cir. 1977) ........................................................................................... 9
*Owino v. CoreCivic, Inc.,*
  60 F.4th 437 (9th Cir. 2022) .......................................................................................... 7
*Painter v. Blue Diamond Growers,*
  757 F. App'x 517 (9th Cir. 2018).............................................................................. 16, 17
*Phillips v. P.F. Chang's China Bistro, Inc.,*
  No. 5:15-cv-00344, 2015 WL 7429497 (N.D. Cal., Nov. 23, 2015) ..................... passim
*Robles v. Domino's Pizza LLC,*
  No. 16-cv-6599 JGB (Ex), 2021 WL 2945562 (C.D. Cal. June 23, 2021)...................... 6
*Rutherford Holdings, LLC v. Plaza Del Rey,*
  223 Cal.App.4th 221 (2014) ......................................................................................... 20
*Spitzer v. The Good Guys, Inc.,*
  80 Cal.App.4th 1376 (2000) ......................................................................................... 13
*Sutton v. United Airlines, Inc.,*
  527 U.S. 471 (1999)....................................................................................................... 11
*Toyota Motor Manufacturing, Kentucky, Inc. v. Williams,*
  534 U.S. 184 (2002)....................................................................................................... 11
*Weyer v. Twentieth Century Fox Film Corp.,*
  198 F.3d 1104 (9th Cir. 1999) ...................................................................................... 17

Statutes

42 U.S.C. § 12102................................................................................................................ 11
42 U.S.C. § 12182....................................................................................................... 5, 10, 15
42 U.S.C. § 12188................................................................................................................ 14
42 U.S.C. § 12182................................................................................................................ 13
42 U.S.C. § 12112................................................................................................................ 13
Cal. Civ. Code § 51.............................................................................................................. 19
Cal. Civ. Code § 52.............................................................................................................. 20

Regulations

28 C.F.R. § 36.301 .................................................................................................................... 15, 18
28 C.F.R. § 36.307 .................................................................................................................... 14, 15

# I.     <u>INTRODUCTION</u>

Defendant discriminates against Plaintiffs and putative class members by levying a surcharge for non-dairy alternatives that Plaintiffs have no choice but to pay because of their inability to ingest lactose, which is a disability under the ADA.  Defendant singles out Plaintiffs, and many others with the same disability, and asks them to pay a surcharge for non-dairy alternatives when it does not impose a surcharge on other modifications and when such surcharge is not justified by the cost differential of the non-dairy alternatives. This conduct is at the heart of the protections afforded by the ADA, as amended in 2008, and state discrimination laws.

As alleged in the Complaint, Plaintiffs suffer from lactose intolerance and milk allergies. Lactose intolerance is a chronic disorder with potentially severe health consequences, impacting the major life activities of eating and digestion. The cause of lactose intolerance or milk allergies, lactase deficiency, can be congenital, the result of progressive and physiological decline of lactase enzyme activity or induced by small intestine disease or injury such as gastroenteritis, celiac disease, inflammatory bowel disease, chemotherapy, and antibiotics treatment[1]. Persons with this disability must avoid lactose, a sugar found exclusively in dairy milk. Allergy to milk is a life-threatening condition being an atypical immune system response to milk that may cause major physical health issues including stomach problems and anaphylaxis. In fact, according to the Mayo Clinic, milk is the third most common food to cause anaphylaxis, after peanuts and tree nuts. Over time, lactose-restriction caused both by lactose intolerance and allergy to milk may induce insufficiency, resulting in decreased bone mineral density, anemia, and neuropathy.

The ADA was amended in 2008 with the intent to expand the definition of what constitutes a disability.  The Justice Department issued new guidelines in 2016 to include the ADA amendments.  Since then, Courts have been favorable to an expansion of ADA rights, and Congressional intent on this issue supports this.  Indeed, several courts have considered lactose intolerance or milk allergies and other similar food or drink allergies to be disabilities under the ADA.

---

[1] Bobbi B Laing, Anecita Gigi Lim & Lynnette R Ferguson, *A personalised dietary approach—a way forward to manage nutrient deficiency, effects of the western diet, and food intolerances in inflammatory bowel disease*, 11 Nutrients1532 (2019).

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS                    CASE NO. 3:23-CV-006621-SI

As such, Plaintiffs' claims are based simply on the fact that Defendant's groundless surcharge for non-dairy milk alternatives is discriminatory against persons with lactose intolerance and milk allergies.  If Defendant chooses to offer non-dairy substitutes for milk, it denies Plaintiffs a reasonable accommodation when it charges extra for such substitutes, especially where the cost for at least some of the substitutes can be substantially similar to the cost of milk, and especially where it makes other ingredient substitutions for free.  Defendant's conduct of imposing a surcharge on lactose-free alternatives evidences an obvious attempt to profit from a vulnerable class of consumers precisely because of their disability.  This practice is a clear violation of the ADA and state discrimination laws and has unjustly enriched Defendant.

Defendant's doomsday scenario in which a ruling for Plaintiffs will require millions of businesses to alter their food and beverage offerings and the prices charged is unfounded. Plaintiffs are not asking the Court to require Defendant to offer additional products that it does not already offer.  Plaintiffs are not asking the Court to tell Defendant how to make its coffee drinks and beverages. Plaintiffs simply request that Defendant does not impose a baseless surcharge on their disability in violation of the ADA and state laws.  Plaintiffs' Complaint properly alleges claims against Defendant for violation of the ADA, state discrimination laws, and for unjust enrichment, and Defendant's motion to dismiss should therefore be denied.

## II.     FACTUAL BACKGROUND

As alleged in the Complaint, Plaintiffs suffer from lactose intolerance and milk allergies, which means that it is medically necessary for Plaintiffs and putative class members to avoid consuming drinks that contain milk.  Plaintiffs' Complaint, ECF No. 1 ("Compl."), ¶ 2.  Plaintiffs will suffer adverse physical health effects if they ingest milk or milk-containing products, including stomach pain, digestive tract inflammation, bloating, bowel irregularities and vomiting.  *Id*., ¶¶ 25-34, 36.  Indeed, at least one named Plaintiff has even been hospitalized due to her lactose intolerance.  *Id*., ¶ 34.  As a result, Plaintiffs must pay very careful attention to the drinks they consume and can only consume non-dairy products in drinks that contain Non-Dairy Alternatives including lactose free milk.  *Id*., ¶ 37.  The Complaint also alleges in detail the effects of lactose intolerance and milk allergies on the major life activities of eating and drinking.  *Id*., ¶¶ 38-46.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS                    CASE NO. 3:23-CV-006621-SI

Defendant is a place of public accommodation, and Defendant operates stores in the United States and California. Compl., ¶¶ 22, 35, 74.  Plaintiffs visited Defendant's coffee shops and ordered drinks that included milk as part of the regular menu item, requesting to substitute milk for Non-Dairy Alternatives, specifically soy, oat, coconut, or almond "milk."  *Id.*, ¶ 3.  Plaintiffs were charged an extra $0.50 - $2.15 surcharge by Dunkin for the substitution, depending on the date and the location of the store, and that surcharge could be up to 40% of the average drink price.  *Id.*, ¶¶ 3, 6.  Defendant's Surcharge is the same for all of the Non-Dairy Alternatives, making no distinction among the costs of the different Non-Dairy Alternatives.  *Id.*, ¶ 5.  The Complaint also alleges that the retail cost of Non-Dairy Alternatives is not significantly more than dairy products (if at all) and that the retail price of Whole Milk, Half & Half, and Heavy Cream (which is provided for free by Defendant) is the same, if not more, than their Non-Dairy Alternatives.  *Id.*, ¶¶ 7, 49-50.  Dunkin's standard offering in most beverages is 2% cow's milk, but Dunkin will substitute whole milk or fat-free skim milk for the 2% milk ingredient in its beverages at no additional charge. *Id.*, ¶ 8.  It will not substitute lactose-free milk at no additional charge, however.  *Id.*, ¶ 10.

Nevertheless, Dunkin will also modify its regular beverage offerings to make caffeine-free beverages at no additional charge for persons with a variety of conditions, including hypertension, and will modify its regular beverage offerings to remove sugar or use sugar-free sweeteners at no additional charge for those persons with diabetes or who need to control weight.  Compl., ¶¶ 11-12.  There is no expertise or additional work required of Dunkin employees to substitute Non-Dairy Alternatives in place of the 2% regular milk.  *Id.*, ¶ 14.  Accordingly, the Non-Dairy Alternative Surcharges are not imposed to defray the added costs of use of these ingredients but are designed to profit from those consumers with lactose intolerance and milk allergies. *Id.*, ¶ 50. Plaintiffs' Complaint therefore properly alleges that Dunkin charges customers with lactose intolerance and milk allergies an excessively high surcharge to substitute Non-Dairy Alternatives in violation of the Americans with Disabilities Act, California Unruh Civil Rights Act, Colorado Anti-Discrimination Act, Hawaii Anti-Discrimination Act, Texas Human Resource Code, Massachusetts Anti-Discrimination Law, New York Civil Rights Law and constitutes common law Unjust Enrichment.  *Id.*, ¶¶ 17-19, Counts I-VIII.

### III.   ARGUMENT

### A.   MOTION TO DISMISS STANDARD

Under Rule 12(b)(6), when a defendant seeks to dismiss a complaint for failure to state a claim upon which relief can be granted, a court must accept all allegations of material fact in the complaint as true and construe them in the light most favorable to the plaintiff. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). A complaint will survive a Rule 12(b)(6) motion so long as it articulates "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On a motion to dismiss for lack of personal jurisdiction that is based on written materials rather than an evidentiary hearing, a court may not assume the truth of allegations in a pleading which are contradicted by affidavit but must resolve factual disputes in the plaintiff's favor.  *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218 (9th Cir. 2011).[2]

Where courts believe a complaint requires additional facts to state a claim, "Rule 15 advises the court that 'leave shall be freely given when justice so requires.' This policy is 'to be applied with extreme liberality.'"  *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (motions for leave to amend should be granted with "extreme liberality").  "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"[3]  *Id.* at 1052 (citing *Foman v. Davis*, 371 U.S.

---

[2] As noted in Plaintiffs' Opposition to Request for Judicial Notice, Defendant has not introduced any admissible or relevant documents or facts contradicting those facts in Plaintiffs' Complaint. Should this Court disagree that Plaintiffs have properly alleged that Defendant owns, leases, or operates the relevant stores or that Defendant controls whether or not a surcharge is issued, Plaintiffs respectfully request that this Court allow Plaintiffs to undertake jurisdictional discovery regarding who owns, operates, or leases the relevant stores and whether Dunkin requires franchisees to impose a surcharge for Non-Dairy Alternatives. *See In re Boon Glob. Ltd.,* 923 F.3d 643, 650 (9th Cir. 2019).

[3] None of these factors are present here and, should the Court find merit to any of Defendant's arguments, all of their concerns could be rectified by amendment.

4

178, 182 (1962)).

**B.   THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT.**

1.   Defendant's personal jurisdiction arguments are arguments on the merits inappropriate on a motion to dismiss.

Defendant does not appear to challenge that the Court has personal jurisdiction over an entity that owns, leases/leases to, or operates Dunkin stores in California.  Instead, Defendant argues that the Complaint's allegations that Defendant operates stores in California "[are] just not true." *See* Motion to Dismiss (Dkt. No.21) ("Motion), p. 14.  But whether the allegations are "true" is a factual argument inappropriate on a motion to dismiss.

Title III's anti-discrimination provision applies to "any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).  The ADA has not defined "operate," but the Ninth Circuit has interpreted "to operate" to mean "to put or keep in operation," "to control or direct the functioning of," or "to conduct the affairs of; manage." *Lentini v. Cal. Center for the Arts, Escondido*, 370 F.3d 837, 849 (9th Cir. 2004).  Defendant concedes that the Complaint alleges that Defendant "operates" stores in California (Motion, p. 14), which is all that is required at the pleadings stage.[4]  Plaintiffs further allege that Defendant has discriminated against them in violation of the ADA and other state statutes by improperly including a surcharge on Non-Dairy Alternatives.  *See, e.g.,* Compl., ¶¶ 4-19, 86-88, 93-101, 109-113, 153-157. These allegations must be taken as true on a motion to dismiss.  *See Cahill,* 80 F.3d at 337-38.

Although Defendant seeks to introduce evidence to the contrary by virtue of its Request for Judicial Notice (Dkt. No.22) and documents attached to its motion,[5] those documents are not proper subjects for judicial notice for the truth of the matters asserted in those documents. *See* Plaintiff's Opposition to Request for Judicial Notice filed in conjunction with this Opposition. As a general rule,

---

[4] Should Plaintiffs find out through discovery that Defendant does not "operate" any stores or have any control over the pricing/upcharge on Non-Dairy Alternatives, Plaintiffs will seek leave to amend to add the relevant franchisees.

[5] Defendant has not even sought judicial notice of most of the documents attached to its brief, nor could it. None of the documents attached to Defendant's motion or RJN are part of the Complaint and cannot be properly considered on a motion to dismiss. *See Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

1  "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6)

2  motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

3        As noted in Plaintiff's Opposition to Request for Judicial Notice, the documents provided

4  cannot be admitted for the truth of the matter asserted, and there is no evidence that they are authentic,

5  complete, and accurate, nor that they apply to any or all of the stores at issue in the Complaint.

6  Accordingly, the information in those documents cannot be the basis for dismissing this action on

7  personal jurisdiction grounds.

8        California courts have rejected similar attempts to dismiss an action on the pleadings based

9  on whether a defendant operates a place of public accommodation.  In *Johnson v. Winchester*

10  *Campbell Properties, LLC*, No.18-cv-04153-VKD, 2018 WL 6619940 (N.D. Cal. Dec. 18, 2018), the

11  court denied a defendant's similar motion to dismiss based on both jurisdictional[6] and 12(b)(6)

12  grounds.  The defendant argued that it could not be liable for an ADA violation because, as a

13  franchisor, it did not "operate" the restaurants at issue. On the jurisdictional question, the court found

14  that the Defendant "did not (1) provide any support for the contention that Congress intended

15  'operates' to be jurisdictional in nature, as opposed to a question to be resolved on the merits, or (2)

16  offer any evidence to support its contention that it does not operate the premises." *Id.* at *3.  With

17  respect to the 12(b)(6) argument, the court noted that "the Ninth Circuit takes a broad view of the

18  term 'to operate'" and that an "'operator' must have an active and significant degree of control over

19  the access-related aspects of the facility in question.'" *See id.* Accordingly, the court held that

20  "whether a particular franchisor may be held liable under the ADA as an operator is a question of

21  fact, not law." *See id.* at *4.  The court further noted that a franchisor's liability depends, at least in

22  part, on the franchise agreement at issue and whether it gives the franchisor the requisite control over

23  the alleged ADA violation.  *See id.*  Thus, the court held that the plaintiff's allegations that the

24  defendant operated the restaurant were sufficient and denied the motion to dismiss.  *See id.; see also*

25  *Robles v. Domino's Pizza LLC*, No. 16-cv-6599 JGB (Ex), 2021 WL 2945562, *8 (C.D. Cal. June 23,

26  2021) (denying defendant's motion for summary judgment where it was alleged that the franchisor

27

28      [6] Jurisdiction in that case was challenged under 12(b)(1) and not 12(b)(2). Still, the court held that the issue was a merits issue and not a jurisdictional issue.

6

1   defendant rather than its franchisees controlled inaccessible barriers); *Crawford v. Uber Tech., Inc.*,

2   No. 17-cv-02664-RS, 2018 WL 1116725, *3-4 (N.D. Cal. March 1, 2018) (rejecting Uber's argument

3   on a motion for judgment on the pleadings that the requested remedy turned on the independent

4   decisions of drivers rather than Uber and stating that, "whether drivers exercise the degree of

5   independence described by Uber is a question of fact that cannot be determined on the pleadings

6   alone.").

7           Thus, Plaintiffs have sufficiently alleged that Defendant controls or operates the stores at

8   issue. Whether or not there is evidence to the contrary is a factual issue inappropriate for

9   determination at this stage of the action.  Moreover, regardless of whether franchisees operate each

10  of the stores at issue, there is a question of fact regarding whether Defendant sets the price for each

11  entity or indicates that the entities should charge more for non-dairy milks. These issues are not

12  properly addressed on a motion to dismiss and require discovery.  Therefore, the Court should deny

13  Defendant's motion to dismiss as to the operator issue on both 12(b)(2) and 12(b)(6) grounds.

14          2.  Defendant's *Bristol-Myers* Argument Also Fails.

15          Defendant also makes a brief argument that the Court lacks personal jurisdiction over it with

16  respect to unnamed out-of-state class members, citing *Bristol Myers Squibb Co. v. Superior Court of

17  California,* 582 U.S. 255 (2017), and omitting that *Bristol-Myers* only applies to state court actions.

18  This argument fails on two grounds.  First, the Ninth Circuit has held that "prior to class certification,

19  a defendant does 'not have 'available' a Rule 12(b)(2) personal jurisdiction defense to the claims of

20  unnamed putative class members who were not yet parties to the case.'"  *See Owino v. CoreCivic,*

21  *Inc.,* 60 F.4th 437, 446-447 (9th Cir. 2022); *Moser v. Benefytt, Inc.*, 8 F.4th 872, 877 (9th Cir. 2021).

22  Accordingly, Defendant's argument is premature.

23          Second, even if the Court were to address Defendant's argument now, the argument also fails

24  because, as the Ninth Circuit has noted, *Bristol-Myers* did not address whether its approach would

25  apply to a class action in federal court. *See Moser*, 8 F.4th at 874-875.  The Supreme Court in *Bristol-*

26  *Myers* specifically declined to apply the limited specific jurisdiction principles to federal litigation:

27  "since this decision concerns the due process limits on the exercise of specific jurisdiction by a State,

28

---

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS                    CASE NO. 3:23-CV-006621-SI

1  the question remains open whether the Fifth Amendment imposes the same restrictions on the exercise

2  of personal jurisdiction by a federal court." *Bristol-Myers*, 582 U.S. at 257.

3       In fact, in *Bristol-Myers* the Supreme Court discussed two related concepts underlying the

4  limitations on personal jurisdiction, which make that case inapplicable here. One such concept was

5  the burden imposed on the defendant in being hauled into court to answer for a claim that has no

6  relation to the adjudicating forum.582 U.S. at 263.  This is not the case here. Dunkin's practice of

7  charging people extra for their disability is conduct that is encountered nationwide, including in

8  California.  The conduct is the same in all states, and there is no additional burden imposed on

9  Defendant from defending a lawsuit in California that is related to Defendant's conduct in California.

10 As to the second concept, the Supreme Court analyzed "the more abstract matter of submitting to the

11 coercive power of a State that may have little legitimate interest in the claims in question ...

12 [R]estrictions on personal jurisdiction 'are more than a guarantee of immunity from inconvenient or

13 distant litigation. They are a consequence of territorial limitations on the power of the respective

14 States.'"  582 U.S. at 263.    This is not a concern in this case, where the matter was filed in federal

15 court and not state court and where, as alleged in the Complaint, California has a legitimate interest

16 in the claims in question because the discriminatory practice has taken place in many stores

17 throughout California.

18      Defendant's argument as to the out-of-state named Plaintiffs similarly fails.  Defendant

19 summarily argues that this Court should not exercise personal jurisdiction over Defendant with

20 respect to the named out-of-state Plaintiffs, citing only *Suazo v. Bluemercury, Inc.*, No. 3:22-cv-

21 06307-JD, 2023 WL 2959997 (N.D. Cal. April 14, 2023) in support.  But that case was an FLSA case,

22 which is distinguishable.  Indeed, the *Suazo* case emphasizes that "FLSA collective actions are

23 fundamentally different from representative suits under Rule 23."  *Id.* at *3.  As such, *Suazo* is

24 inapposite.

25      Instead, Rule 23 class actions addressing pendent personal jurisdiction in federal question

26 cases are directly on point.  Under the doctrine of pendent personal jurisdiction, "a court may assert

27 pendent personal jurisdiction over a defendant with respect to a claim for which there is no

28 independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS                    CASE NO. 3:23-CV-006621-SI

facts with a claim in the same suit over which the court does have personal jurisdiction." *Action Embroidery Corp. v Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180 (citations omitted). Pendent personal jurisdiction "is typically found where one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction." *Id.* at 1180-1181. Whether to grant pendent personal jurisdiction "in a particular case is within the discretion of the district court," which may consider "judicial economy, convenience and fairness to litigants." *Id.* (citing *Oetiker v. Jurid Werke, G.m.b.H.*, 556 F.2d 1, 5 (D.C. Cir. 1977)) (quotation marks omitted). *See also In re ZF-TRW Airbag Control Units Products Liability Litigation* 601 F.Supp.3d 625, 705 (C.D. Cal. 2022), *opinion clarified sub nom. In re ZF-TRW Airbag Control Units Products*, No. 1902905JAKFFMX, 2022 WL 19425927 (C.D. Cal., Mar. 2, 2022).

Here, pendent personal jurisdiction serves judicial economy because the claims of each of the Plaintiffs arise out of the same set of facts — whether or not Defendant discriminates against them by imposing a surcharge against them in violation of the ADA and similar state statutes and whether Defendant was unjustly enriched by such conduct.  As such, judicial economy will be served by hearing all claims in one action rather than splitting the action into several different actions regarding the same facts and issues of law.  Moreover, splitting the action into several actions in different federal courts in different states could result in inconsistent results regarding the exact same legal and factual issues.  Having the entire action heard in this Court would also be more convenient for the parties, particularly Defendant, because it will not be forced to engage in discovery, motion practice, and potentially trial in several different forums.  Finally, having the entire action heard in this Court would be fair to the parties because, as mentioned previously, there would not be a risk of inconsistent results based on the same facts and law in several different jurisdictions.  Accordingly, this Court should exercise pendent personal jurisdiction over the out-of-state named Plaintiffs.

**C.     PLAINTIFFS STATE A CLAIM FOR VIOLATION OF THE ADA.**

Title III of the ADA provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or

9

accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). A plaintiff states a cause of action for violation of the ADA where he alleges that (1) he is disabled, (2) defendant is a private entity that owns, leases, or operates a place of public accommodation, and (3) he was denied a public accommodation by defendant because of his disability. *See Phillips v. P.F. Chang's China Bistro, Inc.*, No. 5:15-cv-00344, 2015 WL 7429497, *6 (N.D. Cal., Nov. 23, 2015). Plaintiffs have alleged these elements. Plaintiffs have alleged facts showing that they have a disability under the ADA, they have alleged that Defendant is a place of public accommodation within the meaning of the ADA, and they have alleged that Plaintiffs were denied a public accommodation by Defendant because of their disability. *See, e.g.* Compl., ¶¶ 25-34, 36-51, 74, 103. Plaintiffs have therefore stated a cause of action under the ADA.

1. Plaintiffs have alleged that Defendant is a place of public accommodation under the ADA.

Defendant's first argument is essentially a restatement of its jurisdictional argument that Dunkin does not own, lease or operate a place of public accommodation and that franchisees operate the stores at issue. But, as with its jurisdictional argument, Defendant's argument here is based on its inappropriate factual claims that franchisees rather than Defendant operate Dunkin stores. That argument fails for the same reasons addressed in the section of this brief on personal jurisdiction—namely, that Plaintiff has alleged that Defendant is a public accommodation and that Defendant operates stores in the United States and California (Compl., ¶¶ 22, 35, 74) and that Defendant's claims that this is "not true" are based on improperly introduced and unauthenticated documents that are not properly considered on a motion to dismiss. Therefore, Plaintiffs have properly alleged that Defendant is a place of public accommodation under the ADA.

2. Plaintiffs have alleged that they are disabled under the ADA.

a. *The 2008 Amendments were Designed to Expand the Scope of the ADA.*

The American with Disabilities Act (ADA) was amended in 2008. The clear Congressional intent of the amendments to the ADA ("ADAAA")[7] was to expand the scope and broaden the disabilities included within the ADA's protections. Section 3 of the ADA was amended to include

---

[7] Any reference to the ADA in the Complaint or this Response, is a reference to the statute in force as of the date of the Complaint, which is amended by the ADAAA.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS                    CASE NO. 3:23-CV-006621-SI

the following language under Section 4, Rules of Construction Regarding the Definition of Disability: (A) the definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act." *See* 42 U.S.C. 12102(4)(A). The ADAAA was passed to restore the intent and protections of the Americans with Disabilities Act of 1990 and to reject the United States Supreme Court decisions that Congress believed were too narrowly decided with respect to the definition of disability under the ADA. Specifically, the ADAAA was passed to negate rulings by the United States Supreme Court in 1) *Sutton v. United Airlines, Inc*., 527 U.S. 471 (1999); and 2) *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002), both of which Congress believed construed the definition of disability under the ADA too narrowly.

The ADA, and 7 CFR, Section 15b, define a person with a disability as any person who has a physical or mental impairment which substantially limits one or more major life activities, has a record of such impairment, or is regarded as having such impairment. Major life activities are broadly defined and include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. Major life activities also include the operation of major bodily functions, including but not limited to, functions of the neurological, digestive, or respiratory systems.[8] A physical or mental impairment does not need to result in a severe, life-threatening reaction to be considered a disability. It is sufficient that the impairment limits a major life activity. For instance:

> Digestion is an example of a bodily function that is a major life activity. A participant whose digestion is impaired by a lactose intolerance may have a disability regardless of whether consuming milk causes the participant severe distress.[9]

> b.    *As alleged in the Complaint, lactose intolerance and milk allergies are disabilities under the ADA as amended by ADAAA.*

---

[8] *Questions and Answers about the Department of Justice's Final Rule Implementing the ADA Amendments Act of 2008.* https://archive.ada.gov/regs2016/adaaa_qa (visited Jan. 26, 2023).

[9] California Department of Education, *Modifications to Accommodate Disabilities*, https://www.cde.ca.gov/ls/nu/cc/mbcacfp082017sfsp022017.asp (visited Jan. 26, 2023).

Plaintiffs' lactose intolerance and milk allergies impact the major life activities of digestion, eating and drinking.  Courts around the country have found that lactose intolerance/dairy allergies are a disability under the ADA, as amended by ADAAA, and that it impacts a major life activity.  *See Hebert v. CEC Entm't, Inc.*, 6:16-CV-00385, 2016 WL 5003952, at *1 (W.D. La. July 6, 2016) (report and recommendation adopted); *see also Harris v. Adams,* No. A157443, 2020 WL 5835149 (Cal. Ct. App., Oct. 1, 2020).  In *Hebert,* the district court denied the defendant's motion to dismiss an ADA claim based on a dairy allergy, noting that "[t]he statute itself states that, to be disabled under the ADA, a person must have a 'physical or mental impairment that substantially limits one or more of the major life activities" and noted that eating is a major life activity under the ADA.  *See Hebert*, 2016 WL 5003952, at *3.  The court found that the plaintiffs had alleged that their son had a physical impairment that "restrict[ed] him from eating the way most people in the general population eat; consequently, they have alleged that he is disabled as that term is defined in the ADA."  *See id.* Accordingly, the court held that the plaintiffs overcame the defendant's challenge to the complaint. *See id.*

In *Harris*, the court found that refusing service to a customer because of her lactose intolerance violates California's Unruh Act, an anti-discrimination statute similar to the ADA under which Plaintiffs also assert a cause of action, noting that lactose intolerance is clearly a personal characteristic similar to a physical disability.  2020 WL 5835149 at *5.  California courts have also found that similar types of food allergies are disabilities under the ADA.  *See Phillips*, 2015 WL 7429497 at *6 (finding gluten allergy or intolerance to be a disability).

Here Plaintiffs have alleged that they suffer from lactose intolerance and milk allergies, which means that it is medically necessary for persons like Plaintiffs to avoid consuming drinks that contain milk.  Compl., ¶ 2.  They have also alleged that Plaintiffs will suffer adverse health effects if they ingest milk or milk-containing products, including stomach pain, digestive tract inflammation, bloating, bowel irregularities and vomiting.  Compl., ¶¶ 25-34, 36.  Plaintiffs have also alleged that at least one named Plaintiff has been hospitalized due to her lactose intolerance.  Compl., ¶ 34.  The Complaint also alleges in detail the effects of lactose intolerance and milk allergies on the major life activities of eating and drinking.  Compl., ¶¶ 38-46.  Therefore, Plaintiffs' allegations that they are

lactose intolerant and have milk allergies are sufficient to state that they are disabled under the ADA.

       3.   <u>Defendant's argument that Plaintiffs were required to notify Defendant's employees fails.</u>

Defendant argues that Plaintiffs' claim fails because they have not alleged that Plaintiffs notified Defendant or its employees that Plaintiffs were lactose intolerant or had milk allergies and that they required a modification. But Defendant provides no support within this Circuit for its argument that Plaintiffs were required to do so. Instead, Defendant cites a Southern District of New York case and then cites California state court cases regarding employment discrimination, which falls under a completely different section of the ADA with different requirements. *See Brundage v. Hahn*, 57 Cal.App.4th 228, 235-237 (2000) (citing provisions of Title I applicable to employment discrimination, which includes language in the statute referring to "known" disabilities or discrimination "because of" a disability, which language is not present in relevant Title III sections); *Spitzer v. The Good Guys, Inc.*, 80 Cal.App.4th 1376, 1383-1385 (2000) (involving a lawsuit under an inapplicable state law and discussing similar language under Title I of the ADA). Specifically, cases regarding employment discrimination fall under Title I of the ADA, and that section specifically includes as discrimination "not making reasonable accommodations to the ***known*** physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." *See* 42 USCA § 12112 (b)(5)(A) (emphasis added). In contrast, there is no reference to the knowledge of an individual's disability in the relevant provisions of Title III (other than in the section regarding discrimination based on an association with someone with a known disability, which is not applicable here). *See* 42 USCA §12182(b)(1)(E).[10]

Defendant then argues, "[h]ere, although Plaintiffs allege that they requested Non-Dairy Alternatives, (Dkt. 1, ¶ 3), they do not allege they ever asked any employee to provide Non-Dairy Alternatives for free as a modification because of their condition. (*see, e.g., id.* ¶¶ 3, 47, 65)." Motion to Dismiss, p. 14. Accordingly, Defendant acknowledges that Plaintiffs did request a modification,

---

[10] Moreover, Plaintiffs were not required to ask an employee to modify prices at the relevant stores because, as discussed below, such action would have been futile. But even if the Court believes that Plaintiffs should have done so, Plaintiffs can add this information to an amended complaint.

1   but argues that they did not request it "for free."

2   But Defendant cites no binding law[11] holding that Plaintiff must specifically request a free

3   modification or that Plaintiffs were required to request that Defendant remove the surcharge. Indeed,

4   asking an employee to remove a surcharge that is required by the store's owner would be a futile

5   gesture, and the ADA specifically states that "[n]othing in this section shall require a person with a

6   disability to engage in a futile gesture if such person has actual notice that a person or organization

7   covered by this subchapter does not intend to comply with its provisions." 42 U.S.C.A. §12188(A)(1).

8   *See also Crawford*, 2018 WL 1116725 at * 2 (noting that Ninth Circuit precedent does not require

9   plaintiffs suing under Title III to engage in a futile gesture to show actual injury under the ADA).

10        4.   <u>Defendant's argument that the ADA does not require them to accommodate Plaintiffs
11             is incorrect.</u>

12        Defendant's assertion that it is not required to accommodate persons with lactose intolerance

13   and milk allergies by providing non-dairy alternatives without imposing a surcharge is incorrect.

14   Under the ADA, if an establishment already makes alterations or modifications, or takes special

15   orders for its customers, it must do so for the disabled customer requests as well.  *See* 28 C.F.R. §

16   36.307(a) & (b) ("A public accommodation shall order accessible or special goods at the request of

17   an individual with disabilities, if, in the normal course of its operation, it makes special orders on

18   requests for unstocked goods, and if the accessible or special goods can be obtained from a supplier

19   with who the public accommodation customarily does business.").  Most importantly, the ADA

20   provides that a "public accommodation may not impose a surcharge on a particular individual with a

21   disability or any group of individuals with disabilities to cover the costs of measures, such as the

22   provision of auxiliary aids, barrier removal, alternatives to barrier removal, and reasonable

23

---

24        [11] Defendant cites *Fortyune v. American Multi-Cinema, Inc.*, 365 F.3d 1075 (9th Cir. 2004), which
25   the Ninth Circuit in *Herrera v. Cathay Pacific Airways, Ltd.*, 94 F.4th 1083 (9th Cir. 2024) says was
     overruled by the U.S. Supreme Court in *L.A. Cty. v. Humphries*, 562 U.S. 29, 131 S.Ct. 447, 178
26   L.Ed.2d 460 (2010). The issue of how or on what grounds *Fortyune* was overruled is murky, but
     according to the Ninth Circuit it has been overruled. In any event, even if the Court were to apply
27   *Fortyune*, that case did not hold that all plaintiffs are required to request a modification but rather
     discussed what happened when the plaintiff requested a modification and that modification was
28   rejected.  Indeed, the fact that the statute itself holds that plaintiffs need not engage in a futile gesture
     indicates that requesting a modification is not always an element of an ADA claim.

1   modifications in policies, practices, or procedures, that are required to provide that individual or group

2   with the nondiscriminatory treatment required by the Act or this part." 28 C.F.R. § 36.301.

3        Defendant's arguments miss the point. Defendant argues that the ADA does not "require the

4   inventory of goods provided by a public accommodation to be altered to include goods with

5   accessibility features." Motion, p. 14. But Plaintiffs are not asking that Defendant **alter** their

6   inventory to include additional products. Instead, Plaintiffs are alleging that because Defendant

7   already has Non-Dairy Alternatives in its inventory, and it already takes special orders for customers

8   without a surcharge (including modifying drinks to be caffeine-free, sugar-free, and to substitute

9   various dairy milks), it must do so for lactose intolerant customers and customers with milk allergies

10   as well. *See* 28 C.F.R. § 36.307(a) & (b). Defendant's failure to offer the same benefit to persons

11   with lactose intolerance and milk allergies (except with an added surcharge) expressly constitutes

12   discrimination under the ADA. *See* 42 U.S.C. § 12182(a)(i).

13        Defendant acknowledges that "Plaintiffs will likely argue that they are not seeking to compel

14   Dunkin to sell Non-Dairy Alternatives, but that if it chooses to do so, then it must sell it at the same

15   price as Dairy Milk." But Defendant's only response to this argument is a series of unrelated, far-

16   fetched hypothetical scenarios where grocery stores would have to lower gluten-free prices regardless

17   of additional labor, material or cost (which is directly contrary to *Phillips, supra*), that non-organic

18   produce would have to cost the same as organic produce, and that restaurants would have to serve

19   steak to people who are allergic to shrimp. Leaving aside the fact that these scenarios have no basis

20   in fact or in law (and they assume that courts are not capable of crafting opinions that would avoid

21   such extreme results), Defendant's proposed hypotheticals have nothing to do with the arguments at

22   hand and are merely scare tactics as part of a futile effort to get the Complaint dismissed.

23        Simply put, Plaintiffs have alleged that Defendant already provides modifications to its drinks,

24   and the non-dairy modifications cost substantially the same as many of the dairy modifications (and

25   less than half-and-half or cream) and do not require extra labor. Compl., ¶¶ 5, 7-14, 49-50. Therefore,

26   the surcharge constitutes baseless and unlawful discrimination against Plaintiffs. Moreover, unlike

27   the steak versus shrimp scenario, Plaintiffs are not even alleging that Defendant must provide the

28   most expensive brand of the most expensive Non-Dairy Alternative. Instead, Plaintiffs allege that

1   Defendant can continue to provide the dairy alternatives and non-dairy alternatives that it already

2   provides, but that it cannot include a baseless surcharge for all Non-Dairy Alternatives, which is

3   wholly unrelated to the process of crafting a Non-Dairy Alternative beverage and wholly unrelated to

4   the cost of the ingredients.   And to the extent Defendant is arguing that providing Non-Dairy

5   Alternatives without a surcharge would fundamentally alter its business, that is a question of fact

6   inappropriate on a motion to dismiss.  *See Crawford*, 2018 WL 1116725 at * 4 (whether a

7   modification would fundamentally alter a business is a question of fact that cannot be resolved on the

8   pleadings).

9        Defendant also makes the erroneous argument that Plaintiffs' claim that Non-Dairy

10  Alternatives are substitutes for dairy milk is a legal conclusion. But the Complaint alleges specific

11  facts supporting these allegations.  Dunkin advertises the Non-Diary Alternatives as substitutes to

12  milk when encouraging its customers to "customize" their drinks. The Complaint alleges that

13  Dunkin's standard offering in most beverages is 2% cow's milk, but Dunkin will customize its

14  beverages to substitute whole milk, or fat-free skim milk for the 2% milk ingredient at no additional

15  charge, and they will also substitute milk with Non-Dairy Alternatives, and impose a surcharge for

16  that customization. Compl., ¶¶ 8-10.  The Complaint also alleges that there is no expertise or

17  additional work required of Dunkin employees to substitute Non-Dairy Alternatives in place of 2%

18  regular milk.  Compl., ¶ 14.

19       Defendant also argues that Non-Dairy Alternatives and Dairy Milk are different products

20  altogether.  But Dunkin does not sell stand-alone milk products. Instead, Dunkin sells blended coffee

21  beverages that are customizable, and, among other ingredients, include some type of milk.  Dunkin

22  specifically allows its customers to substitute the ingredients in their craft beverages and provides

23  various options. Although Defendant is free to set the price of its drinks and beverages sold to

24  consumers, it is not free to impose a baseless surcharge for Non-Dairy Alternatives that Plaintiffs,

25  and others similarly situated, must pay because of their disability.  Thus, Defendant's surcharge for

26  non-dairy alternatives targets disabled persons such as Plaintiffs.

27       Defendant's reliance on *Painter v. Blue Diamond Growers,* 757 F. App'x 517, 519 (9th Cir.

28  2018) is misplaced. *Painter* was a product mislabeling case where the plaintiff alleged that the

16

1   defendant had mislabeled its beverages as almond "milk" because milk and the product had different

2   nutritional profiles. *Id.*   Similarly, *Gitson v. Trader Joe's Co*., No. 13-CV-01333-VC, 2015 WL

3   9121232, at *1 (N.D. Cal. Dec. 1, 2015) is another product mislabeling case, this time addressing soy

4   "milk."

5           The other cases relied upon by Defendant are similarly inapposite. Defendant cites several

6   factually distinguishable cases where courts held that the ADA does not require entities to offer

7   additional goods or to sell very different goods at the same price, which is not what Plaintiffs are

8   requesting here. *See A.L. by and through D.L. v. Walt Disney Parks and Resorts US, Inc.*, 469 F.

9   Supp. 3d 1280 (M.D. Fla. 2020) (theme park is not required to create a service or access designed

10  exclusively for cognitively-disabled individuals, but the park must provide an accommodation that

11  provides autistic individuals with a "like experience" to the one nondisabled guests experience);

12  *McNeil v. Time Ins. Co*, 205 F.3d 179 (5th 2000) (an insurer was not required to remove a coverage

13  limit for AIDS because that would alter the content of the insurer's policies); *Weyer v. Twentieth*

14  *Century Fox Film Corp.,* 198 F.3d 1104 (9th Cir. 1999) (declining to require an insurance company

15  to cover mental disabilities in the same way as physical disabilities)*; Doe v. Mut. of Omaha Ins. Co.*,

16  179 F.3d 557, 560 (7th Cir. 1999) (insurance cap on care for AIDS did not violate ADA).

17          Defendant's citation to these cases demonstrates Defendant's misunderstanding of Plaintiffs'

18  allegations. As argued above, Plaintiffs are not asking the Court to require Dunkin to add new goods

19  to their menu.  Instead, Plaintiffs are claiming that Dunkin cannot require Plaintiffs to pay a higher

20  price for Non-Dairy Alternatives (which Dunkin already includes on its menu) where there is no basis

21  for doing so based on the labor required or cost to add non-dairy alternatives versus dairy products

22  and where Dunkin already makes similar modifications (including providing caffeine-free or sugar

23  free beverages or substituting other dairy milks and cream) at no charge for other customers.  Plaintiffs

24  state a valid claim under the ADA, and Defendant's motion should be denied.

25          5.   Plaintiffs have alleged that Defendant has imposed a discriminatory surcharge
                 prohibited under the ADA.

26          The principal dispute in this case is whether Defendant's policy of surcharging persons with

27  lactose intolerance and milk allergies for non-dairy alternatives is discriminatory.  Defendant does

28

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS                    CASE NO. 3:23-CV-006621-SI

1  not cite any cases permitting such a surcharge to persons with a disability.[12]  And, indeed, the law is

2  to the contrary.  Importantly, the ADA provides that a "public accommodation may not impose a

3  surcharge on a particular individual with a disability or any group of individuals with disabilities to

4  cover the costs of measures, such as the provision of auxiliary aids […] and reasonable modifications

5  in policies, practices, procedures, that are required to provide that individual or group with the

6  nondiscriminatory treatment required by the Act or this part."  28 C.F.R. § 36.301.

7         In a case very similar to the one before this Court, the court held that a plaintiff had stated a

8  claim under the Unruh Act and the ADA regarding a surcharge on customers with celiac disease who

9  ordered from P.F. Chang's gluten-free menu.  *See Phillips v. P.F. Chang's China Bistro, Inc.*, No.

10  5:15-cv-00344, 2015 WL 7429497 (N.D. Cal., Nov. 23, 2015).  Similar to the case before this court,

11  the plaintiff alleged that that customers with celiac disease were singled out and charged more for

12  meals that were no different from regular meals for which P.F. Chang's made free adjustments for

13  food preferences for dietary needs.  *Id.* at *4, 6.  The plaintiff had pled that making gluten-free meals

14  merely required substituting for gluten or omitting gluten, which was similar to what P.F. Chang's

15  did for free for customers who wanted more or less spicy or vegetarian dishes, but P.F. Chang's

16  targeted customers with celiac disease and discriminated against them by charging more for gluten-

17  free meals. *Id.* at *5.  The court in *Phillips* rejected the defendant's argument—nearly identical to

18  Defendant's argument here—that the plaintiff could not show that defendant denied full and equal

19  accommodations to patrons such as plaintiff who have celiac disease because all guests paid the same

20  price for gluten-free menu items, regardless of whether they had celiac disease.  *Id*. at *4. The court

21  found that the plaintiff had stated an Unruh Act and ADA claim because the plaintiff alleged that P.F.

22  Chang's "created an entirely separate—and higher priced—gluten-free menu targeted to persons with

23  celiac disease," that P.F. Chang's "direct[ed] customers with celiac disease to the gluten-free menu

24  rather than offering to make modifications for celiac customers the way [P.F. Chang's] does for other

25

26  _____

27  [12] *Dare v. California*, 191 F.3d 1167 (9th Cir. 1999) is a Title II case appliable to public entities rather than a Title III case and is inapplicable here. And *Anderson v. Macy's, Inc.*, 943 F. Supp. 2d 531 (W.D. Pa. 2013) is an out-of-circuit district court case, which discusses the completely different

28  factual scenario of the sale of women's clothing. In contrast, the Northern District of California case, *Phillips*, is substantially similar to the case before this court and should be applied in this instance.

1   customers" (such as making things spicier or vegetarian), and that "the price differential between the

2   regular-menu items and their gluten-free-menu equivalents [was] the same across the board." *Id.* at

3   *4, 6.  Accordingly, the district court found that the plaintiff adequately alleged that **"**P.F. Chang's

4   d[id] not provide 'full and equal' accommodations or services to those suffering from celiac

5   disease" and that, from these facts, "one c[ould] reasonably infer that P.F. Chang's intentionally

6   discriminate[d] by targeting customers with celiac disease." *Id.* at *4-6.

7          The same is true here.  Plaintiffs have alleged that Defendant imposes a surcharge

8   discriminating against those with lactose intolerance or dairy allergies because the retail cost of Non-

9   Dairy Alternatives is not significantly more than dairy products (if at all) and that the retail price of

10  Whole Milk, Half & Half, and Heavy Cream (which is provided for free by Defendant) is the same,

11  if not more, than their Non-Dairy Alternatives.  Compl., ¶¶ 7-9, 49-50.  Moreover, Plaintiffs have

12  alleged that there is no expertise or additional work required to substitute Non-Dairy Alternatives in

13  place of 2% milk.  Compl., ¶ 14. Plaintiffs have also alleged that Defendant modifies its regular

14  beverage offerings to remove caffeine or make caffeine-free beverages at no additional charge for

15  persons with a variety of conditions, including hypertension, and will modify its regular beverage

16  offerings to remove sugar or use sugar-free sweeteners at no additional charge for those persons with

17  diabetes or who need to control weight.  Compl., ¶¶ 11-12.  Accordingly, the Non-Dairy Alternatives

18  Surcharge is not imposed to defray the added costs of use of these ingredients or labor needed but are

19  designed to profit from those consumers with lactose intolerance and milk allergies.  Compl., ¶ 50.

20  Therefore, as in *Phillips*, Plaintiffs have alleged a claim under the ADA (and the Unruh Act).

21  **D.   PLAINTIFFS HAVE STATED A CLAIM UNDER THE UNRUH ACT.**

22         Defendant argues that Plaintiffs have failed to state a claim because they have not alleged

23  intentional discrimination.  But intentional discrimination is not required for a violation of the Unruh

24  Act that is based upon a violation of the ADA.  *See Phillips*, 2015 WL 7429497, at *6.  The Unruh

25  Act specifically provides that "[a] violation of the right of any individual under the federal Americans

26  with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

27  *See* Cal. Civ. Code § 51(f). As argued above, Plaintiffs have stated claims for violations of their rights

28  under the ADA. Therefore, they have stated a claim under the Unruh Act.  *See Lentini*, 370 F.3d at

847; *Johnson,* 2018 WL 6619940 at *4.

In interpreting the Unruh Act, the Supreme Court of California answered the Ninth Circuit's question (" 'Must a plaintiff who seeks damages under California Civil Code section 52, claiming the denial of full and equal treatment on the basis of disability in violation of the Unruh Civil Rights Act … and the [ADA], prove "intentional discrimination" '?") in the negative. *Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 661, 678 [94 Cal.Rptr.3d 685, 698, 208 P.3d 623, 634]. Therefore the "intentional" prong of an Unruh Act a violation must not be proved in a case of an ADA Violation.

Plaintiffs, however, have also stated a claim for intentional discrimination.  Specifically, the Complaint alleges that the surcharge constitutes intentional discrimination against persons with lactose intolerance and milk allergies.  Compl., ¶ 94.  The Complaint alleges that Defendant created a surcharge targeted to persons with lactose intolerance and milk allergies because Defendant accommodates other customers' dietary preferences and allergies free of charge but imposes a surcharge only on persons with lactose intolerance and milk allergies.  *Id.*  The Complaint alleges that Defendant provides modifications or substitutes for persons with heart conditions (caffeine-free) or diabetes (sugar-free) at no additional charge, but consumers who need Non-Dairy Alternatives because of their lactose intolerance and milk allergies are targeted for the Surcharge because of their specific medical condition, and this is unrelated to the costs of the products.  Compl., ¶¶ 96-97, 99-100.  Defendant is making a choice to impose the Surcharge for necessary beverage modifications for one class of persons with a specific disability, lactose intolerance and milk allergies, while at the same time not imposing any extra charge for those persons with another medical condition.  Compl., ¶ 97. This is sufficient to state a claim for intentional discrimination.  *See Phillips*, 2015 WL 7429497, at *6 (holding that the plaintiff had pled sufficient facts to support an inference that the defendant intentionally discriminated against persons with celiac disease because the plaintiff had adequately pled that the defendant discriminated by charging more for gluten-free meals).

## E.   PLAINTIFFS HAVE STATED A CLAIM FOR UNJUST ENRICHMENT.

Defendant incorrectly claims that Plaintiffs cannot state a claim for unjust enrichment because they received the benefit of their bargain. But that is not the case. An unjust enrichment claim should be construed as a claim seeking restitution. *Rutherford Holdings, LLC v. Plaza Del Rey,* 223

1  Cal.App.4th 221, 231 (2014).

2        In *Phillips*, s*upra,* the court found that the plaintiff stated a claim for unjust enrichment where

3  the defendant took additional money from plaintiff and members of the putative class for gluten-free

4  menu items that were substantially identical to non-gluten free menu items except for the presence of

5  gluten based solely on the fact that plaintiff and the putative class could not consume foods with

6  gluten and had no choice but to pay a surcharge for gluten-free foods.  *See* 2015 WL 7429497, at *7.

7  The court found that the plaintiff had sufficiently alleged that the defendant had unjustly retained a

8  benefit from the plaintiff.  Plaintiffs here make similar allegations.  Specifically, Plaintiffs allege that

9  Defendant enriched itself at the expense of Plaintiffs and the putative class members by its illegal

10  levying of the Surcharge for Non-Dairy Alternatives.  Compl., ¶ 154.  Plaintiffs have alleged that

11  Defendant imposes a surcharge discriminating against those with lactose intolerance or dairy allergies

12  because the retail cost of Non-Dairy Alternatives is not significantly more than dairy products (if at

13  all) and that the retail price of Whole Milk, Half & Half, and Heavy Cream (which is provided for

14  free by Defendant) is the same, if not more, than their Non-Dairy Alternatives.  Compl., ¶¶ 7-9, 49-

15  50.  Moreover, Plaintiffs have alleged that there is no expertise or additional work required to

16  substitute Non-Dairy Alternatives in place of 2% milk.  Compl., ¶ 14. Plaintiffs have therefore alleged

17  that the Non-Dairy Alternative Surcharges are not imposed to defray the added costs of use of these

18  ingredients or labor needed but are designed to profit from those consumers with lactose intolerance

19  and milk allergies.  Compl., ¶ 50.  Therefore, as in *Phillips*, Plaintiffs have alleged a claim for unjust

20  enrichment.

21                                    **IV.    <u>CONCLUSION</u>**

22        For all of these reasons, Plaintiffs have properly alleged facts to support each of their claims

23  against Defendant. Accordingly, Plaintiffs respectfully request that this Court deny Defendant's

24  Motion to Dismiss.  However, to the extent the Court believes Plaintiffs are required to allege

25  additional facts to state a claim against Defendant, Plaintiffs request that the Court allow them to

26  amend the Complaint to allege such additional facts. *See Eminence*, 316 F.3d at 1051

27

28

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS                    CASE NO. 3:23-CV-006621-SI

Dated: April 8, 2024

Respectfully submitted,

/s/ Trenton R. Kashima

Trenton R. Kashima (SBN No. 291405)
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC
402 West Broadway, Suite 1760
San Diego, CA 92101
Telephone: (619) 810-7047
Email: tkashima@milberg.com

Keith L. Gibson (*Pro Hac Vice*)
KEITH GIBSON LAW P.C.
490 Pennsylvania Avenue, Suite 1
Glen Ellyn, IL 60137
Telephone: (630) 677-6745
Email: keith@keithgibsonlaw.com

Bogdan Enica (*Pro Hac Vice*)
KEITH GIBSON LAW P.C.
1200 N Federal Hwy, Ste.375
Boca Raton FL 33431
Telephone: (305) 306-4989
Email: bogdan@keithgibsonlaw.com

*Counsel for Plaintiffs and the Putative Class*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **<u>CERTIFICATE OF SERVICE</u>**

     The undersigned hereby certifies that on April 8, 2024 the foregoing document was filed via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

/s/ Trenton R. Kashima
Trenton R. Kashima (SBN No. 291405)

23