David B. Carpenter (*pro hac vice*)
Brett E. Coburn (*pro hac vice*)
**ALSTON & BIRD LLP**
1201 West Peachtree Street, Suite 4900
Atlanta, Georgia 30309
Telephone: (404) 881-7000
Facsimile:  (404) 881-7777
david.carpenter@alston.com
brett.coburn@alston.com

Meghan M. McBerry (SBN 334464)
**ALSTON & BIRD LLP**
560 Mission Street, Suite 2100
San Francisco, CA 94105
Telephone: (415) 243-1000
Facsimile:  (415) 243-1001
meghan.mcberry@alston.com

Attorneys for Defendant
**DUNKIN' DONUTS LLC**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHELSEA GARLAND, TONYA HUGHES, NATASHA HERNANDEZ, GEANEEN COJUM, ARSENIO PELAYO, ALBERT FITCH, PAULEEN MARA, LORA PREMO, URCELINA MEDEIROS, RUBY SMITH, individually and on behalf of all those similarly situated,<br><br>              Plaintiffs,<br><br>     v.<br><br>DUNKIN' DONUTS LLC, a Delaware Corporation,<br><br>              Defendant. | Case No.: 3:23-CV-06621-SI<br><br>**DEFENDANT DUNKIN' DONUTS LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>**Judge:**     Hon. Susan Illston<br>**Date:**      May 31, 2024<br>**Time:**      10:00 a.m. PT<br>**Location:**  San Francisco Courthouse<br>              Courtroom 1 – 17th Floor<br>              450 Golden Gate Avenue<br>              San Francisco, CA 94102<br><br>Complaint filed: December 26, 2023 |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................1

II.     RULE 12(B)(2) ARGUMENT ............................................................................1

        A.      This Court Lacks Personal Jurisdiction Over Dunkin'. .................................1

        B.      This Court Lacks Personal Jurisdiction Over Dunkin' as to Claims Brought by
                Named Plaintiffs Who Do Not Reside in California. .................................3

III.    RULE 12(B)(6) ARGUMENT ............................................................................4

        A.      Dunkin' Is Not a Place of Public Accommodation..................................4

        B.      Plaintiffs Fail to Sufficiently Plead That They Are Disabled. .....................6

        C.      Plaintiffs Must Put Dunkin' on Notice of Their Condition, Need for a
                Modification, or Preferred Modification..................................7

        D.      Dunkin' Is Not Required to Offer Accessible Goods or Sell Accessible Goods at
                the Same Price as Non-Accessible Goods. .................................9

        E.      The Upcharge Is Not an Impermissible Surcharge. .....................................12

        F.      Plaintiffs' Intentional Discrimination Claim Under the Unruh Act Fails..................13

        G.      Plaintiffs Fail to State a Claim for Unjust Enrichment. .................................14

        H.      The Court Should Deny Leave to Amend.......................................15

IV.     CONCLUSION.....................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*A.L. v. Walt Disney Parks & Resorts U.S., Inc.*,
    50 F.4th 1097 (11th Cir. 2022) ............................................................................................ 12

*A.L. v. Walt Disney Parks & Resorts US, Inc.*,
    469 F. Supp. 3d 1280 (M.D. Fla. 2020) .............................................................................. 12

*AirWair Int'l Ltd. v. Fewstone Pty Ltd.*,
    No. 19-cv-06332-SI, 2020 U.S. Dist. LEXIS 28337 (N.D. Cal. Feb. 19, 2020) ................... 1

*Amarte USA Holdings, Inc. v. Kendo Holdings Inc.*,
    No. 22-cv-08958-CRB, 2023 U.S. Dist. LEXIS 146516 (N.D. Cal. Aug. 21, 2023) ............. 2

*Amba Mktg. Sys. v. Jobar Int'l, Inc.*,
    551 F.2d 784 (9th Cir. 1977) ............................................................................................ 1, 2

*Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*,
    603 F.3d 666 (9th Cir. 2010) ........................................................................................... 9, 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................. 5, 11, 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................. 5

*Bristol-Myers Squibb Co. v. Superior Court of California*,
    582 U.S. 255 (2017) ......................................................................................................... 3, 4

*Butcher's Union Local No. 498 v. SDC Invest., Inc.*,
    788 F.2d 535 (9th Cir. 1986) ............................................................................................... 2

*Chaloux v. Killeen*,
    886 F.2d 247 (9th Cir. 1989) ............................................................................................... 9

*Comet Theatre Enters. v. Cartwright*,
    195 F.2d 80 (9th Cir. 1952) ............................................................................................... 15

*Crawford v. Uber Techs., Inc.*,
    No. 17-cv-02664-RS, 2018 U.S. Dist. LEXIS 33778 (N.D. Cal. Mar. 1, 2018) ................... 6

*Dare v. California*,
    191 F.3d 1167 (9th Cir. 1999) ........................................................................................... 13

*DFSB Kollective Co. v. Yang*,
    No. 11-cv-01051 CW (NC), 2012 U.S. Dist. LEXIS 70627 (N.D. Cal. May 21, 2012) ........ 2

ii

1

## <u>TABLE OF AUTHORITIES</u>
### (Cont'd)

2

**Page(s)**

3
*Doe v. Mut. of Omaha Ins. Co.*,
4
    179 F.3d 557 (7th Cir. 1999) ................................................................. 13

5
*Fabbrini v. City of Dunsmuir*,
6
    544 F. Supp. 2d 1044, 1050 (E.D. Cal. 2008) aff'd, 631 F.3d 1299 (9th Cir. 2011) ........................ 6

7
*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
    82 F.4th 664 (9th 2023) ................................................................. 9

8
*Fortyune v. Am. Multi-Cinema, Inc.*,
9
    364 F.3d 1075 (9th Cir. 2004) ................................................................. 9

10
*Gitson v. Trader Joe's Co.*,
11
    No. 13-CV-01333-VC, 2015 U.S. Dist. LEXIS 170401 (N.D. Cal. Dec. 1, 2015) ........................ 10, 11

12
*Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*,
    742 F.3d 414 (9th Cir. 2014) ................................................................. 14

13
*Griffin v. Harrington*,
14
    No. CV 10-08753-VBF-SP, 2013 U.S. Dist. LEXIS 108014 (C.D. Cal. Jan. 18, 2023) ........................ 6

15
*Guzman v. Polaris Indus.*,
16
    49 F.4th 1308 (9th Cir. 2022) ................................................................. 14

17
*Harris v. Adams*,
    No. A157443, 2020 Cal. App. Unpub. LEXIS 6432 (Oct. 1, 2020) ................................................................. 6, 7

18
*Hebert v. CEC Ent., Inc.*,
19
    No. 6:16-cv-00385, 2016 U.S. Dist. LEXIS 126756 (W.D. La. July 6, 2016) ................................................................. 6

20
*Herrera v. Cathay Pac. Airways Ltd..*,
21
    94 F.4th 1083 (9th Cir. 2024) ................................................................. 9

22
*Ho v. Brite Spot LLC*,
23
    No. 2:23-cv-01328-SPG-MRW, 2023 U.S. Dist. LEXIS 229685 (C.D. Cal. Oct. 29, 2023) ................ 5

24
*In re Cciv/Lucid Motors Sec. Litig.*,
    No. 4:21-cv-09323-YGR, 2023 U.S. Dist. LEXIS 122662 (N.D. Cal. June 29, 2023) ..................... 4, 14

25
*Jancik v. Redbox Automated Retail, LLC*,
26
    No. 13-1387-DOC (RNBx), 2014 U.S. Dist. LEXIS 67223 (C.D. Cal. May 14, 2014) ........................ 9

27
*Johnson v. Winchester Campbell Properties*,
28
    No. 18-cv-04153-VKD, 2018 U.S. Dist. LEXIS 213064 (N.D. Cal. Dec. 18, 2018) ............................ 5

# TABLE OF AUTHORITIES
### (Cont'd)

<b>Page(s)</b>

*L.A. County v. Humphries*,
   562 U.S. 29 (2010)............................................................................................................... 9

*McNeil v. Venkata P. Chereddy*,
   No. 6:20-cv-1767-WWB-GJK, 2021 U.S. Dist. LEXIS 69698 (M.D. Fla. Apr. 8, 2021) ..................... 5

*Namisnak v. Uber Techs.*,
   No. 17-cv-06124-RS, 2018 U.S. Dist. LEXIS 221054 (N.D. Cal. Oct. 3, 2018) ................................ 8

*Painter v. Blue Diamond Growers*,
   757 F. App'x 517 (9th Cir. 2018) ................................................................................... 10, 11

*Pebble Beach Co. v. Caddy*,
   453 F.3d 1151 (9th Cir. 2006) ........................................................................................... 1

*Peterson v. Cellco P'ship*,
   164 Cal. App. 4th 1583 (2008) .......................................................................................... 15

*Phillips v. P.F. Chang's China Bistro, Inc.*,
   No. 5:15-cv-00344-RMW, 2015 U.S. Dist. LEXIS 159474 (N.D. Cal. Nov. 23, 2015).............. *passim*

*Robles v. Domino's Pizza LLC*,
   No. CV 16-6599 JGB (Ex), 2021 U.S. Dist. LEXIS 124356 (C.D. Cal. June 23, 2021) ..................... 5

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797, 800 (9th Cir. 2004) ....................................................................................... 2

*Smith v. Pride Mobility Prods. Corp.*,
   No. 16-CV-04411-LHK, 2017 U.S. Dist. LEXIS 20195 (N.D. Cal. Feb. 12, 2017)..................... 11, 12

*Strome v. DMBK Enters.*,
   No. C 14-2398 SI, 2014 U.S. Dist. LEXIS 126261, at *11-12 (N.D. Cal. Sept. 9, 2014) ................... 6

*Suazo v. Bluemercury, Inc.*,
   No. 3:22-cv-06307-JD, 2023 U.S. Dist. LEXIS 65927 (N.D. Cal. Apr. 14, 2023) ........................... 3, 4

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ............................................................................................. 1

*Tiamson v. Equifax, Inc.*,
   Nos. 19-CV-08430-LHK & No. 20-CV-00795-LHK, 2020 U.S. Dist. LEXIS 124835
   (N.D. Cal. July 14, 2020)................................................................................................... 15

*Truth v. Kent School Dist.*,
   542 F.3d 634 (9th Cir. 2008) ............................................................................................. 9

1
2

## **TABLE OF AUTHORITIES**
### **(Cont'd)**

**Page(s)**

3
4

*Weyer v. Twentieth Century Fox Film Corp.*,
    198 F.3d 1104 (9th Cir. 2000) ........................................................... 9, 10

5
6

*Whitaker v. Tesla Motors, Inc.*,
    985 F.3d 1173 (9th Cir. 2021) ............................................................. 12

7

*Williams v. Bank of Am.*,
    No. 1:21-cv-00848-AWI-HBK, 2022 U.S. Dist. LEXIS 140127 (E.D. Cal. Aug. 5, 2022) ................ 10

8
9

*Williams v. Bank of Am*.,
    No. 1:21-cv-00848-AWI-HBK, 2022 U.S. Dist. LEXIS 188629 (E.D. Cal. Oct. 14, 2022) ............... 10

10
11

*Zamora v. Wendy's Int'l, LLC*,
    No. 19-CV-06133-LHK, 2020 U.S. Dist. LEXIS 111636 (N.D. Cal. June 25, 2020) ........................... 4

12

**STATUTES**

13

Fed. R. Civ. P. 12(b)(2)............................................................................. 1, 5

14

Fed. R. Civ. P. 12(b)(6)............................................................................. 5

15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## I.    INTRODUCTION

In its Opening Brief, Defendant Dunkin' Donuts LLC ("Dunkin'") demonstrated that nothing in the plain language of the ADA requires public accommodations to charge the same price for entirely different products and that such an argument is contrary to common sense and applicable case law. Nothing in Plaintiffs' Opposition contradicts those points. Rather, Plaintiffs simply attempt to muddle the analysis surrounding their primary argument by conflating issues and focusing on side matters. In addition to the fact that caselaw defeats Plaintiffs' arguments, if the Court agrees with them, it will open the floodgates to future litigation in which courts would be required to determine the goods a retailer must carry, and at what price. Had Congress intended such a consequence, it would have made such intention clear. The Court should grant Dunkin's motion and dismiss Plaintiffs' claims with prejudice.

## II.    RULE 12(B)(2) ARGUMENT

### A.    This Court Lacks Personal Jurisdiction Over Dunkin'.[1]

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *AirWair Int'l Ltd. v. Fewstone Pty Ltd.*, No. 19-cv-06332-SI, 2020 U.S. Dist. LEXIS 28337, at *4 (N.D. Cal. Feb. 19, 2020) (Illston, J.) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)). And a plaintiff cannot "simply rest on the bare allegations of its complaint, but rather [is] obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Mktg. Sys. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). Plaintiffs have wholly failed to meet their burden. Rather than introducing any evidence, they simply point to a single allegation, repeated twice, in their Complaint: that Dunkin' allegedly "operates" restaurants in California. (Dkt. 26 at 8 (citing Dkt. 1 ¶¶ 22, 35); *see also id.* at 10.) This is a conclusory allegation, unsupported by any well-pled *factual* allegations, which is insufficient to meet their burden. *See, e.g.*, *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007). And it is wrong.

In fact, the Ninth Circuit and courts in this District repeatedly have held that such "'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual

---

[1] As Plaintiffs do not dispute that there is no general jurisdiction over Dunkin', the focus here is on specific personal jurisdiction. (*See generally* Dkt. 26.) Additionally, Plaintiffs erroneously contend that "Defendant does not appear to challenge that the Court has personal jurisdiction over an entity that owns, leases/leases to, or operates Dunkin['] stores in California." (*Id.* at 10.) Dunkin' does challenge that. (*See* Dkt. 21 at 15-16.)

1

allegations will not satisfy a plaintiff's pleading burden." *Id.*; *accord Butcher's Union Local No. 498 v. SDC Invest., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (affirming dismissal for lack of personal jurisdiction because the "complaint must contain something more than mere conclusory statements unsupported by specific facts"); *Amba*, 551 F.2d at 787 (affirming dismissal for lack of personal jurisdiction where plaintiff relied on a sole allegation that "cheaper imitations" of its products "made their way into Arizona" and "failed to meet [the] jurisdictional challenge with sufficient facts to sustain its burden"); *Amarte USA Holdings, Inc. v. Kendo Holdings Inc.*, No. 22-cv-08958-CRB, 2023 U.S. Dist. LEXIS 146516, at *5-6 (N.D. Cal. Aug. 21, 2023) (denying as futile leave to amend personal jurisdictional allegations regarding parent defendants where plaintiffs alleged only that "each Parent Defendant has 'an office in California and conducts business in and around San Francisco, California'" and that they "'directed tortious acts at Amarte in this judicial district'" because the allegations were "conclusory and vague" and thus insufficient to support personal jurisdiction); *DFSB Kollective Co. v. Yang*, No. 11-cv-01051 CW (NC), 2012 U.S. Dist. LEXIS 70627, at *7 (N.D. Cal. May 21, 2012). Just as in these cases, Plaintiffs' allegations are plainly lacking and warrant dismissal. *See id.*[2]

Contrary to Plaintiffs' contentions, the Court is not required to take Plaintiffs' sole allegation supporting its claim to personal jurisdiction as true and is not required to disregard Dunkin's request for judicial notice. (Dkt. 26 at 10-11.) It is axiomatic that a court may consider material beyond a plaintiff's pleadings on a Rule 12(b)(2) motion without turning the motion to dismiss into a motion for summary judgment. *See, e.g.*, *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). (*See also* Dkt. 21 at 11 n.3.) Here, Dunkin' has introduced evidence that controverts Plaintiffs' sole conclusory allegation that Dunkin' "operates" Dunkin'-branded restaurants in California. (*See* Dkt. 21-1; Dkt. 22.) Specifically, Dunkin' Donuts Franchising LLC's Franchise Disclosure Document ("FDD") demonstrates, at a minimum, that another entity (not Dunkin' Donuts LLC) has affirmed to a government agency that all Dunkin'-branded restaurants in California are franchised and that none of those franchise owners is

---

[2] Plaintiffs request jurisdictional discovery should this Court find they did not sufficiently allege that Dunkin' "operates" restaurants in California. (Dkt. 26 at 9 n.2.) The Court should decline this request because it is unnecessary. The FDD conclusively resolves the personal jurisdiction inquiry, and none of Plaintiffs' arguments challenging it has merit. *See* Dunkin's Reply Supp. Request for Judicial Notice.

Dunkin' Donuts LLC. (*See* Dkt. 21 at 11.)[3] Any contractual relationship between the franchisor and franchisees does not involve Dunkin', and there are simply no well-pled *factual* allegations in the Complaint (nor could there be) to support otherwise. Because Plaintiffs fail to dispute this evidence with any of their own and rely only on an unsupported conclusory allegation, Plaintiffs have failed to meet their burden to establish personal jurisdiction over Dunkin'. The Court should dismiss this action.[4]

**B.     This Court Lacks Personal Jurisdiction Over Dunkin' as to Claims Brought by Named Plaintiffs Who Do Not Reside in California.**

In its Opening Brief, Dunkin' argued that Plaintiffs "cannot show that their claims 'arise out of or relate to the defendant's contacts with the forum' state." (Dkt. 21 at 15-16.) In part, Dunkin' argued that the lack of a "causal relationship or 'strong, direct connection'" between the claims brought by the named non-Californian Plaintiffs and Dunkin's contacts with California was obvious and thus "their claims should easily be dismissed." (*Id.*) Plaintiffs' only response to this argument is their contention that *Suazo v. Bluemercury, Inc.*, No. 3:22-cv-06307-JD, 2023 U.S. Dist. LEXIS 65927 (N.D. Cal. Apr. 14, 2023), is distinguishable as a "FLSA case." (Dkt. 26 at 13.) Plaintiffs are wrong. The point of the *Suazo* court's distinction of "FLSA collective actions" from Rule 23 suits is the simple conclusion that, by opting-in, the out-of-state plaintiffs have "the same status in relation to the claims of the lawsuit as that held by the original named plaintiffs." *Id.* at *5. *Suazo*'s holding that *Bristol-Myers* was not limited to state court actions or claims and application of it to dismiss the claims of out-of-state plaintiffs for lack of personal jurisdiction application is directly applicable here. *Id.* at *7-10 (citing *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255, 264 (2017)).

---

[3] As set forth in Dunkin's Reply supporting its Request for Judicial Notice, the Court can and should take judicial notice of the FDD, including for the truth of the matters therein. (Dkt. 31.) Nonetheless, even should the Court decline to take notice of the statements in the FDD for the truth, the existence of the FDD and the public statements made therein—as an indication of what was in the public record—are more than sufficient to controvert Plaintiffs' conclusory allegation that Dunkin' "operates" any Dunkin'-branded restaurants in California. *See id.*

[4] Plaintiffs also cite numerous inapposite cases for the general proposition that "California courts have rejected similar attempts to dismiss an action on the pleadings based on whether a defendant operates a place of public accommodation." (Dkt. 26 at 11-12.) As this does not relate to the lack of personal jurisdiction given that the cases involve standing, subject matter jurisdiction, and a motion for summary judgment, but rather Plaintiffs' failure to allege that Dunkin' is a place of public accommodation, this argument and Plaintiffs' cases are addressed below in Part III.A.

Plaintiffs also ask the Court to exercise its discretion and assert pendent personal jurisdiction over the out-of-state named Plaintiffs' claims as it "serves judicial economy." (Dkt. 26 at 13-14.) But as the *Suazo* court explained, such extension of the doctrine has no basis in any rule, statute or case:

> *Action Embroidery* recognized what has been called "pendent claim personal jurisdiction," which "says that a court's exercise of personal jurisdiction over one defendant as to one claim allows it to exercise personal jurisdiction with respect to related claims that it could not adjudicate in the anchor claim's absence." Plaintiffs ask to extend *Action Embroidery* to assert "pendent party personal jurisdiction," under which "a court's exercise of personal jurisdiction over one defendant as to a particular claim by one plaintiff allows it to exercise personal jurisdiction with respect to similar claims brought by other plaintiffs." This has no basis in the federal rules or statutes, and "is hard to reconcile with *Bristol-Myers*."

2023 U.S. Dist. LEXIS 65927, at *11-12 (quoting *Canaday v. Anthem Cos.*, 9 F.4th 392, 401 (6th Cir. 2021)) (internal citations omitted). Plaintiffs in effect ask this Court to violate due process rights for their convenience, contending that adjudicating the claims in a single setting will be most efficient. (Dkt. 26 at 14.) But Plaintiffs could have easily achieved the same economy, convenience, and efficiency had they sued Dunkin' in one of the districts in which it is subject to general jurisdiction. They did not, and this Court should not reward Plaintiffs' forum-shopping now.

Finally, Dunkin' made its argument as to the claims of all Plaintiffs, but Plaintiffs failed to address the argument at all as to the named California-resident Plaintiffs. (*See* Dkt. 21 at 15-16; Dkt. 26 at 12-14 (addressing unnamed and named out-of-state class members only).) This failure is a concession that Plaintiffs cannot make this required showing, and one the Court may treat as dispositive. *See*, *e.g.*, *In re Cciv/Lucid Motors Sec. Litig.*, No. 4:21-cv-09323-YGR, 2023 U.S. Dist. LEXIS 122662, at *8 n.3 (N.D. Cal. June 29, 2023) (denying leave to amend and dismissing with prejudice due to plaintiffs' failure to address a missing element of their claim). The Court should thus dismiss Plaintiffs' claims in their entirety.

## III.   RULE 12(B)(6) ARGUMENT

### A.   Dunkin' Is Not a Place of Public Accommodation.

As explained in the Opening Brief, Plaintiffs fail to state a claim under the ADA because Dunkin' is not a place of public accommodation. Specifically, Plaintiffs fail to allege that Dunkin' operates any of the relevant restaurants—that is, that Dunkin' "specifically control[led] the modification of the franchises to improve their accessibility to the disabled." *Zamora v. Wendy's Int'l, LLC*, No. 19-CV-06133-LHK, 2020 U.S. Dist. LEXIS 111636, at *14 (N.D. Cal. June 25, 2020). Plaintiffs rely entirely on a conclusory

allegation that Dunkin' "operates" restaurants in the United States and California. (Dkt. 1 ¶¶ 22, 35.) Conclusory allegations are, however, "not entitled to the assumption of truth," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and such a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Because Plaintiffs fail to provide any factual allegations to support their conclusory assertions, they clearly fail to sufficiently demonstrate that Dunkin' operates any of the relevant restaurants. *See Ho v. Brite Spot LLC*, No. 2:23-cv-01328-SPG-MRW, 2023 U.S. Dist. LEXIS 229685, at *6 (C.D. Cal. Oct. 29, 2023) (finding allegations that the defendant was the owner, operator, lessor and/or lessee insufficient to demonstrate that the defendants owned or operated a place of public accommodation); *McNeil v. Venkata P. Chereddy*, No. 6:20-cv-1767-WWB-GJK, 2021 U.S. Dist. LEXIS 69698, at *9-10 (M.D. Fla. Apr. 8, 2021) (holding the complaint, which alleged one defendant owned, leased, and/or operated the real property and another defendant leases and/or operated the facility, did not provide sufficient well-pled facts to support a claim).

Plaintiffs respond by improperly conflating jurisdictional arguments with arguments regarding their failure to state a claim,[5] and the three cases they cite are readily distinguishable. The first case, *Johnson v. Winchester Campbell Properties*, No. 18-cv-04153-VKD, 2018 U.S. Dist. LEXIS 213064 (N.D. Cal. Dec. 18, 2018), involved a question of the court's basis for subject-matter jurisdiction, not personal jurisdiction. Those are distinct concepts, and Dunkin' has never challenged the subject-matter jurisdiction of the Court. Moreover, the *Johnson* court found that the complaint was sufficient because the defendant failed to "offer any evidence to support its contention that it [did] not operate the premises." *Id.* at *8. Dunkin' has done exactly what the defendant in *Johnson* failed to do: introduce evidence that controverts Plaintiffs' allegation that Dunkin' operates the restaurants at issue. (*See* Dkt. 21-1.)

The second case, *Robles v. Domino's Pizza LLC*, No. CV 16-6599 JGB (Ex), 2021 U.S. Dist. LEXIS 124356 (C.D. Cal. June 23, 2021), involved a motion for summary judgment. Such a case is clearly irrelevant to Plaintiffs' contention that courts have rejected attempts to "dismiss an action *on the pleadings*." (Dkt. 26 at 11 (emphasis added).) Furthermore, in *Domino's*, the defendant admitted to controlling the website at issue, 2021 U.S. Dist. LEXIS 124356, at *21, which is far different from the

[5] Dunkin' specifically raised this argument pursuant to Rule 12(b)(6), in addition to also raising it as a jurisdictional challenge pursuant to Rule 12(b)(2). Plaintiffs ignore this in their Opposition, however, and instead entirely recast Dunkin's argument as jurisdictional. (Dkt. 26 at 11.)

circumstances here, where there is only a bare-bones allegation that is refuted by Dunkin's properly considered evidence. (Dkt. 1 ¶¶ 22, 35; Dkt. 21-1.)

The third case, *Crawford v. Uber Techs., Inc.*, No. 17-cv-02664-RS, 2018 U.S. Dist. LEXIS 33778 (N.D. Cal. Mar. 1, 2018), involved a standing inquiry and was concerned with determining whether the defendant was a covered entity under Section 12184 of the ADA, which prohibits discrimination in specified public transportation services provided by private entities and is entirely irrelevant to places of public accommodation. *Id.* at *10-14. Because Plaintiffs have failed to sufficiently plead that Dunkin' operates any of the relevant restaurants, their ADA claim must be dismissed.[6]

### B. Plaintiffs Fail to Sufficiently Plead That They Are Disabled.

Potentially realizing that they fail to sufficiently plead that they are disabled, Plaintiffs attempt to introduce new "facts" regarding lactose intolerance in their Opposition. (*See* Dkt. 26 at 1.) The Court should disregard these statements because "statements by counsel in a brief are not competent evidence," *Griffin v. Harrington*, No. CV 10-08753-VBF-SP, 2013 U.S. Dist. LEXIS 108014, at *14 (C.D. Cal. Jan. 18, 2023), and Plaintiffs may not amend their Complaint through an opposition brief, *Strome v. DMBK Enters.*, No. C 14-2398 SI, 2014 U.S. Dist. LEXIS 126261, at *11-12 (N.D. Cal. Sept. 9, 2014) (Illston, J.) ("Plaintiff's statements in his opposition brief cannot amend the Complaint under Rule 15." (quoting *Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044, 1050 (E.D. Cal. 2008) *aff'd*, 631 F.3d 1299 (9th Cir. 2011))).

Plaintiffs fail to plead that each of them is disabled because they fail to allege what, if any, symptoms each of them *personally* suffers if they consume dairy. And the cases on which they rely further underscore the deficiencies in their allegations: In *Hebert v. CEC Ent. Inc.*, No. 6:16-cv-00385, 2016 U.S. Dist. LEXIS 126756 (W.D. La. July 6, 2016), the court relied on plaintiffs' allegation that "*if their son eats dairy products, he* may have an anaphylactic reaction that could result in death." *Id.* at *8 (emphasis added). In *Harris v. Adams*, No. A157443, 2020 Cal. App. Unpub. LEXIS 6432 (Oct. 1, 2020), the plaintiff alleged the specific symptoms she personally suffered. *Id.* at *2. In *Phillips v. P.F. Chang's*, No. 5:15-cv-00344-RMW, 2015 U.S. Dist. LEXIS 159474 (N.D. Cal. Nov. 23, 2015), a case in which the court

---

[6] As explained more fully in the Opening Brief, the result is the same under the state laws of each Plaintiff's home state. (Dkt. 21 at 18 n.7.)

1   repeatedly observed that its decision to allow the plaintiff's amended complaint to proceed was an

2   extremely close call, the plaintiff alleged the specific health consequences she would suffer. *Id.* at *7.

3        Unlike in the above cases, Plaintiffs in this case fail to allege how being lactose intolerant

4   specifically affects each of them individually if they consume dairy products—that is, they do not plead

5   facts sufficient to allow the Court to determine if their specific experience with dairy products amounts to

6   a disability. Instead, they rely only on general assertions of the types of symptoms and conditions that

7   ingesting milk can cause. (*See* Dkt. 1 ¶¶ 40 ("When lactose moves through the large intestine without

8   being properly digested, it *can cause* gas, bloating, belly pain and diarrhea." (emphasis added)), 41

9   ("*Persons* with lactose intolerance and milk allergies experience *various levels of reactions* to the

10  ingestion of milk and milk-containing products, including a bloated stomach, intestinal gas, nausea and

11  vomiting, stomach pain and cramping, and diarrhea." (emphasis added)); *see also id.* ¶¶ 45-46 (describing

12  generally the types of symptoms that may occur to persons with a milk allergy).) Such generalized

13  allegations about what a condition might do to a hypothetical individual are insufficient to allege that

14  Plaintiffs, as impacted by their own experiences with lactose intolerance, are substantially limited in any

15  major life activities, and thus are insufficient to show that each Plaintiff is disabled. Moreover, the result

16  is the same under the state laws of each Plaintiff's home state. (*See* Dkt. 21 at 19 n.8.)

17        **C.    Plaintiffs Must Put Dunkin' on Notice of Their Condition, Need for a Modification,**

18        **or Preferred Modification.**

19        Plaintiffs' argument that they were not required to put the relevant restaurant or employees on

20  notice of their condition, need for a modification, or preferred modification, is completely nonsensical,

21  and contrary to their own cited cases. (Dkt. 26 at 18-19.) *See Harris*, 2020 Cal. App. Unpub. LEXIS 6432,

22  at *11-12 (affirming demurrer because "simply advising a restaurant that one is lactose intolerant does not

23  provide notice that the person suffers from a qualifying disability" and "[a]bsent knowledge that [the

24  plaintiff] was disabled, the restaurant cannot be held liable for refusing to serve her *because of her*

25  *disability* or failing to modify its menu to accommodate her disability"). How could Plaintiffs receive a

26  Non-Dairy Alternative for free without asking for a Non-Dairy Alternative for free? If Plaintiffs' argument

27  were correct, then even if the relevant franchisees implemented Plaintiffs' requested modification, to

28  receive it, Plaintiffs still would need to identify themselves as being lactose intolerant, tell the employees

they need a modification, and request the modification. In other words, if the franchisees had a policy that they would offer Non-Dairy Alternatives free of charge to individuals with lactose intolerance who need a modification, they still must be able to distinguish individuals with lactose intolerance and individuals who order Non-Dairy Alternatives for non-disability related reasons. Without identifying themselves as being lactose intolerant and needing a modification, *Plaintiffs could not take advantage of the modification they request even if it were available to them*.

Plaintiffs attempt to distinguish the employment discrimination cases cited by Dunkin' because they "fall[] under a completely different section of the ADA," but such cases are entirely analogous on the issue of notice. The concepts of a reasonable accommodation under Title I and a reasonable modification under Tile III are the same in that neither an employer nor a place of public accommodation can be expected to provide an adjustment—regardless of whether it is called an "accommodation" or "modification"—if it is not on notice that an adjustment is needed. Plaintiffs in Title I and Title III ADA cases must request an adjustment before they can claim a violation. *See Namisnak v. Uber Techs.*, No. 17-cv-06124-RS, 2018 U.S. Dist. LEXIS 221054, at *7 (N.D. Cal. Oct. 3, 2018) (noting a plaintiff must ask a defendant to change its policy before claiming it refused to modify its policy in violation of Title III).

Plaintiffs contend, in a conclusory fashion, that any request for a preferred modification would have been futile and that they were therefore not required to make such a request. (Dkt. 26 at 19.) But they fail to point to any factual allegations in the Complaint to support this theory. For example, they do not allege that they asked any employee to provide a Non-Dairy Alternative for free or about the relevant restaurants' policies on providing Non-Dairy Alternatives for free to lactose-intolerant individuals. So how could Plaintiffs know the request would be futile? No one knows what would have happened if Plaintiffs made such a request, and there are no factual allegations in the Complaint on that point. Accordingly, Plaintiffs have failed to state a viable Title III claim. *See Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004) (an individual alleging discrimination under Title III must show that the public accommodation failed to make a requested reasonable modification).[7]

---

[7] Plaintiffs contend *Fortyune* was overruled but note that the "issue of how or on what grounds *Fortyune* was overruled is *murky*." (Dkt. 26 at 19 n.11 (emphasis added).) This is because *Fortyune* was not overruled. *Fortyune* involved a movie theater's failure to modify its seating policy in violation of Title III of the ADA. The Supreme Court case that allegedly overruled *Fortyune*, *L.A. County v. Humphries*, 562 U.S. 29 (2010), had nothing to do with the ADA. Rather, *Humphries* involved the application of a

**D.      Dunkin' Is Not Required to Offer Accessible Goods or Sell Accessible Goods at the Same Price as Non-Accessible Goods.**

Plaintiffs contend that the ADA requires restaurants to sell accessible goods at the same price as non-accessible goods, but they fail to provide any viable foundation for such a radical theory. On the contrary, this argument conflicts with DOJ's interpretation of the statute as well as with Ninth Circuit authority. (*See* Dkt. 21 at 22-24.) *See Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 671 (9th Cir. 2010) (quoting *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1115 (9th Cir. 2000)) ("The ordinary meaning of [Title III] is that whatever goods or services the place provides, it cannot discriminate on the basis of disability in providing enjoyment of those goods and services, just nondiscriminatory enjoyment of those that are provided. . . . Thus, a bookstore cannot discriminate against disabled people in granting access, but need not assure that the books are available in Braille as well as print."); *Williams v. Bank of Am.*, No. 1:21-cv-00848-AWI-HBK, 2022 U.S. Dist. LEXIS 140127, at *16-17 (E.D. Cal. Aug. 5, 2022) ("At the heart of Plaintiff's claims is her belief that she is entitled to a waiver of the escrow provision. But Title III does not require the provision of different services to people with disabilities, only nondiscriminatory enjoyment of those that are provided. There is no discrimination under the Act where disabled individuals are given the same opportunity as everyone else." (internal quotation marks and citations omitted)), *R. & R. adopted*, 2022 U.S. Dist. LEXIS 188629 (E.D. Cal. Oct. 14, 2022); *Jancik v. Redbox Automated Retail, LLC*, No. 13-1387-DOC (RNBx), 2014 U.S. Dist. LEXIS 67223, at *9-10 (C.D. Cal. May 14, 2014) ("The core meaning of Title III, plainly enough, is that the ADA requires

---

specific requirement in § 1983 cases regardless of the relief sought. *Humphries* clearly overruled two Ninth Circuit cases, *Truth v. Kent School Dist.*, 542 F.3d 634 (9th Cir. 2008) and *Chaloux v. Killeen*, 886 F.2d 247 (9th Cir. 1989), but it had no effect on *Fortyune*. The *Truth* court quoted *Fortyune* for the proposition that, to support standing, plaintiffs may demonstrate that an injury is likely to recur by showing that the defendant had a written policy and the injury stems from that policy. *Truth*, 542 F.3d at 642. In *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 681 (9th Cir. 2023), the Ninth Circuit quoted *Truth* for the same proposition and included the following citation: "*Truth v. Kent Sch. Dist.*, 542 F.3d 634, 642 (9th Cir. 2008) (quoting *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004)), *overruled on other grounds by Los Angeles County v. Humphries*, 562 U.S. 29, 131 S. Ct. 447, 178 L. Ed. 2d 460 (2010)." Such a citation clearly shows *Humphries* overruled *Truth*, not *Fortyune*. Plaintiffs' confusion appears to have arisen from a misunderstanding by the Ninth Circuit in *Herrera v. Cathay Pac. Airways Ltd..*, 94 F.4th 1083 (9th Cir. 2024). The *Herrera* court mistakenly excluded *Truth* from the citation, thereby incorrectly stating *Humphries* overruled *Fortyune*. All of this to say, *Fortyune* is still good law.

equal access to places of public accommodation—not equally valuable goods and services available at the public accommodation.").

The only authority Plaintiffs cite to support their theory, via a cursory *supra* citation, is *Phillips*, 2015 U.S. Dist. LEXIS 159474, an unpublished district court case which was wrongly decided. (*See* Dkt. 26 at 20.)[8] Even the *Phillips* court acknowledged that the Ninth Circuit in *Harkins* offers support for the argument that since Dunkin' makes Non-Dairy Alternatives available to all customers at the same price, "it is like the bookstore that offers access to everybody and charges the same price to all customers for their books but does not offer Braille products or at least not at the same price as regular books." *Phillips*, 2015 U.S. Dist. LEXIS 159474, at *13 (citing *Harkins*, 603 F.3d at 671). Notwithstanding that recognition of the import of *Harkins*, the *Phillips* court concluded that "[t]he ultimate question is whether P.F. Chang's, in providing gluten-free meals, is providing different products or whether the price differential with regular meals is a pretext for discrimination against those with celiac disease." *Id.* at *15. By injecting the question of whether the products at issue are sufficiently different from one another in its analysis, the *Phillips* court went beyond the Ninth Circuit's repeatedly stated view that Title III's prohibition on discrimination in the enjoyment of goods "does not require the provision of different goods or services, *just nondiscriminatory enjoyment of those that are provided*." *Harkins*, 603 F.3d at 671 (emphasis added) (quoting *Weyer*, 198 F.3d at 1115). Thus, under *Harkins*, if a plaintiff's allegations show that a public accommodation is providing non-discriminatory enjoyment of the goods—as is the case here—a court's inquiry stops there, regardless of whether the goods are sufficiently different.

Even if the Court follows *Phillips* and holds that the ADA requires that goods be sufficiently different from one another to warrant price differences, the instant case is easily distinguishable from *Phillips* on a number of fronts. First, unlike a meal with or without gluten, courts have found that dairy milk and Non-Dairy Alternatives are entirely different products. *See Painter v. Blue Diamond Growers*, 757 F. App'x 517, 519 (9th Cir. 2018) (almond milk and dairy milk are "two distinct food products"); *Gitson v. Trader Joe's Co.*, No. 13-CV-01333-VC, 2015 U.S. Dist. LEXIS 170401, at *4 (N.D. Cal. Dec. 1, 2015) (soy milk and dairy milk were "two distinct products"). Plaintiffs' argument that, because

---

[8] The *Phillips* case was voluntarily dismissed soon after the Court's denial of the motion to dismiss. Dkt. 61, *Phillips* (June 6, 2016).

Dunkin' offers caffeine-free and sugar-free beverages for free, it must also offer Non-Dairy Alternatives for free, is thus wrong. (Dkt. 26 at 20, 24.) It is also contrary to common sense. Caffeinated coffee and de-caffeinated coffee are both coffee. Sugar and sugar-free sweeteners are both coffee sweeteners. These are mere variations of coffee beverages; regardless of whether a coffee beverage is made with or without caffeine or with sugar or a sugar-free sweetener, the beverage is still coffee. By contrast, as a matter of law and reality, dairy milk and Non-Dairy Alternatives—even though both can be added to coffee—are entirely different products akin to soda and juice and inherently have different costs. *See Painter*, 757 F. App'x at 519; *Gitson*, 2015 U.S. Dist. LEXIS 170401, at *4.

Second, another difference between the gluten-free food at issue in *Phillips* and the Non-Dairy Alternatives at issue here is the context in which they are offered and requested. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Common experience generates no reasons an individual might order a gluten-free item other than a medical condition, but readily generates many reasons why an individual would order a Non-Dairy Alternative. (*See* Dkt. 21 at 20.) The significance of offering or requesting a gluten-free item is therefore readily apparent: to assist those with a specific medical condition. There is no like implied communication with a request or offer of a Non-Dairy Alternative, only a myriad of possibilities. In this way, the practical contexts in which Non-Dairy Alternatives and gluten-free items are offered or requested are sufficiently different. Thus, even if it were correct to find that allegations of the existence of a separate gluten-free menu sufficiently pled that a restaurant was discriminating against individuals with disabilities, the same cannot be said for offering Non-Dairy Alternatives, which might be ordered for a variety of reasons.

Third, as Plaintiffs note, the *Phillips* court allowed the case to move past a motion to dismiss because the plaintiff alleged that P.F. Chang's "direct[ed] customers with celiac disease to the gluten-free menu." (Dkt. 26 at 23-24.) Here, there are no allegations that Dunkin' *directed* lactose-intolerant customers to a separate menu. (*See* Dkt. 1 ¶ 5.) Further, as the Complaint acknowledges, all customers who want Non-Dairy Alternatives must pay the additional charge. *See Smith v. Pride Mobility Prods. Corp.*, No. 16-CV-04411-LHK, 2017 U.S. Dist. LEXIS 20195, at *13-14 (N.D. Cal. Feb. 12, 2017) (distinguishing *Phillips* because the complaint contained no allegations to suggest that defendant offered

1    anything "separate" or different to disabled individuals than defendant offered to non-disabled individuals

2    or that defendant otherwise intentionally discriminated by targeting customers with a disability), *aff'd in*

3    *part, rev'd in part on other grounds*, 700 F. App'x 583 (9th Cir. 2017).

4          Finally, as explained in the Opening Brief, any holding adopting Plaintiffs' unsupported theory

5    would result in far-reaching, unintended, and very real, consequences. (Dkt. 21 at 24.) Specifically,

6    adopting this position would open the floodgates to future federal court litigation in which courts would

7    be required to determine not only the goods a retailer must carry but also the appropriate price of such

8    goods. Nothing in the ADA or caselaw supports such turmoil or waste of judicial resources. *See A.L. v.*

9    *Walt Disney Parks & Resorts US, Inc.*, 469 F. Supp. 3d 1280, 1305 (M.D. Fla. 2020), *aff'd sub nom. A.L.*

10   *v. Walt Disney Parks & Resorts U.S., Inc.*, 50 F.4th 1097 (11th Cir. 2022) ("It is hardly a feasible judicial

11   function to decide whether shoe stores should sell single shoes to one-legged persons and if so at what

12   price."); *Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 560 (7th Cir. 1999) ("Had Congress proposed to

13   impose . . . so vast a supervisory responsibility on the federal courts, we think it would have made its

14   intention clearer and would at least have imposed some standards."). Further, businesses would face a

15   Hobson's choice between accepting claims of disability status at face value and selling dissimilar products

16   at a reduced price (or providing them for free), or facing the risk of litigation every time a guest requested

17   a different product for free or for the same price as a dissimilar product based on an alleged medical

18   condition. Nothing in the ADA supports this chaos, and the DOJ's commentary rejects Plaintiffs' theory.

19   (Dkt. 21 at 14-15.) Had Congress intended such consequences, it would have made its intention clear.

20         **E.**    **The Upcharge Is Not an Impermissible Surcharge.**

21         A review of Plaintiffs' muddy Complaint reveals that the only basis for their discrimination claim

22   is their repeated conclusory allegation about an alleged surcharge. (Dkt. 1 ¶¶ 19, 74, 94, 121, 129, 136,

23   143, 150, 155.) In their Opposition, Plaintiffs similarly attempt to muddle the analysis surrounding their

24   primary argument by raising the side issue of impermissible surcharges. (*See* Dkt. 26 at 19-21.) Such

25   generic and conclusory allegations of discrimination are, however, insufficient to state a plausible claim.

26   *See Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) (noting that a complaint is "fatally

27   defective" if it includes "only conclusory assertions of discrimination without factual allegations that

28   plausibly gave rise to an entitlement of relief"); *Iqbal*, 556 U.S. at 679-80, 682-83 (finding the complaint

was fatally defective because it included only conclusory assertions of discrimination without factual allegations that plausibly gave rise to an entitlement of relief).

Moreover, a "surcharge" has a specific definition under the ADA and Ninth Circuit authority. Arguments regarding impermissible surcharges are completely inapplicable to the instant case generally, but especially to the issue of whether, and at what price, Dunkin' is allegedly required to offer accessible goods. (*See* Dkt. 21 at 25-26 & n.13.) Plaintiffs have entirely ignored Dunkin's argument demonstrating that, as a matter of law, the Upcharge is not an impermissible surcharge, as they have failed to address the two-part inquiry the Ninth Circuit employs to evaluate whether a cost constitutes an unlawful surcharge. *See Dare v. California*, 191 F.3d 1167, 1171 (9th Cir. 1999) ("In order to evaluate whether a fee constitutes a surcharge that violates Title II of the ADA, we conduct a two-part inquiry."). As discussed in the Opening Brief, Plaintiffs' claim fails on both prongs because (1) providing Non-Dairy Alternatives is not required, and (2) Plaintiffs admit that the Upcharge for Non-Dairy Alternatives applies to *all* customers. (*See* Dkt. 1 ¶¶ 48, 111.) Plaintiffs fail to address either prong and instead make the irrelevant argument that the retail price of dairy milk is the same as Non-Dairy Alternatives.[9] Not only is such an argument irrelevant to the Ninth Circuit's two-part surcharge inquiry, it also ignores the dispositive fact of Plaintiffs admission that *all* customers pay the same price for Non-Dairy Alternatives. (*Id.*) Any price difference between dairy milk and Non-Dairy Alternatives thus cannot be deemed to be an unlawful "surcharge" under the ADA. *See Dare*, 191 F.3d at 1171 ("If nondisabled people pay the same fee for an equivalent service, the charge to disabled people would not constitute a surcharge on a 'required' measure.").

## F.    Plaintiffs' Intentional Discrimination Claim Under the Unruh Act Fails.

Plaintiffs' Unruh Act claim based on a theory of intentional discrimination fails as a matter of law since all customers who order drinks with a Non-Dairy Alternative incur the Upcharge, not just persons with lactose intolerance.[10] (*See* Dkt. ¶¶ 48, 11.) Ninth Circuit and California caselaw make clear that

---

[9] Plaintiffs again rely solely on *Phillips* in support of their argument regarding a surcharge (Dkt. 26 at 23-24), but although that case involved a similar legal theory regarding an alleged upcharge, the court there did not analyze or even mention the Ninth Circuit's two-part test for evaluating whether a cost constitutes an impermissible surcharge under the ADA, further underscoring the inapplicability of the surcharge argument to the issues in this case.

[10] Plaintiffs disregard Dunkin's argument that their Unruh Act claim that is predicated on their ADA claim fails for the reasons discussed above. (*Compare* Dkt. 21 at 26 n.14 *with* Dkt. 26 at 24.)

---

13

policies that apply to everyone but that have a disparate impact on a particular group cannot support an intentional discrimination claim under the Unruh Act. *See, e.g., Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014). (*See* Dkt. 21 at 26-27.)

Plaintiffs argue that their claim is saved because they allege the Upcharge is "targeted to persons with lactose intolerance" because Dunkin'-branded restaurants allegedly offer free modifications for some disabilities but impose the Upcharge on persons with lactose intolerance. (Dkt. 1 ¶¶ 94, 96-97.) This argument fails for two reasons. First, there is nothing in the ADA, its implementing regulations, or the relevant caselaw to suggest that a failure to accommodate different disabilities in the same manner (and at the same price) states a claim of intentional discrimination. Second, Plaintiffs admit that the Upcharge for Non-Dairy Alternatives applies to *all* customers, not just persons with lactose intolerance. (*See* Dkt. 1 ¶¶ 48, 111.) Any policy, therefore, cannot be said to be "targeted" to persons with lactose intolerance, thereby dooming any intentional discrimination claim.

### G.    Plaintiffs Fail to State a Claim for Unjust Enrichment.

Plaintiffs say nothing in response to Dunkin's argument that their unjust enrichment claim should be dismissed for failure to specify the law(s) on which the claim is predicated, thus conceding the point. (Dkt. 26 at 20-21.) *See In re Cciv/Lucid Motors Sec. Litig.*, 2023 U.S. Dist. LEXIS 122662, at *8 n.3. The Court should dismiss the claim for this reason alone, but even were the Court to consider it, Plaintiffs' reference to only California law makes plain that at most they have pled a California unjust enrichment claim—but one that cannot survive. (*See* Dkt. 26 at 20-21.) Plaintiffs argue that their claim "should be construed as a claim seeking restitution." (*Id.* at 20.) But even doing so, Plaintiffs lose.

First, restitution is an equitable remedy, and a federal court may not consider claims seeking equitable remedies where monetary damages provide an adequate remedy. *Guzman v. Polaris Indus.*, 49 F.4th 1308, 1313-14 (9th Cir. 2022). Here, Plaintiffs have not alleged they have no adequate remedy at law. (*See* Compl. ¶¶ 152-158.) Indeed, their Unruh Act claim makes clear they have an adequate legal remedy. (*Id.* ¶ 92, Prayer for Relief (seeking statutory, compensatory, and treble damages and attorneys' fees under the Unruh Act).) That Plaintiffs' Unruh Act claim also cannot succeed is not a barrier to this Court's dismissal of this claim for lack of equitable jurisdiction. *See id.* (holding the district court lacked

equitable jurisdiction over a state-law claim seeking restitution because plaintiff "had an adequate remedy at law in his time-barred [state-law] claim").

Second, even were the Court to consider a restitution claim, the California Court of Appeals held in *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583 (2008), "[t]here is no equitable reason for invoking restitution when the plaintiff gets the exchange which he expected." *Id.* at 1593 (quoting *Comet Theatre Enters. v. Cartwright*, 195 F.2d 80, 83 (9th Cir. 1952), which interpreted California law). Here, Plaintiffs' allegations demonstrate they got *exactly* the exchange they expected. Specifically, they plead that "on every occasion" they ordered drinks at Dunkin'-branded restaurants, they were charged an Upcharge and that they plan to continue visiting Dunkin'-branded stores and ordering drinks. (*See* Dkt. 1 ¶¶ 3, 25-34, 47.) They do *not* plead that they did not know about the Upcharge when they ordered, that they were charged more than they expected, or that they did not receive the drink they ordered. Thus, Plaintiffs' own allegations demonstrate that they got "the exchange [they expected]," and that "[t]here is no equitable reason for invoking restitution." *See Peterson*, 164 Cal. App. 4th at 1593.

### H.    The Court Should Deny Leave to Amend.

In the alternative to dismissal, Plaintiffs request that the Court grant them leave to amend. (Dkt. 26 at 21.). The Court should deny this request, as any amendment would be futile. *See, e.g.*, *Tiamson v. Equifax, Inc.*, Nos. 19-CV-08430-LHK & No. 20-CV-00795-LHK, 2020 U.S. Dist. LEXIS 124835, at *24 (N.D. Cal. July 14, 2020) (dismissing case with prejudice where "Plaintiffs' only theory of liability . . . fails as a matter of law" and for lack of personal jurisdiction).

## IV.    CONCLUSION

For these reasons, the Court should grant Dunkin's motion and dismiss this action in its entirety with prejudice.

DATED: April 22, 2024

DAVID B. CARPENTER
BRETT E. COBURN
MEGHAN M. MCBERRY
**ALSTON & BIRD LLP**

/s/ *Meghan M. McBerry*
Meghan M. McBerry

Attorneys for Defendant
Dunkin' Donuts LLC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on April 22, 2024, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will automatically send an email notification of such filing to all attorneys of record.

/s/ Meghan M. McBerry
Meghan M. McBerry

DEFENDANT DUNKIN' DONUTS LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 3:23-CV-06621-SI