UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHELSEA GARLAND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DUNKIN DONUTS LLC,<br><br>Defendant. | Case No. 23-cv-06621-SI<br><br>**ORDER GRANTING MOTION TO DISMISS, WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 21 |

On May 31, 2024, the Court held a hearing on defendant's motion to dismiss the complaint. For the reasons set forth below, the Court GRANTS the motion to dismiss, with leave to amend.

## BACKGROUND

This lawsuit challenges, as disability discrimination, the extra fee charged for substituting non-dairy alternatives in place of cow's milk in beverages served at Dunkin' Donuts restaurants. Plaintiffs are ten individuals with lactose intolerance, one of whom also has a milk allergy. They bring suit on behalf of themselves as well as a class of individuals, against Dunkin' Donuts LLC ("Dunkin'").

Plaintiffs allege that Dunkin' has "created a separate, higher-priced menu, aimed at customers who cannot ingest milk." Dkt. No. 1 ("Compl.") ¶ 5. According to the complaint, Dunkin' charges from $0.50 to $2.15 extra to customers who are lactose intolerant in order to substitute a non-dairy alternative such as soy, oat, coconut or almond milk in Dunkin' beverages. *Id.* ¶ 4. Plaintiffs allege there is no material difference in price between cow's milk and the non-dairy alternatives, nor does it require additional work on the part of Dunkin' employees, such as would justify levying this extra fee. *Id.* ¶¶ 7-9, 14. Dunkin' will substitute whole milk or skim milk for the standard offering of 2% cow's milk at no additional charge. *Id.* ¶¶ 8-10. Dunkin' will also modify its beverages at no extra charge to make them caffeine-free or sugar-free. *Id.* ¶¶ 11-12.

Plaintiffs allege that lactose intolerance and milk allergies are disabilities, and that Dunkin' "charges customers with lactose intolerance and milk allergies an excessively high Surcharge to substitute Non-Dairy Alternatives in its drinks." *Id.* ¶ 15-17.

Plaintiffs sue under the Americans with Disabilities Act ("ADA") and the anti-discrimination laws of the states of California, Colorado, Hawaii, Texas, Massachusetts, and New York. They also allege the conduct constitutes common law unjust enrichment. *Id.* ¶ 18. Plaintiffs bring suit on behalf of a national class consisting of: "All persons who (1) suffer from lactose intolerance, or an intolerance to milk or milk-containing products; and (2) who purchased drinks or other items from Dunkin within four years prior to the filing of the Complaint and continuing to the present." Compl. ¶ 60. Plaintiffs also bring various subclasses consisting of citizens of the states of California, Hawaii, New York, Colorado, Massachusetts, and Texas. *Id.* Plaintiffs seek monetary damages, an order for disgorgement of illegally obtained monies, and declaratory relief. *Id.* at 24.

## LEGAL STANDARDS

### I.     Rule 12(b)(2)

A defendant may move to dismiss the complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Upon defendant's motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). In determining whether the plaintiff has met this burden, a district court may consider evidence contained in affidavits and discovery materials. *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). However, when a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make "a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Where undisputed, a district court must take as true the plaintiff's version of the facts. *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (citations omitted). "[C]onflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a *prima facie* case for personal jurisdiction exists." *Id.* (citations

omitted).

## II.     Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts do not require "heightened fact pleading of specifics," *Twombly*, 550 U.S. at 544, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. The plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.*

In deciding whether the plaintiff has stated a claim, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in his or her favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc.*, 536 F.3d 1049, 1055 (9th Cir. 2008). As a general rule, the Court may not consider any materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of "matters of public record," such as prior court proceedings. *Id.* at 688-89. The court may also consider "documents attached to the complaint [and] documents incorporated by reference in the complaint . . . without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly

3

1  be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)
2  (citations and internal quotation marks omitted).

## DISCUSSION

Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction, and under Rule 12(b)(6), for failure to state a claim. Plaintiffs oppose.

## CONCLUSION

### I. Personal Jurisdiction

Defendant Dunkin' Donuts LLC is incorporated in the state of Delaware, with its principal place of business in Massachusetts. Compl. ¶ 35. Defendant contends that this Court lacks personal jurisdiction over it for the following reasons: "[I]t has not engaged in any activities that would render it subject to specific jurisdiction in California. Indeed, Dunkin' has no role in this matter. It does not own, operate, or lease any Dunkin'-branded restaurants, the vast majority of which are franchised (all Dunkin'-branded restaurants in California are franchised)." Dkt. No. 21 ("Mot.") at 1.

#### A. Legal Standard

Where there is no applicable federal statute that governs personal jurisdiction, courts "properly exercise personal jurisdiction over a defendant 'if it is permitted by [the state's] long-arm statute and if the exercise of jurisdiction does not violate federal due process.'" *Autodesk, Inc. v. Kobayashi + Zedda Architects, Ltd.*, 191 F. Supp. 3d 1007, 1013 (N.D. Cal. 2016) (quoting *Pebble Beach Co.*, 453 F.3d at 1154). Since "California's long-arm statute allows the exercise of personal jurisdiction to the fullest extent permissible under the U.S. Constitution," the district court need only determine whether the exercise of jurisdiction comports with federal due process requirements. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). A district court's exercise of personal jurisdiction comports with due process when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play

1   and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted).

2   Personal jurisdiction is either general or specific. "A court may assert general jurisdiction
3   over foreign (sister-state or foreign-country) corporations to hear any and all claims against them
4   when their affiliations with the State are so 'continuous and systematic" as to render them essentially
5   at home in the forum State.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915,
6   919 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317). A corporation is "essentially at home" in its place
7   of incorporation and principal place of business. *Id*. at 924. Plaintiffs do not contend that defendant
8   is subject to general jurisdiction in California.

9   Specific jurisdiction "covers defendants less intimately connected with a State, but only as
10  to a narrower class of claims." *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 592 U.S.
11  351, 359 (2021). The Ninth Circuit has articulated three requirements for establishing specific
12  jurisdiction over a non-resident defendant:

> (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Axiom Foods, Inc. v. Acerchem Int'l, Inc*., 874 F.3d 1064, 1068 (9th Cir. 2017) (alterations and quotations omitted). The plaintiff bears the burden of satisfying the first two prongs of the test, and if the plaintiff fails to satisfy either prong, then the district court does not have personal jurisdiction over the defendant. *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff satisfies both prongs, then the burden shifts to the defendant to present a "compelling case" that the exercise of jurisdiction would not be reasonable under the third prong. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985). All three prongs of the test must be met for the district court to exercise personal jurisdiction over the defendant.

### B.     Request for Judicial Notice

The Court first turns to defendant's request for judicial notice, as that request implicates personal jurisdiction. Defendant attaches to its motion a roughly 500-page document that its counsel declares "is a genuine copy of Dunkin' Donuts Franchising LLC's Franchise Disclosure Document,

5

dated March 24, 2023." Dkt. No. 21-1, Coburn Decl. ¶ 2 & Ex. 1. The Franchise Disclosure Document ("FDD") "was obtained from the website of the Wisconsin Department of Financial Institutions on March 4, 2024 . . . ."[1] Coburn Decl. ¶ 3. Defendant asserts that the following facts are "not subject to reasonable dispute[,]" asking the Court to take judicial notice that:

- Dunkin'-branded restaurants are primarily owned and operated by franchises, including all of the ones located in Plaintiffs' states of residence—California, Hawaii, New York, Colorado, Massachusetts, and Texas.

- The franchisor entity is Dunkin' Donuts Franchising LLC.

- No new company-owned stores were projected to be open in fiscal year 2023 (the 12-month period between December 31, 2022 and December 31, 2023).

- Under the franchise agreements between the franchisor and the franchisees, the franchises retain authority to set prices for the products they sell, including Non-Dairy Alternatives.

- The Franchise Disclosure Document makes the franchisees aware of their obligation to comply with the ADA.

- The franchise agreements also place the burden on the franchisees to ensure their compliance with all applicable laws in the operation of their restaurants.

Dkt. No. 22 at 3-4 (citations omitted).

For the most part, these are precisely the types of disputed facts that cannot be assumed on a request for judicial notice. *See* Fed. R. Evid. 201(b) (permitting judicial notice of "a fact that is not subject to reasonable dispute . . ."). Accepting defendant's proposed facts as true would require the Court to assume, among other things: that the FDD posted on the Wisconsin Department of Financial Institutions is the same one signed by all the franchisees whose restaurants plaintiffs in this case visited; and that the information contained in the FDD, which was uploaded to the Wisconsin Department of Financial Institutions website on March 24, 2023, had not changed by the time plaintiffs filed their complaint on December 26, 2023. Moreover, should this case proceed on the merits, some of the critical factual questions will be who owns or operates the restaurants in question and whether or not defendant has any control over the prices of products sold in the franchises.

The Court DENIES defendant's request for judicial notice.

---

[1] The declaration does not state *who* obtained the document from the website.

6

**C. Analysis**

Regardless of the request for judicial notice, however, it is still plaintiffs' burden to demonstrate that the Court has jurisdiction over defendant. *See Pebble Beach Co.*, 453 F.3d at 1154. Although plaintiffs need only make a *prima facie* showing at the motion to dismiss stage, "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (citing *Alperin v. Vatican Bank,* 410 F.3d 532, 539 n. 1 (9th Cir. 2005); *Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.,* 788 F.2d 535, 540 (9th Cir. 1986)).

Here, the only allegations regarding personal jurisdiction are that jurisdiction exists "due to [defendant's] continuous and systematic contacts with the State of California. Defendant operates retail stores in the San Francisco Bay area, Walnut Creek, Half Moon Bay, South San Francisco and Fremont, all within the State of California and the Northern District of California." Compl. ¶ 22; *see also id. ¶* 35 ("Dunkin operates over 9,500 coffee stores in the United States and over 125 in the state of California.").

Defendant argues that it does not "operate" any retail stores in California but that all of the Dunkin'-branded restaurant in California are owned and operated by franchisees. Mot. at 6. Defendant further argues that the franchises entered into franchising agreements with a different entity (Dunkin' Donuts Franchising LLC), not with defendant, and that those agreements state that the franchisees have the authority to set prices and have the obligation to ensure compliance with the ADA. *Id.* In response, plaintiffs simply state that "whether the allegations are 'true' is a factual argument inappropriate on a motion to dismiss." Dkt. No. 26 ("Opp'n") at 5. Plaintiffs tether their response to the merits of their ADA claim, arguing that the allegations that defendant "operates" a place of public accommodation within the meaning of the ADA must be taken as true at this stage. *Id.* Plaintiffs make no attempt at demonstrating how defendant purposefully directed its activities toward the forum, or purposefully availed itself of the privileges of conducting activities in the forum, <u>and</u> that the claim is one which arises out of or relates to the defendant's forum-related activities. *See Axiom Foods,* 874 F.3d at 1068. By failing to make any showing beyond a few sparse

7

1   allegations, plaintiffs have not met their burden to show this Court has personal jurisdiction over
2   defendant.
3         The Court therefore GRANTS defendant's motion to dismiss for lack of personal
4   jurisdiction. Because amendment could potentially cure this deficiency, dismissal is with leave to
5   amend. Plaintiffs have asked that the Court "allow Plaintiffs to undertake jurisdictional discovery
6   regarding who owns, operates, or leases the relevant stores and whether Dunkin requires franchisees
7   to impose a surcharge for Non-Dairy Alternatives." Opp'n at 4 n.2. The Court finds this request to
8   be appropriate. "Jurisdictional discovery should ordinarily be granted where pertinent facts bearing
9   on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is
10  necessary." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 507 (9th Cir. 2023) (internal quotation
11  marks and citation omitted). The parties should be prepared to discuss the scope and timing of
12  jurisdictional discovery at the upcoming case management conference.
13        Because the Court finds personal jurisdiction is lacking at this time, the Court does not
14  address defendant's alternative argument that at minimum the Court should dismiss the claims of
15  the out-of-state plaintiffs for lack of a causal connection between their injuries and defendant's
16  contacts with California.

## II.     Failure to State a Claim

      Defendant also moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing plaintiffs' ADA claim and California state law claims are factually deficient. In its motion, defendant argues, *inter alia*, that plaintiffs have failed to sufficiently plead they are disabled under the ADA, that Dunkin' is not a public accommodation because it does not "operate" the restaurants at issue, and that plaintiffs were required to put Dunkin' on notice of their condition or of their need for a modification. Defendant further argues that, as a matter of law, the ADA does not require public accommodations to offer accessible goods or to sell them at the same price as non-accessible goods, and that the "upcharge" for non-dairy alternatives is not a surcharge prohibited under the ADA. As explained below, the Court finds that plaintiffs *in this case* have failed to allege sufficiently that they themselves are disabled within the meaning of the ADA.

### A. Disability Within the Meaning of the ADA

Title III of the Americans with Disabilities Act of 1990 prohibits discrimination by public accommodations. 42 U.S.C. §§ 12182-12188 (1990). As a general rule, Title III provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." *Id.* § 12182(a).

In the disability context, California state law operates similarly to the ADA, as the Unruh Act provides that any violation of the ADA necessarily "shall constitute a violation of [the Unruh Act]." Cal. Civ. Code § 51(f) (2016); *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007). A Title III discrimination claim, and by extension the Unruh Act, is premised on the following elements: (1) the plaintiff is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by defendant because of her disability. 42 U.S.C. §§ 12182(a)-(b) (1990); *Molski*, 481 F.3d at 730.

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). To prove disability, a plaintiff must establish that she meets any one of these tests. Plaintiffs here are proceeding under the first test, subpart (A).

The ADA Amendments Act of 2008 ("ADAAA") clarified and broadened the scope of the ADA, in response to Supreme Court rulings that "narrowed the broad scope of protection intended to be afforded by the ADA . . . ." ADA Amendments Act of 2008, Pub. L. No. 110-325, § 2(a)(4), (5), 122 Stat. 3553. Congress found that the Supreme Court had "interpreted the term 'substantially limits' to require a greater degree of limitation than was intended by Congress" and that lower courts had "incorrectly found in individual cases that people with a range of substantially limiting impairments are not people with disabilities[.]" *Id.* § 2(a)(6), (7). As relevant to the present case, the ADAAA specifies that "major life activities include, but are not limited to, . . . eating." 42

1    U.S.C. § 12102(2)(A). The ADAAA also specifies that "a major life activity also includes the

2    operation of a major bodily function, including but not limited to, . . . digestive . . . functions." *Id.*

3    § 12102(2)(B).

4          Congress also provided guidance on "disability" under the ADA, stating that "the definition

5    of disability in this chapter shall be construed in favor of broad coverage of individuals under this

6    chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A).

7    Among other things, the statute now states that "[a]n impairment that is episodic or in remission is

8    a disability if it would substantially limit a major life activity when active." *Id.* § 12102(4)(D).[2]

9    The Title III regulations, which went into effect in October 2016, likewise direct that, "[i]n

10    determining whether an impairment substantially limits a major life activity, the term major shall

11    not be interpreted strictly to create a demanding standard." 28 C.F.R. § 36.105(c)(2)(i). The

12    regulations go on to state that, as a rule of construction,

> (i) The term "substantially limits" shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. "Substantially limits" is not meant to be a demanding standard.
>
> (ii) The primary object of attention in cases brought under title III of the ADA should be whether public accommodations have complied with their obligations and whether discrimination has occurred, not the extent to which an individual's impairment substantially limits a major life activity. Accordingly, the threshold issue of whether an impairment substantially limits a major life activity should not demand extensive analysis.
>
> . . .

*Id.* § 36.105(d)(1).

      Whether lactose intolerance qualifies as a disability under the ADA remains an open question. Plaintiffs cite to at least one lower court case holding that a severe dairy allergy could be a disability: *Hebert v. CEC Ent., Inc.*, No. 6:16-CV-00385, 2016 WL 5003952, at *3 (W.D. La. July 6, 2016), *report and recommendation adopted*, No. 16-CV-0385, 2016 WL 5081009 (W.D. La. Sept. 16, 2016).[3] In *Hebert*, the district court denied a motion to dismiss an ADA discrimination

---

[2] The ADAAA also clarifies that "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures . . . ." *See* 42 U.S.C. § 12102(4)(E)(i). The question of mitigating measures does not appear to be at issue in the present case.

[3] Plaintiffs also cite to *Harris v. Adams*, No. A157443, 2020 WL 5835149 (Cal. Ct. App.

10

1    claim brought by parents who alleged that their child had a medically diagnosed food allergy and
2    might have a life-threatening anaphylactic reaction if he came into contact with dairy products. *Id.*
3    at *1. The manager of a Chuck E. Cheese declined to give them an accommodation from the
4    restaurant's policy barring outside food, when the parents asked to bring in a "small, safe meal" for
5    their child from outside the restaurant. *Id.* The court found the allegations sufficient to show, at
6    least at the pleading stage, that the child was disabled under the ADA.

7    What distinguishes *Hebert* from this case is that the allegations there were much more
8    fulsome. Defendant does not challenge plaintiffs' position that lactose intolerance or a milk allergy
9    *could* qualify as a disability under the ADA. Dunkin' instead argues that the plaintiffs here have
10   not alleged sufficient facts to show their lactose intolerance or milk allergy plausibly meets the ADA
11   standard. The Court agrees.

12   There are ten plaintiffs in this case. Nine allege that they have lactose intolerance and one
13   (Lora Premo, who resides in Colorado) alleges having lactose intolerance and a diagnosed milk
14   allergy. Compl. ¶¶ 25-34. The complaint also states that another plaintiff (Ruby Smith, who resides
15   in Texas) "has had medical treatment related to her lactose intolerance including, but not limited to,
16   an emergency room visit." *Id.* ¶ 34. Aside from these two individuals, the complaint repeats only
17   the same generic, conclusory descriptor of each plaintiff's condition: "As a result of [his/her] lactose
18   intolerance, [plaintiff] is substantially impaired in several major life activities and is required to
19   consume non-dairy milk alternatives." *See id.* ¶¶ 25-34. The complaint goes on to describe what
20   lactose intolerance is and how it affects people generally. *See, e.g., id.* ¶ 40 ("When lactose moves
21   through the large intestine without being properly digested, it can cause gas, bloating, belly pain and
22   diarrhea."). The complaint does not explain how any of the plaintiffs themselves are impacted by
23   their lactose intolerance or milk allergy. For instance, the complaint explains that there are two

---

Oct. 1, 2020) (unpublished). That case involved a plaintiff suffering from irritable bowel syndrome who sued under the California Unruh Act. The Court is reluctant to rely on a case that the California Court of Appeal itself designated as unpublished and noncitable. Nevertheless, plaintiffs' reliance on this case is curious, given that the *Harris* court affirmed the demurrer on the cause of action alleging violation of the Unruh Act based on a violation of the ADA. Plaintiff had requested modifications to her meals based on "lactose intolerance" and the appellate court explained that "simply advising a restaurant that one is lactose intolerant does not provide notice that the person suffers from a qualifying disability." *Id.* at *4.

11

1    types of milk allergies, one of which may cause immediate symptoms such as "swelling, breathing

2    problems, rashes, loss of consciousness and anaphylaxis." *Id.* ¶ 45.  The second type of milk allergy

3    "can cause gastrointestinal systems [sic] such as vomiting, bloating and diarrhea."  *Id.* ¶ 46.  The

4    complaint does not state what type of milk allergy Premo—the sole plaintiff alleging a milk

5    allergy—has.

6            The problem with this is two-fold: (1) the allegations are conclusory and therefore do not

7    rise to the level of *plausibly* alleging that any of the plaintiffs are disabled within the meaning of the

8    ADA; and (2) whether someone is disabled under the ADA is an individualized inquiry.  Title III

9    regulations state: "The determination of whether an impairment substantially limits a major life

10   activity requires an individualized assessment.  However, in making this assessment, the term

11   'substantially limits' shall be interpreted and applied to require a degree of functional limitation that

12   is lower than the standard for substantially limits applied prior to the ADA Amendments Act."  28

13   C.F.R. § 36.105(d)(1)(vi).  Thus, the question of whether a particular food allergy or intolerance

14   renders a person disabled under the ADA requires individualized analysis, even if the analysis need

15   not be extensive.  *See id.* § 36.105(d)(1)(ii), (vi).

16           The cases on which plaintiffs rely demonstrate as much.  In addition to the *Hebert* case noted

17   above, plaintiffs rely throughout their brief on *Phillips v. P.F. Chang's China Bistro, Inc.*, No. 5:15-

18   CV-00344-RMW, 2015 WL 7429497 (N.D. Cal. Nov. 23, 2015) ("*Phillips II*").  That case involved

19   a plaintiff with celiac disease who sought to represent a class of people challenging P.F. Chang's

20   practice of charging $1 more for some gluten-free menu items than for comparable non-gluten-free

21   menu items.  As with *Hebert*, the allegations in *Phillips II* were tied to the symptoms and experiences

22   of the plaintiff herself rather than relying on generic descriptions of what celiac disease could do to

23   a hypothetical individual.  The plaintiff described, among other things, the specific symptoms that

24   she herself suffered if she ate gluten, alleging that she had to pay careful attention to the foods she

25   ate and could not dine at some restaurants at all because of the risk of cross-contamination.  *Id.* at

26   *3.  The district court found that, accepting the plaintiff's allegations as true, she had pleaded enough

27   facts to state a plausible claim for disability discrimination under the Unruh Act.  *Id.* at *5.

28           The Court notes that in *Phillips II*, the disability question was analyzed under the Unruh Act,

1  which asks whether a disease or condition "limits a major life activity," in contrast to the
2  "substantially limits" standard under the ADA. Still, the Court describes *Phillips II* here to illustrate
3  that, even under the cases plaintiffs cite, the allegations were much more than conclusory. The
4  Court further notes that the *Phillips II* court dismissed a prior version of the complaint, finding
5  insufficient the bare allegations that the plaintiff "must eat a diet of foods not containing gluten and
6  that has not been exposed to gluten," and that she would "suffer adverse health consequences if she
7  ingests gluten." *See Phillips v. P.F. Chang's China Bistro, Inc.*, No. 5:15-CV-00344-RMW, 2015
8  WL 4694049, at *1, 4 (N.D. Cal. Aug. 6, 2015) ("*Phillips I*").

9      The Court agrees with defendant that, as stated in the complaint, plaintiffs have failed to
10 plausibly allege that they are disabled within the meaning of the ADA. This provides an additional
11 ground for dismissing the complaint, apart from the jurisdictional concerns addressed above.
12 Dismissal is with leave to amend.

14     **B.**     **Remaining Issues**
15     The Court does not reach the parties' arguments as to the remaining elements of an ADA
16 discrimination claim, nor does the Court reach the arguments regarding plaintiffs' California state
17 law claims. Should plaintiffs be able to establish jurisdiction and to sufficiently allege that they are
18 disabled under the ADA, then defendant may re-raise the unaddressed arguments in a future motion
19 to dismiss. Plaintiffs are likewise given leave to amend their complaint to address the issues raised
20 in the motion to dismiss, even if those matters were not specifically addressed in today's Order.

23     **CONCLUSION**
24     For the foregoing reasons and for good cause shown, the Court hereby GRANTS the motion
25 to dismiss the complaint, for lack of personal jurisdiction and for failure to allege sufficient facts.
26 Plaintiffs are granted leave to amend. The Court also intends to grant plaintiffs' request for limited
27 jurisdictional discovery.
28     The case management conference remains on calendar for June 21, 2024. The parties shall

be prepared, in their joint case management statement (due June 14) and at the conference, to discuss the scope and timing of jurisdictional discovery and the timing for the filing of an amended complaint.

**IT IS SO ORDERED**.

Dated: May 31, 2024

SUSAN ILLSTON
United States District Judge