David B. Carpenter (*pro hac vice*)
Brett E. Coburn (*pro hac vice*)
**ALSTON & BIRD LLP**
1201 West Peachtree Street, Suite 4900
Atlanta, Georgia 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
david.carpenter@alston.com
brett.coburn@alston.com

Meghan M. McBerry (SBN 334464)
**ALSTON & BIRD LLP**
55 Second Street, Suite 2100
San Francisco, CA 94105
Telephone: (415) 243-1000
Facsimile: (415) 243-1001
meghan.mcberry@alston.com

Attorneys for Defendant
**DUNKIN' DONUTS FRANCHISING LLC**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHELSEA GARLAND, TONYA HUGHES, NATASHA HERNANDEZ, GEANEEN COJOM, ARSENIO PELAYO, ALBERT FITCH, PAULEEN MARA, LORA PREMO, URCELINA MEDEIROS, RUBY SMITH, individually and on behalf of all those similarly situated,<br><br>                  Plaintiffs,<br><br>    v.<br><br>DUNKIN DONUTS FRANCHISING, LLC, 6201 HOLLYWOOD DONUTS LLC, BURTON RESTAURANTS, LLC, RW OAKLAND LLC, MADISON FOOD MANAGEMENT, LLC, GOLDEN GATE RESTAURANT GROUP, LLC,<br><br>                Defendants. | Case No.: 3:23-CV-06621-SI<br><br>**DEFENDANT DUNKIN' DONUTS FRANCHISING LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**Judge:** Hon. Susan Illston<br>**Date:** March 14, 2025<br>**Time:** 10:00 a.m. PT<br>**Location:** San Francisco Courthouse<br>          Courtroom 1 – 17th Floor<br>          450 Golden Gate Avenue<br>          San Francisco, CA 94102<br><br>Action filed: December 26, 2023<br>FAC filed:   December 11, 2024 |

**TO THE COURT, ALL INTERESTED PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on March 14, 2025 at 10:00 a.m. before the Hon. Susan Illston, District Judge in the U.S. District Court, Northern District of California, located at San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Dunkin' Donuts Franchising LLC ("Dunkin'") will present a motion to dismiss Plaintiffs' First Amended Class Action Complaint with prejudice (the "FAC").[1]

The FAC fails to cure the defects raised by the Court in its previous dismissal order. Plaintiffs still fail to establish this Court's personal jurisdiction over Dunkin' because their allegations still involve Dunkin'-branded stores that are owned and operated by franchisees and they admit that the pricing for non-dairy alternative products is set by franchisees, not Dunkin'. Fed. R. Civ. P. 12(b)(2). Additionally, the FAC still fails to state any valid claims under applicable law because, at bottom, Plaintiffs admit that all customers are charged the same prices for the same drinks, regardless of disability status. Fed. R. Civ. P. 12(b)(6). Plaintiffs' inability to correct these fatal flaws demonstrates the futility of any further amendment.

This Motion is supported by the accompanying Memorandum of Points and Authorities and the Declaration of Brett Coburn.

For all foregoing reasons, Dunkin' hereby requests the Court dismiss the FAC and terminate this action.

DATED: January 15, 2025

DAVID B. CARPENTER
BRETT E. COBURN
MEGHAN M. MCBERRY
**ALSTON & BIRD LLP**

/s/ *Meghan M. McBerry*
Meghan M. McBerry

Attorneys for Defendant
Dunkin' Donuts Franchising LLC

---

[1] Dunkin' understands that this hearing will be conducted via Zoom in accordance with the "NOTICE IN ALL CIVIL AND CRIMINAL MATTERS PENDING BEFORE JUDGE SUSAN ILLSTON OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA."

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     FACTUAL BACKGROUND ..................................................................................2

    A.      Relevant Allegations in the FAC. .............................................................2

    B.      Notable Omissions from the FAC. ............................................................5

III.    RULE 12(B)(2) ARGUMENT ...............................................................................5

    A.      This Court Lacks Personal Jurisdiction Over Dunkin'. ............................5

IV.     RULE 12(B)(6) ARGUMENTS .............................................................................9

    A.      Dunkin' Is Not a Place of Public Accommodation. ..................................9

    B.      Plaintiff Hughes Fails to Sufficiently Plead that She Is Disabled. .........11

    C.      Certain Plaintiffs Fail to Adequately Plead Notice. ...............................11

    D.      Plaintiffs' ADA Claim Fails as a Matter of Law. ..................................13

        1.      The ADA Does Not Require Public Accommodations to Offer Accessible Goods or Sell Them at the Same Price as Non-Accessible Goods. .............................13

        2.      The Upcharge for Non-Dairy Alternatives Is Not a Prohibited Surcharge Under the ADA. ...................................................................20

    E.      Plaintiffs Fail to State a Claim for Intentional Discrimination Under the Unruh Act. ........................................................................................22

    F.      Plaintiffs Fail to State a Claim for Unjust Enrichment. ..........................23

    G.      The FAC Should be Dismissed Without Further Leave to Amend or With Prejudice. ...................................................................................25

V.      CONCLUSION....................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.F. v. Starbucks Corp.*,
 No. 3:17-cv-1582-SI, 2018 U.S. Dist. LEXIS 35413 (D. Or. Mar. 5, 2018)...............................13

*A.L. v. Walt Disney Parks & Resorts US, Inc.*,
 469 F. Supp. 3d 1280 (M.D. Fla. 2020), *aff'd sub nom. A.L. v. Walt Disney Parks & Resorts U.S., Inc.*, 50 F.4th 1097 (11th Cir. 2022) ........................................................................15, 16, 17

*Alexander v. Choate*,
 469 U.S. 287 (1985)................................................................................................................14

*Anderson v. Macy's, Inc.*,
 943 F. Supp. 2d 531 (W.D. Pa. 2013)......................................................................................21

*Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*,
 603 F.3d 666 (9th Cir. 2010) ..................................................................................................16

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)..............................................................................................................9, 19

*Belton v. Comcast Cable Holdings, LLC*,
 151 Cal. App. 4th 1224 (2007) ...............................................................................................23

*Betancourt v. Federated Dep't Stores*,
 732 F. Supp. 2d 693 (W.D. Tex. 2010).....................................................................................13

*Bower v. Global Orange Dev., LLC*,
 No. 1:24-cv-00631-HYJ-PJG (W.D. Mich. Dec. 16, 2024) ...........................................*passim*

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
 582 U.S. 255 (2017)....................................................................................................................8

*Brown v. City Nat'l Bank*,
 No. 23-cv-03195-AMO, 2024 U.S. Dist. LEXIS 9404 (N.D. Cal. Jan. 18, 2024) .........................4

*Cardinal Health Sols., Inc. v. Valley Baptist Med. Ctr.*,
 643 F. Supp. 2d 883 (S.D. Tex. 2008) .....................................................................................10

*Credos Indus. Supplies & Rentals, LLC v. Targa Pipeline Mid-Continent WestTex LLC (In re KP Eng'g, LP)*, No. H-22-00664, 2022 U.S. Dist. LEXIS 145150 (S.D. Tex. Aug. 15, 2022) ........................................................................................................................................24

*Dare v. California*,
 191 F.3d 1167 (9th Cir. 1999) ..........................................................................................21, 22

ii

*Doe v. Mut. of Omaha Ins. Co.*,
  179 F.3d 557 (7th Cir. 1999) ........................................................................15, 16, 17

*Earll v. eBay Inc.*,
  No. 5:11-CV-00262-EJD, 2012 U.S. Dist. LEXIS 111632 (N.D. Cal. Aug. 8, 2012) ..................22

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
  141 S. Ct. 1017 (2021)................................................................................5, 6

*Ford v. Schering-Plough Corp.*,
  145 F.3d 601 (3d Cir. 1998)...............................................................................14

*Fortyune v. Am. Multi-Cinema, Inc.*,
  364 F.3d 1075 (9th Cir. 2004) .........................................................................12

*Gitson v. Trader Joe's Co.*,
  No. 13-cv-01333-VC, 2015 U.S. Dist. LEXIS 170401
  (N.D. Cal. Dec. 1, 2015) ..................................................................14, 18, 19

*Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*,
  742 F.3d 414 (9th Cir. 2014) ..........................................................................22

*Grier v. Finjan Holdings, Inc. (In re Finjan Holdings, Inc. Sec. Litig.)*,
  58 F.4th 1048 (9th Cir. 2023) ..........................................................................10

*Guzman v. Polaris Indus.*,
  49 F.4th 1308 (9th Cir. 2022) ..........................................................................23

*Holly v. Jewell*,
  No. 16-cv-00011-DMR, 2017 U.S. Dist. LEXIS 1043 (N.D. Cal. Jan. 3, 2017) .........................25

*HTK Haw. Inc. v. Sun*,
  No. 15-00114 JMS-RLP, 2016 U.S. Dist. LEXIS 8437 (D. Haw. Jan. 25, 2016)........................24

*Jancik v. Redbox Automated Retail, LLC*,
  SACV 13-1387-DOC (RNBx), 2014 U.S. Dist. LEXIS 67223 (C.D. Cal. May 14, 2014) ......15, 16

*Johnson v. Gambrinus Co./Spoetzl Brewery*,
  116 F.3d 1052 (5th Cir. 1997) .........................................................................10, 13

*Karczewski v. DCH Mission Valley LLC*,
  862 F.3d 1006 (9th Cir. 2017) ........................................................................12

*Katz-Lacabe v. Oracle Am., Inc.*,
  No. 22-cv-04792-RS, 2024 U.S. Dist. LEXIS 61566 (N.D. Cal. Apr. 3, 2024) ...........................4

*Koebke v. Bernardo Heights Country Club*,
  36 Cal. 4th 824 (2005)...................................................................................23

*Lemmons v. Ace Hardware Corp.*,
No. 12-cv-03936-JST, 2014 U.S. Dist. LEXIS 91347 (N.D. Cal. July 3, 2014)............................9

*McNeil v. Time Ins. Co.*,
205 F.3d 179 (5th Cir. 2000) .........................................................................................15, 16, 17

*Munoz v. Peets Coffee, Inc.*,
No. 24-cv-01764-JST, 2024 U.S. Dist. LEXIS 201361 (N.D. Cal. Nov. 5, 2024)................*passim*

*Mussat v. IQVIA, Inc.*,
953 F.3d 441 (7th Cir. 2020) ...........................................................................................................8

*Nears v. Holiday Hosp. Franchising, Inc.*,
295 S.W.3d 787 (Tex. App. 2009) ................................................................................................10

*O'Byrne v. Reed*,
No. CV 09-08406 DMG, 2010 U.S. Dist. LEXIS 153616 (C.D. Cal. Aug. 6, 2010)....................10

*Painter v. Blue Diamond Growers*,
757 F. App'x 517 (9th Cir. 2018) .....................................................................................14, 18, 19

*Peterson v. Cellco P'ship*,
164 Cal. App. 4th 1583 (2008) ....................................................................................................24

*Philip v. G.O.L.A., Inc.*,
187 A.D.3d 652 (N.Y. App. Div. 1st Dept. 2020) .......................................................................24

*Phillips v. P.F. Chang's China Bistro, Inc.*,
No. 5:15-cv-00344-RMW, 2015 U.S. Dist. LEXIS 159474
(N.D. Cal. Nov. 23, 2015)...............................................................................................17, 18, 19, 20

*Precis E-Business Sys., LLC v. L Larowe, LLC*,
No. 14CV30820, 2015 Colo. Dist. LEXIS 922 (D. Colo. Apr. 2, 2015)......................................24

*Ray v. U.S. Bank Tr., N.A.*,
No. 22-cv-06333-DMR, 2023 U.S. Dist. LEXIS 148509 (N.D. Cal. Aug. 23, 2023)...................25

*Razavi v. Coti*,
No. 17-cv-04341-BLF, 2018 U.S. Dist. LEXIS 98178 (N.D. Cal. June 11, 2018) ......................13

*Reingold v. Elements Therapeutic Massage, LLC*,
No. SACV 20-785-GW-DFMx, 2020 U.S. Dist. LEXIS 263465 (C.D. Cal. Aug. 18, 2020)......7, 8

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .....................................................................................................5, 6

*Shaywitz v. American Bd. of Psychiatry & Neurology*,
848 F. Supp. 2d 460 (S.D.N.Y. 2012)..........................................................................................12

*Slawsby v. Champion Petfoods USA, Inc.*,
No. 18-10701-GAO, 2023 U.S. Dist. LEXIS 51309 (D. Mass. Mar. 27, 2023)............................24

*Smith v. Pride Mobility Prods. Corp.*,
No. 16-CV-04411-LHK, 2017 U.S. Dist. LEXIS 20195 (N.D. Cal. Feb. 12, 2017).....................20

*Smith v. Walgreens Boots All., Inc.*,
No. 20-cv-05451-CRB, 2021 U.S. Dist. LEXIS 21734 (N.D. Cal. Feb. 3, 2021)..........................12

*State v. Hosijo*,
76 P.3d 550 (Haw. 2003) ........................................................................................................10

*Suazo v. Bluemercury, Inc.*,
No. 3:22-cv-06307-JD, 2023 U.S. Dist. LEXIS 65927
(N.D. Cal. Apr. 14, 2023) ..............................................................................................5, 6, 9

*Turner v. Ass'n of Am. Med. Colls.*,
167 Cal. App. 4th 1401 (2008) .............................................................................................22

*United States v. Days Inns of Am.*,
No. CIV. S-96-260, 1998 U.S. Dist. LEXIS 21945, at *15 (E.D. Cal. Jan. 12, 1998) .................10

*Weyer v. Twentieth Century Fox Film Corp.*,
198 F.3d 1104 (9th Cir. 1999) .....................................................................................*passim*

*Williams v. Bank of Am.*,
No. 1:21-cv-00848-AWI-HBK, 2022 U.S. Dist. LEXIS 140127 (E.D. Cal. Aug. 5, 2022) ..........16

*Zamora v. Wendy's Int'l, LLC*,
No. 19-CV-06133-LHK, 2020 U.S. Dist. LEXIS 111636 (N.D. Cal. June 25, 2020) ..............9, 10

## RULES & REGULATIONS

28 C.F.R. pt. 36, App'x C (July 26, 1991).................................................................................14

28 C.F.R. § 36.301(c) ..............................................................................................................20

28 C.F.R. § 36.302 .............................................................................................................14, 17

28 C.F.R. § 36.307 .........................................................................................................13, 14, 17

29 C.F.R § 1630.2(j) ................................................................................................................11

Fed. R. Civ. P. 4(k) ....................................................................................................................5

Fed. R. Civ. P. 12 ...................................................................................................................1, 2

## STATUTES

42 U.S.C. § 12101 (1990) ...........................................................................................................1

42 U.S.C. § 12102 (1990) ..............................................................................................................11

Cal. Civ. Code § 51 ...............................................................................................................10, 11

Cal. Civ. Code § 56 .......................................................................................................................11

Cal. Code Civ. Proc. § 410.10 ........................................................................................................5

Cal. Gov. Code § 12926(n) ..........................................................................................................11

Colo. Rev. Stat. § 24-34-301(16) .................................................................................................10

Haw. Rev. Stat. Chapter 489 .......................................................................................................10

Mass. Gen. Laws ch. 272 § 92A .................................................................................................10

N.Y. Exec. Law § 296(2)(a) .........................................................................................................10

**OTHER AUTHORITIES**

ADA Title III Technical Assistance Manual, § III-4.1400 Surcharges,
    https://www.ada.gov/resources/title-iii-manual/ (last visited Jan. 13, 2025)...........................20, 21

DEFENDANT DUNKIN' DONUTS FRANCHISING LLC'S MOTION TO DISMISS
CASE NO. 3:23-CV-06621-SI

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2      Defendant Dunkin' Donuts Franchising LLC ("Dunkin'") respectfully requests the Court grant

3  the motion to dismiss without further leave to amend and terminate this action.

4  # I.    INTRODUCTION

5      In the First Amended Class Action Complaint (the "FAC"), Plaintiffs continue to insist that the

6  Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 (1990) ("ADA"), requires Dunkin' to charge

7  them the same price for cow's milk ("Dairy Milk") and items like soy, oat, coconut, or almond "milk"

8  ("Non-Dairy Alternatives") due to their alleged disabilities. Late last year, Judge Tigar determined in a

9  nearly identical case against Peet's Coffee (brought by the same counsel representing Plaintiffs in this

10  action), that the entire premise underlying Plaintiffs' primary theory is directly contrary to the ADA, its

11  implementing regulations, and a robust collection of caselaw addressing whether public accommodations

12  are required to offer or sell accessible goods, if offered at all, at the same price as non-accessible goods.

13  *See Munoz v. Peets Coffee, Inc.*, No. 24-cv-01764-JST, 2024 U.S. Dist. LEXIS 201361, at *7-8 (N.D. Cal.

14  Nov. 5, 2024). More recently, Judge Hala Jarbou in the Western District of Michigan followed in Judge

15  Tigar's footsteps, dismissing with prejudice yet another nearly identical case brought by the same counsel

16  against coffee retailer Biggby. *Bower v. Global Orange Dev., LLC*, No. 1:24-cv-00631-HYJ-PJG (W.D.

17  Mich. Dec. 16, 2024), ECF No. 32 (opinion), ECF No. 34 (judgment).

18      On top of this wholesale rejection of their underlying legal theory, Plaintiffs have failed to cure

19  the defects identified by the Court in its previous dismissal order. As a threshold matter, under Federal

20  Rule of Civil Procedure 12(b)(2), the FAC still fails to establish the Court's personal jurisdiction over

21  Dunkin' with respect to Plaintiffs' claims.[1] The FAC alleges that the California-based Plaintiffs visited

22  stores owned and operated by franchisees, not Dunkin', and expressly admits that franchisees, not

23  Dunkin', set the pricing for Non-Dairy Alternatives. Thus, there are no allegations to support the exercise

24  of the Court's personal jurisdiction over Dunkin', a non-California entity whose contacts with California

25  are unrelated to the California-based Plaintiffs' allegations. Moreover, even if Dunkin' is subject to

26  personal jurisdiction for the claims brought by the California-based Plaintiffs, the Court lacks specific

27

28  [1] Although Plaintiffs have now substituted Dunkin' Donuts LLC with Dunkin' Donuts Franchising LLC, Plaintiffs' allegations are still insufficient to show that the latter entity controls the prices and policies in effect at stores where Plaintiffs allegedly visited and purchased Non-Dairy Alternatives.

personal jurisdiction over Dunkin' with respect to the claims of Plaintiffs who did not allegedly suffer harm in California. That Plaintiffs obtained jurisdictional discovery from Dunkin' but were unable to muster any allegations to support the Court's exercise of personal jurisdiction demonstrates that further attempts to establish personal jurisdiction would be futile.

The FAC also fails to state any valid claim under the ADA or corresponding state laws for multiple reasons under Rule 12(b)(6). *First*, the FAC still fails to allege that the named Plaintiffs visited places of public accommodation that are owned, operated, and/or leased by Dunkin'. To the contrary, Plaintiffs now admit that the six Dunkin'-branded stores located in California are owned and operated by franchisees— not Dunkin'. *Second*, the allegations regarding each Plaintiff's disability and their interactions with store employees regarding their alleged disability and request for an accommodation vary significantly and, in every case, are insufficient. For example, there are no allegations showing Plaintiff Tonya Hughes's lactose intolerance substantially impairs her ability to engage in the major life activities of drinking and digestion. Another Plaintiff, Lora Premo, alleges she has never notified a store employee of her lactose intolerance and milk allergy *and would not* as she believes it to be a privacy violation. This renders it impossible for any restaurant operator to offer Ms. Premo her desired accommodation of a free customization with a Non-Dairy Alternative. *Third*, Plaintiffs' ADA claim fails because the ADA does not require public accommodations to offer accessible goods or sell them, if offered, at the same price as non-accessible goods. *Fourth*, because Plaintiffs concede that all customers pay the same prices for the same products, an additional charge for Non-Dairy Alternatives cannot be a "surcharge" under the ADA or establish discriminatory intent under the Unruh Act or any other relevant state law.

Finally, Plaintiffs' unjust enrichment claim fails because restitution is an equitable remedy, and a federal court may not consider claims seeking equitable remedies where monetary damages provide an adequate remedy. In any event, Plaintiffs cannot show any "unjust enrichment" retained by Dunkin' because Plaintiffs admittedly received the benefit of the bargain when paying for a Non-Dairy Alternative.

## II.    FACTUAL BACKGROUND

### A.    Relevant Allegations in the FAC.

Plaintiffs Hughes, Hernandez, Garland, and Cojom reside in California. (Dkt. 47 ¶¶ 35, 43, 47, 56.) Plaintiff Pelayo resides in Hawaii; Fitch and Mara reside in New York; Premo resides in Colorado;

Medeiros resides in Massachusetts; and Smith resides in Texas. (*Id.* ¶¶ 64, 69, 76, 83, 92, 97.) While all Plaintiffs claim to be lactose intolerant,[2] and that they must "consume drinks that do not contain lactose or lactose-based products," the remainder of their factual allegations vary greatly. (*Id.* ¶ 110.) Specifically, as set out in the below chart, the FAC includes unique allegations for each Plaintiff regarding (1) their personal experience of lactose intolerance or milk allergy; (2) the effect of lactose intolerance or milk allergy on their daily life; (3) whether each Plaintiff provided notice of their alleged disability to a store employee; (4) whether each Plaintiff requested the pricing accommodation for their alleged disability; and (5) whether a store employee responded to any alleged notice or accommodation request by pointing to the menu board, "effectively creating a separate, higher-priced menu." (*Id.* ¶¶ 35–103.)

| Plaintiff | Personal Experience | Effect on Daily Life | Notice of Lactose Intolerance | Request for Accommodation | Separate Menu |
|---|---|---|---|---|---|
| Garland | ✓[3] | ✓ | ✓ | ✓ | ✓ |
| Hughes | | | | | |
| Hernandez | ✓ | ✓ | ✓ | ✓ | ✓ |
| Cojom | ✓ | ✓ | ✓ | ✓ | |
| Pelayo | ✓ | | | | |
| Fitch | ✓ | ✓ | ✓ | | |
| Mara | ✓ | | ✓ | ✓ | |
| Premo | ✓ | | | | |
| Medeiros | ✓ | | | | |
| Smith | ✓ | ✓ | ✓ | | |

---

[2] Plaintiff Premo also alleges she has a "diagnosed milk allergy." (Dkt. 47 ¶ 84.) But similar to their approach in their initial complaint, Plaintiffs do not treat this as materially different from lactose intolerance for purposes of their claims, (*see, e.g.*, *id.* ¶¶ 121 (conflating lactose intolerance and milk allergies when stating "[b]ecause of their milk allergies"), 151 (defining the purported classes as including persons who have lactose intolerance "or any intolerance to milk or milk-containing products"), 180 (only alleging that lactose intolerance is a disability under the ADA)). Even if this difference were significant, all arguments herein apply equally to Premo's alleged milk allergy.

[3] Dunkin' does not admit Plaintiffs' allegations on any of these topics are sufficient. Rather, a checkmark simply indicates the presence of some allegation related to a specific topic.

1    Plaintiffs allege that they purchased coffee and tea-based drinks at "various" Dunkin'-branded

2    stores in California, Hawaii, New York, Colorado, Massachusetts, and Texas, but they do not identify any

3    specific location visited by any Plaintiff.[4] (*Id.* ¶¶ 35, 43, 47, 56, 64, 69, 76, 83, 92, 97.) When Plaintiffs

4    ordered drinks with Dairy Milk, they requested the drinks be made with Non-Dairy Alternatives such as

5    soy, oat, or almond "milk." (*Id.* ¶ 4.) They acknowledge that **all** customers who order Non-Dairy

6    Alternatives (not just lactose intolerant customers) are charged between $0.50 and $2.15 extra (the

7    "Upcharge") for those products. (*Id.* ¶¶ 5, 123, 135, 211.)

8    Plaintiffs allege that Dunkin' is the franchisor for stores located around the country but does not

9    allege that Dunkin' owns, operates, or leases any of the stores. (*Id.* ¶ 104.) Plaintiffs allege in conclusory

10    fashion that Dunkin' "supervises the operation" of these stores and "exercises a high degree of control

11    over its franchisees." (*Id.*) But Plaintiffs concede that this alleged control does not extend to prices,

12    alleging only that Dunkin' "suggest[s]" and "recommend[s]" pricing of products to franchisees (*id.* ¶¶ 28,

13    153) and that the Dunkin'-required point-of-sale ("POS") system "is used universally by Dunkin's

14    franchisees for implementing **the franchisee's pricing** and charges**,** including **for Non-Dairy**

15    **Alternatives**," (*id.* ¶ 29 (emphasis added).) Plaintiffs also allege that Dunkin' entered into franchising

16    agreements for the purpose of operating retails stores. (*Id.* ¶ 26.) Through this allegation, Plaintiffs plainly

17    reference documents produced by Dunkin' in discovery but fail to acknowledge that the agreements also

18    state franchisees "are free to determine the prices [they] charge for the products [they] sell" and franchisees

19    "agree to comply with all civil and criminal laws." (*See* Decl. of Brett Coburn ¶¶ 2-7, Exs. 1-6 §§ 7.1, 7.3

20    (excerpts from franchise agreements for newly named Franchisee Defendants).)[5]

21

22

23    _____

[4] The failure to identify with specificity any stores allegedly visited by any Plaintiff is particularly glaring,
24    as Defendant Dunkin' Donuts LLC argued, and the Court agreed, that to establish personal jurisdiction
     over Dunkin', Plaintiffs needed to "identify the locations and dates of all Dunkin' visits alleged in the
25    Complaint." (Dkt. 42 at 2; *see also* Dkt. 38 at 3-4.)

26    [5] "Courts may consider materials referenced in the complaint under the incorporation by reference
     doctrine, even if a plaintiff failed to attach those materials to the complaint." *Brown v. City Nat'l Bank*,
27    No. 23-cv-03195-AMO, 2024 U.S. Dist. LEXIS 9404, at *2 n.2 (N.D. Cal. Jan. 18, 2024) (citing *Knievel
     v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)). "The doctrine of incorporation by reference is meant to
27    prevent plaintiffs 'from selecting only portions of documents that support their claims.'" *Katz-Lacabe v.
     Oracle Am., Inc.*, No. 22-cv-04792-RS, 2024 U.S. Dist. LEXIS 61566, at *7 n.4 (N.D. Cal. Apr. 3, 2024)
28    (quoting *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018)).

**B.      Notable Omissions from the FAC.**

The FAC is more notable for what it does *not* say, particularly in light of the orders entered by the Court in this case and in *Munoz* dismissing identical claims against other coffee and tea retailers, as well as this Court's allowance of jurisdictional discovery from Dunkin'. As relevant to the arguments presented below, the FAC does not contain any substantive, non-conclusory allegations that:

- Identify which Dunkin'-branded restaurants Plaintiffs allegedly visited and when;

- Indicate that Dunkin' mandates, as a condition to franchising agreements, that franchisees implement an Upcharge for Non-Dairy Alternatives;

- State whether any of the restaurants that Plaintiffs allegedly visited charged Plaintiffs more for Non-Dairy Alternatives than they charged non-lactose intolerant customers;

- Indicate that any of the restaurants that Plaintiffs allegedly visited engaged in intentional discrimination directed at Plaintiffs; or

- State that Plaintiffs did not receive the Non-Dairy Alternatives for which they paid.

## III.    RULE 12(B)(2) ARGUMENT

**A.      This Court Lacks Personal Jurisdiction Over Dunkin'.**

"Federal Rule of Civil Procedure 4(k) governs personal jurisdiction in federal court." *Suazo v. Bluemercury, Inc.*, No. 3:22-cv-06307-JD, 2023 U.S. Dist. LEXIS 65927, at *6 (N.D. Cal. Apr. 14, 2023) (citation omitted). Where, as here, no federal statute governs personal jurisdiction, the Court applies its state's laws. *See id.* California's long-arm statute, Cal. Code Civ. Proc. § 410.10, is coextensive with the limits of the Fourteenth Amendment's Due Process Clause; accordingly, the Court must ensure that the clause permits the exercise of jurisdiction over Dunkin' here. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004).

"Personal jurisdiction comes in two varieties, general and specific." *Suazo*, 2023 U.S. Dist. LEXIS 65927, at *6. General jurisdiction is available only when a defendant is "essentially at home" in the state. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). A corporation is "home" in states where it is incorporated or where its principal place of business is located. *Id.* Plaintiffs admit that Dunkin' is incorporated in Delaware, and that its principal place of business is in Massachusetts. (Dkt. 47

1    ¶ 104.) Accordingly, Dunkin' is not at "home" in California, and the Court cannot exercise general

2    jurisdiction over it. *See Ford Motor Co.*, 141 S. Ct. at 1024.[6]

3         Specific jurisdiction allows a court to exercise jurisdiction based on the defendant's contacts with

4    the state. *See id.* The Fourteenth Amendment's Due Process Clause requires that "a State's assertion

5    of personal jurisdiction over a nonresident defendant be predicated on 'minimum contacts' between the

6    defendant and the State." *Suazo*, 2023 U.S. Dist. LEXIS 65927, at *6 (quoting *Keeton v. Hustler Mag.,*

7    *Inc.*, 465 U.S. 770, 774 (1984)).

8         The Ninth Circuit has articulated three requirements for establishing specific jurisdiction
9         over a non-resident defendant: "(1) the defendant must either purposefully direct his
          activities toward the forum or purposefully avail himself of the privileges of conducting
          activities in the forum; (2) the claim must be one which arises out of or relates to the
10        defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with
          fair play and substantial justice, i.e. it must be reasonable."
11

12   (Dkt. 34 at 5 (quoting *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017)

13   (alterations adopted)).) "The plaintiff bears the burden of satisfying the first two prongs of the test, and if

14   the plaintiff fails to satisfy either prong, then the district court does not have personal jurisdiction over the

15   defendant." (*Id.* (citing *Schwarzenegger*, 374 F.3d at 802).) Only if the plaintiff satisfies both prongs does

16   the burden shift to the defendant to establish the third prong. (*Id.* (citing *Burger King Corp. v. Rudzewicz*,

17   471 U.S. 462, 476-78 (1985)).) "All three prongs of the test must be met for the district court to exercise

18   personal jurisdiction over the defendant." (*Id.*)

19        Plainly, the FAC does not establish purposeful availment, and the claims are too attenuated from

20   Dunkin's alleged conduct to establish personal jurisdiction over it. Plaintiffs claim that "Dunkin' directs

21   its franchisees in California to impose a surcharge for Non-Dairy Alternatives and to adhere to the policies

22   that are subject to this lawsuit" and "[b]y doing so, Dunkin' purposefully avails itself of the privilege of

23   conducting activities in the forum state, thereby invoking the benefits and protections of its laws." (Dkt.

24   47 ¶ 30.) But their own allegations directly contradict this assertion. In paragraph 28, Plaintiffs allege

25   Dunkin' "***suggest[s]***" a minimum price for Non-Dairy Alternatives, and that in 2022, Dunkin'

26   "***recommended***" a $0.50 Upcharge for Non-Dairy Alternatives for almond and oat milk added to certain

27

28   ────────────────────
     [6] Plaintiffs do not appear to dispute this. (*See* Dkt. 47 ¶ 25 (alleging personal jurisdiction only on the basis
     of Dunkin's "contacts" with California).)

coffee drinks. (*Id.* ¶ 28 (emphasis added).) In paragraph 29, Plaintiffs tout Dunkin's requirement that franchisees use certain POS systems but simultaneously acknowledge that "[t]he POS software is used universally by Dunkin's franchisees for implementing the ***franchisee's pricing and charges***, including for Non-Dairy Alternatives." (Dkt. 47 ¶ 29 (emphasis added).) Furthermore, Plaintiffs' allegation that the Upcharge varies between $0.50 to $2.15 across Dunkin'-branded stores and time periods confirms that franchisees are indeed setting their own prices, not Dunkin'. (*Id.* ¶¶ 4-5, 123.) And, under the franchise agreements with the newly named Franchisee Defendants, the franchisees clearly have the authority to set prices for the products they sell. (*See* Exs. 1-6 § 7.3 ("Except as we may be permitted by law to require a particular price, you are free to determine the prices you charge for the products you sell.").) In addition, the franchise agreements place the burden on the franchisees to ensure compliance with all applicable laws in the operation of their restaurants. (*See* Exs. 1-6 § 7.1 ("You agree to comply with all applicable civil and criminal laws, ordinances, rules, regulations and orders of public authorities pertaining to the occupancy, operation and maintenance of Restaurants and Premises.").).

Even if the Court were to find that Plaintiffs have adequately pled purposeful availment (it should not), Plaintiffs still fail to demonstrate that their claims arise out of or relate to Dunkin's franchise agreements with franchisees in California. "'The Ninth Circuit adopts a broad, "but for" test of relatedness', but it does require some 'degree of proximate causation.'" *Reingold v. Elements Therapeutic Massage, LLC*, No. SACV 20-785-GW-DFMx, 2020 U.S. Dist. LEXIS 263465, at *16 (C.D. Cal. Aug. 18, 2020) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073, 1085 (C.D. Cal. 2003)). Plaintiffs fail to satisfy that test. First, Plaintiffs concede that Dunkin' is a franchisor and do not allege that Dunkin' owns, operates, or leases any of the stores they visited. (Dkt. 47 ¶¶ 26-109.) But there also are no allegations tying the stores Plaintiffs allegedly visited with Dunkin' as the franchisor, aside from the fact that the stores are branded as Dunkin' stores. For example, Plaintiffs do not allege that the stores they visited are run by franchisees who entered into franchise agreements with Dunkin'. (*Id.*)

Second, Plaintiffs allege in a conclusory manner that "Dunkin' directs its franchisees in California to impose a surcharge for Non-Dairy Alternatives and to adhere to the policies that are subject to this lawsuit," but there are no well-pled factual allegations to support that conclusion. In fact, the only well-

pled allegations in the FAC relating to pricing demonstrate the opposite: that Dunkin', at most, only "suggest[s]" or "recommend[s]" pricing for Non-Dairy Alternatives, and that franchisees set their own pricing. *See supra* pp. 6-7. (Dkt. 47 ¶¶ 28-29, 4-5, 123.)

Third, Plaintiffs fill the FAC with numerous allegations regarding Dunkin's inventory and POS-systems, mobile application, marketing of products, website, and profit sharing, but all of these allegations simply demonstrate that Dunkin' permits franchisees to set their own prices and will honor and implement those prices across devices and platforms. (Dkt. 47 ¶¶ 27-30, 142-147, 151.) None of these establishes that Dunkin' dictates the prices charged by franchisees for Non-Dairy Alternatives or requires franchisees to reject requests for accommodations based on lactose intolerance. Plaintiffs' allegations that Dunkin' suggests specific franchisees to customers based on their location also are not tied to their claims in this case. (*Id.* ¶ 143, 146.) Plaintiffs do not allege, for example, that Dunkin' asks about a customer's lactose intolerance in making these suggestions, or that certain stores are suggested based on a customer's lactose intolerance. In *Reingold*, a plaintiff similarly attempted to establish personal jurisdiction over a franchisor based on the franchisor's control over "furniture, décor, and supplies" and provision of POS software to franchisees. However, the court rejected these allegations as "too attenuated" from the plaintiff's claims challenging a particular franchisee's collection of a membership subscription fee while the franchisee was temporarily closed due to the COVID-19 pandemic. 2020 U.S. Dist. LEXIS 263465, at *16-17. The Court should similarly reject Plaintiffs' allegations here as too attenuated.

Because Plaintiffs have failed to meet their burden to establish either the first or second prong of the test for specific personal jurisdiction—despite taking significant jurisdictional discovery from Dunkin'—further amendment would be futile and the Court should dismiss this action for lack of personal jurisdiction without leave to amend. At the very least, the Court should dismiss the claims of the non-California Plaintiffs (Pelayo from Hawaii, Fitch and Mara from New York, Premo from Colorado, Medeiros from Massachusetts, and Smith of Texas), for whom Plaintiffs still do not allege anything to show they suffered harm in California, or that their claims arose from or relate to contacts with Dunkin' in California. (*See* Dkt. 47 ¶¶ 64-103 (alleging only contact with Dunkin'-branded stores and products in their respective home states).) *See Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020) ("[I]n a Rule 23 class action, each unnamed member of the class must separately establish specific personal jurisdiction

over a defendant."); *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 264-65 (2017) (holding federal due process bars exercise of specific jurisdiction by California courts over claims brought by nonresident plaintiffs who did not suffer harm in California even if jurisdiction existed over similar claims brought by resident plaintiffs in the same mass tort suit); *Suazo*, 2023 U.S. Dist. LEXIS 65927, at *7-10 (holding that *Bristol-Myers* was not limited to state court actions or claims and dismissing federal statutory claims of nonresident plaintiffs for lack of personal jurisdiction).

## IV.    RULE 12(B)(6) ARGUMENTS

### A.    Dunkin' Is Not a Place of Public Accommodation.

"Title III's prohibition of discrimination applies to 'any person who owns, leases (or leases to), or operates a place of public accommodation.'" *Zamora v. Wendy's Int'l, LLC*, No. 19-CV-06133-LHK, 2020 U.S. Dist. LEXIS 111636, at *11 (N.D. Cal. June 25, 2020) (quoting 42 U.S.C. § 12182(a) (1990)). As such, Plaintiffs must allege facts to show that Dunkin' (1) owns, (2) leases, or (3) operates the restaurants where Plaintiffs claim they have experienced alleged discrimination. They, however, fail to adequately plead that Dunkin' owns, leases, or operates any of the restaurants they allegedly visited. (*See generally* Dkt. 47.) In fact, Plaintiffs now admit that Dunkin' is only a franchisor, and that each franchisee-defendant "operat[es]" one or more of the specific restaurants potentially at issue. (*Id.* ¶¶ 104-109.)

Plaintiffs attempt to circumvent this reality by alleging that Dunkin' "supervises the operation" of Dunkin'-branded stores. (*Id.*) But this also does not adequately plead that Dunkin' *actually* operates the relevant restaurants. In the context of Title III, "[t]o be considered an 'operator' . . . a person or entity must have an active and significant degree of control ***over the access[] related aspects of the facility in question.*** " *Lemmons v. Ace Hardware Corp.*, No. 12-cv-03936-JST, 2014 U.S. Dist. LEXIS 91347, at *19 (N.D. Cal. July 3, 2014) (emphasis added) (citing *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 849 (9th Cir. 2004)). Thus, a general allegation that Dunkin' "supervises the operation" of restaurants is not sufficient. Instead, Plaintiffs must allege that Dunkin' has an "active and significant degree of control" over the pricing of Non-Dairy Alternatives. *See id.* Here, their allegations regarding Dunkin's price control are conclusory and "not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). (*See, e.g.*, Dkt. 47 ¶¶ 27, 30.) They are also contradicted by allegations that Dunkin' only "suggest[s]" and "recommend[s]" pricing of products to franchisees, and that franchisees use the

POS system "for implementing the ***franchisee's pricing*** and charges, including ***for Non-Dairy Alternatives***." (Dkt. 47 ¶¶ 28–29.) *See Grier v. Finjan Holdings, Inc. (In re Finjan Holdings, Inc. Sec. Litig.)*, 58 F.4th 1048, 1052 n.1 (9th Cir. 2023) (finding when specific facts alleged in a complaint contradict general, conclusory allegations, the "specific facts are controlling"). Moreover, as discussed above, the franchise agreements give the franchisees the authority to set the prices they charge for items sold and place the obligation to ensure legal compliance on the franchisees. *See supra* pp. 4, 7. Plaintiffs thus fail to allege, and cannot allege, that Dunkin' "specifically control[led] the modification of the franchises to improve their accessibility to the disabled." *Zamora*, 2020 US Dist. LEXIS 111636, at *14 (alteration in original) (quoting *Neff v. Am. Dairy Queen Corp.*, 58 F.3d 1063, 1066 (5th Cir. 1995)); *see also O'Byrne v. Reed*, No. CV 09-08406 DMG (DTBx), 2010 U.S. Dist. LEXIS 153616, at *7 (C.D. Cal. Aug. 6, 2010) ("Thus, while Defendants 'conduct the affairs of' or 'manage' the vacation rentals in a limited sense, they do not 'operate' the vacation rentals in the sense relevant to ADA liability, *i.e.*, their operation of the vacation rentals does not impact the discrimination at issue."); *United States v. Days Inns of Am.*, No. CIV. S-96-260 WBS/GGH, 1998 U.S. Dist. LEXIS 21945, at *15 (E.D. Cal. Jan. 12, 1998) ("Therefore, even if Days Inn were [sic] found to 'control' individual hotels' day-to-day activities, *Neff* [*v. Am. Dairy Queen Corp.*, 58 F.3d 1063, 1067 (5th Cir. 1995)] and other courts that have considered the issue appropriately deem the relevant inquiry to be the control over the discriminatory conditions.").

Because Plaintiffs have failed to adequately allege that Dunkin' owns, leases, or operates any of the restaurant locations that they claim violated the ADA, and in fact allege that Dunkin' is a franchisor that only recommends pricing for Non-Dairy Alternatives, their ADA claim must be dismissed.[7]

---

[7] The result is the same under the state laws of each Plaintiff's home state. *See State v. Hosijo*, 76 P.3d 550, 561 (Haw. 2003) (concluding liability attaches under Haw. Rev. Stat. Chapter 489 "to a person that is an owner, operator, lessee, agent, or employee of a public accommodation"); N.Y. Exec. Law § 296(2)(a) ("the owner, lessee, proprietor, manager, superintendent, agent or employee"); Mass. Gen. Laws ch. 272 § 92A ("owner, lessee, proprietor, manager, superintendent, agent or employee"); Colo. Rev. Stat. § 24-34-301(16) (stating public accommodation has the same meaning as set forth in Title III of the ADA). Under California's Unruh Act, Cal. Civ. Code §§ 51-53, Plaintiffs fail to allege any facts showing that Dunkin' is a business establishment. Cal. Civ. Code § 51(b). And it is clear under Texas law that franchisors are generally not liable for the acts of their franchisees. *See Cardinal Health Sols., Inc. v. Valley Baptist Med. Ctr.*, 643 F. Supp. 2d 883, 888 (S.D. Tex. 2008); *see also Nears v. Holiday Hosp. Franchising, Inc.*, 295 S.W.3d 787, 796 (Tex. App. 2009) ("Quality control standards for operating a franchise should not be construed to create an agency relationship.").

**B.    Plaintiff Hughes Fails to Sufficiently Plead that She Is Disabled.**

To invoke protection under the ADA, plaintiffs must show that they suffer from a "disability," which the ADA defines in relevant part as "a physical . . . impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1) (1990). "[S]ubstantially limits" is defined as being restricted in performing a major life activity as compared to most people in the general population. 29 C.F.R § 1630.2(j) (Mar. 25, 2011). To determine if an impairment substantially limits a major life activity, the Court considers "(i) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2) (Mar. 25, 2011).

Here, the allegations concerning Plaintiff Hughes contend, in a conclusory fashion, that lactose intolerance is a disability under the ADA, (Dkt. 47 ¶¶ 18, 180), and that she is "substantially impaired in several major life activities," namely, drinking and digestion (*id.* ¶¶ 44, 112). These are the very same allegations that the Court held were insufficient to plausibly allege a disability in its prior dismissal order (assuming *arguendo* that lactose intolerance could be a disability). (Dkt. 34 at 11-13.) *See also* 42 U.S.C. §§ 12102(1), 12102(2)(A) (1990). That there are individualized allegations regarding the remaining Plaintiffs' experience with dairy products shows Plaintiffs know how to plead such allegations (*see, e.g.*, Dkt. 47 ¶¶ 37-39, 49-51), suggesting the pleading deficiency related to Plaintiff Hughes is incurable by further amendment. Accordingly, her ADA claim should be dismissed with prejudice.[8]

**C.    Certain Plaintiffs Fail to Adequately Plead Notice.**

If a plaintiff's theory of discrimination under Title III includes defendant's alleged failure to make a reasonable modification to a policy or practice, she must sufficiently allege that the "defendant discriminated against the plaintiff based upon the plaintiff's disability by (a) failing to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability." *Karczewski v.*

---

[8] Plaintiff Hughes, a California resident, also fails to allege how she is disabled under the Unruh Act's definitions of "medical condition" or "disability." Cal. Civ. Code § 51(b). First, she does not allege she has a medical condition or that lactose intolerance is a medical condition. Second, her conclusory allegations that she is substantially impaired is insufficient to show she is disabled under the Unruh Act. Cal. Civ. Code § 56(e)(1) (defining disability as meaning "any physical disability as defined in Sections 12926 and 12916.1 of the Government Code"); Cal. Gov. Code § 12926(n) (incorporating by reference the ADA definition of disability to the extent it is broader). Regardless of the law applied, Plaintiff Hughes's allegations are simply too generalized and conclusory to support a claim.

*DCH Mission Valley LLC*, 862 F.3d 1006, 1010 (9th Cir. 2017) (quoting *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004)). Thus, "[w]hile no 'magic' words are required, a plaintiff must request an accommodation before claiming that a defendant has refused to modify its policy, practices or procedures in violation of the ADA." *Munoz*, 2024 U.S. Dist. LEXIS 201361, at *11-12 (internal quotation marks and citation omitted); *accord Bower*, No. 1:24-cv-00631-HYJ-PJG, ECF No. 32 at 8. Here, even if Dunkin' is a place of public accommodation and all Plaintiffs adequately claim they are "disabled," the claims brought by Plaintiffs Hughes, Pelayo, Premo, and Medeiros still fail because they do not allege that they put restaurant employees (let alone Dunkin', the franchisor) on notice of any medical condition or that any such condition required a modification.[9] Further, these Plaintiffs do not allege that they made any request for their preferred modification. Instead, they simply allege, independently, that they are lactose intolerant, ordered a Non-Dairy Alternative, and were required to pay the Upcharge. (Dkt. 47 ¶¶ 2, 4, 45, 121, 161.) Likewise, Plaintiffs Fitch and Smith fail to allege they requested their preferred modification. (*Id.* ¶¶ 47, 65.) As *Munoz* recognized, customers may order Non-Dairy Alternatives "for reasons unrelated to having a medical condition—including personal preference." 2024 U.S. Dist. LEXIS 201361, at *10. Under these circumstances, absent notice and a request for a particular modification, there can be no knowledge of disability. This warrants dismissal of Plaintiffs' ADA claims. *See id.* at *11-12 (dismissing ADA claims for failure to plead a request for a modification); *Bower*, No. 1:24-cv-00631-HYJ-PJG, ECF No. 32 at 8-9 (dismissing ADA claim because a lactose intolerant plaintiff failed to allege that she requested a modification); *Shaywitz v. Am. Bd. of Psychiatry & Neurology*, 848 F. Supp. 2d 460, 466-67 (S.D.N.Y. 2012) (citations omitted) ("Reason dictates that in order for a defendant to be liable for discrimination, 'on the basis of disability,' . . . the defendant must have had adequate knowledge of the plaintiff's disability."); *Smith v. Walgreens Boots All., Inc.*, No. 20-cv-05451-CRB, 2021 U.S. Dist.

---

[9] Of the Plaintiffs, Plaintiff Premo uniquely asserts that she has never notified a barista of her alleged disability and objects to such notification as a privacy violation. (Dkt. 47 ¶ 90.) But this only underscores the importance of notice. Because her alleged disability is a latent, non-obvious condition, without identifying herself as being lactose intolerant and needing a modification, Plaintiff Premo could not take advantage of the modification she requests—even if it were available to her. This is sufficient to dismiss Plaintiff Premo's claims. *See Munoz*, 2024 U.S. Dist. LEXIS 201361, at *12-13 (holding plaintiffs' ADA claim failed because they failed to actually request any modification); *Bower*, No. 1:24-cv-00631-HYJ-PJG, ECF No. 32 at 9 ("Biggby cannot be held liable for failing to accommodate a disability that they had no reason to know about. Further, Biggby may have been able to accommodate Bower if given the opportunity to make an individualized, reasonable modification given the circumstances. Bower did not give Biggby that chance.").

LEXIS 21734, at *25-27 (N.D. Cal. Feb. 3, 2021) (granting motion to dismiss because the plaintiff failed to allege that she ever requested a modification to a drugstore refusing to fill opioid prescriptions); *Razavi v. Coti*, No. 17-cv-04341-BLF, 2018 U.S. Dist. LEXIS 98178, at *7 (N.D. Cal. June 11, 2018) (dismissing the plaintiff's Title III claim because the plaintiff did not allege that she actually requested but was refused a reasonable modification of the defendant's claims deadlines); *Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1059 (5th Cir. 1997) (Title III plaintiff "has the burden of proving that a modification was requested and that the requested modification is reasonable."); *A.F. v. Starbucks Corp.*, No. 3:17-cv-1582-SI, 2018 U.S. Dist. LEXIS 35413, at *14 (D. Or. Mar. 5, 2018) (granting motion to dismiss in part because plaintiff failed to allege any facts to suggest that defendant's employees knew about plaintiff's disability); *Betancourt v. Federated Dep't Stores*, 732 F. Supp. 2d 693, 711 (W.D. Tex. 2010) (finding plaintiff failed to state claim based on failure to provide auxiliary aids and services or failure to make reasonable modifications to policies where, among other things, she did not allege that she requested any such modification).[10]

### D.    Plaintiffs' ADA Claim Fails as a Matter of Law.

Even if the Court were to overlook these threshold pleading issues, Plaintiffs' ADA claim still fails because the ADA does not require Dunkin'-branded restaurants to substitute Non-Dairy Alternatives for Dairy Milk free of charge as a "reasonable modification," and the prices charged by restaurants for Non-Dairy Alternatives are not a prohibited surcharge.

### 1.    The ADA Does Not Require Public Accommodations to Offer Accessible Goods or Sell Them at the Same Price as Non-Accessible Goods.

The ADA regulates access to the goods and services that places of public accommodation typically provide, not the content of those goods and services, and certainly not the pricing of those goods and services. The ADA regulations specifically state that the ADA "does not require a public accommodation to alter its inventory to include accessible or special goods that are designed for, or facilitate use by, individuals with disabilities." 28 C.F.R. § 36.307(a) (July 26, 1991). Examples of "accessible or special goods" include "special foods to meet particular dietary needs." 28 C.F.R. § 36.307(c) (July 26, 1991).

---

[10] These individualized inquiries of disability and notice – not to mention the individualized threshold determination of which lactose intolerant individuals purchased Non-Dairy Alternatives at which Dunkin' franchisee restaurants and at what price – make it clear that a class can never be certified in this case.

1       In its official commentary to 28 C.F.R. § 36.302 (the reasonable modification provision cited by

2 Plaintiffs), the U.S. Department of Justice ("DOJ") stated that "§ 36.302 **would not** require the inventory

3 of goods provided by a public accommodation to be altered to include goods with accessibility features."

4 28 C.F.R. pt. 36, App'x C (July 26, 1991) (emphasis added). The DOJ further explained that "[t]he rule

5 enunciated in § 36.307 is consistent with the 'fundamental alteration' defense to the reasonable

6 modifications requirement of § 36.302."[11] *Id.* By tying 28 C.F.R. § 36.307 to the "fundamental alteration"

7 defense, DOJ established that requiring public accommodations to provide special goods is *always* a

8 fundamental alteration of the goods provided. *See Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d

9 1104, 1115 (9th Cir. 1999) ("The ordinary meaning of [Title III] is that whatever goods or services the

10 place provides, it cannot discriminate on the basis of disability in providing enjoyment of those goods and

11 services . . . . just nondiscriminatory enjoyment of those that are provided. . . . Thus, a bookstore cannot

12 discriminate against disabled people in granting access, but need not assure that the books are available in

13 Braille as well as print."); *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 612 (3d Cir. 1998) ("The fact

14 that an insurance office is a public accommodation, however, does not mean that the insurance policies

15 offered at that location are covered by Title III. . . . [A]n insurance office must be physically accessible to

16 the disabled but need not provide insurance that treats the disabled equally with the non-disabled.").

17       Plaintiffs' allegation that Non-Dairy Alternatives are mere substitutes for Dairy Milk, as opposed

18 to fundamental alterations, (Dkt. 47 ¶¶ 4-5, 8) is a legal conclusion not entitled to any presumption of

19 truth. Moreover, it misstates the law, as courts, including the Ninth Circuit, have held that Non-Dairy

20 Alternatives and Dairy Milk are different products altogether. *See Painter v. Blue Diamond Growers*, 757

21 F. App'x 517, 519 (9th Cir. 2018) (almond milk and dairy milk are "two distinct food products"); *Gitson*

22 *v. Trader Joe's Co.*, No. 13-cv-01333-VC, 2015 U.S. Dist. LEXIS 170401, at *4 (N.D. Cal. Dec. 1, 2015)

23 (soy milk and dairy milk were "two distinct products"). Common experience also dictates that these are

24

---

25 [11] The DOJ's implementing regulations explain that while a place of public accommodation is required
26 under the ADA to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, it is not required to do so if "making the modifications
27 would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations." 28 C.F.R. § 36.302(a) (Aug. 11, 2016). A "fundamental alteration" is one that would
28 "compromise[] the essential nature of" the offered good. *Alexander v. Choate*, 469 U.S. 287, 300 (1985) (quoting *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 410 (1979)).

different products, akin to white and red wine, soda and juice, or coffee and tea. Just because both Dairy Milk and Non-Dairy Alternatives can be added to coffee does not mean they are the same product.

Courts have recognized that the purpose of ADA Title III is to regulate *access* to the goods and services a public accommodation typically provides to its customers, not to regulate the content of those goods and services. *See Weyer*, 198 F.3d at 1115. "A modification lowering the price of drinks made with non-dairy alternatives—below what would be charged to non-lactose intolerant customers for that same drink—for lactose intolerant customers is . . . not necessary to provide a 'like experience' to the two groups of customers." *Munoz*, 2024 U.S. Dist. LEXIS 201361, at *13-15; *see also Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 560 (7th Cir. 1999) (emphasis added) (stating it "is hardly a feasible judicial function to decide" whether a public accommodation must alter its inventory to include accessible or special goods "***and if so at what price***" to sell those goods; finding insurer not obligated to offer equivalent policy limits for certain medical conditions at the same price because "a policy with a $25,000 limit is a different product from one with a $1 million limit"); *McNeil v. Time Ins. Co.*, 205 F.3d 179, 186-87 (5th Cir. 2000) (holding plain language of Title III "demonstrates that a business is not required to alter or modify the goods or services it offers to satisfy Title III"; therefore, because an insurance policy offered the same terms to those with and without AIDS, the policy's limit did not discriminate on the basis of disability); *Jancik v. Redbox Automated Retail, LLC*, SACV 13-1387-DOC (RNBx), 2014 U.S. Dist. LEXIS 67223, at *9 (C.D. Cal. May 14, 2014) (recognizing the "core meaning of Title III, plainly enough, is that the ADA requires equal access to places of public accommodation – not equally valuable goods and services available at the public accommodation"); *A.L. v. Walt Disney Parks & Resorts US, Inc.*, 469 F. Supp. 3d 1280, 1305 (M.D. Fla. 2020) (rejecting demand that Disney give special priority access to rides on a standard ticket to accommodate inability to wait in line because "[i]t is hardly a feasible judicial function to decide whether shoe stores should sell single shoes to one-legged persons and if so at what price"), *aff'd sub nom. A.L. v. Walt Disney Parks & Resorts U.S., Inc.*, 50 F.4th 1097 (11th Cir. 2022).

Here, Plaintiffs do not seriously complain that Dunkin' or its franchisees interfere with their opportunity to purchase the same drinks offered to non-disabled patrons. Rather, Plaintiffs' complaint is that (just like every other customer who chooses to order a drink made with Non-Dairy Alternatives) they pay more for drinks prepared with Non-Dairy Alternatives than drinks with Dairy Milk. In other words,

Plaintiffs appear to argue that if Dunkin' or its franchisees choose to sell Non-Dairy Alternatives, then they must sell them at the same price as Dairy Milk. Such an argument fails.

First, Plaintiffs have not adequately alleged that the modification sought is "necessary" – meaning failure to provide the accommodation would deprive a lactose intolerant customer from having a "like experience" as non-lactose intolerant customers. *See Munoz*, 2024 U.S. Dist. LEXIS 201361, at *13. Plaintiffs are provided with the same physical access to restaurants as non-disabled customers. (Dkt. 47 ¶ 2 (alleging Plaintiffs have visited Dunkin'-branded restaurants since 2018).) Dunkin' and its franchisees allow Plaintiffs an equal opportunity to order the same drinks made with Non-Dairy Alternatives at the same prices charged to non-disabled customers. (Dkt. 47 ¶¶ 123, 211.) "A modification lowering the price of drinks made with non-dairy alternatives—below what would be charged to non-lactose intolerant customers for that same drink—for lactose intolerant customers is thus not necessary to provide a 'like experience' to the two groups of customers." *See Munoz*, 2024 U.S. Dist. LEXIS 201361, at *14; s*ee also Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 671 (9th Cir. 2010) ("The ordinary meaning of [Title III] is that whatever goods or services the place provides, it cannot discriminate on the basis of disability in providing enjoyment of those goods and services. . . . just nondiscriminatory enjoyment of those that are provided. Thus, a bookstore cannot discriminate against disabled people in granting access, but need not assure that the books are available in Braille as well as print." (quoting *Weyer*, 198 F.3d at 1115)); *Williams v. Bank of Am.*, No. 1:21-cv-00848-AWI-HBK, 2022 U.S. Dist. LEXIS 140127, at *16-17 (E.D. Cal. Aug. 5, 2022) (internal quotation marks and citations omitted) ("At the heart of Plaintiff's claims is her belief that she is entitled to a waiver of the escrow provision. But Title III does not require the provision of different services to people with disabilities, only nondiscriminatory enjoyment of those that are provided. . . . There is no discrimination under the Act where disabled individuals are given the same opportunity as everyone else."), *R. & R. adopted*, 2022 U.S. Dist. LEXIS 188629 (E.D. Cal. Oct. 14, 2022); *McNeil*, 205 F.3d at 188-89; *Weyer*, 198 F.3d at 1115-16; *Doe*, 179 F.3d at 559; *Walt Disney Parks*, 469 F. Supp. 3d at 1305; *Jancik*, 2014 U.S. Dist. LEXIS 67223, at *9-10.

Second, the consequences of adopting Plaintiffs' radical theory are far-reaching and cannot be ignored. Under this theory, to accommodate gluten sensitivities, grocery stores and restaurants would need to lower their prices for gluten-free items to match the prices of items with gluten, regardless of any

additional material, supply chain, or labor costs. Similarly, supermarkets would have to offer organic produce as a substitute for non-organic produce to shoppers who claim they are allergic to pesticides. Restaurants would have to substitute steak for customers who are allergic to shrimp. In short, businesses would face a Hobson's choice: accept claims of disability status at face value and sell alternative and dissimilar products at reduced prices or face litigation over a customer's alleged disability and whether the proposed substitution and corresponding price reduction constitutes a fundamental alteration of the product being sold.[12] Adopting Plaintiffs' position would open the floodgates to future litigation in which courts must determine the goods a retailer must carry under the ADA and the appropriate price for those goods. Nothing in the ADA supports this chaos, and the DOJ's commentary establishing 28 C.F.R. § 36.307 as a limit to § 36.302's reasonable modification requirement affirmatively rejects it.[13] It is no surprise, then, that courts around the country have refused to adopt Plaintiffs' theory. *See Weyer*, 198 F.3d at 1115; *Munoz*, 2024 U.S. Dist. LEXIS 201361, at *14-15; *Walt Disney Parks & Resorts*, 469 F. Supp. 3d at 1305; *Doe*, 179 F.3d at 560; *McNeil*, 205 F.3d at 188-89. The Court should likewise hold that the ADA does not require restaurants to charge the same price for different products, such as Dairy Milk and Non-Dairy Alternatives.

Particularly with respect to Plaintiffs' argument that Dunkin' and its franchisees are required to offer accessible goods at the same price as non-accessible goods, Plaintiffs' FAC is a clear attempt to mimic the complaint in *Phillips v. P.F. Chang's*, No. 5:15-cv-00344-RMW, 2015 U.S. Dist. LEXIS 159474, at *2 (N.D. Cal. Nov. 23, 2015), which alleged that P.F. Chang's discriminated against plaintiff and other guests with celiac disease or a gluten allergy or intolerance. Even the *Phillips* court, in an unpublished decision that was wrongly decided, acknowledged that the Ninth Circuit in *Harkins* offers support for the argument that Dunkin' "is like the bookstore that offers access to everybody and charges

---

[12] A third unpalatable option—stop selling accessible goods altogether—would harm customers and businesses equally, limiting options for all customers and diminishing businesses' customer base.

[13] Plaintiffs cite to ADA-related provisions that do not support their theory. (Dkt. 47 ¶ 172-75.) There is no dispute that Dunkin'-branded stores already stock Non-Dairy Alternatives, so 28 C.F.R. § 36.307, which requires ordering special goods, is inapplicable. "The plain language of 28 C.F.R. § 36.307(b) does not require [Dunkin' and its franchisees] to *sell* 'special goods' at the request of an individual with disabilities at the same price as those goods' ostensibly non-accessible counterpart if [Dunkin' and its franchisees] do[] so for any other 'special goods'—and Plaintiffs have not cited any other authority requiring [Dunkin' and its franchisees] to do so." *See Munoz*, 2024 U.S. Dist. LEXIS 201361, at *15.

the same price to all customers for their books but does not offer Braille products or at least not at the same price as regular books." Notwithstanding that recognition of the import of *Harkins*, the *Phillips* court concluded that "[t]he ultimate question is whether P.F. Chang's, in providing gluten-free meals, is providing different products or whether the price differential with regular meals is a pretext for discrimination against those with celiac disease." *Id.* at *15. By injecting the question of whether the products at issue are sufficiently different from one another into its analysis, *Phillips* went beyond the Ninth Circuit's repeatedly stated view that Title III's prohibition on discrimination in the enjoyment of goods "does not require [the] provision of different goods or services, ***just nondiscriminatory enjoyment of those that are provided***." *Harkins*, 603 F.3d at 671 (emphasis added) (quoting *Weyer*, 198 F.3d at 1115). Thus, under *Harkins*, if a plaintiff's allegations show that a public accommodation is providing non-discriminatory enjoyment of the goods—as is the case here—a court's inquiry stops there, regardless of whether the goods are sufficiently different.

Even if the Court follows *Phillips* and holds that the ADA requires that goods be sufficiently different from one another to warrant price differences, the instant case is easily distinguishable from *Phillips* on a number of fronts. First, unlike a meal with or without gluten, as discussed above, courts have found that Dairy Milk and Non-Dairy Alternatives are entirely different products. *See Painter*, 757 F. App'x at 519; *Gitson*, 2015 U.S. Dist. LEXIS 170401, at *4; *see also Bower*, No. 1:24-cv-00631-HYJ-PJG, ECF No. 32 at 6-7 (emphasis added) ("[C]ontrary to Bower's argument that Biggby must charge the same price for ***these different products*** [non-dairy alternatives and dairy milk], the court in *Phillips* differentiated between menu items comprised of the same ingredients and menu items that substitute ingredients"). Plaintiffs' contention that, because Dunkin' restaurants offer caffeine-free and sugar-free beverages for free, they must also offer Non-Dairy Alternatives for free, is thus wrong. (Dkt. 47 ¶¶ 14-15, 194-95.) It is also contrary to common sense. Caffeinated coffee and de-caffeinated coffee are both coffee. Sugar and sugar-free sweeteners are both sweeteners. These are mere variations of coffee beverages; regardless of whether a coffee beverage is made with or without caffeine or with sugar or a sugar-free sweetener, the beverage is still coffee. By contrast, as a matter of law and reality, Dairy Milk and Non-Dairy Alternatives—even though both can be added to coffee—are entirely different products akin to soda

and juice and inherently have different costs. *See Painter*, 757 F. App'x at 519; *Gitson*, 2015 U.S. Dist. LEXIS 170401, at *4; *see also Bower*, No. 1:24-cv-00631-HYJ-PJG, ECF No. 32 at 6-7.

Second, another difference between the gluten-free food at issue in *Phillips* and the Non-Dairy Alternatives at issue here is the context in which they are offered and requested. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Common experience generates no reasons an individual might order a gluten-free item other than a medical condition but readily generates many reasons why an individual would order a Non-Dairy Alternative including taste, consistency/texture, nutritional content, environmental impact, voluntary dietary restrictions, manufacturing practices, or agricultural policy stances. *See Munoz*, 2024 U.S. Dist. LEXIS 201361, at *10 (finding a non-dairy alternative "can be ordered for reasons unrelated to having a medical condition— including personal preference"). The significance of offering or requesting a gluten-free item is therefore readily apparent: to assist those with a specific medical condition. There is no like implied communication with a request or offer of a Non-Dairy Alternative, only a myriad of possibilities. In this way, the practical contexts in which Non-Dairy Alternatives and gluten-free items are offered or requested are sufficiently different. Thus, even if it were correct to find that allegations of the existence of a separate gluten-free menu sufficiently pled that a restaurant was discriminating against individuals with disabilities, the same cannot be said for offering Non-Dairy Alternatives, which might be ordered for a variety of reasons.

Third, the plaintiff in *Phillips* "allege[d] that P.F. Chang's discriminated against her and other guests with celiac disease or a gluten allergy or intolerance by charging $1.00 more for some gluten-free menu items than for comparable non-gluten-free menu items." 2015 U.S. Dist. LEXIS 159474, at *2. The court in *Phillips* relied on the plaintiff's allegation that P.F. Chang's "created an entirely separate—and higher priced—gluten-free menu targeted to persons with celiac disease" and that it "direct[ed] customers with celiac disease to the gluten-free menu rather than offering to make modifications for celiac customers the way Defendant does for other customers." *Id*. at *11. For example, the plaintiff there alleged that there was a one-dollar additional cost per item for most items on the gluten-free menu, each of which had "an analogue on the regular menu with the exact same name, suggesting that they [were] essentially the same item as the regular menu item. This surcharge for the gluten-free items occur[ed] ***even where the items at***

*issue may naturally be gluten free such as vegetable dishes*." No. 5:15-cv-344-RMW, ECF No. 25 ¶ 18 (emphasis added). Here, Plaintiffs allege Dunkin' stores do not have hand-printed menus for customers. Rather, Plaintiffs Garland and Hernandez allege that when they requested free Non-Dairy Alternatives, the barista would point to the *general* menu board and note the Upcharge. (Dkt. 47 ¶¶ 42, 52.) Thus, Plaintiffs' own allegations make clear there is no separate menu. Moreover, while the plaintiff in *Phillips* alleged that each item on P.F. Chang's gluten-free menu was priced at $1 more than the same item on the regular, non-gluten-free menu, No. 5:15-cv-344-RMW, ECF No. 25 ¶ 4, here, Plaintiffs allege that Dunkin' stores charge customers who order Non-Dairy Alternatives between $0.50 and $2.15 extra for those products, again indicating there is no separate menu. (Dkt. 47 ¶ 5.) Further, there is no allegation, nor can there be, that Dunkin' stores charge more for items that are naturally dairy-free, such as black coffee or plain tea. And, as the FAC acknowledges, all customers who want Non-Dairy Alternatives must pay the same additional charge. *See Smith v. Pride Mobility Prods. Corp.*, 2017 U.S. Dist. LEXIS 20195, at *13-14 (N.D. Cal. Feb. 12, 2017) (distinguishing *Phillips* because the complaint contained no allegations to suggest that defendant offered anything "separate" or different to disabled individuals than what it offered to non-disabled individuals or otherwise intentionally discriminated by targeting customers with a disability), *aff'd in part, rev'd in part on other grounds*, 700 F. App'x 583 (9th Cir. 2017); *see also Bower*, No. 1:24-cv-00631-HYJ-PJG, ECF No. 32 at 6-7 (finding *Phillips* unpersuasive because "contrary to Bower's argument that Biggby must charge the same price for these different products [non-dairy alternatives and dairy milk], the court in *Phillips* differentiated between menu items comprised of the same ingredients and menu items that substitute ingredients").

## 2. The Upcharge for Non-Dairy Alternatives Is Not a Prohibited Surcharge Under the ADA.

Plaintiffs allege Dunkin'-branded restaurants violated 28 C.F.R. § 36.301(c) by effectively imposing a "surcharge" on customers with lactose intolerance by imposing the Upcharge for Non-Dairy Alternatives. (*See* Dkt. 47 ¶¶ 176, 183.) According to the ADA Title III Technical Assistance Manual, "[a]lthough compliance may result in some additional cost, a public accommodation may not place a surcharge only on particular individuals with disabilities or groups of individuals with disabilities to cover

these expenses."[14] § III-4.1400 Surcharges, https://www.ada.gov/resources/title-iii-manual/ (last visited Jan. 13, 2025). "In order to evaluate whether a cost constitutes a surcharge that violates Title III of the ADA, a court considers whether it (1) is used to cover the costs of ADA-mandated measures and (2) is . . . a charge that nondisabled people would not incur[]." *Anderson v. Macy's, Inc.*, 943 F. Supp. 2d 531, 545 (W.D. Pa. 2013) (citing *Dare v. California*, 191 F.3d 1167, 1171 (9th Cir. 1999)); *see Munoz*, 2024 U.S. Dist. LEXIS 201361, at *5-11 (applying the *Dare* two-part test to find the defendant did not impose a surcharge on individuals with lactose intolerance or milk allergies, but rather on anyone who orders a drink made with Non-Dairy Alternatives, which can be ordered for reasons unrelated to having a medical condition—including personal preference). Plaintiffs' claim fails on both prongs.

As for the first prong, the regulation only forbids surcharges for measures "required" by the ADA. *Dare*, 191 F.3d at 1171. Where a measure is "not required under the ADA, the inquiry ends." *Id.*; *see also, e.g.*, *Anderson*, 943 F. Supp. 2d at 546 (finding first prong was not met because defendant was not required to carry plus-sized clothing and citing additional cases in support). Here, the ADA and its implementing regulations do not require restaurants to carry Non-Dairy Alternatives. *See supra* pp. 13-20. Therefore, the Upcharge for Non-Dairy Alternatives logically cannot be a charge used to cover the costs of ADA-*mandated* measures. *See Dare*, 191 F.3d at 1171; *Anderson*, 943 F. Supp. 2d at 546; *Munoz*, 2024 U.S. Dist. LEXIS 201361, at *7-8 (finding "the policy for which [defendant] charges the fee—the provision of non-dairy alternatives for its blended coffees—is not required to provide individuals with lactose intolerance or milk allergies nondiscriminatory treatment as mandated by the ADA").

As for the second prong, the Ninth Circuit has held that "[i]f nondisabled people pay the same fee for an equivalent service, the charge to disabled people would not constitute a surcharge on a 'required' measure." *Dare*, 191 F.3d at 1171. Here, Plaintiffs admit that the Upcharge for Non-Dairy Alternatives applies to *all* customers, not only those who are lactose intolerant. (*See* Dkt. 47 ¶¶ 123, 211.) There are no allegations (nor could there be) that lactose intolerant persons are charged a higher price than non-

---

[14] An example of a prohibited surcharge would be a pharmacy owner deciding to provide home delivery rather than making a two-story walkup accessible to those in a wheelchair, and then charging individuals who use a wheelchair for the cost of providing the home delivery. Or a medical provider passing along to their patients with disabilities the cost of obtaining an interpreter, even if the individual cancels his or her appointment. The medical provider may, however, charge for the missed appointment if all other patients are subject to such a charge. *See* ADA Title III Technical Assistance Manual, § III-4.1400 Surcharges, https://www.ada.gov/resources/title-iii-manual/ (last visited Jan. 13, 2025).

lactose intolerant persons for the same Non-Dairy Alternatives, or that only lactose intolerant persons consume Non-Dairy Alternatives. Any price difference between Dairy Milk and Non-Dairy Alternatives is thus not an unlawful "surcharge" under the ADA. *See Dare*, 191 F.3d at 1171 ("If nondisabled people pay the same fee for an equivalent service, the charge to disabled people would not constitute a surcharge on a 'required' measure."); *Bower*, No. 1:24-cv-00631-HYJ-PYG, ECF No. 32 at 3-6 (finding plaintiff's claim failed under both prongs as defendant was not required to offer drinks with Non-Dairy Alternatives and defendant charged all customers the same price for drinks with Non-Dairy Alternatives).

### E.    Plaintiffs Fail to State a Claim for Intentional Discrimination Under the Unruh Act.

Plaintiffs bring an Unruh Act claim on a theory of intentional discrimination.[15] (Dkt. 47 ¶¶ 194-201.) This claim fails as a matter of law. To plead an Unruh Act claim distinct from an ADA claim, Plaintiffs must allege intentional discrimination. Policies that apply to everyone but that have a disparate impact on a particular group cannot support an intentional discrimination claim under the Unruh Act. *See, e.g.*, *Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014) (citation omitted) (intentional discrimination under the Unruh Act "contemplates 'willful, affirmative misconduct on the part of those who violate the Act' and . . . a plaintiff must therefore allege, and show, more than the disparate impact of a facially neutral policy"); *Pride Mobility Prod.*, 2017 U.S. Dist. LEXIS 20195 at *13-14 (alteration in original) (citation omitted) (dismissing intentional discrimination claim under Unruh because there were "no allegations to suggest that Defendant offered anything 'separate' or different to disabled individuals than Defendant offered to non-disabled individuals, that Defendant charged disabled individuals a different price for Defendant's products and services than Defendant charged non-disabled individuals, or that Defendant otherwise 'intentionally discriminate[d] by targeting customers with' a disability"), *aff'd in relevant part, rev'd in part on other grounds*, 700 F. App'x 583 (9th Cir. 2017); *Earll v. eBay Inc.*, No. 5:11-CV-00262-EJD, 2012 U.S. Dist. LEXIS 111632, at *13-14 (N.D. Cal. Aug. 8, 2012) (dismissing Unruh Act claim as plaintiff's allegations merely described a facially neutral verification process with a disparate impact on the deaf community, but they did not demonstrate intentional discrimination); *Turner v. Ass'n of Am. Med. Colls.*, 167 Cal. App. 4th 1401, 1408

---

[15] Because Plaintiffs' ADA claim fails for the reasons discussed above, Plaintiffs' Unruh Act claim that is expressly predicated on their ADA claim also fails. (Dkt. 47 ¶ 202.)

1    (2008); *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1238 (2007); *Koebke v.*

2    *Bernardo Heights Country Club*, 36 Cal. 4th 824, 853-54 (2005).

3        Under these controlling precedents, Plaintiffs' claim fails for the simple reason that—under their

4    own allegations—all customers who order drinks with Non-Dairy Alternatives incur the Upcharge, not

5    just persons with lactose intolerance. (*See* Dkt. 47 ¶¶ 123 ("A consumer will pay at least $0.50-$2.15 more

6    for a coffee-based drink at Dunkin' stores for Non-Dairy Alternatives."), 211 (alleging Dunkin' has a

7    "policy of charging *all* customers a surcharge for Non-Dairy Alternatives" (emphasis added)).)

8        Plaintiffs attempt to plead around this fatal flaw by alleging the Upcharge is "targeted to persons

9    with lactose intolerance" because Dunkin' stores allegedly "will modify its regular beverage offerings to

10   remove caffeine" or "to remove sugar . . . at no additional charge" for persons with "hypertension" or

11   "diabetes." (Dkt. 47 ¶¶ 14-15, 194-95.) Plaintiffs argue, in effect, that Dunkin' is offering modifications

12   for some disabilities but not others. But even if hypertension or diabetes qualified as "disabilities" under

13   the Act, and even if the caffeine-free and sugar-free offerings were "modifications" for those disabilities

14   (as opposed to menu offerings to satisfy common dietary preferences of the general public), there is

15   nothing in the text of the Act or the relevant caselaw to suggest that a failure to accommodate different

16   disabilities in the same manner (and at the same price) states a claim of intentional discrimination.

17   **F.    Plaintiffs Fail to State a Claim for Unjust Enrichment.**

18       As a threshold matter, restitution is an equitable remedy, and a federal court may not consider

19   claims seeking equitable remedies where monetary damages provide an adequate remedy. *Guzman v.*

20   *Polaris Indus.*, 49 F.4th 1308, 1313-14 (9th Cir. 2022). Here, Plaintiffs have not alleged they have no

21   adequate remedy at law. (*See* Dkt. 47 ¶¶ 255-268.) Indeed, their Unruh Act claim makes clear they have

22   an adequate legal remedy. (*Id.* ¶ 192, Prayer for Relief (seeking statutory, compensatory, and treble

23   damages and attorneys' fees under the Unruh Act).) That Plaintiffs' Unruh Act claim also cannot succeed

24   is not a barrier to this Court's dismissal of this claim for lack of equitable jurisdiction. *See id.* (holding the

25   district court lacked equitable jurisdiction over a state-law claim seeking restitution because plaintiff "had

26   an adequate remedy at law in his time-barred [state-law] claim").

27       In any event, Plaintiffs cannot succeed on their unjust enrichment claim under any of the applicable

28   states' common law. The sole basis of the unjust enrichment/restitution claim is the alleged illegality

(presumably under the ADA and its state counterparts) of the Upcharge. (Dkt. 47 ¶ 264.) But this is irrelevant for purposes of stating an unjust enrichment claim. Rather, the focus must be on whether Plaintiffs received the benefit of the bargain they thought they had made—and if they did, no recovery is available. *See Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1591, 1593 (2008) (dismissing unjust enrichment claim requesting return of insurance premiums due to defendant's unlicensed status because "plaintiffs received the benefit of the bargain[,]" namely, "the bargained for insurance at the bargained for price"); *Precis E-Business Sys., LLC v. L Larowe, LLC*, No. 14CV30820, 2015 Colo. Dist. LEXIS 922, *29 (D. Colo. Apr. 2, 2015) (dismissing counterclaim for unjust enrichment because, although cost of website services was more than original estimate, Larowe received substantial benefit of services provided by Precis); *HTK Haw. Inc. v. Sun*, No. 15-00114 JMS-RLP, 2016 U.S. Dist. LEXIS 8437, at *34-35 (D. Haw. Jan. 25, 2016) (dismissing HTK's unjust enrichment claim because "[n]owhere . . . does HTK allege any facts showing that Defendants were unjustly enriched by accepting [$99,077.62] payment (i.e., that HTK did not receive the intended benefit of its payment)"); *Slawsby v. Champion Petfoods USA, Inc.*, No. 18-10701-GAO, 2023 U.S. Dist. LEXIS 51309, at *9-10 (D. Mass. Mar. 27, 2023) (dismissing unjust enrichment claim because Slawsby "failed to allege facts that would demonstrate that she did not receive what she paid for or that Champion retained a benefit that would be inequitable for it to retain"); *Philip v. G.O.L.A., Inc.*, 187 A.D.3d 652, 652 (N.Y. App. Div. 1st Dept. 2020) (affirming dismissal of unjust enrichment claim because "Kempner received the benefit of his bargain. In exchange for the nonrefundable deposit, he locked in the price until the due date"); *Credos Indus. Supplies & Rentals, LLC v. Targa Pipeline Mid-Continent WestTex LLC (In re KP Eng'g, LP)*, No. H-22-00664, 2022 U.S. Dist. LEXIS 145150, *17 (S.D. Tex. Aug. 15, 2022) (dismissing unjust enrichment claim because plaintiff did not show defendant was "unjustly enriched" as defendant paid for labor received).

Here, Plaintiffs expressly allege that the Upcharges Plaintiffs paid were "in exchange for providing" them with "non-dairy alternatives such as lactose-free milk." (Dkt. 47 ¶ 263.) They do not allege that they did not receive the Non-Dairy Alternatives that they paid for. (*See generally id.* ¶¶ 255-268.) Accordingly, there is nothing in the FAC indicating that Plaintiffs were denied the benefit of their bargain, and indeed, the only supportable inference is that Plaintiffs *did* receive the Non-Dairy Alternatives they paid for. (*See id.* ¶¶ 1, 35-103 (alleging Plaintiffs "purchased [Dunkin' products] that

contained non-dairy milk alternatives … and paid a surcharge for [them]" and that they "consumed Dunkin' beverages").) Plaintiffs thus cannot show Dunkin' or its franchisees were "unjustly enriched."

### G.     The FAC Should be Dismissed Without Further Leave to Amend or With Prejudice.

Plaintiffs' claims suffer from several fundamental defects that cannot be cured through a second amended pleading. Moreover, Plaintiffs already had a second bite at the apple—a chance to amend their complaint, following jurisdictional discovery, to cure the deficiencies previously identified by Dunkin', the Court, and the *Munoz* Court. Plaintiffs' FAC was filed over nine months after the initial motion to dismiss (Dkt. 21), and over six months after the Court entered its Order Granting Defendant's Motion to Dismiss, which identified several deficiencies in Plaintiffs' initial complaint, including issues related to personal jurisdiction and Plaintiffs' alleged disabilities (Dkt. 34). Yet, as discussed above, Plaintiffs have still failed to correct such inadequacies. The FAC was also filed over a month after Judge Tigar's order granting the defendant's motion to dismiss an amended complaint in *Munoz*, which identified additional deficiencies in Plaintiffs' nearly identical complaint in that matter. 2024 U.S. Dist. LEXIS 201361. Specifically, the *Munoz* Court found that the plaintiffs' ADA claim failed because the defendant did not impose a surcharge, the plaintiffs failed to request a modification, and the modification was not necessary. *Id*. at *5. The *Munoz* Court also found that the plaintiffs' state law claims, including unjust enrichment, failed for a variety of reasons including the fact that plaintiffs failed to make the necessary showing that the defendant acted with specific intent to discriminate, and that the defendant participated in any wrongful conduct. *Id*. at *16-17. The FAC was also filed after months of jurisdictional discovery, yet Plaintiffs are still pleading allegations based on information and belief. (*See, e.g.*, Dkt. 47 ¶¶ 130, 141, 145, 152, 187.)

Permitting Plaintiffs to take a third bite of the apple would be futile. *See Ray v. U.S. Bank Tr., N.A.*, No. 22-cv-06333-DMR, 2023 U.S. Dist. LEXIS 148509, at *14-15 (N.D. Cal. Aug. 23, 2023) (finding further attempts at amendment futile as plaintiff was previously granted leave to amend); *Holly v. Jewell*, No. 16-cv-00011-DMR, 2017 U.S. Dist. LEXIS 1043, at *9-10 (N.D. Cal. Jan. 3, 2017) (finding further attempts at amendment futile as plaintiff had an opportunity to amend to address deficiency). The Court should, therefore, dismiss the FAC without further leave to amend or with prejudice.

## V.    CONCLUSION

For these reasons, the Court should grant Dunkin's motion and dismiss this action in its entirety.

1

DATED: January 15, 2025

DAVID B. CARPENTER
2

BRETT E. COBURN
MEGHAN M. MCBERRY
3

**ALSTON & BIRD LLP**

/s/ *Meghan M. McBerry*
4

Meghan M. McBerry
5

Attorneys for Defendant
6

Dunkin' Donuts Franchising LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT DUNKIN' DONUTS FRANCHISING LLC'S MOTION TO DISMISS
CASE NO. 3:23-CV-06621-SI

1

## **<u>CERTIFICATE OF SERVICE</u>**

2      This is to certify that on January 15, 2025, I electronically filed the foregoing pleading with the

3 Clerk of the Court using the CM/ECF system which will automatically send an email notification of such

4 filing to all attorneys of record.

5

6                         **ALSTON & BIRD LLP**

7                         */s/ Meghan M. McBerry*
                         Meghan M. McBerry

8
                         Attorney for Defendant
9                         Dunkin' Donuts Franchising LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT DUNKIN' DONUTS FRANCHISING LLC'S MOTION TO DISMISS
CASE NO. 3:23-CV-06621-SI