1  Trenton R. Kashima (SBN No. 291405)
2  **MILBERG COLEMAN BRYSON**
   **PHILLIPS GROSSMAN PLLC**
3  402 West Broadway St., Suite 1760
   San Diego, CA 92101
4  Tel: (619) 810-7047
   tkashima@milberg.com
5
6  *Attorneys for Plaintiffs and the Class*

7  [Additional Counsel Listed on Signature Page]

8

9                  **UNITED STATES DISTRICT COURT**

10                 **NORTHERN DISTRICT OF CALIFORNIA**

11

12  CHELSEA GARLAND, TONYA HUGHES,          Case No.: 3:23-cv-06621-SI
13  NATASHA HERNANDEZ, GEANEEN
    COJOM, ARSENIO PELAYO, ALBERT
14  FITCH, PAULEEN MARA, LORA PREMO,
    URCELINA MEDEIROS, RUBY SMITH,         **PLAINTIFFS' OPPOSITION TO**
15  individually and on behalf of all those   **DEFENDANT DUNKIN DONUTS**
    similarly situated,                    **FRANCHISING LLC'S MOTION TO**
                                           **DISMISS FIRST AMENDED CLASS**
16              Plaintiffs,                **ACTION COMPLAINT**
17
    v.
18
19  6201 HOLLYWOOD DONUTS LLC,
    BURTON RESTAURANTS, LLC, RW
20  OAKLAND LLC, MADISON FOOD
    MANAGEMENT, LLC, DUNKIN DONUTS
    FRANCHISING LLC, GOLDEN GATE
21  RESTAURANT GROUP LLC,
22              Defendants.
23
24
25
26
27
28

OPPOSITION TO MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

## I.    INTRODUCTION AND PROCEDURAL BACKGROUND

On December 26, 2023, Plaintiffs, who are lactose intolerant and/or have milk allergies, filed their initial Complaint against Dunkin Donuts LLC alleging that Dunkin Donuts LLC discriminated against them by charging a discriminatory surcharge for similarly priced non-dairy alternatives substituted for milk in their coffee and tea drinks. (Dkt. 1).  Dunkin Donuts LLC filed a motion to dismiss (Dkt. 21), claiming that it had no role in the matter and that the Court did not have personal jurisdiction over it.  Instead, it argued that the relevant franchisor in the action was Dunkin Donuts Franchising LLC.  The Court granted Dunkin Donuts LLC's motion on grounds that the Court lacked personal jurisdiction over it but allowed Plaintiffs to take jurisdictional discovery to determine the proper Defendants. (Dkt. 34).  The Court also found that the Plaintiffs did not allege sufficiently specific facts to support a claim that they were disabled but allowed Plaintiffs leave to amend.  *Id.* The Court did not reach other issues regarding the claims.  *Id.*

After undertaking jurisdictional discovery, the Plaintiffs determined that Dunkin Donuts Franchising LLC—the entity previously referenced by Dunkin Donuts LLC as the proper franchisor—was indeed a proper defendant and filed a First Amended Complaint naming that defendant as well as individual California franchisees. (Dkt. 47).  The Plaintiffs alleged specific facts regarding Dunkin Donuts Franchising LLC's control over the franchisees and over the surcharge at issue in this case. (FAC, ¶¶ 26-33).  Moreover, Plaintiffs addressed the Court's other concerns regarding their allegations of their disabilities and added several new facts as to those claims.  (FAC, ¶¶ 36-39, 48-51, 57-60, 65-67, 70-73, 77-79, 84-89, 93-95, 98-101). Accordingly, Plaintiffs' First Amended Complaint now properly states claims against Defendant, and Defendant's motion should be denied.

## II.    ARGUMENT

### A.    The Court has personal jurisdiction over Defendant under Rule 12(b)(2).

#### 1.    The First Amended Complaint Properly Alleges Personal Jurisdiction over Defendant.

As this Court noted in its prior Order (Dkt. 34), "courts "properly exercise personal jurisdiction over a defendant 'if it is permitted by [the state's] long-arm statute and if the exercise of

jurisdiction does not violate federal due process.'" *Autodesk, Inc. v. Kobayashi + Zedda Architects, Ltd.*, 191 F. Supp. 3d 1007, 1013 (N.D. Cal. 2016). Since "California's long-arm statute allows the exercise of personal jurisdiction to the fullest extent permissible under the U.S. Constitution," the district court need only determine whether the exercise of jurisdiction comports with federal due process requirements. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). A district court's exercise of personal jurisdiction comports with due process when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). Personal jurisdiction is either general or specific.

Most relevant here, specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 592 U.S. 351, 359 (2021). The Ninth Circuit has articulated three requirements for establishing specific jurisdiction over a non-resident defendant: (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (alterations and quotations omitted). The plaintiff bears the burden of satisfying the first two prongs of the test, and if the plaintiff satisfies both prongs, then the burden shifts to the defendant to present a "compelling case" that the exercise of jurisdiction would not be reasonable under the third prong. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985).

In the Court's prior Order, it noted that "Plaintiffs make no attempt at demonstrating how defendant purposefully directed its activities toward the forum, or purposefully availed itself of the privileges of conducting activities in the forum, and that the claim is one which arises out of or relates to the defendant's forum-related activities." (Dkt. 34). Plaintiffs have now done so. The First Amended Complaint alleges that Defendant Dunkin Donuts Franchising LLC entered into franchising agreements for the purpose of operating retail stores in the San Francisco Bay area, Walnut Creek, Half Moon Bay, South San Francisco and Fremont, all within the State of California and the Northern

1    District of California. (FAC, ¶ 26 ).  The FAC further alleges that "Dunkin exercises a high degree of

2    control over the operations of its franchisees, including the pricing of goods, the equipment to be used

3    in stores, point-of-sale (POS) software, and suppliers for Non-Dairy Alternatives." (FAC, ¶ 27).  The

4    FAC also alleges that Dunkin directs the goods sold by its Franchisees, including those in California,

5    including Non-Dairy Alternatives and that Dunkin directs the pricing structure for goods to be used

6    by its Franchisees, including suggesting a minimum price to be charged for Non-Dairy Alternatives.

7    (FAC, ¶  28).  The FAC alleges that Defendant "directs its franchisees in California to impose a

8    surcharge for Non-Dairy Alternatives and to adhere to the policies that are subject to this lawsuit."

9    (FAC, ¶ 30).  For example, in 2022, Dunkin recommended a surcharge for almond milk and oat milk

10   in its crafted coffee beverages in an amount of $.50.  (FAC, ¶ 28).  These facts are sufficient to allege

11   that Defendant "purposefully directed [its] activities toward the forum [and] purposefully avail[ed]

12   itself of the privileges of conducting activities in the forum."  *Axiom Foods, Inc.*, 874 F.3d at 1068.

13   They are also sufficient to allege that the claim is "one which arises out of or relates to the defendant's

14   forum-related activities."  *Id.*  Moreover, these facts demonstrate that the exercise of jurisdiction

15   comports with fair play and substantial justice, i.e. it must be reasonable.  *See id.*  Accordingly,

16   Defendant's 12(b)(2) motion should be denied.

17           **2.    Defendant's *Bristol-Myers* Argument Also Fails.**

18           Defendant also makes a brief argument that the Court lacks personal jurisdiction over it with

19   respect to unnamed out-of-state class members, citing *Bristol Myers Squibb Co. v. Superior Court of*

20   *California,* 582 U.S. 255 (2017), and omitting that *Bristol-Myers* only applies to state court actions.

21   This argument fails on two grounds.  First, the Ninth Circuit has held that "prior to class certification,

22   a defendant does 'not have 'available' a Rule 12(b)(2) personal jurisdiction defense to the claims of

23   unnamed putative class members who were not yet parties to the case.'"  *See Owino v. CoreCivic,*

24   *Inc.,* 60 F.4th 437, 446-447 (9th Cir. 2022); *Moser v. Benefytt, Inc.*, 8 F.4th 872, 877 (9th Cir. 2021).

25   Accordingly, Defendant's argument is premature.

26           Second, even if the Court were to address Defendant's argument now, the argument also fails

27   because, as the Ninth Circuit has noted, *Bristol-Myers* did not address whether its approach would

28   apply to a class action in federal court. *See Moser*, 8 F.4th at 874-875.  The Supreme Court in *Bristol-*

1  *Myers* specifically declined to apply the limited specific jurisdiction principles to federal litigation:

2  "since this decision concerns the due process limits on the exercise of specific jurisdiction by a State,

3  the question remains open whether the Fifth Amendment imposes the same restrictions on the exercise

4  of personal jurisdiction by a federal court." *Bristol-Myers*, 582 U.S. at 257.

5      In fact, in *Bristol-Myers* the Supreme Court discussed two related concepts underlying the

6  limitations on personal jurisdiction, which make that case inapplicable here. One such concept was

7  the burden imposed on the defendant in being hauled into court to answer for a claim that has no

8  relation to the adjudicating forum. 137 S. Ct. at 1780. This is not the case here. Dunkin's practice of

9  charging people extra for their disability is conduct that is encountered nationwide, including in

10  California. The conduct is the same in all states, and there is no additional burden imposed on

11  Defendant from defending a lawsuit in California that is related to Defendant's conduct in California.

12  As to the second concept, the Supreme Court analyzed "the more abstract matter of submitting to the

13  coercive power of a State that may have little legitimate interest in the claims in question ...

14  [R]estrictions on personal jurisdiction 'are more than a guarantee of immunity from inconvenient or

15  distant litigation. They are a consequence of territorial limitations on the power of the respective

16  States.'" 137 S. Ct. at 1780. This is not a concern in this case, where the matter was filed in federal

17  court and not state court and where, as alleged in the Complaint, California has a legitimate interest

18  in the claims in question because the discriminatory practice has taken place in many stores

19  throughout California.

20      Defendant's argument as to the out-of-state named Plaintiffs similarly fails. Defendant

21  summarily argues that this Court should not exercise personal jurisdiction over Defendant with

22  respect to the named out-of-state Plaintiffs, citing *Suazo v. Bluemercury, Inc.*, No. 3:22-cv-06307-JD,

23  2023 WL 2959997 (N.D. Cal. April 14, 2023) in support. But that case was a collective FLSA case,

24  not a class action, which is clearly distinguishable. Indeed, even the *Suazo* case emphasizes that

25  "FLSA collective actions are fundamentally different from representative suits under Rule 23." *Id.*

26  at *3. As such, *Suazo* is inapposite.

27      Instead, Rule 23 class actions addressing pendent personal jurisdiction in federal question

28  cases are more on point. Under the doctrine of pendent personal jurisdiction, "a court may assert

1  pendent personal jurisdiction over a defendant with respect to a claim for which there is no

2  independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts

3  with a claim in the same suit over which the court does have personal jurisdiction." *Action Embroidery Corp.*

4  *v Atlantic Embroidery, Inc.* , 368 F.3d 1174, 1180 (citations omitted). Pendent personal jurisdiction "is typically

5  found where one or more federal claims for which there is nationwide personal jurisdiction are combined in

6  the same suit with one or more state or federal claims for which there is not nationwide personal

7  jurisdiction." *Id.* 1180-1181. Whether to grant pendent personal jurisdiction "in a particular case is

8  within the discretion of the district court," which may consider "judicial economy, convenience and

9  fairness to litigants." *Id.* (citing *Oetiker v. Jurid Werke, G.m.b.H.*, 556 F.2d 1, 5 (D.C. Cir. 1977)) (quotation

10  marks omitted). *See also In re ZF-TRW Airbag Control Units Products Liability Litigation* (C.D. Cal.

11  2022) 601 F.Supp.3d 625, 705, *opinion clarified sub nom. In re ZF-TRW Airbag Control Units*

12  *Products* , No. LA ML19-02905 JAK (FFMX) 2022 WL 19425927 ((C.D. Cal., Mar. 2, 2022).

13        Here, pendent personal jurisdiction serves judicial economy because the claims of each of the

14  Plaintiffs arise out of the same set of facts - whether or not Defendant discriminates against them by

15  imposing a surcharge against them in violation of the ADA and similar state statutes and whether

16  Defendant was unjustly enriched by such conduct. As such, judicial economy will be served by

17  hearing all claims in one action rather than splitting the action into several different actions regarding

18  the same facts and issues of law. Moreover, splitting the action into several actions in different federal

19  courts in different states could result in inconsistent results regarding the exact same legal and factual

20  issues.  Having the entire action heard in this Court would also be more convenient for the parties,

21  particularly Defendant, because it will not be forced to engage in discovery, motion practice, and

22  potentially trial in several different forums. Finally, having the entire action heard in this Court would

23  be fair to the parties because, as mentioned previously, there would not be a risk of inconsistent results

24  based on the same facts and law in several different jurisdictions.  Accordingly, this Court should

25  exercise pendent personal jurisdiction over the out-of-state named Plaintiffs.

26  **B.    Plaintiffs have properly alleged their claims under Rule 12(b)(6).**

27        **1.   Dunkin's argument that it is not a place of public accommodation fails.**

28        Title III's anti-discrimination provision applies to "any person who owns, leases (or leases

OPPOSITION TO MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).  The ADA has not defined "operate," but the Ninth Circuit has interpreted "to operate" to mean "to put or keep in operation," "to control or direct the functioning of," or "to conduct the affairs of; manage." *Lentini v. Cal. Center for the Arts, Escondido*, 370 F.3d 837, 849 (9th Cir. 2004).  As noted above, Plaintiffs have alleged that Defendant entered into franchising agreements for the purpose of operating retail stores in the San Francisco Bay area, Walnut Creek, Half Moon Bay, South San Francisco and Fremont, all within the State of California and the Northern District of California. (FAC, ¶ 26).  The First Amended Complaint further alleges that Defendant "exercises a high degree of control over the operations of its franchisees, including the pricing of goods, the equipment to be used in stores, point-of-sale (POS) software, and suppliers for Non-Dairy Alternatives" (FAC, ¶ 27) and that Defendant "directs the goods sold by its Franchisees, including those in California, including Non-Dairy Alternatives and that Dunkin directs the pricing structure for goods to be used by its Franchisees, including suggesting a minimum price to be charged for Non-Dairy Alternatives.  (FAC, ¶ 28).  The FAC further alleges that Defendant "directs its franchisees in California to impose a surcharge for Non-Dairy Alternatives and to adhere to the policies that are subject to this lawsuit." (FAC, ¶ 30).

Moreover, California courts have rejected attempts to dismiss an action on the pleadings based on whether a defendant operates a place of public accommodation. In *Johnson v. Winchester Campbell Properties, LLC*, No.18-cv-04153-VKD, 2018 WL 6619940 (N.D. Cal. Dec. 18, 2018), the court denied a defendant's similar motion to dismiss based on both jurisdictional[1] and 12(b)(6) grounds.  The defendant argued that it could not be liable for an ADA violation because, as a franchisor, it did not "operate" the restaurants at issue. On the jurisdictional question, the court found that the Defendant "did not (1) provide any support for the contention that Congress intended 'operates' to be jurisdictional in nature, as opposed to a question to be resolved on the merits, or (2) offer any evidence to support its contention that it does not operate the premises."  *Id.* at *3.  With respect to the 12(b)(6) argument, the court noted that "the Ninth Circuit takes a broad view of the

---

[1] Jurisdiction in that case was challenged under 12(b)(1) and not 12(b)(2). Still, the court held that the issue was a merits issue and not a jurisdictional issue.

term 'to operate'" and that an "'operator' must have an active and significant degree of control over the access-related aspects of the facility in question.'" *See id.* Accordingly, the court held that "whether a particular franchisor may be held liable under the ADA as an operator is a question of fact, not law." *See id.* at *4. The court further noted that a franchisor's liability depends, at least in part, on the franchise agreement at issue and whether it gives the franchisor the requisite control over the alleged ADA violation. *See id.* Thus, the court held that the plaintiff's allegations that the defendant operated the restaurant were sufficient and denied the motion to dismiss. *See id. See also Robles v. Domino's Pizza LLC*, No. CV 16-6599 JGB (Ex), 2021 WL 2945562, *8 (C.D. Cal. June 23, 2021) (denying defendant's motion for summary judgment where it was alleged that the franchisor defendant rather than its franchisees controlled inaccessible barriers); *Crawford v. Uber Tech., Inc.*, No. 17-cv-02664-RS, 2018 WL 1116725, *3-4 (N.D. Cal. March 1, 2018) (rejecting Uber's argument on a motion for judgment on the pleadings that the requested remedy turned on the independent decisions of drivers rather than Uber and stating that, "whether drivers exercise the degree of independence described by Uber is a question of fact that cannot be determined on the pleadings alone.").

Thus, Plaintiffs have sufficiently alleged that Defendant owns, controls, or operates the stores at issue, and whether or not there is evidence to the contrary is a factual issue inappropriate for determination at this stage of the action. Moreover, regardless of whether franchisees operate each of the stores at issue, there is a question of fact regarding whether Defendant sets the price for each entity or indicates that the entities should charge more for non-dairy milks. These issues are not properly addressed on a motion to dismiss. Therefore, the Court should deny Defendant's motion to dismiss as to the operator issue.

**2. Plaintiff Hughes has sufficiently pled she is disabled.**

Defendant concedes that the other Plaintiffs have sufficiently alleged facts regarding their lactose intolerance and milk allergies. It has limited its arguments regarding disability allegations to Plaintiff Hughes. Accordingly, Defendants do not contest that the Plaintiffs, other than Hughes, have properly alleged that they are disabled. Thus, Plaintiffs' Complaint is sufficient on those grounds. To

1   the extent that Plaintiff Hughes has failed to properly allege she is disabled, Plaintiffs request leave

2   to amend to do so or to remove her claim if they cannot allege additional facts.

3       **3.   Plaintiffs have sufficiently alleged notice.**

4       Apparently conceding that the other Plaintiffs have properly stated a claim, Defendant alleges

5   that only Plaintiffs Hughes, Pelayo, Premo, and Medeiros have failed to allege that they put any

6   restaurant employees on notice of their disability or that their disability required a modification.

7   Defendant has further argued that those Plaintiffs, along with Fitch and Smith have failed to allege

8   that they requested a modification.  To the extent that this Court finds that Plaintiffs' need to allege

9   additional facts with respect to these Plaintiffs, Plaintiffs respectfully request leave to amend to add

10  those facts.

11      **4.   Defendant's other ADA arguments similarly miss the mark.**

12      Defendant suggests that Plaintiffs are seeking to regulate the content, characteristics, and

13  pricing of its goods.  But Plaintiffs are not seeking to do this.  Instead, Plaintiffs have alleged that

14  because Defendant already has non-dairy alternatives in its inventory, and it already takes special

15  orders for customers without a surcharge (including modifying drinks to be caffeine-free, sugar-free,

16  and to substitute various dairy milks), it must do so for lactose intolerant customers and customers

17  with milk allergies as well.  *See Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1014-1015

18  (9th Cir. 2017); *Phillips*, 2015 WL 7429497, at *4-6.  *See also* 28 C.F.R. § 36.307(a) & (b) ("A public

19  accommodation shall order accessible or special goods at the request of an individual with disabilities,

20  if, in the normal course of its operation, it makes special orders on requests for unstocked goods, and

21  if the accessible or special goods can be obtained from a supplier with who the public accommodation

22  customarily does business."). Defendant's failure to offer the same benefit to persons with lactose

23  intolerance and milk allergies (except with an added surcharge) constitutes discrimination under the

24  ADA.  *See* 42 U.S.C. § 12182(a)(i).

25      Defendant also argues that it does not discriminate against Plaintiffs because it charges both

26  non-disabled and disabled patrons more for non-dairy alternatives.  But at least one California court

27  has already rejected a similar argument.  In a case very similar to the one before this Court, the court

28  held that a plaintiff stated a claim under the Unruh Act based on an ADA violation regarding a

surcharge on customers with celiac disease who ordered from P.F. Chang's gluten-free menu.  *See Phillips*, 2015 WL 7429497, *4-6.  In *Phillips*, the plaintiff alleged that customers with celiac disease were singled out and charged more for meals that were no different from regular meals for which P.F. Chang's made free adjustments for food preferences for dietary needs. 2015 WL 7429497 at *4, 6. The plaintiff had pled that making gluten-free meals merely required substituting for gluten or omitting gluten, which was similar to what P.F. Chang's did for free for customers who wanted more or less spicy or vegetarian dishes, but P.F. Chang's targeted customers with celiac disease and discriminated against them by charging more for gluten-free meals. *Id.* at *5. The court in *Phillips* rejected the defendant's argument— nearly identical to Defendant's argument here—that the plaintiff could not show that defendant denied full and equal accommodations to patrons with celiac disease because all guests paid the same price for gluten-free menu items, regardless of whether they had celiac disease. *Id.* at *4. The court found that the plaintiff had stated an Unruh Act and ADA claim because the plaintiff alleged that P.F. Chang's "created an entirely separate—and higher priced—gluten-free menu targeted to persons with celiac disease," that P.F. Chang's "direct[ed] customers with celiac disease to the gluten-free menu rather than offering to make modifications for celiac customers the way [P.F. Chang's] does for other customers" (such as making things spicier or vegetarian), and that "the price differential between the regular-menu items and their gluten-free menu equivalents [was] the same across the board." *Id.* at *4, 6. Accordingly, the district court found that the plaintiff adequately alleged that "P.F. Chang's d[id] not provide 'full and equal' accommodations or services to those suffering from celiac disease" and that, from these facts, "one c[ould] reasonably infer that P.F. Chang's intentionally discriminate[d] by targeting customers with celiac disease." *Id.* at *4-6.

Defendant similarly imposes an improper discriminatory surcharge targeted at disabled customers.  Plaintiffs have alleged that Defendant imposes a surcharge discriminating against those with lactose intolerance or milk allergies because the retail cost of Non-Dairy Alternatives is not significantly more than dairy products (if at all) and that the retail price of whole milk, half & half, and heavy cream (which is provided for free by Defendant) is the same, if not more, than Non-Dairy Alternatives. (FAC, ¶ 124.)  Moreover, Plaintiffs have alleged that there is no expertise or additional

work required to substitute Non-Dairy Alternatives in place of 2% milk. (FAC, ¶ 17).  Plaintiffs have also alleged that Defendant modifies its regular beverage offerings to remove caffeine or make caffeine-free beverages at no additional charge for persons with a variety of conditions, including hypertension, and will modify its regular beverage offerings to remove sugar or use sugar-free sweeteners at no additional charge for those persons with diabetes or who need to control weight. (FAC, ¶¶ 14-15.)  Accordingly, the Non-Dairy Alternatives Surcharge is not imposed to defray the added costs of use of these ingredients or labor needed but is designed to profit from those consumers with lactose intolerance and milk allergies. Therefore, as in *Phillips*, Plaintiffs have alleged a claim under the ADA and the Unruh Act.

Defendant's cases are inapposite. Defendant's reliance on *Dare v. California*, 191 F.3d 1167 (9th Cir. 1999) is misplaced.  That case is a Title II case appliable to public entities rather than a Title III case and is inapplicable here. In contrast, *Phillips*, *supra*, is substantially similar to the case before this court and should be applied in this instance. Moreover, Defendant's reliance on *Painter v. Blue Diamond Growers*, 757 F. App'x 517, 519 (9th Cir. 2018) fails. *Painter* was a product mislabeling case where the plaintiff alleged that the defendant had mislabeled its beverages as almond "milk" because milk and the product had different nutritional profiles.  *Id.*  Similarly, *Gitson v. Trader Joe's Co.*, No. 13-CV-01333-VC, 2015 WL 9121232, at *1 (N.D. Cal. Dec. 1, 2015) is another product mislabeling case, this time addressing soy "milk."

The other cases relied upon by Defendant are similarly inapposite. Defendant cites several factually distinguishable cases where courts held that the ADA does not require entities to offer additional goods or to sell very different goods at the same price, which is not what Plaintiffs are requesting here. *See A.L. by and through D.L. v. Walt Disney Parks and Resorts US, Inc.*, 469 F. Supp. 3d 1280 (M.D. Fla. 2020) (theme park is not required to create a service or access designed exclusively for cognitively disabled individuals, but the park must provide an accommodation that provides autistic individuals with a "like experience" to the one nondisabled guests experience); *McNeil v. Time Ins. Co*, 205 F.3d 179 (5th 2000) (an insurer was not required to remove a coverage limit for AIDS because that would alter the content of the insurer's policies); *Weyer v. Twentieth Century Fox Film Corp.,* 198 F.3d 1104 (9th Cir. 1999) (declining to require an insurance company

to cover mental disabilities in the same way as physical disabilities); *Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 560 (7th Cir. 1999) (insurance cap on care for AIDS did not violate ADA).

Defendants also rely on *Munoz et al v. Peets Coffee, Inc.*, 4:24-cv-01764-JST, 2024 WL 4700646 (N.D. Cal. Nov. 5, 2024). In *Munoz*, Judge Tigar distinguished *Phillips v. P.F. Chang's China Bistro, Inc,.* No. 5:15-CV-00344-RMW, 2015 WL 7429497 (N.D. Cal. Nov. 23, 2015) from the plaintiffs' complaint in that case, in part on grounds that "Plaintiffs have similarly not alleged that Peet's directs customers with lactose intolerance or milk allergies to the more expensive menu items that include non-dairy alternatives." *See Munoz*, 2024 WL 4700646 at *3. This case, however, is distinguishable from *Munoz* because the Plaintiffs here have alleged that the server pointed to them to what was essentially a separate, higher-priced menu of non-dairy alternatives. (FAC, ¶¶ 40-42, 54-55, 194, 214). *Munoz* is also distinguishable on grounds that that courts stated that there were no allegations that failure to provide the requested accommodation would deprive a lactose intolerant customer from having a "like experience" as non-lactose intolerant customers." 2024 WL 4700646 at *4. Here, as discussed further below, Plaintiffs have alleged specific facts regarding the Dunkin experience, which explains in detail how Plaintiffs are deprived of a "like experience." (FAC, ¶¶ 130-140). Accordingly, *Munoz* is distinguishable.[2]

Finally, Defendant's doomsday scenario in which a ruling for Plaintiffs will require millions of businesses to alter their food and beverage offerings and the prices charged is unfounded. Defendant's primary competitor, Starbucks, has already removed its surcharge from non-dairy alternatives, and there is no indication that its business is now on the brink of collapse. And to the extent Defendant is arguing that providing Non-Dairy Alternatives without a surcharge would fundamentally alter its business, that is a question of fact inappropriate on a motion to dismiss. *See Crawford*, 2018 WL 1116725 at * 4 (whether a modification would fundamentally alter a business is a question of fact that cannot be resolved on the pleadings). Defendant's arguments therefore are unfounded, and their motion should be denied.

---

[2] Additionally, in *Munoz*, Judge Tigar gave the plaintiffs in that case leave to amend. Therefore, in the event this Court finds Plaintiffs' allegations here insufficient under *Munoz* or any other case, Plaintiffs respectfully request leave to amend.

5.    **Defendant's policy denies Plaintiffs a "like experience."**

The Ninth Circuit has required that public accommodations provide a "like experience" for disabled individuals to those experienced by non-disabled individuals. 42 U.S.C. §12182(b)(2)(A)(ii) provides:

> **(a) General rule**
> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.
>
> **(2) Specific prohibitions**
>         **(A) Discrimination**
>     For purposes of subsection (a), discrimination includes—
>                      * * *
>     **(ii)** a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations…

The Ninth Circuit has broadly interpreted this provision. *See Karczewski*, 862 F.3d at 1011-1012 (collecting cases, and stating, "[t]o the contrary, both the statute and our cases generally reject restrictive interpretations of the ADA.").

The plain language of the statute demonstrates that it applies to Plaintiffs' claims. Defendant's policy, practice, or procedure is to serve specialty coffee and teas with 2% cow's milk (or to substitute other dairy products at no additional charge). But Plaintiffs cannot consume dairy without experiencing serious medical symptoms, and therefore a modification of that policy, practice, or procedure is necessary to afford them such goods and services.

In *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1132 (9th Cir. 2012), the Court considered whether a disabled person could use a Segway to visit Disneyland instead of the wheelchairs and motorized scooters that were usually allowed. The plaintiff asserted that a Segway was necessary because she had difficulty standing from a seated position, and a Segway also would allow her to be at eye-level instead of being looked down upon by others. *See id.* at 1136. The Ninth Circuit rejected Disney's argument that because the plaintiff *could* access Disneyland using a

1   wheelchair or scooter, a Segway was not necessary.  *See id.* at 1134.  Noting that Disney's reading of

2   the ADA would require very few accommodations, the Ninth Circuit emphasized that ***"[t]he ADA***

3   ***guarantees the disabled more than mere access to public facilities; it guarantees them 'full and***

4   ***equal enjoyment*.'"** *Id.* at 1134-1135 (emphasis added).   The Court then illustrated its point by

5   discussing *Fortyune v. American Multi–Cinema, Inc.,* 364 F.3d 1075, 1085 (9th Cir. 2004), where it

6   held that a theater was required to provide wheelchair seating for the disabled individual *and* an

7   adjacent seat for his wife because moviegoers expect to sit with their friends and family during the

8   show; their enjoyment is diminished if they are forced to sit apart.  "Because Fortyune require[d] an

9   attendant to *enjoy* the viewing of a film, the modification that he requested, *i.e.,* that [the theater]

10  ensure that his companion could be seated next to him, was necessary." *Id.* at 1083 (emphasis added).

11      The *Baughman* Court further cited *Oregon Paralyzed Veterans of America v. Regal Cinemas,*

12  *Inc.,* 339 F.3d 1126, 1127–28 (9th Cir.2003), regarding seating for wheelchair-bound patrons only in

13  the front rows of the theater, noting that it found it "simply inconceivable that this arrangement could

14  constitute 'full and equal enjoyment' of movie theater services by disabled patrons" because it

15  required them "to crane their necks and twist their bodies in order to see the screen, while non-

16  disabled patrons [had] a wide range of comfortable viewing locations from which to choose."  *Id.* at

17  1133. Relying on this precedent, the Ninth Circuit in *Baughman* therefore found that "[p]ublic

18  accommodations must start by considering how their facilities are used by non-disabled guests and

19  then take reasonable steps to provide disabled guests with a like experience," and "[i]f [Disney] can

20  make Baughman's experience less onerous and more akin to that enjoyed by its able-bodied patrons,

21  it must take reasonable steps to do so."  *Id.* at 1135-1136.

22      Similarly, here, disabled individuals are denied a "like experience" and "full and equal

23  enjoyment."  Part of the experience of going to Dunkin is ordering their specialty drinks, most of

24  which include milk products.  After all, most people who want to order plain black coffee or tea can

25  just as easily make it at home rather than go out to a store for it.  Thus, in order to fully enjoy the

26  Dunkin' experience, disabled individuals with a milk allergy or lactose intolerance should be able to

27  substitute the dairy milk in these drinks for non-dairy milk at the same cost.

28

OPPOSITION TO MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1    But under Dunkin's current policy, disabled individuals are required to choose between
2    foregoing traditionally dairy-based specialty drinks, adding dairy to their drinks and experiencing
3    serious medical symptoms, or paying extra for their drinks.  This is not a "like experience" and
4    diminishes their enjoyment.  Indeed, nondisabled individuals are able to enjoy their coffee and tea at
5    a 17% lower price than disabled individuals.  And individuals with health issues that require them to
6    substitute caffeinated coffee for decaf or sugar for sugar-free syrup are also able to enjoy their coffee
7    or tea without paying extra for these substitutions.  Plaintiffs' requested modification is thus necessary
8    to have a "like experience" under the ADA and Ninth Circuit precedent, and Defendant's Motion
9    should be denied.

10    **6.    <u>Plaintiffs have stated a claim for intentional discrimination under the Unruh Act.</u>**

11    Defendant argues that Plaintiffs have failed to state a claim because they have not alleged
12    intentional discrimination. But intentional discrimination is not required for a violation of the Unruh
13    Act that is based upon a violation of the ADA. *See Phillips*, 2015 WL 7429497, at *6. The Unruh Act
14    specifically provides that "[a] violation of the right of any individual under the federal Americans
15    with Disabilities Act of 1990, shall also constitute a violation of this section." *See* Cal. Civ. Code §
16    51(f). As argued above, Plaintiffs have stated claims for violations of their rights under the ADA.
17    Therefore, they have stated a claim under the Unruh Act.

18    However, Plaintiffs have also alleged violation of the Unruh Act independent of the ADA. To
19    do so, Plaintiffs need only allege: "(1) [they were] denied the full and equal accommodations,
20    advantages, facilities, privileges, or services in a business establishment; (2) [their] disability was a
21    motivating factor for this denial; (3) defendant denied plaintiff the full and equal accommodations,
22    advantages, facilities, privileges, or services; and (4) defendant's wrongful conduct caused plaintiff
23    to suffer injury, damage, loss or harm." *See Wilkins-Jones v. Cnty. of Alameda*, 859 F. Supp. 2d 1039,
24    1048 (N.D. Cal. 2012).

25    Plaintiffs have established their prima facie case here. First, Plaintiffs allege they were denied
26    the full and equal accommodations, advantages, facilities, privileges, or services in Defendant's
27    business. FAC, ¶¶ 193-201. The accommodation, advantage, facility, privilege, or service at issue
28    here is Defendant's policy and practice of accommodating other customers' dietary preferences upon

1   request and free of charge by making modifications to Defendant's beverages. Defendant denied the

2   full and equal enjoyment of this accommodation by requiring Plaintiffs to pay the surcharge for Non-

3   Dairy Alternatives required by their disability.   *Id.*   Second, Plaintiffs allege that the Plaintiffs'

4   disability was a motivating factor for the denial of the accommodation. Specifically, Plaintiffs allege

5   that (a) Defendant offers modifications free of charge to customers without lactose intolerance, i.e.

6   whole milk, fat-free milk, caffeine-free and sugar-free (FAC, ¶¶ 12-15); (b) the price differential of

7   the Surcharge is the same no matter which Non-Dairy Alternative is substituted, i.e. there is no

8   difference between the extra charge for soy, almond, oat or lactose-free alternatives (FAC., ¶ 124);

9   and c) the Non-Dairy Alternative Surcharge is not based on any additional cost to Defendant to

10  prepare the beverage with the Non-Dairy Alternative substituted (FAC ¶ 124). *See Abernathy v.*

11  *Valley Medical Center*, 2006 WL 1515600, at *3 (W.D. Wash., May 25, 2006) (holding that plaintiff

12  could establish intentional discrimination where defendant failed to provide plaintiff with a service

13  that defendant "routinely" provides others.) Third, Defendant denied Plaintiffs the full and equal

14  enjoyment of this benefit because the complained-of conduct occurred at Defendant's retail stores

15  and pursuant to Defendant's policy. FAC ¶ 211. Fourth, Defendant's wrongful conduct caused

16  Plaintiffs to suffer injury, damage, loss or harm – namely, the cost of the Surcharge. *Id.*.  The facts

17  alleged are more than enough to establish prima facie discrimination under the Unruh Act. *See*

18  *Chuang v. Univ. Cal. Davis Bd. Of Trustee.*, 225 F.3d 1115, 1124 (9th Cir. 2000) (observing that

19  "[t]he proof required to establish a prima facie case is minimal and does not even need to rise to the

20  level of a preponderance of the evidence.").

21          **7.     Plaintiffs have stated a claim for unjust enrichment.**

22          Plaintiffs have sufficiently alleged damages to maintain a cause of action for unjust

23  enrichment.  In California, the elements of an unjust enrichment claim are: 1) Defendant received a

24  benefit; 2) Defendant's benefit was at the Plaintiff's expense; and 3) it would be unfair for the

25  defendant to keep the benefit without compensating a proportionate amount to the plaintiff. *See*

26  *Peterson v. Cellco P'ship*, 80 Cal. Reptr 3d 316 (Ct. App. 2008).  Again, all the elements are present

27  in the FAC: (1) Plaintiffs paid a surcharge for being disabled. Plaintiffs conferred a benefit to

28  Defendant by allowing them to collect a surcharge in exchange for providing Plaintiffs with non-dairy

1   alternatives such as lactose-free milk (FAC, ¶ 263) (2) Defendant has knowledge and appreciation of

2   the surcharge and (3) it would be inequitable for the Defendant to retain said benefit and reap unjust

3   enrichment (FAC, ¶ 265). Defendant incorrectly claims that Plaintiffs cannot state a claim for unjust

4   enrichment because they received the benefit of their bargain. But that is not the case. Here, Plaintiffs

5   did receive a latte or a cappuccino, but they paid more than the beverage was worth because Defendant

6   imposed a surcharge on their condition. Non-disabled persons paid less for those beverages than

7   Plaintiffs and the class.

8        In *Phillips*, *supra*, the court found that the plaintiff stated a claim for unjust enrichment where

9   the defendant took additional money from plaintiff and members of the putative class for gluten-free

10  menu items that were substantially identical to non-gluten free menu items except for the presence of

11  gluten based solely on the fact that plaintiff and the putative class could not consume foods with

12  gluten and had no choice but to pay a surcharge for gluten-free foods. *See Phillips*, 2015 WL 7429497,

13  at *7. The court found that the plaintiff had sufficiently alleged that the defendant had unjustly

14  retained a benefit from the plaintiff. Plaintiffs here make similar allegations.

15  Specifically, Plaintiffs allege that Defendant enriched itself at the expense of Plaintiffs and the

16  putative class members by its illegal levying of the Surcharge for Non-Dairy Alternatives. FAC, ¶

17  264. Plaintiffs have alleged that Defendant imposes a surcharge discriminating against those with

18  lactose intolerance or dairy allergies because the retail cost of Non-Dairy Alternatives is not

19  significantly more than dairy products (if at all) and that the retail price of Whole Milk, Half & Half,

20  and Heavy Cream (which is provided for free by Defendant) is the same, if not more, than their Non-

21  Dairy Alternatives. FAC, ¶ 124. Moreover, Plaintiffs have alleged that there is no expertise or

22  additional work required to substitute Non-Dairy Alternatives for 2% milk. *Id.*.Therefore, as in

23  *Phillips*, Plaintiffs have alleged a claim for unjust enrichment.

24      **8.   <u>Should the Court believe that the Complaint is insufficient, Plaintiffs request leave
        to amend.</u>**

25

26      Where courts believe a complaint requires additional facts to state a claim, "Rule 15 advises

27  the court that 'leave shall be freely given when justice so requires.' This policy is 'to be applied with

28  extreme liberality.'"   *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)

1  (motions for leave to amend should be granted with "extreme liberality").  "In the absence of any

2  apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the

3  movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to

4  the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave

5  sought should, as the rules require, be 'freely given.'"[3]  *Id.* at 1052 (citing *Foman v. Davis*, 371 U.S.

6  178, 182 (1962)).

7         Should the Court believe that Plaintiffs have failed to include detailed enough allegations

8  regarding personal jurisdiction, their disabilities, Defendant's failure to accommodate Plaintiffs, or

9  regarding any other issue, Plaintiffs respectfully request leave to amend to allege these facts.  *See,*

10 *e.g. Phillips*, No. 5:15-cv-00344, 2015 WL 4694049, *9 (N.D. Cal. Aug. 6, 2015) (granting leave to

11 amend) and *Phillips*, 2015 WL 7429497, *5-8 (finding amended complaint stated a claim).  Although

12 Defendant argues that this Court has previously granted leave to amend, the Court did not previously

13 rule on Plaintiffs' factual allegations beyond the prior allegations of Plaintiffs' disablilities. The Court

14 also only previously ruled on Plaintiffs' factual allegations with respect to Duncan Donuts LLC

15 instead of with respect to the current Defendants.  Moreover, Plaintiffs have alleged new facts

16 regarding specific symptoms that they suffer with respect to their disabilities.  Accordingly, should

17 the Court find any of Plaintiffs' allegations insufficient to state a claim against Defendant, Plaintiffs

18 respectfully request that this Court grant leave to amend.

19              **III.    <u>CONCLUSION</u>**

20         For the foregoing reasons, Defendant's Motion should be denied on both 12(b)(2) and 12(b)(6)

21 grounds.  In the alternative, should this Court find that Plaintiffs have failed to allege facts sufficient

22 to state a claim, Plaintiffs respectfully request that this Court grant them leave to amend.

23

24 Dated: February 12, 2025

25

26

27

28 [3] None of these factors are present here, and should the Court find merit to any of Defendant's arguments, all of their concerns could be rectified by amendment.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

/s/ Bogdan Enica
Bogdan Enica (*Pro Hac Vice*)
KEITH GIBSON LAW, P.C.
1200 N Federal Hwy. Ste.300
Boca Raton FL 33432
Telephone: (305) 306-4989
Email: bogdan@keithgibsonlaw.com

Keith L. Gibson (*Pro Hac Vice*)
KEITH GIBSON LAW, P.C.
586 Duane Street, Suite 102
Glen Ellyn, IL 60137
Telephone: (630) 677-6745
Email: keith@keithgibsonlaw.com

Trenton R. Kashima (SBN No. 291405)
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC
402 West Broadway, Suite 1760
San Diego, CA 92101
Telephone: (619) 810-7047
Email: tkashima@milberg.com

*Counsel for Plaintiffs and the Putative Class*

OPPOSITION TO MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT