David B. Carpenter (*pro hac vice*)
Brett E. Coburn (*pro hac vice*)
**ALSTON & BIRD LLP**
1201 West Peachtree Street, Suite 4900
Atlanta, Georgia 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
david.carpenter@alston.com
brett.coburn@alston.com

Meghan M. McBerry (SBN 334464)
**ALSTON & BIRD LLP**
55 Second Street, Suite 2100
San Francisco, CA 94105
Telephone: (415) 243-1000
Facsimile: (415) 243-1001
meghan.mcberry@alston.com

Attorneys for Defendant
**DUNKIN' DONUTS FRANCHISING LLC**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHELSEA GARLAND, TONYA HUGHES, NATASHA HERNANDEZ, GEANEEN COJOM, ARSENIO PELAYO, ALBERT FITCH, PAULEEN MARA, LORA PREMO, URCELINA MEDEIROS, RUBY SMITH, individually and on behalf of all those similarly situated,<br><br>    Plaintiffs,<br><br> v.<br><br>DUNKIN' DONUTS FRANCHISING, LLC, 6201 HOLLYWOOD DONUTS LLC, BURTON RESTAURANTS, LLC, RW OAKLAND LLC, MADISON FOOD MANAGEMENT, LLC, GOLDEN GATE RESTAURANT GROUP, LLC,<br><br>    Defendants. | Case No.: 3:23-CV-06621-SI<br><br>**DEFENDANT DUNKIN' DONUTS FRANCHISING LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**Judge:** Hon. Susan Illston<br>**Date:** March 14, 2025<br>**Time:** 10:00 a.m. PT<br>**Location:** San Francisco Courthouse<br>   Courtroom 1 – 17th Floor<br>   450 Golden Gate Avenue<br>   San Francisco, CA 94102<br><br>Action filed: December 26, 2023<br>FAC filed: December 11, 2024 |

## **TABLE OF CONTENTS**

I.      INTRODUCTION ...............................................................................................1

II.     RULE 12(B)(2) ARGUMENT .........................................................................1

III.    RULE 12(B)(6) ARGUMENTS .......................................................................4

      A.      Dunkin' Is Not a Place of Public Accommodation.......................................4

      B.      Plaintiff Hughes Fails to Sufficiently Plead That She Is Disabled. ...............6

      C.      Certain Plaintiffs Fail to Adequately Plead Notice........................................7

      D.      Dunkin' Is Not Required to Offer Accessible Goods or Sell Accessible Goods at the Same Price as Non-Accessible Goods. ........................................................7

      E.      The Upcharge Is Not an Impermissible "Surcharge." ....................................10

      F.      Plaintiffs' Intentional Discrimination Claim Under the Unruh Act Fails.......................12

      G.      Plaintiffs Fail to State a Claim for Unjust Enrichment. .................................13

      H.      The Court Should Deny Leave to Amend........................................................14

IV.     CONCLUSION..................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abernathy v. Valley Medical Center*,
No. C06-001 MJP, 2006 U.S. Dist. LEXIS 33966 (W.D. Wash. May 25, 2006) .............12, 13

*Access Now, Inc. v. Sportswear, Inc.*,
298 F. Supp. 3d 296 (D. Mass. 2018) ..........................................................................3

*Anderson v. Macy's, Inc.*,
943 F. Supp. 531 (W.D. Pa. 2013)..............................................................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................4, 8

*Baughman v. Walt Disney World Co.*,
685 F.3d 1131 (9th Cir. 2012) ......................................................................................9

*Bower v. Glob. Orange Dev., LLC*,
No. 1:24-cv-00631-HYJ-PJG (W.D. Mich. Dec. 16, 2024) ........................................ *passim*

*Chaffin v. Int'l Coffee & Tea, LLC*,
No. CV 24-3132-GW-SKx, 2025 U.S. Dist. LEXIS 8207 (C.D. Cal. Jan. 15, 2025) ..... *passim*

*Chodos v. W. Publishing Co.*,
292 F.3d 992 (9th Cir. 2002) ..............................................................................6, 7, 15

*Citizens for Free Speech, LLC v. Cnty. of Alameda*,
No. C 19-1026, 2020 U.S. Dist. LEXIS 35761 (N.D. Cal. Mar. 2, 2020)................................2

*Crawford v. Uber Techs., Inc.*,
No. 17-cv-02664-RS, 2018 U.S. Dist. LEXIS 33778 (N.D. Cal. Mar. 1, 2018) ..................5, 6

*Dare v. California*,
191 F.3d 1167 (9th Cir. 1999) ..............................................................................11, 12

*Fortyune v. American Multi-Cinema, Inc.*,
364 F.3d 1075 (9th Cir. 2004) ......................................................................................9

*Fraser v. Goodale*,
342 F.3d 1032 (9th Cir. 2003) ......................................................................................6

*Grier v. Finjan Holdings, Inc. (In re Finjan Holdings, Inc. Sec. Litig.)*,
58 F.4th 1048 (9th Cir. 2023) ............................................................................1, 4, 12

*Holly v. Jewell*,
No. 16-cv-00011-DMR, 2017 U.S. Dist. LEXIS 1043 (N.D. Cal. Jan. 3, 2017) ...................15

ii

*In re Cciv/Lucid Motors Sec. Litig.*,
    No. 4:21-cv-09323-YGR, 2023 U.S. Dist. LEXIS 122662 (N.D. Cal. June 29, 2023)............2

*Ismail v. Cnty. of Orange*,
    917 F. Supp. 2d 1060 (C.D. Cal. 2012) ...............................................................15

*Johnson v. Winchester Campbell Properties*,
    No. 18-cv-04153-VKD, 2018 U.S. Dist. LEXIS 213064 (N.D. Cal. Dec. 18, 2018)...............5

*Lemmons v. Ace Hardware Corp.*,
    No. 12-cv-03936-JST, 2014 U.S. Dist. LEXIS 91347 (N.D. Cal. July 3, 2014)......................4

*Munoz v. Peet's Coffee, Inc.*,
    No. 24-cv-01764-JST, 2024 U.S. Dist. LEXIS 201361 (N.D. Cal. Nov. 5, 2024).......... *passim*

*O'Byrne v. Reed*,
    No. CV 09-08406 DMG, 2010 U.S. Dist. LEXIS 153616 (C.D. Cal. Aug. 6, 2010)...............5

*Ottensen v. Hi-Tech Pharms., Inc.*,
    No. 19-cv-07271-JST, 2024 U.S. Dist. LEXIS 232120 (N.D. Cal. Dec. 23, 2024) .................3

*Peterson v. Cellco P'ship*,
    164 Cal. App. 4th 1583 (2008) ...........................................................................13

*Phillips v. P.F. Chang's*,
    No. 5:15-cv-00344-RMW, 2015 U.S. Dist. LEXIS 159474 (N.D. Cal. Nov. 23, 2015). *passim*

*Quantum Labs, Inc. v. Maxim Integrated Prods.*,
    No. 18-cv-07598-BLF, 2019 U.S. Dist. LEXIS 199579 ..........................................15

*Ray v. U.S. Bank Tr., N.A.*,
    No. 22-cv-06333-DMR, 2023 U.S. Dist. LEXIS 148509 (N.D. Cal. Aug. 23, 2023)............15

*Reingold v. Elements Therapeutic Massage, LLC*,
    No. SACV 20-785-GW-DFMx, 2020 U.S. Dist. LEXIS 263465 (C.D. Cal. Aug. 18, 2020)...2

*Robles v. Domino's Pizza LLC*,
    No. CV 16-6599 JGB (Ex), 2021 U.S. Dist. LEXIS 124356 (C.D. Cal. June 23, 2021) ..........5

*Smith v. Pride Mobility Prods. Corp.*,
    2017 U.S. Dist. LEXIS 20195 (N.D. Cal. Feb. 12, 2017), *aff'd in part, rev'd in part on other grounds*, 700 F. App'x 583 (9th Cir. 2017) ..........................................................9

*United States v. Days Inns of Am.*,
    No. CIV. S-96-260 WBS/GGH, 1998 U.S. Dist. LEXIS 21945 (E.D. Cal. Jan. 12, 1998) ......5

*Vallarta v. United Airlines, Inc.*,
    497 F. Supp. 3d 790 (N.D. Cal. 2020) ...................................................................3

*Weyer v. Twentieth Century Fox Film Corp.*,
    198 F.3d 1104 (9th Cir. 1999) .......................................................................................7

*Zamora v. Wendy's Int'l, LLC*,
    No. 19-CV-06133-LHK, 2020 U.S. Dist. LEXIS 111636 (N.D. Cal. June 25, 2020) .............4

**RULES & REGULATIONS**

Rule 12(B)(2) ...........................................................................................................................1

Rule 12(B)(6) ...........................................................................................................................4

**STATUTES**

ADA ................................................................................................................... *passim*

Unruh Act.................................................................................................12, 13, 14

## I.    <u>INTRODUCTION</u>

In its Opening Brief, Defendant Dunkin' Donuts Franchising LLC ("Dunkin'") demonstrated that Plaintiffs have failed to cure any of the deficiencies that led this Court to dismiss their initial complaint. Nothing in Plaintiffs' Opposition contradicts, or even substantively responds to, those points. Rather, Plaintiffs rest on the "new" allegations in the FAC, as if they are sufficient. Plaintiffs, however, continue to run up against the fundamental issue that the ADA simply does not require Dunkin' restaurants to charge them the same price for Dairy Milk and Non-Dairy Alternatives due to their alleged disabilities. Multiple courts have now distinguished the ***only*** case on which Plaintiffs rest their entire case, *Phillips v. P.F. Chang's*, No. 5:15-cv-00344-RMW, 2015 U.S. Dist. LEXIS 159474 (N.D. Cal. Nov. 23, 2015), yet Plaintiffs persist in trying to fit a square peg into a round hole. The Court should grant Dunkin's Motion to Dismiss with prejudice and put an end to this matter once and for all.

## II.    <u>RULE 12(B)(2) ARGUMENT</u>

As Dunkin' has previously demonstrated, the FAC still fails to establish specific jurisdiction because it does not tie Dunkin's contacts with California to the allegations that give rise to this case, namely that Dunkin' requires its franchisees to charge an Upcharge for Non-Dairy Alternatives. (Dkt. 48 at 6-8.) As set forth in Dunkin's initial brief, the FAC wholly fails to demonstrate that Plaintiffs' claims arise out of or relate to Dunkin's franchise agreements with franchisees in California.

Plaintiffs' response is a simple recitation of their new allegations, which they contend are sufficient. (Dkt. 67 at 3-4.) But they do not even attempt to defend their failure to allege "the locations and dates of all Dunkin' visits alleged" by the named Plaintiffs—which this Court explicitly directed was necessary for them to establish personal jurisdiction. (*See* Dkt. 48 at 4 n.4.) Even more glaringly, Plaintiffs fail to reconcile, on the one hand, their specific allegations admitting that Dunkin' franchisees set their own prices and charges, and that Dunkin', at most, only suggests or recommends pricing for Non-Dairy Alternatives, with, on the other hand, their conclusory allegations that Dunkin' "directs its franchisees in California to impose a surcharge for Non-Dairy Alternatives and to adhere to the policies that are subject to this lawsuit." (*Compare* Dkt. 47 ¶¶ 28, 29*, with id.* ¶¶ 27, 30.) *See Grier v. Finjan Holdings, Inc. (In re Finjan Holdings, Inc. Sec. Litig.)*, 58 F.4th 1048, 1052 n.1 (9th Cir. 2023) (finding when specific facts alleged in a complaint contradict general, conclusory allegations, the "specific facts are controlling").

Plaintiffs also do not dispute that Dunkin's franchise agreements with the newly named Franchise Defendants (the restaurants of which Plaintiffs do not allege they actually visited) make clear that franchisees "are free to determine the prices [they] charge for the products [they] sell" and franchisees "agree to comply with all civil and criminal laws." (Dkt. 48 at 4; 48-1 ¶¶ 2-7, Exs. 1-6 §§ 7.1, 7.3.)[1] Nor do they submit any evidence to the contrary. For all the jurisdictional discovery Plaintiffs took regarding Dunkin', they make no attempt to tie Dunkin's actual behavior to any claims arising in California but instead merely replaced one Dunkin' entity with another.

As Dunkin' previously explained, a franchisor's control over some aspects of a franchisee's operations is insufficient to establish specific jurisdiction if the control is not over aspects that relate to the plaintiff's claims. (Dkt. 48 at 8 (discussing *Reingold v. Elements Therapeutic Massage, LLC*, No. SACV 20-785-GW-DFMx, 2020 U.S. Dist. LEXIS 263465, at *16-17 (C.D. Cal. Aug. 18, 2020)).) Plaintiffs not only failed to cite any countervailing authority, but they failed to respond to this argument ***at all***. (*See* Dkt. 67 at 2-6.) This is a concession that Dunkin's argument is correct, and one the Court may treat as dispositive. *See, e.g.*, *Citizens for Free Speech, LLC v. Cnty. of Alameda*, No. C 19-1026 SBA, 2020 U.S. Dist. LEXIS 35761, at *9 (N.D. Cal. Mar. 2, 2020) (Illston, J.) ("Tellingly, Plaintiffs' opposition to the instant fee motion completely fails to address the Court's res judicata ruling, thereby conceding the correctness of the Court's ruling."); *In re Cciv/Lucid Motors Sec. Litig.*, No. 4:21-cv-09323-YGR, 2023 U.S. Dist. LEXIS 122662, at *8 n.3 (N.D. Cal. June 29, 2023) (denying leave to amend and dismissing with prejudice due to plaintiffs' failure to address a missing element of their claim).

Finally, in response to Dunkin's argument that the claims of the named Plaintiffs who are not California residents should be dismissed for lack of personal jurisdiction, Plaintiffs simply recycle their opposition arguments from the prior round of briefing in this case. (*Compare* Dkt. 67 at 4-6, *with* Dkt. 26 at 7-9 (arguing in both that *Bristol-Myers* is not applicable to federal cases; that *Suazo* is distinguishable; and that this Court should exercise pendent personal jurisdiction over the named out-of-state Plaintiffs' claims).) Plaintiffs make no effort to address Dunkin's previous reply arguments, which demonstrated the weaknesses of the arguments Plaintiffs attempt to make here. (Dkt. 30 at 3-4 (explaining that *Bristol-*

---

[1] Plaintiffs also do not dispute that the Court may consider these franchise agreements under the incorporation by reference doctrine. (Dkt. 48 at 4 & n.5; *see* Dkt. 67 at 2-6.)

*Myers* and *Suazo* are applicable and directly on point, and that Plaintiffs' request for pendent personal jurisdiction is actually a request for "pendent party personal jurisdiction" which has "no basis in the federal rules or statutes").) Dunkin' reasserts and incorporates those arguments here. (*Id.*) And the weight of authority from this Circuit and outside it supports Dunkin's arguments: "[T]he 'overwhelming majority of federal courts,' including courts in this district, 'have held that *Bristol-Myers* applies to claims brought by named plaintiffs in class actions' when federal courts are sitting in diversity." *Ottensen v. Hi-Tech Pharms., Inc.*, No. 19-cv-07271-JST, 2024 U.S. Dist. LEXIS 232120, at *10 (N.D. Cal. Dec. 23, 2024) (quoting *Sloan v. Gen. Motors LLC*, No. 16-cv-07244-EMC, 2019 U.S. Dist. LEXIS 210191, at *28-29 (N.D. Cal. Dec. 5, 2019)) (dismissing New York-based named plaintiffs' common-law claims and claims under New York General Business Law Section 349 on behalf of themselves and a New York subclass); *Vallarta v. United Airlines, Inc.*, 497 F. Supp. 3d 790, 800 (N.D. Cal. 2020) (dismissing Connecticut-residing plaintiff's claims brought under Connecticut law on behalf of a Connecticut class because "[t]hat Defendant may have directed certain actions to the state of California simply has no bearing on the harm Plaintiff Salmons allegedly suffered in Connecticut" and noting "Plaintiffs do not cite a single case in which a Court found specific jurisdiction over a non-forum resident, or a class of non-forum residents, proceeding under non-forum law based solely on the defendant's activities directed to forum residents"); *see also Access Now, Inc. v. Sportswear, Inc.*, 298 F. Supp. 3d 296, 300 (D. Mass. 2018) (applying *Bristol-Myers* to dismiss nonresident plaintiffs' ADA claims because they "have not demonstrated that there is a connection between the forum and the specific claims at issue" other than through resident plaintiff's claims).[2]

    At this stage, the burden is on Plaintiffs to make a *prima facie* case for personal jurisdiction. (Dkt. 34 at 5.) Despite having conducted jurisdictional discovery, Plaintiffs have still failed to carry that burden, and the Court should dismiss the action without leave to amend.

---

[2] The *Ottensen* court also found that the "the weight of authority . . . weighs heavily against the exercise of pendent jurisdiction in a diversity case such as this one," despite plaintiffs' arguments that the New York and California plaintiffs' claims "arise out of the same common nucleus of fact" and "severing their claims would be contrary to judicial economy." *Ottensen v. Hi-Tech Pharms., Inc.*, No. 19-cv-07271-JST, 2024 U.S. Dist. LEXIS 232120, at *10-11 (N.D. Cal. Dec. 23, 2024) (first quoting *King v. Bumble Trading, Inc.*, No. 18-cv-06868-NC, 2020 U.S. Dist. LEXIS 24543, at *16 (N.D. Cal. Feb. 11, 2020), then quoting plaintiffs' opposition brief)).

## III.    RULE 12(B)(6) ARGUMENTS

### A.    Dunkin' Is Not a Place of Public Accommodation.

As Dunkin' explained in its Opening Brief, Plaintiffs fail to state a claim under the ADA because Dunkin' is not a place of public accommodation. Specifically, Plaintiffs fail to allege adequately that Dunkin' operates any of the relevant restaurants—that is, that Dunkin' "specifically control[led] the modification of the franchises to improve their accessibility to the disabled." *Zamora v. Wendy's Int'l, LLC*, No. 19-CV-06133-LHK, 2020 U.S. Dist. LEXIS 111636, at *14 (N.D. Cal. June 25, 2020) (alteration in original) (citation omitted). In fact, Plaintiffs now admit that Dunkin' is only a franchisor, and that each franchisee-defendant "operat[es]" one or more of the specific restaurants potentially at issue. (Dkt. 47 ¶¶ 104-109.)

Plaintiffs attempt to circumvent this reality by referencing paragraphs 26, 27, 28 and 30 of the FAC. (Dkt. 67 at 7.) In total, these paragraphs allege that Dunkin' entered into franchise agreements "for the purpose of operating retail stores"; that Dunkin' exercises "a high degree of control" over its franchisees; and that Dunkin' directs its franchisees. (Dkt. 47 ¶¶ 26-28, 30.) Such allegations, which are completely conclusory, do not adequately plead that Dunkin' *actually* operates the relevant restaurants. In the context of Title III, "[t]o be considered an 'operator' . . . a person or entity must have an active and significant degree of control **over the access[] related aspects of the facility in question**. " *Lemmons v. Ace Hardware Corp.*, No. 12-cv-03936-JST, 2014 U.S. Dist. LEXIS 91347, at *19 (N.D. Cal. July 3, 2014) (emphasis added) (citing *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 849 (9th Cir. 2004)). Thus, general allegations that Dunkin' exercises "control" and "directs" its franchisees are not sufficient. (Dkt. 47 ¶¶ 26-27, 30.); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Such allegations are also contradicted by allegations that Dunkin' only "suggest[s]" and "recommend[s]" pricing of products to franchisees, and that franchisees use the POS system "for implementing the ***franchisee's pricing*** and charges, including ***for Non-Dairy Alternatives***." (Dkt. 47 ¶¶ 28–29.) *See Grier*, 58 F.4th at 1052 n.1 (finding when specific facts alleged in a complaint contradict general, conclusory allegations, the "specific facts are controlling"). Plaintiffs thus fail to allege, and cannot allege, that Dunkin' "specifically control[led] the modification of the franchises to improve their accessibility to the disabled." *Zamora*, 2020 US Dist. LEXIS 111636, at *14 (alteration in original)

1  (quoting *Neff v. Am. Dairy Queen Corp.*, 58 F.3d 1063, 1066 (5th Cir. 1995)); *see also O'Byrne v. Reed*,

2  No. CV 09-08406 DMG (DTBx), 2010 U.S. Dist. LEXIS 153616, at *7 (C.D. Cal. Aug. 6, 2010); *United*

3  *States v. Days Inns of Am.*, No. CIV. S-96-260 WBS/GGH, 1998 U.S. Dist. LEXIS 21945, at *15 (E.D.

4  Cal. Jan. 12, 1998).

5       The three cases Plaintiffs cite (the same ones cited in their prior opposition) are readily

6  distinguishable for the same reasons set out in Dunkin's prior reply. The first case, *Johnson v. Winchester*

7  *Campbell Properties*, No. 18-cv-04153-VKD, 2018 U.S. Dist. LEXIS 213064 (N.D. Cal. Dec. 18, 2018),

8  involved a question of the court's basis for subject-matter jurisdiction. Moreover, *Johnson* did not involve

9  contradictory allegations regarding whether defendant had an active and significant degree of control over

10  the access-related aspects of the facility in question. *Id.* at *11. Rather, in *Johnson*, the defendant simply

11  argued that, as a matter of law, franchisors cannot be liable for franchisees' failure to comply with the

12  ADA. *Id.* at *9. Dunkin' does not make a similar argument. Rather, here, Plaintiffs' own allegations refute

13  the contention that Dunkin' operates the relevant restaurants. (Dkt. 47 ¶¶ 28–29.) Further, the *Johnson*

14  court found that a franchisor's liability depends, at least in part, on the franchise agreement at issue and

15  whether it gives the defendant the requisite control over the access-related aspects of the restaurant.

16  *Johnson*, 2018 U.S. Dist. LEXIS 213064, at *10. Here, the specific language in the franchise agreements,

17  which are incorporated into the FAC by reference, give the franchisees the authority to set the prices they

18  charge for items sold and place the obligation to ensure legal compliance on the franchisees. (Dkt. 48-1

19  ¶¶ 2-7, Exs. 1-6 §§ 7.1, 7.3.)

20       The second case, *Robles v. Domino's Pizza LLC*, No. CV 16-6599 JGB (Ex), 2021 U.S. Dist.

21  LEXIS 124356 (C.D. Cal. June 23, 2021), involved a motion for summary judgment and is irrelevant to

22  Plaintiffs' contention that courts have rejected attempts to "dismiss an action *on the pleadings*." (Dkt. 67

23  at 7 (emphasis added).) More importantly, the defendant in *Domino's* admitted to controlling the website

24  at issue, 2021 U.S. Dist. LEXIS 124356, at *21, which is far different from the circumstances here.

25       The third case, *Crawford v. Uber Techs., Inc.*, No. 17-cv-02664-RS, 2018 U.S. Dist. LEXIS 33778

26  (N.D. Cal. Mar. 1, 2018), involved a standing inquiry and was concerned with determining whether the

27  defendant was a covered entity under Section 12184 of the ADA, which prohibits discrimination in

28

specified public transportation services provided by private entities and is entirely irrelevant to places of public accommodation. *Id.* at *10-14.

Because Plaintiffs have failed to sufficiently plead that Dunkin' operates any of the relevant restaurants, their ADA claim must be dismissed.[3]

**B.    Plaintiff Hughes Fails to Sufficiently Plead That She Is Disabled.**

Plaintiffs do not argue that Plaintiff Hughes sufficiently pled that she is disabled and instead ask for leave to amend *again*, or to remove her claim. (Dkt. 67 at 8-9.) They already had a chance to correct this deficiency, which was identified by both Dunkin' (Dkt. 21 at 18-19) and the Court (Dkt. 24 at 11-13). (*See* Dkt. 67 at 2 (acknowledging that the Court already found that Plaintiffs did not sufficiently allege a disability)). Plaintiffs offer nothing to justify a third attempt. *See Chodos v. W. Publishing Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (finding it within district courts' discretion to deny leave to amend when "new" facts sought to be added were available at the time of an earlier pleading). That there are individualized allegations regarding other Plaintiffs' experience with dairy products shows Plaintiffs know how to plead such allegations (*see, e.g.*, Dkt. 47 ¶¶ 37-39, 49-51), and that this pleading deficiency as to Plaintiff Hughes is incurable by further amendment (indeed, Plaintiffs' offer "to remove" the claim effectively concedes this). The Court should dismiss Plaintiff Hughes's ADA claim with prejudice.[4]

---

[3] As explained more fully in the Opening Brief, the result is the same under the state laws of each Plaintiff's home state. (Dkt. 48 at 18 n.7.)

[4] Although Dunkin' does not challenge in this motion that lactose intolerance may be a disability, it does not concede that it is a disability for all purposes in this case or as applied to all Plaintiffs. In fact, another court in yet another case brought by the same counsel against a different coffee retailer, *Chaffin v. Int'l Coffee & Tea, LLC*, No. CV 24-3132-GW-SKx, 2025 U.S. Dist. LEXIS 8207 (C.D. Cal. Jan. 15, 2025), recently concluded that even plaintiffs' more detailed allegations regarding their personal experiences with lactose intolerance did not suffice to plead a "disability" under the ADA under the Ninth Circuit's decision in *Fraser v. Goodale*, 342 F.3d 1032, 1038-40 (9th Cir. 2003). *Id.* at *7-12 (alteration in original) (explaining that "merely suffer[ing] *some* limit" does not equate with a substantial limitation on a major life activity and that "Plaintiffs also have not directed the Court . . . to a case that demonstrates that the symptoms they report experiencing when consuming lactose—something that Defendant does not *require* that they do by virtue of its pricing decisions—amounts to a substantial limitation"); *see also* Minute Order, *Chaffin*, No. CV 24-3132-GW-SKx, ECF No. 30 at 1 (Jan. 16, 2025) (granting motion to dismiss with leave to amend "[b]ased on the tentative ruling").

1    **C.    Certain Plaintiffs Fail to Adequately Plead Notice.[5]**

2    Again, Plaintiffs do not argue that Plaintiff Hughes, Pelayo, Premo, Medeiros, Fitch, and Smith's

3    sufficiently allege they put any restaurant or its employees on notice of their condition, need for a

4    modification, or preferred modification. (Dkt. 67 at 9.) Rather, they again request leave to amend without

5    any justification. (*Id.* at 9.) *See Chodos*, 292 F.3d at 1003. Plaintiffs have already had a chance to amend

6    their complaint after Dunkin' (Dkt. 21 at 20-22) and the *Munoz* court similarly noted their failure to

7    adequately plead notice. (*See* Dkt. 48 at 19-21.) *See Munoz v. Peet's Coffee, Inc.*, No. 24-cv-01764-JST,

8    2024 U.S. Dist. LEXIS 201361, at *13 (N.D. Cal. Nov. 5, 2024); *see also Bower v. Glob. Orange Dev.,*

9    *LLC*, No. 1:24-cv-00631-HYJ-PJG, ECF No. 32 at 8-9 (W.D. Mich. Dec. 16, 2024), *denied*

10   *reconsideration* ECF No. 36. That four Plaintiffs are alleged to have provided notice of their condition,

11   need for a modification, and preferred modification shows that Plaintiffs know how to plead such

12   allegations (*see, e.g.*, Dkt. 47 ¶¶ 40-41, 51-52, 61-62, 80-81), and that the pleading deficiencies related to

13   Plaintiff Hughes, Pelayo, Premo, Medeiros, Fitch, and Smith are incurable by further amendment. These

14   Plaintiffs' ADA claims should, therefore, be dismissed with prejudice.

15   **D.    Dunkin' Is Not Required to Offer Accessible Goods or Sell Accessible Goods at the**

16   **Same Price as Non-Accessible Goods.**

17   Contrary to Plaintiffs' contention, nothing in the ADA requires a place of public accommodation

18   (which Dunkin' is not) to lower the price of a good in its inventory because an individual with a disability

19   would like to purchase it. The ADA regulates *access* to the goods and services that places of public

20   accommodation typically provide, not the content of those goods and services, and certainly not the pricing

21   of those goods and services. *See Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1115 (9th

22   Cir. 1999). Plaintiffs contend that the ADA requires restaurants to sell Non-Dairy Alternatives at the same

23   price as Dairy Milk. Again, **the ADA regulates access** and **Plaintiffs have equal access** to Dunkin's

24   locations and offerings, including Non-Dairy Alternatives.

25   Plaintiffs' entire case is based on *Phillips*, 2015 U.S. Dist. LEXIS 159474, an unpublished district

26   court case that was wrongly decided. (Dkt. 67 at 9-10; Dkt. 48 at 17-18 (explaining why *Philips* is

27

28   [5] Although Dunkin' does not challenge in this motion that certain Plaintiffs sufficiently alleged notice, it does not concede that any Plaintiff has properly stated any claim for all of the reasons in its Opening Brief and in this Reply.

incorrect).) Plaintiffs do not actually argue that *Phillips* is good law; instead, they simply draw similarities between this case and *Phillips* to argue that the result here should be the same as in *Phillips*. (Dkt. 67 at 9-11.) This Court should not follow *Phillips* for all the reasons set out in Dunkin's Opening Brief (and in its previous briefs).

Even if the Court follows *Phillips* and holds that the ADA requires that goods be sufficiently different from one another to warrant price differences, this case is easily distinguishable from *Phillips* on a number of fronts, as has been noted by the *Munoz*, *Bower*, and *Chaffin* courts. *See Munoz*, 2024 U.S. Dist. LEXIS 201361, at *9-10; *Bower*, No. 1:24-cv-00631-HYJ-PJG, ECF No. 32 at 6-7; *Chaffin*, 2025 U.S. Dist. LEXIS 8207, at *15-16.

***First***, unlike a meal with or without gluten, courts have found that Dairy Milk and Non-Dairy Alternatives are entirely different products. *See Painter*, 757 F. App'x at 519; *Gitson*, 2015 U.S. Dist. LEXIS 170401, at *4; *see also Bower*, No. 1:24-cv-00631-HYJ-PJG, ECF No. 32 at 6-7. Plaintiffs try to distinguish *Painter* and *Gitson* as "product mislabeling" cases but fail to explain why that matters.

***Second***, there is a difference between the gluten-free food at issue in *Phillips* and the Non-Dairy Alternatives at issue here, in the way they are offered and requested. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). Common experience generates no reasons an individual might order a gluten-free item other than a medical condition but readily generates many reasons why an individual would order a Non-Dairy Alternative including taste, consistency/texture, nutritional content, environmental impact, voluntary dietary restrictions, manufacturing practices, or agricultural policy stances. *See Munoz*, 2024 U.S. Dist. LEXIS 201361, at *10 (finding a non-dairy alternative "can be ordered for reasons unrelated to having a medical condition—including personal preference"). The significance of offering or requesting a gluten-free item is therefore readily apparent: to assist those with a specific medical condition. There is no like implied communication with a request or offer of a Non-Dairy Alternative, only a myriad of possibilities.

***Third***, the plaintiff in *Phillips* alleged that P.F. Chang's discriminated against guests with celiac disease by "creat[ing] an entirely separate—and higher priced—gluten-free menu targeted to persons with celiac disease" that charged $1.00 more for gluten-free items than for comparable non-gluten-free items

1   "***even where the items at issue may naturally be gluten free*** such as vegetable dishes." *Phillips*, No. 5:15-

2   cv-344-RMW, ECF No. 25 ¶ 18 (emphasis added); *Phillips*, 2015 U.S. Dist. LEXIS 159474, at *2. Here,

3   Plaintiffs do not allege that Dunkin' restaurants have separate "dairy-free" menus that they hand to

4   customers in response to a concern about lactose. (*See, e.g.*, Dkt. 47 ¶¶ 40, 54, 80, 102.). Instead, they

5   allege that they were pointed to "***the*** menu board" or "***the*** menu" or were simply told that they could

6   substitute a Non-Dairy Alternative for an additional cost. (*Id.* (emphasis added).) Plaintiffs argue that

7   restaurant employees pointed them to "what was essentially a separate" menu, but that is an *ipse dixit*

8   argument. (Dkt. 67 at 12.) Importantly, Plaintiffs allege nothing to show that this "essentially separate"

9   menu was specifically "targeted to persons with" lactose intolerance, such as, for example, by alleging

10  that even naturally dairy-free items such as black coffee or plain tea were priced higher than the menu for

11  all other customers. *See Bower*, No. 1:24-cv-00631-HYJ-PJG, ECF No. 32 at 6-7 (distinguishing *Phillips*

12  on this basis); *Smith v. Pride Mobility Prods. Corp.*, 2017 U.S. Dist. LEXIS 20195, at *13-14 (N.D. Cal.

13  Feb. 12, 2017) (same), *aff'd in part, rev'd in part on other grounds*, 700 F. App'x 583 (9th Cir. 2017).

14      Plaintiffs also make the argument that to provide a "like experience," Dunkin' must offer

15  accessible goods at the same price as non-accessible goods, but they fail to provide any viable legal

16  foundation for such a radical theory. They attempt to rely on the line of authority including *Baughman v.*

17  *Walt Disney World Co.*, 685 F.3d 1131 (9th Cir. 2012), involving use of Segways at Disneyland, and

18  *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075 (9th Cir. 2004), involving companion-seating

19  in movie theaters. But those cases involve *services*, as opposed to *goods*.[6] And they absolutely do not

20  involve *pricing* of goods. *See Chaffin*, No. CV 24-3132-GW-SKx, 2025 U.S. Dist. LEXIS 8207, at *16

21  ("[W]hat case under that line of authority can they cite that involves *goods*, as opposed to *services*, and,

22  in particular, the *pricing* of those goods . . . ?"). On the contrary, the U.S. Department of Justice's Title

23  III regulations, appendix commentary, and Technical Assistance Manual support a determination that

24  Dunkin' is not required to modify the prices it charges for the drinks it sells in order for Plaintiffs to have

25

26  [6] These cases are distinguishable for the additional reason that the services at issue cannot be replicated at
27  home: one cannot build Disneyland in one's backyard or enjoy a movie only released in theatres at home.
    Thus, there is no replicable at-home experience. By contrast, "specialty crafted coffee drinks" can be made
28  at home. (*See* Dkt. 67 at 14 (contending that part of the "like experience" of going to a Dunkin' restaurant
    is ordering specialty drinks as "most people who want to order plain black coffee or tea can just as easily
    make it at home rather than go to the store for it").)

a "like experience." (Dkt. 48 at 21-23.) Neither the content or the price of the goods or services offered by a place of public accommodation is regulated; rather, access to the goods and services is what Title III addresses. Nothing prohibits or impedes Plaintiffs from ordering Non-Dairy Alternatives, and nothing in the law requires that Dunkin' charge Plaintiffs a lower price for Non-Dairy Alternatives.

Plaintiffs do not seriously complain that Dunkin' or its franchisees interfere with their opportunity to purchase the same drinks offered to non-disabled patrons. Rather, their complaint is that (just like every other customer who chooses to order a drink made with Non-Dairy Alternatives) they pay more for drinks prepared with Non-Dairy Alternatives than drinks with Dairy Milk. Clearly, Plaintiffs have not been deprived of a "like experience" as compared to non-disabled customers by paying the exact same price for drinks made with Non-Dairy Alternatives as all other customers. "A modification lowering the price of drinks made with non-dairy alternatives—below what would be charged to non-lactose intolerant customers for that same drink—for lactose intolerant customers is . . . not necessary to provide a 'like experience' to the two groups of customers." *Munoz*, 2024 U.S. Dist. LEXIS 201361, at *14. The two groups of customers are already provided a like experience.

And, as explained in the Opening Brief, any holding adopting Plaintiffs' unsupported theory would result in far-reaching, unintended, and very real, consequences. (Dkt. 48 at 24-25.) Plaintiffs argue that Starbucks's change in policy without coming to the "brink of collapse" proves that a "doomsday scenario . . . is unfounded." (Dkt. 67 at 12.) But Starbucks's decision was **voluntary**, not court-mandated, and thus cannot be used to force all other businesses to forego upcharges based on real product differences when confronted with common dietary restrictions or preferences (such as charging shrimp-prices for lobster because of a shrimp allergy, or charging non-organic produce prices for organic produce because of an allergy to pesticides), or risk facing litigation. Nor can the anecdotal fact that Starbucks survived eliminating one upcharge mean that all other businesses will survive a fundamental re-pricing of their entire inventory. The Court should reject Plaintiffs' theory.

### E. The Upcharge Is Not an Impermissible "Surcharge."

A review of Plaintiffs' muddy FAC reveals that the basis for their ADA discrimination claim is their repeated conclusory allegation that the Upcharge is an alleged surcharge. (Dkt. 47 ¶¶ 22, 170-71,

194, 224, 232, 239, 246, 253.) Plaintiffs, however, concede the Upcharge for Non-Dairy Alternatives applies to *all* customers. (*See id.* ¶¶ 123, 211.)

A "surcharge" has a specific definition under the ADA and Ninth Circuit authority. Arguments regarding impermissible surcharges are inapplicable to the instant case as a general matter, but that is particularly true regarding the issue of whether, and at what price, Dunkin' restaurants are allegedly required to offer accessible goods. (*See* Dkt. 48 at 28-30 & n.14.) Plaintiffs have entirely ignored Dunkin's argument demonstrating that, as a matter of law, the Upcharge is not an impermissible surcharge, as they have failed to address the two-part inquiry the Ninth Circuit employs to evaluate whether a cost constitutes an unlawful surcharge. *See Dare v. California*, 191 F.3d 1167, 1171 (9th Cir. 1999) ("In order to evaluate whether a fee constitutes a surcharge that violates Title II of the ADA, we conduct a two-part inquiry.");[7] *Munoz*, 2024 U.S. Dist. LEXIS 201361, at *5-11 (applying the *Dare* two-part test to find the defendant did not impose a surcharge on individuals with lactose intolerance or milk allergies, but rather on anyone who orders a drink made with Non-Dairy Alternatives, which can be ordered for reasons unrelated to having a medical condition—including personal preference). Their wholesale failure to address and counter Dunkin's arguments regarding the *Dare* two-part test is a concession that they cannot meet it.

As discussed in the Opening Brief (Dkt. 48 at 20-22), Plaintiffs' claim fails on both prongs because (1) providing Non-Dairy Alternatives is not required, and (2) Plaintiffs admit that the Upcharge for Non-Dairy Alternatives applies to all customers, (*see* Dkt. 47 ¶¶ 123, 211). Plaintiffs fail to address either prong and instead make the irrelevant argument that the retail price of Dairy Milk is the same as Non-Dairy Alternatives.[8] Not only is such an argument irrelevant to the Ninth Circuit's two-part surcharge inquiry, it also ignores the dispositive fact of Plaintiffs' admission that all customers pay the same price for Non-

---

[7] Plaintiffs' only response regarding *Dare* is that it is an ADA Title II case, and this case arises under Title III. (Dkt. 67 at 11.) Such a distinction is inconsequential, however, given that the language of the surcharge provisions under Title II and Title III is nearly identical. *See Munoz v. Peet's Coffee, Inc.*, No. 24-cv-01764-JST, 2024 U.S. Dist. LEXIS 201361 (N.D. Cal. Nov. 5, 2024) (finding the *Dare* framework helpful as the language of the surcharge provision under Title II is nearly identical to that under Title III); *Bower v. Glob. Orange Dev.*, No. 1:24-cv-00631-HYJ-PJG, ECF No. 32 at 4 (finding the test from *Dare* appropriate for a claim under Title III); *Anderson v. Macy's, Inc.*, 943 F. Supp. 531, 546-47 (W.D. Pa. 2013) (applying the *Dare* test to a Title III claim).

[8] Plaintiffs again rely solely on *Phillips* in support of their argument regarding a surcharge (Dkt. 67 at 11), but although that case involved a similar legal theory regarding an alleged upcharge, the court there did not analyze or even mention the Ninth Circuit's two-part test in *Dare* for evaluating whether a cost constitutes an impermissible surcharge under the ADA, further underscoring the inapplicability of *Phillips* and Plaintiffs' surcharge theory to the issues in this case.

11

Dairy Alternatives. (*Id.*) Any price difference between Dairy Milk and Non-Dairy Alternatives thus cannot be deemed to be an unlawful "surcharge" under the ADA. *See Dare*, 191 F.3d at 1171 ("If nondisabled people pay the same fee for an equivalent service, the charge to disabled people would not constitute a surcharge on a 'required' measure."); *Bower*, No. 1:24-cv-00631-HYJ-PYG, ECF No. 32 at 3-6 (finding plaintiff's claim failed under both prongs as defendant was not required to offer drinks with Non-Dairy Alternatives and defendant charged all customers the same price for drinks with Non-Dairy Alternatives).

### F.    Plaintiffs' Intentional Discrimination Claim Under the Unruh Act Fails.

As explained in the Opening Brief, because Plaintiffs' ADA claim fails for the reasons discussed above, Plaintiffs' Unruh Act claim that is expressly predicated on their ADA claim also fails. (Dkt. 48 at 30 n.22.)

Plaintiffs' Unruh Act claim based on a theory of intentional discrimination also fails as a matter of law. Plaintiffs argue that they can sustain an Unruh claim because their disability was a motivating factor for Dunkin's denial of full and equal accommodations, advantages, facilities, privileges, or services. (Dkt. 67 at 16.) This theory is based entirely on the fact that Dunkin' restaurants allegedly do not increase prices for other modifications (e.g., whole milk, fat-free milk, caffeine-fee and sugar-free). (Dkt. 47 ¶¶ 12-15.) But Plaintiffs still fail to plead allegations that allow this Court to draw a reasonable inference that different prices for different modifications necessarily means a discriminatory *motive*, as the law requires. *See Grier*, 58 F.4th at 1052 (concluding that although plaintiff "need provide only enough factual material to create a 'reasonable inference'—not a 'strong inference,'" plaintiff had failed to create "even a 'reasonable inference'"). As the *Chaffin* court noted, that Dunkin' restaurants' practice

> may not be financially/economically-consistent, or even make financial/economic sense
> . . . is seemingly a far cry from an assertion that individuals' lactose-intolerance status was
> a "motivating factor" for such decision (especially considering the FAC's concession that
> *all* individuals asking for such additions/substitutions to their drinks are charged the extra
> price). Although this is not an employment discrimination case, this observation is much
> the same as the general principle that an employment decision does not have to make sense
> or be correct in order to avoid it supporting a discrimination case/demonstrating pretext.

*Chaffin*, 2025 U.S. Dist. LEXIS 8207, at *18.

Plaintiffs rely on *Abernathy v. Valley Medical Center*, No. C06-001 MJP, 2006 U.S. Dist. LEXIS 33966 (W.D. Wash. May 25, 2006), to argue they have alleged enough to make a "motivating factor"

showing. *Abernathy* is not an Unruh case. Nor do its facts have any similarity to the present action. Plaintiffs describe the case as "holding that plaintiff could establish intentional discrimination where defendant failed to provide plaintiff with a service that defendant 'routinely' provides others." (Dkt. 67 at 16.) Even if that principle could be extended to this case, Plaintiffs admit that *everyone* who requests Non-Dairy Alternatives pays the Upcharge. Instead of *Abernathy*, the Court should look to *Munoz*, which offered the following analysis of the plaintiffs' claim that the defendant had engaged in intentional discrimination in violation of Unruh:

> Given the variety of reasons unrelated to any medical disability for which one may order non-dairy alternative milk, Plaintiff has failed to make the necessary showing that Defendant acted with specific intent to discriminate against those with lactose intolerance or milk allergies in charging a higher price for such drinks. And Plaintiff's bare assertion that Peet's "created a surcharge targeted to persons with lactose intolerance" does not satisfy the showing required to plead intentional discrimination in the face of facially neutral pricing.

*Munoz*, 2024 U.S. Dist. LEXIS 201361, at *19-20. Plaintiffs' claim fails for the simple reason that—under their own allegations—all customers who order drinks with Non-Dairy Alternatives incur the Upcharge, not just persons with lactose intolerance. (*See* Dkt. 47 ¶¶ 123 ("A consumer will pay at least $0.50-$2.15 more for a coffee-based drink at Dunkin' stores for Non-Dairy Alternatives."), 211 (alleging Dunkin' has a "policy of charging **all** customers a surcharge for Non-Dairy Alternatives" (emphasis added)).)

## G.    Plaintiffs Fail to State a Claim for Unjust Enrichment.

Plaintiffs cite *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1591-93 (2008) for the elements of an unjust enrichment claim, but ignore that *Peterson* holds there is no unjust enrichment where "plaintiffs received the benefit of the bargain." *Id.* at 1593. "[T]he mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor. . . . There is no equitable reason for invoking restitution when the plaintiff gets the exchange which he expected." *Id.* (alteration in original) (internal quotation marks and citation omitted) (dismissing unjust enrichment claim for this reason). *Peterson* is directly on point here. Plaintiffs cannot succeed on their unjust enrichment claim because they got *exactly* the exchange they expected. In fact, they admit that they "did receive a latte or a cappuccino," (Dkt. 67 at 17), and they allege that the Upcharges they paid were "in exchange for providing" them with "non-dairy alternatives such as lactose-free milk." (Dkt. 47 ¶ 263.) They do not plead that they did not know about the Upcharge when they ordered, that they were charged more than they expected, or that they

did not receive the drink they ordered. Plaintiffs attempt to argue that non-disabled persons paid less for Non-Dairy Alternatives, but they admit that the Upcharge for Non-Dairy Alternatives applies to *all* customers. (*See* Dkt. 47 ¶¶ 123, 211.) Thus, their own allegations demonstrate that they received the benefit of the bargain they thought they made. *See Chaffin*, 2025 U.S. Dist. LEXIS 8207, at *21-23. (*See* Dkt. 48 at 23-24 (citing cases from all other relevant jurisdictions for the same proposition).[9]

Unsurprisingly at this point, Plaintiffs failed to respond to yet another argument: that their claim for equitable relief in the form of restitution may not be considered by a federal court where monetary damages provide an adequate remedy. (Dkt. 48 at 31; *see* Dkt. 67.) Indeed, their Unruh Act claim makes clear they have an adequate legal remedy. (Dkt. 47 ¶ 192, Prayer for Relief (seeking statutory, compensatory, and treble damages and attorneys' fees under the Unruh Act).) The Court should dismiss the unjust enrichment claim(s) under any of the cited jurisdiction's laws with prejudice. (*See* Dkt. 47 ¶¶ 256-61.)

## H.    The Court Should Deny Leave to Amend.

Plaintiffs have already had two bites at the proverbial apple, having filed a Complaint and then the FAC. Importantly, they filed the FAC, following jurisdictional discovery,[10] purportedly to cure the deficiencies previously identified by the Court and Dunkin'.[11] They were on notice of the arguments Dunkin' raised with respect to the detail necessary to state a claim. In fact, Plaintiffs also had the chance to amend their complaint following an in-depth order from the *Munoz* court identifying similar issues as those previously identified by Dunkin'. Plaintiffs could have and should have included any and all relevant details in the FAC. Failure to make sufficient revisions is, on its own, inexcusable and reason to deny

---

[9] The FAC pleads an unjust enrichment claim under each of the home jurisdictions of the named Plaintiffs (FAC ¶¶ 256-261), and Dunkin' cited a case from each state demonstrating that an unjust enrichment claim cannot survive in any of these jurisdictions where plaintiff received the benefit of the bargain (Dkt. 48 at 23-24). Plaintiffs' Opposition, however, discusses only California law. (Dkt. 67 at 16-17.) Plaintiffs' failure to cite to any authority from the other states should be treated as a dispositive concession that Dunkin's argument is correct. *See supra* p.2 (citing cases).

[10] It is noteworthy that in connection with jurisdictional discovery, the Court ordered Plaintiffs to provide a list of all Dunkin' restaurants visited by Plaintiffs, yet Plaintiffs failed to allege in the FAC which restaurant was visited by which Plaintiff. This lack of specificity is unjustifiable given the Court and Dunkin's time and responses expended on this case.

[11] Plaintiffs attempt to rely on *Phillips*, which allowed the plaintiffs leave the amend. (Dkt. 67 at 18.) The *Phillips* court, however, only allowed leave to amend *once* after identifying issues similar to those identified by this Court in its order granting Dunkin's first motion to dismiss. (Dkt. 34.) *Phillips* does not support a third bite of the apple for Plaintiffs here.

leave to amend. *See Quantum Labs, Inc. v. Maxim Integrated Prods.*, No. 18-cv-07598-BLF, 2019 U.S. Dist. LEXIS 199579, at *20 n.6 (denying leave to amend given that plaintiffs were fully aware of the deficiencies, had the opportunity to correct the deficiencies, and failed to do so); *Ismail v. Cnty. of Orange*, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012) ("[A] district court's discretion over amendments is especially broad 'where the court has already given a plaintiff one or more opportunities to amend his complaint." (quoting *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 n.3 (9th Cir. 1987))); *see also Chodos*, 292 F.3d at 1002 (citation omitted) ("[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is 'particularly broad.'").

Here, Plaintiffs also failed to defend their case against Dunkin's challenges. At best, that failure constitutes an admission that this case has no legs. It would be a waste of this Court's time and resources to allow another amendment, particularly when Dunkin' has presented multiple dispositive arguments, supported by ample authority, which Plaintiffs did not rebut. In these circumstances, it is clear that further amendments would be futile. *See Ray v. U.S. Bank Tr., N.A.*, No. 22-cv-06333-DMR, 2023 U.S. Dist. LEXIS 148509, at *14-15 (N.D. Cal. Aug. 23, 2023); *Holly v. Jewell*, No. 16-cv-00011-DMR, 2017 U.S. Dist. LEXIS 1043, at *9-10 (N.D. Cal. Jan. 3, 2017). The Court should, therefore, dismiss the FAC without further leave to amend or with prejudice.

## IV.    CONCLUSION

For these reasons, the Court should grant Dunkin's motion and dismiss this action in its entirety.

DATED: February 19, 2025

DAVID B. CARPENTER
BRETT E. COBURN
MEGHAN M. MCBERRY
**ALSTON & BIRD LLP**

*/s/ Meghan M. McBerry*
Meghan M. McBerry

Attorneys for Defendant
Dunkin' Donuts Franchising LLC

1

## <u>CERTIFICATE OF SERVICE</u>

2

    This is to certify that on February 19, 2025, I electronically filed the foregoing pleading with the

3

Clerk of the Court using the CM/ECF system which will automatically send an email notification of such

4

filing to all attorneys of record.

5

                                        **ALSTON & BIRD LLP**

6

                                        */s/ Meghan M. McBerry*

7

                                        Meghan M. McBerry

8

                                        Attorney for Defendant
                                        Dunkin' Donuts Franchising LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT DUNKIN' DONUTS FRANCHISING LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 3:23-CV-06621-SI