Trenton R. Kashima (SBN No. 291405)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
402 West Broadway St., Suite 1760
San Diego, CA 92101
Tel: (619) 810-7047
tkashima@milberg.com

*Attorneys for Plaintiffs and the Class*

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHELSEA GARLAND, TONYA HUGHES, NATASHA HERNANDEZ, GEANEEN COJOM, ARSENIO PELAYO, ALBERT FITCH, PAULEEN MARA, LORA PREMO, URCELINA MEDEIROS, RUBY SMITH, individually and on behalf of all those similarly situated, | Case No.: 3:23-cv-06621-SI |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO 6201 HOLLYWOOD DONUTS LLC AND RW OAKLAND LLC's MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| 6201 HOLLYWOOD DONUTS LLC, BURTON RESTAURANTS, LLC, RW OAKLAND LLC, MADISON FOOD MANAGEMENT, LLC, DUNKIN DONUTS FRANCHISING LLC, GOLDEN GATE RESTAURANT GROUP LLC, | |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................II

TABLE OF AUTHORITIES ....................................................................................................... III

I. INTRODUCTION AND BACKGROUND ................................................................................ 1

II. ARGUMENT ........................................................................................................................... 2

   A. LEGAL STANDARD ............................................................................................................ 2

   B. THE FAC ALLEGES THAT PLAINTIFFS VISITED DEFENDANTS' STORES. ................................. 2

   C. PLAINTIFFS HAVE ALLEGED THAT THEY ARE DISABLED UNDER THE ADA.. ......................... 3

   D. DEFENDANTS DENIED PLAINTIFFS A PUBLIC ACCOMMODATION. ............................................ 6

   E. DEFENDANTS' POLICY DENIES PLAINTIFFS A "LIKE EXPERIENCE." ...................................... 9

   F. PLAINTIFFS' ADA CLAIMS ARE NOT MOOT.. ..................................................................... 11

   G. PLAINTIFFS HAVE STATED A CLAIM FOR INTENTIONAL DISCRIMINATION UNDER THE UNRUH ACT. ......................................................................................................................... 13

   H. PLAINTIFFS HAVE STATED A CLAIM FOR UNJUST ENRICHMENT.. ......................................... 14

   I. PLAINTIFFS' ADA CLAIMS ARE NOT MOOT.. ..................................................................... 15

III. CONCLUSION ..................................................................................................................... 16

CERTIFICATE OF SERVICE ................................................................................................... A

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

# TABLE OF AUTHORITIES

## Statutes

42 U.S.C. §12102(4)(A) ........................................................................................... 3

42 U.S.C. § 12181(7)(B) .......................................................................................... 6

42 U.S.C. § 12182(a)(i) ............................................................................................ 9

42 U.S.C. § 12182(b)(2)(A)(ii) ................................................................................ 9

Cal. Civ. Code § 51(f) ............................................................................................. 13

## Rules and Regulations

7 C.F.R., Part 15b .................................................................................................... 4

28 C.F.R. § 36.301 ................................................................................................... 9

28 C.F.R. § 36.307(a) .............................................................................................. 9

28 C.F.R. § 36.307(b) .............................................................................................. 9

Fed. R. Civ. P. 12(b)(6) ................................................................................... passim

## Cases

*Alphonsis v. Century Regional Detention Facility,* No. CV 17-03650-ODW (DFM), 2021 WL 11505981, *12 (C.D. Cal. Sept. 11, 2017) ................................................................. 5

*Alphonsis v. Century Regional Detention Facility, No.* CV 17-03650-ODW (DFM), 2021 WL 4691824, *9-10 (C.D. Cal. Sept. 8, 2021).* ................................................................. 5

*Abernathy v. Valley Medical Center*, 2006 WL 1515600 (W.D. Wash., May 25, 2006). ............ 14

*Alexander v. Choate*, 469 U.S. 287, 105 S.Ct. 712 ........................................................ 2

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) .............................................................. 2

*Baughman v. Walt Disney World Co.,* 685 F.3d 1131, 1132 (9th Cir. 2012) ............................ 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). .................................................. 2

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

*Butler v. WinCo Foods, LLC,* 613 Fed. Appx. 584, 585 (9th Cir. 2015) ...................................... 12

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996) ........................................... 2

*Chuang v. Univ. Cal. Davis Bd. Of Trustee.*, 225 F.3d 1115, 1124 (9ᵗʰ Cir. 2000)..................... 14

*Dare v. California,* 191 F.3d 1167 (9th Cir. 1999) .................................................................. 8

*Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). ........................... 2, 15

*Fortyune v. American Multi–Cinema, Inc., 364 F.3d 1075, 1085 (9th Cir. 2004)*.................. 10,11

*Foman v. Davis*, 371 U.S. 178, 182 (1962) ............................................................................ 15

*Fraser v. Goodale,* 342 F.3d 1032, 1040 (9th Cir. 2003) ......................................................... 6

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 189 (2000). ........................................................................................................................... 12

*Gitson v. Trader Joe's Co.,* No. 13-CV-01333-VC, 2015 WL 9121232, at *1 (N.D. Cal. Dec. 1, 2015) ........................................................................................................................... 8

*Hebert v. CEC Entm't, Inc.,* 6:16-CV-00385, 2016 WL 5003952 (W.D. La. July 6, 2016)........... 5

*Martinez v. County of Alameda,* No. 20-cv-06570-TSH, 2025 WL 240767, *22 (N.D. Cal. Jan. 17, 2025) ........................................................................................................................... 12

*Oregon Paralyzed Veterans of America v. Regal Cinemas, Inc.,* 339 F.3d 1126,(9th Cir.2003). 11

*Karczewski v. DCH Mission Valley LLC.,*862 F.3d, 1014.................................................... 8,10

*Painter v. Blue Diamond Growers,* 757 F. App'x 517, 519 (9th Cir. 2018) ................................ 8

*Peterson v. Cellco P'ship,* 80 Cal. Reptr 3d 316 (Ct. App. 2008*)*............................................... 14

*Phillips v. P.F. Chang's China Bistro, Inc.,* No. 5:15-cv-00344, 2015 WL 7429497, *4-6 (N.D. Cal., Nov. 23, 2015). ................................................................................................ passim

*Rodriguez v. Putnam,* No. CV 11–8772–CJC (PJW), 2013 WL 1953687 (C.D. Cal. May 13, 2013). ....................................................................................................................................... 6

*Rohr v. Salt River Project Agric. Imp. & Power Dist.,* 555 F.3d 850, 861 (9th Cir. 2009)......... 3,4

*Harris v. Adams,* No. A157443, 2020 WL 5835149 (Cal. Ct. App., Oct. 1, 2020)..................... 5

*Sutton v. United Airlines, Inc.,* 527 U.S. 471 (1999) .............................................................. 4

*Thompson v. Potter,* 252 Fed.Appx. 175 (9th Cir. 2007) ......................................................... 5

IV

*Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002)...........................4

*Wilkins-Jones v. Cnty. Of Alameda*, 859 F. Supp. 2d 1039, 1048 (N.D. Cal. 2012) ...................12

v

# I.    <u>INTRODUCTION AND BACKGROUND</u>

Defendants discriminate against Plaintiffs and putative class members by levying a surcharge for non-dairy alternatives that Plaintiffs have no choice but to pay because of their lactose intolerance,[1] which is a disability under the ADA.  Defendants single out Plaintiffs, and many others with the same disability, and asks them to pay a surcharge for non-dairy alternatives when it does not impose a surcharge on other modifications and when such surcharge is not justified by the cost of the non-dairy alternatives. This conduct is contrary to the protections afforded by the ADA, as amended in 2008, and state discrimination laws.

As alleged in the First Amended Class Action Complaint ("Complaint" or "FAC"), Plaintiffs suffer from lactose intolerance, a chronic disorder with potentially severe health consequences, impacting the major life activities of eating and digestion. The cause of lactose intolerance, lactase deficiency, can be congenital, the result of progressive and physiological decline of lactase enzyme activity, or induced by small intestine disease or injury such as gastroenteritis, celiac disease, inflammatory bowel disease, chemotherapy, and antibiotics treatment.[2]  Persons with this disability must avoid lactose, a sugar found exclusively in dairy milk. Over time, lactose-restriction may induce insufficiency, potentially resulting in decreased bone mineral density, anemia, and neuropathy.

The ADA was amended in 2008 with the intent to expand the definition of what constitutes a disability.  The Justice Department issued new guidelines in 2016 to include the ADA amendments.  Since then, Courts have been favorable to an expansion of ADA rights, and Congressional intent on this issue supports this.  Indeed, several courts have considered lactose intolerance and other similar food or drink allergies to be disabilities under the ADA.

As such, Plaintiffs' claims are based on the fact that Defendants' groundless surcharge for non-dairy milk alternatives is discriminatory against persons with lactose intolerance and milk allergies. If Defendants choose to offer non-dairy substitutes for milk, it denies Plaintiffs a reasonable

---

[1] Plaintiffs will refer to both dairy allergies and lactose intolerance as "lactose intolerance" for purposes of this brief.

[2] Bobbi B Laing, Anecita Gigi Lim & Lynnette R Ferguson, *A personalised dietary approach—a way forward to manage nutrient deficiency, effects of the western diet, and food intolerances in inflammatory bowel disease*, 11 Nutrients 1532 (2019).

OPPOSITION TO MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

accommodation or "like experience" when it charges extra for such substitutes, especially where the labor and cost for the substitutes is similar to the cost of dairy milk, and especially where it makes other ingredient substitutions for free. Defendants' conduct of imposing a surcharge on lactose-free drinks evidences an obvious attempt to profit from a vulnerable class of consumers precisely because of their medical condition. This practice is a clear violation of the ADA and state discrimination laws and has unjustly enriched Defendants.

Plaintiffs' First Amended Complaint states claims against Defendants based on their discriminatory practices. Plaintiffs have alleged that they are disabled under the ADA, and they have alleged that Defendants deny them a "like experience" under the ADA and Ninth Circuit precedent. They have also alleged claims under the Unruh Act based on Defendants' ADA violations, and they have alleged claims for unjust enrichment. Moreover, the claims are not moot because Defendants could reinstate the non-dairy surcharge at any time. Accordingly, Defendants' motion should be denied.

## II.    ARGUMENT

### A.    Legal Standard

Under Rule 12(b)(6), when a defendant seeks to dismiss a complaint for failure to state a claim upon which relief can be granted, a court must accept all allegations of material fact in the complaint as true and construe them in the light most favorable to the plaintiff. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). A complaint will survive a Rule 12(b)(6) motion so long as it articulates "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where courts believe a complaint requires additional facts to state a claim, "Rule 15 advises the court that 'leave shall be freely given when justice so requires.' This policy is 'to be applied with extreme liberality.'" *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).

### B.    The FAC Alleges that Plaintiffs Visited Defendants' Stores.

Defendants allege that Plaintiffs have not alleged that they engaged with the locations

1   operated by them. But the FAC alleges that Defendant 6201 Hollywood Donuts LLC operates the

2   restaurant located at 6201 Hollywood Blvd., Suite 130, Los Angeles, CA and that RW Oakland LLC

3   operates the restaurant located at 451 Hegenberger Road, Oakland, CA 94621 (FAC, ¶¶ 105-107).

4   The FAC further alleges that Plaintiff Tonya Hughes purchased items, including coffee drinks, at

5   various Dunkin Donuts store locations in Alameda County (where Oakland is located) and throughout

6   the state of California (FAC, ¶ 43). It also alleges that Plaintiffs Garland, Hernandez, and Cojum

7   visited various stores in California (FAC, ¶¶ 35, 47, 56). These allegations encompass both the 6201

8   Hollywood Donuts LLC and RW Oakland LLC locations. The FAC also describes Plaintiffs'

9   interactions at those stores, including requested but denied modifications (FAC, ¶¶ 40-42, 52-55, 61-

10  63). These allegations are therefore sufficient, and Defendants' motion should be denied.[3]

11  **C.      Plaintiffs Have Alleged That They are Disabled Under the ADA.**

12          Defendants argue that Plaintiffs have not alleged that they are disabled under the ADA. But

13  as discussed in detail below, under the ADA and case law, lactose intolerance is a disability that

14  impairs the major life activity of digestion, and Plaintiffs have alleged that they are disabled under

15  the ADA.

16          The American with Disabilities Act (ADA) was amended in 2008. The clear Congressional

17  intent of the amendments to the ADA ("ADAAA")[4] was to expand the scope and broaden the

18  disabilities included within the ADA's protections. *Rohr v. Salt River Project Agric. Imp. & Power*

19  *Dist.*, 555 F.3d 850, 861 (9th Cir. 2009). Section 3 of the ADA was amended to include the following

20  language under Section 4, Rules of Construction Regarding the Definition of Disability: (A) "the

21  definition of disability in this Act shall be construed in favor of broad coverage of individuals under

22  this Act, to the maximum extent permitted by the terms of this Act." See 42 U.S.C. §12102(4)(A).

23  The ADAAA was passed to restore the intent and protections of the Americans with Disabilities Act

24  of 1990 and to reject the United States Supreme Court decisions that Congress believed were too

25

26  _____

27  [3] To the extent the Court believes Plaintiffs must specifically spell out that they visited the franchisees' stores, Plaintiffs respectfully request leave to amend to do so.

28  [4] Any reference to the ADA in the FAC or this Response, is a reference to the statute in force as of the date of the FAC, which is amended by the ADAAA.

OPPOSITION TO MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1   narrowly decided with respect to the definition of disability under the ADA. Specifically, the ADAAA

2   was passed to negate rulings by the United States Supreme Court in 1) *Sutton v. United Airlines, Inc.*,

3   527 U.S. 471 (1999); and 2) *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184

4   (2002), both of which Congress believed construed the definition of disability under the ADA too

5   narrowly.

6        The ADA, and 7 C.F.R., Part 15b, define a person with a disability as any person who has a

7   physical or mental impairment which substantially limits one or more major life activities, has a

8   record of such impairment, or is regarded as having such impairment. Major life activities are broadly

9   defined and include, but are not limited to, caring for oneself, performing manual tasks, seeing,

10  hearing, ***eating***, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading,

11  concentrating, thinking, communicating, and working. Major life activities also include the operation

12  of major bodily functions, including but not limited to, functions of the neurological, ***digestive***, or

13  respiratory systems.[5] A physical or mental impairment does not need to result in a severe, life-

14  threatening reaction to be considered a disability. It is sufficient that the impairment limits a major

15  life activity. For instance:

16       Digestion is an example of a bodily function that is a major life activity. A participant whose
         digestion is impaired by a lactose intolerance may have a disability regardless of whether
17       consuming milk causes the participant severe distress.[6]

18  Plaintiffs' lactose intolerance impacts the major life activities of digestion, eating and drinking. As

19  discussed above, those are major life activities. *See Rohr*, 555 F.3d at 861 ("We recognized in 2003

20  that eating qualifies as such a major life activity.").

21       Defendants' argument that Plaintiffs have failed to specifically allege that they are

22  substantially limited in any major life activity therefore fails.  As noted above, eating and digestion

23  are major life activities under the ADA as amended by the ADAAA.  Moreover, some courts have

24  already found that lactose intolerance/dairy allergies are a disability under the ADA, as amended by

25

26
    _____

27  [5] Questions and Answers about the Department of Justice's Final Rule Implementing the ADA Amendments
    Act of 2008. https://archive.ada.gov/regs2016/adaaa_qa (visited Jun. 26, 2024).

28  [6] California Department of Education, Modifications to Accommodate Disabilities,
    https://www.cde.ca.gov/ls/nu/cc/mbcacfp082017sfsp022017.asp (visited Jun. 26, 2024).

ADAAA, and that it impacts a major life activity. *See Hebert v. CEC Entm't, Inc.*, 6:16-CV-00385, 2016 WL 5003952, at *1 (W.D. La. July 6, 2016) (report and recommendation adopted); *see also Harris v. Adams*, No. A157443, 2020 WL 5835149 (Cal. Ct. App., Oct. 1, 2020).  Here, Plaintiffs' FAC includes specific facts regarding the adverse health effects that Plaintiffs will suffer if they ingest milk or milk-containing products, including severe stomach pain, cramping, bloating, bowel irregularities, nausea, and fatigue, and Plaintiffs have alleged how those issues impact their lives. (FAC, ¶¶ 36-39, 48-51, 57-60, 65-67, 70-73, 77-79, 84-89, 93-95, 98-101.)[7]  Therefore, Plaintiffs' allegations that they are lactose intolerant are sufficient to state that they are disabled under the ADA.

Defendants' cases to the contrary are inapposite.  *Thompson v. Potter*, 252 Fed.Appx. 175 (9th Cir. 2007), as Defendants point out, considered whether a reaction to wax fumes constituted an impairment of a major life activity and had nothing to do with eating or digestion.  And the court in *Alphonsis v. Century Regional Detention Facility*, No. CV 17-03650-ODW (DFM), 2021 WL 11505981, *12 (C.D. Cal. Sept. 11, 2017) initially found that the pro se inmate plaintiff had "not adequately explained how her major life activity of eating is sufficiently impacted to constitute a disability under the ADA" but stated in a later ruling in the same case that "[t]he Court need not determine whether Plaintiff's allergies qualify as a disability" because the plaintiff was barred from a program for reasons other than her allergy.  *Alphonsis v. Century Regional Detention Facility*, No. CV 17-03650-ODW (DFM), 2021 WL 4691824, *9-10 (C.D. Cal. Sept. 8, 2021).  Thus, the court in *Alphonsis* did not find that the plaintiff's allergy was not a disability and instead determined that her

---

[7] Defendant only challenges the allegations of Plaintiffs Premo, Cojum and Hughes. Plaintiff Cojum has specifically alleged the physical symptoms she suffers if she consumes dairy products, including, but not limited to bloating, diarrhea, indigestion, excessive gas, abdominal pain, cramping and fatigue, and severe stomach pain. (FAC, ¶¶ 59-60). She has also alleged that her lactose intolerance affects her social activities, work and the way she interacts with her family and has difficulty functioning in the normal daily activities of life, including difficulty sleeping, eating and exercising. (FAC, ¶ 60). Plaintiff Premo has specifically alleged that if she ingests milk or dairy products, she suffers severe stomach pain accompanied by cramps, digestive tract inflammation, bowel irregularities, severe intestinal gas and fatigue and that her condition could also result in wheezing, vomiting, hives, digestive problems, or even anaphylaxis. (FAC, ¶¶ 85-86). Moreover, to the extent Plaintiff Hughes (or any of the other Plaintiffs) has failed to allege specific enough facts regarding her symptoms, Plaintiffs request leave to amend to do so.

OPPOSITION TO MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1    exclusion from a program was due to her behavior and not due to her allergy. *See id.* Moreover, the

2    court in *Rodriguez v. Putnam*, No. CV 11–8772–CJC (PJW), 2013 WL 1953687 (C.D. Cal. May 13,

3    2013) found that an inmate's peanut allergy was not a disability with minimal discussion. Finally,

4    while Defendants cite *Fraser v. Goodale*, 342 F.3d 1032, 1040 (9th Cir. 2003) because the court in

5    that case stated that "eating chocolate cake is not a major life activity," Defendants also acknowledge

6    (correctly) that the *Fraser* court found that some food allergies can constitute a disability (and here,

7    lactose intolerance limits an entire category of food and drink, unlike an inability to eat chocolate

8    cake, which is one item and does not contain nutrients). Thus, these cases do not demonstrate that

9    lactose intolerance is not a disability, and Defendants' motion should be denied.

10   **D.    Defendants Denied Plaintiffs a Public Accommodation.**

11           Defendants do not appear to deny that they are public accommodations. Indeed, they could

12   not do so. *See* 42 U.S.C. § 12181(7)(B) ("a restaurant, bar, or other establishment serving food or

13   drink" is a "public accommodation" under the ADA). Instead, it appears to be arguing that it does

14   not discriminate against Plaintiffs because it charges both non-disabled and disabled patrons more for

15   non-dairy alternatives. But at least one California court has already rejected the argument that this

16   cannot constitute discrimination. In a case very similar to the one before this Court, the court held

17   that a plaintiff stated a claim under the Unruh Act based on an ADA violation regarding a surcharge

18   on customers with celiac disease who ordered from P.F. Chang's gluten-free menu. *See Phillips v.*

19   *P.F. Chang's China Bistro, Inc.*, No. 5:15-cv-00344, 2015 WL 7429497, *4-6 (N.D. Cal., Nov. 23,

20   2015).

21           In *Phillips*, the plaintiff alleged that customers with celiac disease were singled out and

22   charged more for meals that were no different from regular meals for which P.F. Chang's made free

23   adjustments for food preferences for dietary needs. 2015 WL 7429497 at *4, 6. The plaintiff had pled

24   that making gluten-free meals merely required substituting for gluten or omitting gluten, which was

25   similar to what P.F. Chang's did for free for customers who wanted more or less spicy or vegetarian

26   dishes, but P.F. Chang's targeted customers with celiac disease and discriminated against them by

27   charging more for gluten-free meals. *Id.* at *5. The court in *Phillips* rejected the defendant's

28   argument— nearly identical to Defendants' argument here—that the plaintiff could not show that

defendant denied full and equal accommodations to patrons with celiac disease because all guests paid the same price for gluten-free menu items, regardless of whether they had celiac disease. *Id.* at *4. The court found that the plaintiff had stated an Unruh Act and ADA claim because the plaintiff alleged that P.F. Chang's "created an entirely separate—and higher priced— gluten-free menu targeted to persons with celiac disease," that P.F. Chang's "direct[ed] customers with celiac disease to the gluten-free menu rather than offering to make modifications for celiac customers the way [P.F. Chang's] does for other customers" (such as making things spicier or vegetarian), and that "the price differential between the regular-menu items and their gluten-free menu equivalents [was] the same across the board." *Id.* at *4, 6. Accordingly, the district court found that the plaintiff adequately alleged that "P.F. Chang's d[id] not provide 'full and equal' accommodations or services to those suffering from celiac disease" and that, from these facts, "one c[ould] reasonably infer that P.F. Chang's intentionally discriminate[d] by targeting customers with celiac disease." *Id.* at *4-6.

Defendants similarly impose an improper discriminatory surcharge targeted at disabled customers. Plaintiffs have alleged that Defendants impose a surcharge discriminating against those with lactose intolerance or milk allergies because the retail cost of Non-Dairy Alternatives is not significantly more than dairy products (if at all) and that the retail price of whole milk, half & half, and heavy cream (which is provided for free by Defendants) is the same, if not more, than Non-Dairy Alternatives. (FAC, ¶¶ 8, 124). Moreover, Plaintiffs have alleged that there is no expertise or additional work required to substitute Non-Dairy Alternatives in place of 2% milk. (FAC, ¶ 17.) Plaintiffs have also alleged that Defendants modify its regular beverage offerings to remove caffeine or make caffeine-free beverages at no additional charge for persons with a variety of conditions, including hypertension, and will modify its regular beverage offerings to remove sugar or use sugar-free sweeteners at no additional charge for those persons with diabetes or who need to control weight. (FAC, ¶¶ 14-15). Accordingly, the Non-Dairy Alternatives Surcharge is not imposed to defray the added costs of use of these ingredients or labor needed but is designed to profit from those consumers with lactose intolerance and milk allergies. (FAC ¶ 125). Therefore, as in *Phillips*, Plaintiffs have alleged a claim under the ADA and the Unruh Act.

1     Defendant's cases are inapposite. Defendant's reliance on *Dare v. California*, 191 F.3d 1167

2   (9th Cir. 1999) is misplaced. The Court of Appeals in that case created a test to be applied only "in

3   the context of facially discriminatory laws." *Dare* at *1171. Specifically, the court considered the

4   "meaningful access" test and concluded that it does not appy in the case of "facial discrimination."

5   The court in *Dare* reasoned:

> 6         Because surcharges against disabled people constitute facial discrimination, the meaningful
> 7         access test formulated by the Supreme Court in *Alexander v. Choate,* 469 U.S. 287, 105
>           S.Ct. 712, does not apply. Under this test, a court considers whether the allegedly
> 8         discriminatory measure prevents "meaningful access to the benefit that the grantee offers."
>           The Ninth Circuit has applied this test in the ADA context to evaluating whether facially
> 9         neutral laws violate § 12132.
> 10        Using this standard in the context of facially discriminatory laws, however, would ignore the
> 11        clear language of Title II. *Dare,* 191 F.3d at 1171 (citations omitted).

12     The "clear language of Title II" is not present in Title III and the interpretation of that language

13   is inapplicable here. In contrast, *Phillips*, *supra*, is a Northern District of California case, and is

14   substantially similar to the case before this court and should be applied in this instance. Moreover,

15   Defendants' reliance on *Painter v. Blue Diamond Growers*, 757 F. App'x 517, 519 (9th Cir. 2018)

16   fails. *Painter* was a product mislabeling case where the plaintiff alleged that the defendant had

17   mislabeled its beverages as almond "milk" because milk and the product had different nutritional

18   profiles. *Id.* Similarly, *Gitson v. Trader Joe's Co.*, No. 13-CV-01333-VC, 2015 WL 9121232, at *1

19   (N.D. Cal. Dec. 1, 2015) is another product mislabeling case, this time addressing soy "milk."

20     Defendants also suggest that Plaintiffs are seeking to regulate the content and characteristics

21   of its goods.  But Plaintiffs are not seeking to regulate the price of Defendants' specialty coffee and

22   tea beverages, nor are they demanding that Defendants alter their inventory.  Indeed, Defendants does

23   not sell milk as an individual product, but instead uses milk as one ingredient in its specialty

24   beverages, in the same way that caffeine and sugar—which it swaps out for free—are ingredients.

25   Instead, Plaintiffs have alleged that because Defendants already have non-dairy alternatives in their

26   inventory, and it already takes special orders for customers without a surcharge (including modifying

27   drinks to be caffeine-free, sugar-free, and to substitute various dairy milks), it must do so for lactose

28   intolerant customers and customers with milk allergies as well.  *See Karczewski v. DCH Mission*

1    *Valley LLC.*, 862 F.3d 1014-1015; *Phillips*, 2015 WL 7429497, at *4-6.  Defendants' failure to offer

2    the same benefit to persons with lactose intolerance and milk allergies (except with an added

3    surcharge) fails to provide Plaintiffs with a "like experience" and constitutes discrimination under the

4    ADA.  *See* 42 U.S.C. § 12182(a)(i).

5         The ADA specifically refers to provision of "goods" and "services," and its regulations

6    provide that if an establishment already makes alterations or modifications, or takes special orders

7    for its customers, it must do so for disabled customer requests as well.  *See* 42 U.S.C. §

8    12182(b)(2)(A)(ii); 28 C.F.R. § 36.307(a) & (b).  Most importantly, a "public accommodation may

9    not impose a surcharge on a particular individual with a disability or any group of individuals with

10   disabilities to cover the costs of measures, such as the provision of auxiliary aids, barrier removal,

11   alternatives to barrier removal, and reasonable modifications in policies, practices, or procedures,

12   that are required to provide that individual or group with the nondiscriminatory treatment required

13   by the Act or this part." 28 C.F.R. § 36.301.

14        Plaintiffs have alleged that because Defendants already have Non-Dairy Alternatives in its

15   inventory, and it already takes special orders for customers without a surcharge (including

16   modifying drinks to be caffeine-free, sugar-free, and to substitute various dairy milks), it must do so

17   for lactose intolerant customers and customers with milk allergies as well. See 28 C.F.R. §

18   36.307(a) & (b). Defendants' failure to offer the same benefit to persons with lactose intolerance

19   and milk allergies (except with an added surcharge) expressly constitutes discrimination under the

20   ADA. *See* 42 U.S.C. § 12182(a)(i).

21   **E.    Defendants' Policy Denies Plaintiffs a "Like Experience."**

22        The Ninth Circuit has required that public accommodations provide a "like experience" for

23   disabled individuals to those experienced by non-disabled individuals.  42 U.S.C.

24   §12182(b)(2)(A)(ii) provides:

25        **(a) General rule**
     No individual shall be discriminated against on the basis of disability in the full
26   and equal enjoyment of the goods, services, facilities, privileges, advantages, or
     accommodations of any place of public accommodation by any person who owns,
27   leases (or leases to), or operates a place of public accommodation.

28        **(2) Specific prohibitions**

**(A) Discrimination**

For purposes of subsection (a), discrimination includes—

\* \* \*

**(ii)** a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations…

The Ninth Circuit has broadly interpreted this provision. *See Karczewski*, 862 F.3d at 1011-1012 (collecting cases, and stating, "[t]o the contrary, both the statute and our cases generally reject restrictive interpretations of the ADA.").

The plain language of the statute demonstrates that it applies to Plaintiffs' claims. Defendants' policy, practice, or procedure is to serve specialty coffee and teas with 2% cow's milk (or to substitute other dairy products at no additional charge). But Plaintiffs cannot consume dairy without experiencing serious medical symptoms, and therefore a modification of that policy, practice, or procedure is necessary to afford them such goods and services.

In *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1132 (9th Cir. 2012), the Court considered whether a disabled person could use a Segway to visit Disneyland instead of the wheelchairs and motorized scooters that were usually allowed. The plaintiff asserted that a Segway was necessary because she had difficulty standing from a seated position, and a Segway also would allow her to be at eye-level instead of being looked down upon by others. *See id.* at 1136. The Ninth Circuit rejected Disney's argument that because the plaintiff *could* access Disneyland using a wheelchair or scooter, a Segway was not necessary. *See id.* at 1134. Noting that Disney's reading of the ADA would require very few accommodations, the Ninth Circuit emphasized that ***"[t]he ADA guarantees the disabled more than mere access to public facilities; it guarantees them 'full and equal enjoyment'."*** *Id.* at 1134-1135 (emphasis added). The Court then illustrated its point by discussing *Fortyune v. American Multi–Cinema, Inc.,* 364 F.3d 1075, 1085 (9th Cir. 2004), where it held that a theater was required to provide wheelchair seating for the disabled individual *and* an adjacent seat for his wife because moviegoers expect to sit with their friends and family during the show; their enjoyment is diminished if they are forced to sit apart. "Because Fortyune require[d] an

OPPOSITION TO MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1    attendant to *enjoy* the viewing of a film, the modification that he requested, *i.e.,* that [the theater]

2    ensure that his companion could be seated next to him, was necessary." *Id.* at 1083 (emphasis added).

3          The *Baughman* Court further cited *Oregon Paralyzed Veterans of America v. Regal Cinemas,*

4    *Inc.,* 339 F.3d 1126, 1127–28 (9th Cir.2003), regarding seating for wheelchair-bound patrons only in

5    the front rows of the theater, noting that it found it "simply inconceivable that this arrangement could

6    constitute 'full and equal enjoyment' of movie theater services by disabled patrons" because it

7    required them "to crane their necks and twist their bodies in order to see the screen, while non-

8    disabled patrons [had] a wide range of comfortable viewing locations from which to choose." *Id.* at

9    1133.  Relying on this precedent, the Ninth Circuit in *Baughman* therefore found that "[p]ublic

10   accommodations must start by considering how their facilities are used by non-disabled guests and

11   then take reasonable steps to provide disabled guests with a like experience," and "[i]f [Disney] can

12   make Baughman's experience less onerous and more akin to that enjoyed by its able-bodied patrons,

13   it must take reasonable steps to do so." *Id.* at 1135-1136.

14         Similarly, here, disabled individuals are denied a "like experience" and "full and equal

15   enjoyment."  Part of the experience of going to Dunkin is ordering their specialty drinks, most of

16   which include milk products.  After all, most people who want to order plain black coffee or tea can

17   just as easily make it at home rather than go out to a store for it.  Thus, in order to fully enjoy the

18   Dunkin' experience, disabled individuals with a milk allergy or lactose intolerance should be able to

19   substitute the dairy milk in these drinks for non-dairy milk at the same cost.  But under Dunkin's

20   current policy, disabled individuals are required to choose between foregoing traditionally dairy-

21   based specialty drinks, adding dairy to their drinks and experiencing serious medical symptoms, or

22   paying extra for their drinks.  This is not a "like experience" and diminishes their enjoyment.  Indeed,

23   nondisabled individuals can enjoy their coffee and tea at a 17% lower price than disabled individuals.

24   And individuals with health issues that require them to substitute caffeinated coffee for decaf or sugar

25   for sugar-free syrup are also able to enjoy their coffee or tea without paying extra for these

26   substitutions.  Plaintiffs' requested modification is thus necessary to have a "like experience" under

27   the ADA and Ninth Circuit precedent, and Defendants' Motion should be denied.

28   **F.**    **Plaintiffs' ADA Claims are not Moot.**

Defendants claim that Plaintiffs' ADA claims are moot because on February 20, 2025, Dunkin announced that, effective March 5, 2025, Non-Dairy Alternatives would be offered at no additional cost or charge. (Dkt. 74, p. 2). But, as discussed in more detail in Plaintiffs' supplemental briefing, the United States Supreme Court and courts throughout the Ninth Circuit have repeatedly held that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice…. [I]f it did, the courts would be compelled to leave '[t]he defendant ... free to return to his old ways.'" *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000). For this reason, "[a] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 190. *See also Butler v. WinCo Foods, LLC*, 613 Fed. Appx. 584, 585 (9th Cir. 2015) (the defendant must show that it is "absolutely clear" that it "could not reasonably be expected" to revoke the exception or continue to enforce the allegedly improper policy); *Martinez v. County of Alameda*, No. 20-cv-06570-TSH, 2025 WL 240767, *22 (N.D. Cal. Jan. 17, 2025) (a defendant has a "'heavy burden' to show 'that the challenged conduct cannot reasonably be expected to start up again.'"). Defendants' short argument does not meet this formidable burden. Indeed, Defendants make no effort to establish that they could not reasonably be expected to reinstate the surcharge, instead incorrectly placing the burden on Plaintiff to discuss whether Defendants have a "history of removing barriers and then re-installing them." (Dkt. 78, 20:21-22). Because Defendants[8] were able to remove the surcharge within a matter of weeks, there is no indication that they could not just add the surcharge back to non-dairy products within a few weeks at a later date. Moreover, Defendants continue to argue that the surcharge is not improper, which suggests that they would have no reason not to reinstate it if it was beneficial to their business. *See Butler*, 613 Fed. Appx. at 586 (noting that the defendant maintained that the policy did not need to be changed and that this indicated that it was not

---

[8] Additionally, Dunkin and not the franchisee Defendants, announced that it would eliminate the surcharge. Defendants have argued in previous briefings that Dunkin does not control the franchisees' pricing. Plaintiffs do not concede that issue, but by Defendants' logic, the franchisee Defendants could easily reinstate the surcharge regardless of what Dunkin has stated.

1    "absolutely clear" that the policy would not be reinstated). Thus, because Defendant could reinstate

2    the surcharge, the claims are not moot.

3    **G.    Plaintiffs Have Stated a Claim for Intentional Discrimination Under the Unruh Act.**

4        Defendants argue that Plaintiffs have failed to state a claim because they have not alleged

5    intentional discrimination. But intentional discrimination is not required for a violation of the Unruh

6    Act that is based upon a violation of the ADA. *See Phillips*, 2015 WL 7429497, at *6. The Unruh Act

7    specifically provides that "[a] violation of the right of any individual under the federal Americans

8    with Disabilities Act of 1990, shall also constitute a violation of this section." *See* Cal. Civ. Code §

9    51(f). As argued above, Plaintiffs have stated claims for violations of their rights under the ADA.

10   Therefore, they have stated a claim under the Unruh Act.

11       However, Plaintiffs have also alleged violation of the Unruh Act independent of the ADA. To

12   do so, Plaintiffs need only allege: "(1) [they were] denied the full and equal accommodations,

13   advantages, facilities, privileges, or services in a business establishment; (2) [their] disability was a

14   motivating factor for this denial; (3) defendant denied plaintiff the full and equal accommodations,

15   advantages, facilities, privileges, or services; and (4) defendant's wrongful conduct caused plaintiff

16   to suffer injury, damage, loss or harm." *See Wilkins-Jones v. Cnty. of Alameda*, 859 F. Supp. 2d 1039,

17   1048 (N.D. Cal. 2012).

18       Plaintiffs have established their prima facie case here. First, Plaintiffs allege they were denied

19   the full and equal accommodations, advantages, facilities, privileges, or services in Defendants'

20   business. (FAC, ¶¶ 194-201). The accommodation, advantage, facility, privilege, or service at issue

21   here is Defendants' policy and practice of accommodating other customers' dietary preferences upon

22   request and free of charge by making modifications to Defendants' beverages. Defendants denied the

23   full and equal enjoyment of this accommodation by requiring Plaintiffs to pay the surcharge for Non-

24   Dairy Alternatives required by their disability.    *Id.*    Second, Plaintiffs allege that the Plaintiffs'

25   disability was a motivating factor for the denial of the accommodation. Specifically, Plaintiffs allege

26   that (a) Defendants offer modifications free of charge to customers without lactose intolerance, i.e.

27   whole milk, fat-free milk, caffeine-free and sugar-free (FAC, ¶¶ 12-15); (b) the price differential of

28   the Surcharge is the same no matter which Non-Dairy Alternative is substituted, i.e. there is no

1    difference between the extra charge for soy, almond, oat or lactose-free alternatives (FAC., ¶ 124);

2    and c) the Non-Dairy Alternative Surcharge is not based on any additional cost to Defendants to

3    prepare the beverage with the Non-Dairy Alternative substituted (FAC ¶ 124).  *See Abernathy v.*

4    *Valley Medical Center*, 2006 WL 1515600, at *3 (W.D. Wash., May 25, 2006) (holding that plaintiff

5    could establish intentional discrimination where defendant failed to provide plaintiff with a service

6    that defendant "routinely" provides others.).  Third, Defendants denied Plaintiffs the full and equal

7    enjoyment of this benefit because the complained-of conduct occurred at Defendants' retail stores

8    and pursuant to Defendants' policy.  (FAC ¶ 211.)  Fourth, Defendants' wrongful conduct caused

9    Plaintiffs to suffer injury, damage, loss or harm – namely, the cost of the Surcharge.  *Id.*  The facts

10   alleged are more than enough to establish prima facie discrimination under the Unruh Act. *See*

11   *Chuang v. Univ. Cal. Davis Bd. Of Trustee.*, 225 F.3d 1115, 1124 (9th Cir. 2000) (observing that

12   "[t]he proof required to establish a prima facie case is minimal and does not even need to rise to the

13   level of a preponderance of the evidence.").

14   **H.    Plaintiffs Have Stated a Claim for Unjust Enrichment.**

15          Plaintiffs have sufficiently alleged damages to maintain a cause of action for unjust

16   enrichment.  In California, the elements of an unjust enrichment claim are: 1) Defendants received a

17   benefit; 2) Defendants' benefit was at the Plaintiff's expense; and 3) it would be unfair for the

18   Defendants to keep the benefit without compensating a proportionate amount to the plaintiff. *See*

19   *Peterson v. Cellco P'ship*, 80 Cal. Reptr 3d 316 (Ct. App. 2008).  Again, all the elements are present

20   in the FAC: (1) Plaintiffs paid a surcharge for being disabled.  Plaintiffs conferred a benefit to

21   Defendants by allowing them to collect a surcharge in exchange for providing Plaintiffs with non-

22   dairy alternatives such as lactose-free milk (FAC, ¶ 263) (2) Defendants have knowledge and

23   appreciation of the surcharge and (3) it would be inequitable for the Defendants to retain said benefit

24   and reap unjust enrichment (FAC, ¶ 265).

25          In *Phillips*, *supra*, the court found that the plaintiff stated a claim for unjust enrichment where

26   the defendant took additional money from plaintiff and members of the putative class for gluten-free

27   menu items that were substantially identical to non-gluten free menu items except for the presence of

28   gluten based solely on the fact that plaintiff and the putative class could not consume foods with

gluten and had no choice but to pay a surcharge for gluten-free foods. *See Phillips*, 2015 WL 7429497, at *7. The court found that the plaintiff had sufficiently alleged that the defendant had unjustly retained a benefit from the plaintiff. Plaintiffs here make similar allegations.

Specifically, Plaintiffs allege that Defendants enriched themselves at the expense of Plaintiffs and the putative class members by its illegal levying of the Surcharge for Non-Dairy Alternatives. (FAC, ¶ 264.) Plaintiffs have alleged that Defendants impose a surcharge discriminating against those with lactose intolerance or dairy allergies because the retail cost of Non-Dairy Alternatives is not significantly more than dairy products (if at all) and that the retail price of Whole Milk, Half & Half, and Heavy Cream (which is provided for free by Defendants) is the same, if not more, than their Non-Dairy Alternatives.  (FAC, ¶ 124.) Moreover, Plaintiffs have alleged that there is no expertise or additional work required to substitute Non-Dairy Alternatives for 2% milk.  *Id.*  Therefore, as in *Phillips*, Plaintiffs have alleged a claim for unjust enrichment.

## I.    **Should the Court believe that the Complaint is insufficient, Plaintiffs request leave to amend.**

Where courts believe a complaint requires additional facts to state a claim, "Rule 15 advises the court that 'leave shall be freely given when justice so requires.' This policy is 'to be applied with extreme liberality.'"  *Eminence Cap., LLC v. Aspeon, Inc*., 316 F.3d 1048, 1051 (9th Cir. 2003) (motions for leave to amend should be granted with "extreme liberality").  "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"[9]  *Id.* at 1052 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Should the Court believe that Plaintiffs have failed to include detailed enough allegations regarding personal jurisdiction, their disabilities, Defendants' failure to accommodate Plaintiffs, or regarding any other issue, Plaintiffs respectfully request leave to amend to allege these facts.  *See,*

---

[9] None of these factors are present here, and should the Court find merit to any of Defendants' arguments, all of their concerns could be rectified by amendment.

OPPOSITION TO MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

*e.g. Phillips*, No. 5:15-cv-00344, 2015 WL 4694049, *9 (N.D. Cal. Aug. 6, 2015) (granting leave to amend) and *Phillips*, 2015 WL 7429497, *5-8 (finding amended complaint stated a claim).  Although Defendants argue that this Court has previously granted leave to amend, the Court did not previously rule on Plaintiffs' factual allegations beyond the prior allegations of Plaintiffs' disabilities. The Court also only previously ruled on Plaintiffs' factual allegations with respect to Dunkin Donuts LLC instead of with respect to the current Defendants.  Moreover, Plaintiffs have alleged new facts regarding specific symptoms that they suffer with respect to their disabilities.  Accordingly, should the Court find any of Plaintiffs' allegations insufficient to state a claim against Defendants, Plaintiffs respectfully request that this Court grant leave to amend.

### III.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion should be denied.  In the alternative, should this Court find that Plaintiffs have failed to allege facts sufficient to state a claim, Plaintiffs respectfully request that this Court grant them leave to amend.

Dated: March 28, 2025                          Respectfully submitted,

/s/ Bogdan Enica
Bogdan Enica (*Pro Hac Vice*)
KEITH GIBSON LAW, P.C.
1200 N Federal Hwy. Ste.300
Boca Raton FL 33432
Telephone: (305) 306-4989
Email: bogdan@keithgibsonlaw.com

Keith L. Gibson (*Pro Hac Vice*)
KEITH GIBSON LAW, P.C.
586 Duane Street, Suite 102
Glen Ellyn, IL 60137
Telephone: (630) 677-6745
Email: keith@keithgibsonlaw.com

Trenton R. Kashima (SBN No. 291405)
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC
402 West Broadway, Suite 1760
San Diego, CA 92101
Telephone: (619) 810-7047
Email: tkashima@milberg.com

*Counsel for Plaintiffs and the Putative Class*

OPPOSITION TO MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

**Certificate of Service**

I certify that on March 28, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send an email notification of such filing to all attorneys of record.

DATED: March 28, 2025.


/s/ Bogdan Enica

Bogdan Enica (*Pro Hac Vice*)
KEITH GIBSON LAW, P.C.

OPPOSITION TO MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT