UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHELSEA GARLAND, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>DUNKIN DONUTS FRANCHISING, LLC, et al.,<br><br>  Defendants. | Case No. 23-cv-06621-SI<br><br>**ORDER GRANTING MOTIONS TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. Nos. 48, 71, 78, 85 |

This lawsuit challenges, as disability discrimination, the extra fee charged for substituting non-dairy alternatives in place of cow's milk in beverages served at Dunkin' Donuts restaurants. On March 14, 2025, the Court held a hearing on defendant Dunkin' Donuts Franchising, LLC's motion to dismiss the First Amended Complaint.

Also pending before the Court are motions to dismiss filed by franchisee defendants Burton Restaurants, LLC; 6201 Hollywood Donuts LLC; and RW Oakland LLC. Dkt. Nos. 71, 78. The franchisee defendants' motions are set to be heard on May 9, 2025. Pursuant to Civil Local Rule 7-1(b), the Court finds these motions appropriate for resolution without oral argument and VACATES the May 9 hearings. As the three pending motions raise overlapping and identical arguments, the Court resolves them together in the present Order.

**BACKGROUND**

**I.     Factual Background**

Plaintiffs are ten individuals with lactose intolerance, one of whom also has a milk allergy. They are residents of California, Hawaii, New York, Colorado, Massachusetts, and Texas. For

1    purposes of this motion to dismiss, the Court treats as true the factual allegations as stated in
2    plaintiffs' complaint and draws all reasonable inferences in plaintiffs' favor. *See Usher v. City of*
3    *Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).
4           In the First Amended Complaint, plaintiffs allege that Dunkin' Donuts Franchising, LLC
5    ("Dunkin'") and its franchisees have "created a separate, higher-priced menu, aimed at customers
6    who cannot ingest milk." Dkt. No. 47 ("FAC") ¶ 6. According to the complaint, Dunkin' and its
7    franchisees charge from $0.50 to $2.15 extra to customers who are lactose intolerant in order to
8    substitute a non-dairy alternative such as soy, oat, coconut or almond milk in place of the standard
9    2% cow's milk offered in Dunkin' Donuts beverages. *Id.* ¶¶ 4-5, 11. Dunkin' Donuts stores will
10   substitute whole milk or skim milk at no additional charge. *Id.* ¶ 12. Dunkin' Donuts stores will
11   also modify beverages at no charge to make them caffeine-free or sugar-free for customers with
12   hypertension or for those with diabetes or who need to control weight. *Id.* ¶¶ 14-15. Plaintiffs allege
13   there is no material difference in price between cow's milk and the non-dairy alternatives, nor does
14   substituting a non-dairy alternative require expertise or additional work on the part of store
15   employees, such as would justify levying this extra charge.[1] *Id.* ¶¶ 8, 17. Plaintiffs allege that
16   lactose intolerance and milk allergies are disabilities, and that Dunkin' and its franchisees "charge
17   customers with lactose intolerance and milk allergies an excessively high Surcharge to substitute
18   Non-Dairy Alternatives in its drinks." *Id.* ¶¶ 18-20.

## II.    Procedural Background

On December 26, 2023, plaintiffs filed this class action complaint against Dunkin' Donuts

---

[1] The more detailed allegations found elsewhere in the FAC do not support plaintiffs' position that the non-dairy alternatives cost the same. For instance, later in the complaint plaintiffs allege that whole milk is priced between $0.03-05 per fluid ounce; coconut, oat, and soy milk sell for $0.06-07 per fluid ounce; and almond milk sells for $0.04-07 per fluid ounce. FAC ¶ 124. The FAC does not state the cost of 2% cow's milk, which is the standard Dunkin' Donuts offering. And while the FAC specifies that Half & Half and Heavy Cream are more expensive, nowhere does the FAC allege that Dunkin' Donuts will *substitute* these products for free in place of 2% milk. *See id.* Nevertheless, for purposes of deciding the motions to dismiss, and because it is not material to today's outcome, the Court accepts as true plaintiffs' general allegation that there is no material difference in price between whole milk, which Dunkin' will substitute for free, and the non-dairy alternatives.

LLC. Dkt. No. 1. On May 31, 2024, the Court granted Dunkin' Donuts LLC's motion to dismiss, due to lack of personal jurisdiction over that defendant. Dkt. No. 34 at 7-8. The Court granted plaintiffs leave to amend and specified that plaintiffs were also "given leave to amend their complaint to address the issues raised in the motion to dismiss, even if those matters were not specifically addressed in today's Order." *Id.* at 13. The Court also granted plaintiffs' request to conduct jurisdictional discovery. *Id.* at 8, 13.

On December 11, 2024, following jurisdictional discovery, plaintiffs filed the FAC, which is now the operative complaint. *See* Dkt. No. 47. The FAC no longer names Dunkin' Donuts LLC as a defendant and instead names Dunkin' Donuts Franchising, LLC along with California-based franchisees 6201 Hollywood Donuts LLC; Burton Restaurants, LLC; RW Oakland LLC; Madison Food Management, LLC; and Golden Gate Restaurant Group, LLC. Plaintiffs seek to represent a nationwide class of "[a]ll persons who (1) suffer from lactose intolerance, or an intolerance to milk or milk-containing products; and (2) who purchased drinks or other items from Dunkin' within four years prior to the filing of the Complaint and continuing to the present." *Id.* ¶ 155. The FAC identifies subclasses of persons who are citizens of California, Hawaii, New York, Colorado, Massachusetts, and Texas, as well as subclasses of persons who purchased drinks or other items from each franchisee. *Id.*

Plaintiffs bring claims under Title III of the Americans with Disabilities Act ("ADA"); California's Unruh Civil Rights Act ("Unruh Act"); and the discrimination laws of the states of Hawaii, New York, Colorado, Massachusetts, and Texas. Plaintiffs also bring a claim for unjust enrichment/restitution. Plaintiffs seek, *inter alia*, monetary damages, an order for disgorgement of illegally obtained monies, and declaratory relief. *Id.* at 37.

Dunkin' moved to dismiss the FAC. Dkt. No. 48. On March 11, 2025, just days before the hearing, the parties filed a joint notice stating that on February 20, 2025, a spokesperson for the indirect parent company of Dunkin' announced that "[e]ffective March 5, dairy alternatives will be standard options for Dunkin' beverages at no additional cost to guests" and that "[t]his will allow guests visiting any Dunkin' location to enjoy traditional dairy or alternative dairy options in any beverage without an additional charge." Dkt. No. 74 ("Joint Notice") at 2.

The Court held a hearing on Dunkin's motion on March 14, 2025. Franchisee defendants Burton Restaurants, LLC; 6201 Hollywood Donuts LLC; and RW Oakland LLC also moved to dismiss. Dkt. Nos. 71, 78. Their motions became ripe after the hearing on Dunkin's motion. Following the March 14 hearing, the Court ordered plaintiffs and Dunkin' to file supplemental briefing on the question of whether the ADA claims are now moot. *See* Dkt. Nos. 79, 85, 87.

Dunkin' seeks to dismiss the FAC for lack of personal jurisdiction and for failure to state a claim, under Federal Rules of Civil Procedure 12(b)(2) and (6). Burton Restaurants, LLC; 6201 Hollywood Donuts LLC; and RW Oakland LLC seek dismissal under Rule 12(b)(6).

**LEGAL STANDARDS**

**I.   Rule 12(b)(2)**

A defendant may move to dismiss the complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Upon a defendant's motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). In determining whether the plaintiff has met this burden, a district court may consider evidence contained in affidavits and discovery materials. *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). However, when a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make "a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Where undisputed, a district court must take as true the plaintiff's version of the facts. *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (citations omitted). "[C]onflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a *prima facie* case for personal jurisdiction exists." *Id.* (citations omitted).

Where there is no applicable federal statute that governs personal jurisdiction, courts "properly exercise personal jurisdiction over a defendant 'if it is permitted by [the state's] long-arm statute and if the exercise of jurisdiction does not violate federal due process.'" *Autodesk, Inc. v.*

*Kobayashi + Zedda Architects, Ltd.*, 191 F. Supp. 3d 1007, 1013 (N.D. Cal. 2016) (quoting *Pebble Beach Co.*, 453 F.3d at 1154). Since "California's long-arm statute allows the exercise of personal jurisdiction to the fullest extent permissible under the U.S. Constitution," the district court need only determine whether the exercise of jurisdiction comports with federal due process requirements. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). A district court's exercise of personal jurisdiction comports with due process when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (citations omitted).

## II.    Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts do not require "heightened fact pleading of specifics," *Twombly*, 550 U.S. at 544, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. The plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.*

In deciding whether the plaintiff has stated a claim, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in his or her favor. *Usher*, 828 F.2d at 561. However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc.*, 536 F.3d 1049, 1055 (9th Cir. 2008). As a general rule, the Court may not consider any materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of "matters of public record," such as prior court proceedings. *Id.* at 688-89. The court may

also consider "documents attached to the complaint [and] documents incorporated by reference in the complaint . . . without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

**DISCUSSION**

**I.     Personal Jurisdiction**

Dunkin' first moves to dismiss the claims against it for lack of personal jurisdiction. Personal jurisdiction is either general or specific. The parties agree that only specific jurisdiction is at issue here, as Dunkin' is incorporated in Delaware and has its principal place of business in Massachusetts. *See* FAC ¶ 104.

Specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 359 (2021). The Ninth Circuit has articulated three requirements for establishing specific jurisdiction over a non-resident defendant:

> (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (alterations, quotation marks, and citation omitted). The plaintiff bears the burden of satisfying the first two prongs of the test. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff satisfies both prongs, the burden shifts to the defendant to present a "compelling case" that the exercise of jurisdiction would not be reasonable under the third prong. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985). All three prongs of the test must be met for the district court to exercise personal jurisdiction over a defendant.

**A.     California Plaintiffs**

Here, plaintiffs' theory for jurisdiction over Dunkin' in California is premised on the following: Dunkin' availed itself of the privilege of conducting business in California when it

entered into franchise agreements for franchisees to operate Dunkin' Donuts restaurants in California; Dunkin' as franchisor exercises a high degree of control over franchisees, including directing the menu pricing structure; and plaintiffs' harms—through the extra charge on non-dairy alternatives—relate to this franchisor/franchisee relationship. *See* FAC ¶¶ 26-30; Dkt. No. 67 at 3- 4.

The parties' core jurisdictional dispute is whether and to what extend Dunkin' directs the menu pricing structure and/or the extra charge for non-dairy alternatives at franchisee restaurants. In its motion, Dunkin' construes the FAC as conceding that the franchisees are the ones who set the pricing. *See* Dkt. No. 48 at 4, 6-7. Plaintiffs counter, and this Court agrees, that Dunkin's reading of the FAC is illogical. *See* Dkt. No. 67 at 4; FAC ¶¶ 27-28.[2] More importantly, Dunkin's position is belied by the recent announcement that there will now be "no additional cost" for dairy alternatives for "guests visiting *any* Dunkin' location[.]" *See* Joint Notice at 2 (emphasis added). As plaintiffs argued at the hearing, the joint notice confirms Dunkin's centralized control over pricing at all franchisee locations. In light of this, plaintiffs' personal jurisdiction theory prevails.

Even without the joint notice, plaintiffs have met their burden on prongs one and two of the specific personal jurisdiction test, at least with respect to the California-based plaintiffs. The FAC alleges Dunkin' purposefully availed itself of the privilege of conducting business in California when it entered into franchise agreements for the purpose of operating Dunkin' Donuts stores in California and that Dunkin' "exercises a high degree of control over the operations of its franchisees, including the pricing of goods . . . ." *See* FAC ¶¶ 26-30; *see also Am. Tel. & Tel. Co.*, 94 F.3d at 588 (on a Rule 12(b)(2) motion conflicts between the parties must be resolved in the plaintiffs' favor for the purposes of deciding whether a *prima facie* case for personal jurisdiction exists) (citations

---

[2] Dunkin' argues that plaintiffs' allegations are contradictory because the FAC says Dunkin' "directs" the prices but then elsewhere uses the terms "suggest" and "recommend." *See* Dkt. No. 67 at 6. Read logically, plaintiffs' allegations regarding the pricing structure are not contradictory. Plaintiffs allege Dunkin' "directs the pricing structure for goods to be used by its Franchisees, including suggesting a **minimum** price to be charged for Non-Dairy Alternatives" and "recommend[ing]" a specific $0.50 surcharge in 2022 for oat and almond milk. *See* FAC ¶ 28 (emphasis added). The use of the terms "suggest" and "recommend" in this context do not undercut the allegation that Dunkin' directs the overall pricing structure, which includes an extra charge on non-dairy alternatives.

7

1    omitted). The FAC also alleges Dunkin' "directs the pricing structure for goods to be used by its
2    Franchisees" and "recommended" a specific surcharge for almond and oat milk in 2022. *See* FAC
3    ¶ 28. Such allegations sufficiently show that the harm at issue in this case (the extra charge) relates
4    to Dunkin's forum-related activities as franchisor. On prong three, the burden shifts to defendant.
5    *Axiom Foods*, 874 F.3d at 1068. Dunkin's motion does not address this prong, and the Court sees
6    nothing unreasonable about the exercise of personal jurisdiction over Dunkin' for the California
7    plaintiffs' claims as alleged in the FAC.

### B.     Non-California Plaintiffs

The same cannot be said, however, for the plaintiffs who do not reside in California. Dunkin' asks that, at minimum, the Court decline to exercise pendant personal jurisdiction over the non-California plaintiffs, who do not claim to have suffered harm in California.[3] Dkt. No. 48 at 8-9 (citing, *inter alia*, *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.*, 582 U.S. 255, 264-65 (2017)). Plaintiffs argue that *Bristol-Myers* only applies to state court actions and ask the Court to exercise pendent personal jurisdiction over Dunkin' because its conduct occurs nationwide and arises out of a common nucleus of operative facts with the California claims. Dkt. No. 67 at 5-6.

In *Bristol-Myers*, the Supreme Court held that California state courts did not have specific personal jurisdiction over personal injury claims brought by non-residents against Bristol-Myers Squibb, the manufacturer of a nationally marketed prescription drug, Plavix. Bristol-Myers engaged in business activities in California, including employing 250 sales representatives in the state as well as 160 employees who worked at five California research and development facilities. Bristol-Myers did not develop or manufacture Plavix in California, but between 2006-2012, it sold almost 187 million Plavix pills in California for approximately $900 million, or a little over 1% of the company's nationwide sales revenue. *Bristol-Myers*, 582 U.S. at 259. The Court found no connection between the non-resident plaintiffs' personal injury claims and the defendant's activities

---

[3] The named plaintiffs ordered beverages at Dunkin' retail coffee shops "in their respective states of residence . . . ." FAC ¶ 2.

8

1    in California because the plaintiffs did not live in California, had not been prescribed the medication
2    in California, had not ingested the medication in California, and were not injured in that state. *Id.*
3    at 264-65. The Court found that "all the conduct giving rise to the nonresidents' claims occurred
4    elsewhere." *Id.* at 265 (citing *Walden v. Fiore*, 571 U.S. 277, 291 (2014)).

5    Although plaintiffs are correct that the Supreme Court left open the question whether the
6    Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal
7    court as the Fourteenth Amendment imposes on state courts, *see id.* at 268-69, "nearly every court
8    considering the issue has concluded pendent party jurisdiction cannot be exercised by a federal court
9    sitting in diversity." *See Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2019 WL 6612221,
10   at *9 (N.D. Cal. Dec. 5, 2019); *see also Pereda v. Gen. Motors LLC*, No. 21-CV-06338-JST, 2022
11   WL 19975388, at *4 (N.D. Cal. Dec. 9, 2022); *Vallarta v. United Airlines, Inc.*, 497 F. Supp. 3d
12   790, 800-03 (N.D. Cal. 2020); *In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118,
13   1172 (S.D. Cal. 2018) ("The general consensus post-*Bristol-Myers* appears to be that because
14   *Bristol-Myers* dealt with limits on state sovereign power within a federal system, its reasoning is
15   applicable to federal courts sitting in diversity.").

16   Given that the Court will be dismissing plaintiffs' only federal claim on the merits (as
17   discussed in Section III.A, *infra*), the Court will decline to exercise personal jurisdiction over the
18   non-forum named plaintiffs' claims. The Court notes in particular that one of the plaintiffs, Urcelina
19   Medeiros, is a resident of Massachusetts and suffered her injury in Massachusetts, which is also
20   where Dunkin' has its principal place of business. FAC ¶¶ 92, 104. It makes little sense under these
21   circumstances for this Court in California to exercise personal jurisdiction over Massachusetts state
22   law claims brought by a Massachusetts plaintiff against a Massachusetts-based company, for
23   injuries suffered in Massachusetts. *See Vallarta*, 497 F. Supp. 3d at 802 ("To the extent Plaintiffs
24   are concerned about the implications of piecemeal litigation, they may litigate the California and
25   Connecticut claims on behalf of a nationwide class in Illinois or Delaware, because, as Plaintiffs
26   allege, Defendant is a Delaware corporation with its principal place of business in Illinois.").[4]

---

[4] Plaintiffs also argue that it would be premature to dismiss the non-California plaintiffs because they say a Rule 12(b) personal jurisdiction defense is not "available" to dismiss the claims

9

1    In sum, the Court finds Dunkin' subject to specific personal jurisdiction for the claims of the
2    California-based plaintiffs but not for the claims of the non-forum plaintiffs (Pelayo, Fitch, Mara,
3    Premo, Medeiros, and Smith). The Court GRANTS the motion to dismiss the non-California
4    plaintiffs' claims for lack of personal jurisdiction. The non-California plaintiffs' claims are
5    dismissed without prejudice to their re-filing in an appropriate forum.

## II.  Mootness

Before getting into the merits, the Court briefly addresses whether plaintiffs' ADA claim is moot now that Dunkin' Donuts stores no longer charge extra for beverages with non-dairy alternatives. Following the March 14 hearing, the Court ordered further briefing on this issue, which Dunkin' and plaintiffs have provided. *See* Dkt. Nos. 79, 85, 87.

Both plaintiffs and Dunkin' take the position that the ADA claims are not moot. Defendants 6201 Hollywood Donuts LLC and RW Oakland LLC argue in their motion to dismiss that plaintiffs' Title III ADA claims are moot. Dkt. No. 78 at 20. The Court finds the claims not moot. Nothing in the joint notice or elsewhere in the record makes it "absolutely clear" that Dunkin' or its franchisees "could not reasonably be expected" to reinstate the extra charge for non-dairy alternatives. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)); *Butler v. WinCo Foods, LLC,* 613 F. App'x 584, 585-86 (9th Cir. 2015) (reversing dismissal of ADA claims against grocery store where the store's exception to its service animal policy "is not sufficiently entrenched and permanent, such that [the plaintiff's] ADA claim is rendered moot"); *Sullivan v. Storer Transit Sys.*, No. 20-CV-00143-JCS, 2020 WL 3254400, at *6 (N.D. Cal. June 16, 2020) ("In contrast to permanent structural changes, voluntary cessation only amounting to a reversible policy change does not show that the challenged conduct cannot reasonably be expected

---

of "unnamed putative class members" prior to class certification. Dkt. No. 67 at 4 (citing *Owino v. CoreCivic, Inc.*, 60 F.4th 437, 446-47 (9th Cir. 2022); *Moser v. Benefytt, Inc.*, 8 F.4th 872, 877 (9th Cir. 2021)). But Dunkin's motion attacks whether personal jurisdiction exists for the *named*, out-of-state plaintiffs, who seek to represent subclasses of plaintiffs from their respective home states. *See* FAC ¶ 155. Thus, plaintiffs' argument is misplaced.

10

to recur.").

On the record presented here, plaintiffs' ADA claims are not moot.

## III. Failure to State a Claim

The Court now turns to defendants' argument that plaintiffs' claims fail under Federal Rule of Civil Procedure 12(b)(6). Given the Court's dismissal of the non-California plaintiffs, the Court addresses these claims as to the California plaintiffs only.

### A. ADA Claim

Plaintiffs sue under Title III of the ADA, which bars discrimination against disabled persons by public accommodations. "Title III prohibits discrimination in the enjoyment of 'the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation.'" *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1115 (9th Cir. 2000). "To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

The crux of plaintiffs' ADA claim is that the extra cost for substituting a non-dairy alternative in place of the standard offering of 2% milk in Dunkin' beverages constitutes a "surcharge" targeted to people who are disabled by lactose intolerance. Plaintiffs also assert that defendants violate the ADA by failing to make a reasonable modification to their policy, practice, and procedure of serving specialty drinks with 2% cow's milk. Dkt. No. 67 at 13.

Defendants argue that the ADA does not require restaurants to offer accessible goods or to sell them at the same price as non-accessible goods, and so plaintiffs' ADA claim fails as a matter of law. The Court agrees with defendants.

In *Dare v. California*, 191 F.3d 1167, 1171 (9th Cir. 1999), the Ninth Circuit articulated a two-part test "[i]n order to evaluate whether a fee constitutes a surcharge that violates Title II of the ADA[:]"

> First, as a threshold matter, we consider whether the measure for which [the entity] levies the fee is "required to provide that individual or group nondiscriminatory treatment" as mandated by the ADA. 28 C.F.R. § 35.130(f). If [the entity] charges for a measure not required under the ADA, the inquiry ends; 28 C.F.R. § 35.130(f) only forbids surcharges for "required" measures.
>
> Second, we evaluate whether the fee for the measure is a surcharge; in other words, we consider whether it constitutes a charge that nondisabled people would not incur. If nondisabled people pay the same fee for an equivalent service, the charge to disabled people would not constitute a surcharge on a "required" measure. Thus, for example, a state can charge a fee for disabled license plates so long as it charges the same fee for nondisabled license plates.

*Id.*

Although *Dare* examined a claim brought against a public entity under Title II, some district courts since then have applied the two-part test in Title III cases involving public accommodations. Recently, in a case nearly identical to the one at hand, Judge Tigar of this district applied the *Dare* test in dismissing a Title III ADA claim brought by lactose intolerant plaintiffs suing Peet's Coffee over the extra fee for substituting non-dairy alternatives in coffee drinks. *See Munoz v. Peets Coffee, Inc.*, No. 24-cv-01764-JST, 2024 WL 4700646, at *2-3 (N.D. Cal. Nov. 5, 2024). As Judge Tigar observed, the pertinent regulations under Titles II and III contain nearly identical language.[5] *Id.* at *2. For the same reasons stated in *Munoz*, this Court will analyze the surcharge at issue here using the *Dare* framework.

---

[5] 28 C.F.R. § 35.130(f), which was at issue in *Dare* and which governs public entities under Title II, states:

> (f) A public entity may not place a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids or program accessibility, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part.

28 C.F.R. § 36.301(c), which governs public accommodations under Title III, states:

> (c) Charges. A public accommodation may not impose a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids, barrier removal, alternatives to barrier removal, and reasonable modifications in policies, practices, or procedures, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part.

12

1     At minimum, plaintiffs' surcharge claim fails because defendants charge (or charged, prior

2 to March 5, 2025) the same price to *all* customers to substitute a non-dairy alternative in their drinks,

3 regardless of disability.[6]  Dunkin' raised this point in its motion and at the hearing, and plaintiffs

4 did not contest that this is so.  The FAC alleges that defendants have a policy "of charging *all*

5 *customers* a surcharge for Non-Dairy Alternatives . . . ."  FAC ¶ 211 (emphasis added).  The Court

6 finds no plausible allegation in the FAC that a non-disabled customer pays a lower price for a soy

7 milk Dunkaccino, for instance, than a lactose intolerant customer pays for the same product.  One

8 of the plaintiffs, moreover, alleges that she did not disclose her lactose intolerance and milk allergy

9 to the Dunkin' server because she felt it violated her privacy rights.  FAC ¶ 90.  If true, then how

10 could the upcharge have been imposed based on her disability?  Under the second step of *Dare*, a

11 fee is not an unlawful surcharge under the ADA "[i]f nondisabled people pay the same fee for an

12 equivalent service[.]"  *Dare*, 191 F.3d at 1171.  Plaintiffs' ADA surcharge claim thus fails.[7]

13     Plaintiffs rely exclusively on *Phillips v. P.F. Chang's China Bistro, Inc.*, No. 5:15-CV-

14 00344-RMW, 2015 WL 7429497 (N.D. Cal. Nov. 23, 2015) ("*Phillips II*").  That case involved a

15 plaintiff with celiac disease challenging P.F. Chang's practice of charging $1 more for some gluten-

16 free menu items than for comparable non-gluten-free menu items.  The court there did not apply the

17 *Dare* test, perhaps because the plaintiff sued under California law and not under the ADA directly.

18 *See id.* at *1.  The *Phillips* court initially granted the defendant's motion to dismiss, in part because

19 the plaintiff failed to allege an intentionally discriminatory surcharge under the Unruh Act.  *See*

20 *Phillips v. P.F. Chang's China Bistro, Inc.*, No. 5:15-CV-00344-RMW, 2015 WL 4694049, at *6

21 (N.D. Cal. Aug. 6, 2015) ("*Phillips I*") ("Plaintiff's allegation that P.F. Chang's accommodates other

22 dietary requests of patrons without charge, even if true, does not support a conclusion that those

23 dietary requests involve alterations to menu items similar to what is required to provide gluten-free

24 meals.").  Following amendment, the court in *Phillips II* allowed the California discrimination

---

[6] This Order assumes, without deciding, that lactose intolerance may constitute a disability under the ADA.

[7] The Court does not expressly address step one of the *Dare* inquiry, as the claim fails in any event at step two.

13

1  claims to proceed, while expressing skepticism about whether the plaintiff would be able to prove
2  her claim, in light of her concession that gluten-free menu items could not be prepared in the same
3  way, even if the ingredients themselves were naturally gluten-free. *Id.* If the evidence showed that
4  the gluten-free menu items were actually different products, "[t]hat would not be discriminating
5  against a customer with celiac disease because the gluten-free meals are offered to all customers at
6  the same price." *Id.*

7  As Judge Tigar noted in *Munoz*, an important distinction sets the present case apart from the
8  allegations against P.F. Chang's. The operative complaint in *Phillips II* alleged that P.F. Chang's
9  "created an entirely separate—and higher priced—gluten-free menu" and that the "surcharge for
10 gluten-free items occur[ed] *even where the items at issue may naturally be gluten free such as*
11 *vegetable dishes*." *See Munoz*, 2024 WL 4700646, at *3 (quoting *Phillips v. P.F. Chang's China*
12 *Bistro, Inc.*, No. 15-cv-00344-RMW, Dkt. No. 25 ¶ 18 (emphasis added)). Plaintiffs here attempt
13 to liken this case to *Phillips* by alleging that "Dunkin and its Franchisees created a separate, higher-
14 priced menu, aimed at customers who cannot ingest milk." *See* FAC ¶ 6. But they also concede
15 that, unlike the gluten-free menu in *Phillips*, "Dunkin Donuts stores do not have a hand-printed
16 menu for customers." *See id.* ¶ 42. When plaintiff Garland, for instance, requested a dairy-free
17 alternative, "the Dunkin Donuts barista/server would point to the menu board generally on the wall
18 behind the server and advise Ms. Garland to add the Non-Dairy Alternative surcharge to the listed
19 prices, effectively creating a separate, higher-priced menu directed at disabled customers." *Id.* But
20 the complaint is devoid of any plausible allegations that Dunkin' created a non-dairy menu that
21 charged higher prices even for naturally dairy-free items. As Dunkin' notes, the challenged menu
22 in *Phillips II* would be akin to Dunkin' creating a separate menu for customers with lactose
23 intolerance that charged a higher price for items that were already dairy-free, such as black coffee.
24 *See* Dkt. No. 70 at 9.

25 Another district court recently dismissed a nearly identical ADA claim based on a failure to
26 pass the *Dare* inquiry. *See Chaffin v. Int'l Coffee & Tea, LLC*, No. CV 24-3132-GW-SKx, 2025
27 U.S. Dist. LEXIS 8207, at *12-16 (C.D. Cal. Jan. 15, 2025), *tentative ruling adopted by Chaffin*,
28 No. CV 24-3132-GW-SKx, at Dkt. No. 30 (C.D. Cal. Jan. 16, 2025). The *Chaffin* court explained

14

that, under *Dare*, the concession that the defendant charges all customers the additional money for non-dairy alternatives necessarily meant "the extra charge cannot be considered a 'surcharge.'" *Id.* at *12-13. Although the *Chaffin* court granted the plaintiffs leave to amend, the court considered it "unlikely" that plaintiffs could amend their complaint to explain why their "surcharge" allegations were not integral for them to prevail on the ADA claim. *Id.* at *14.

In addition to their surcharge theory, plaintiffs appear to pursue an alternative theory that, in order to provide disabled customers with a "like experience," defendants should have provided non-dairy alternatives for free as a "reasonable modification" to their policies, practices, or procedures. Dkt. No. 67 at 13 (citing 42 U.S.C. § 12182(b)(2)(A)(ii)).[8] However, none of the cases on which plaintiffs rely involve the pricing of goods. *See id.* at 13-14 (citing *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1132 (9th Cir. 2012); *Fortyune v. Am. Multi-Cinema Inc.*, 364 F.3d 1075, 1085 (9th Cir. 2004); *Or. Paralyzed Veterans of Am. v. Regal Cinemas, Inc.*, 339 F.3d 1126, 1127-28 (9th Cir. 2003)). These cases asked whether a person with a mobility impairment could experience Disneyland or a movie theater in the same way as a non-disabled person if they were denied the ability to use a Segway to navigate the theme park (*Baughman*), were forced to sit by themselves at the movie theater apart from their companion (*Fortyune*), or were forced to sit only in the front row of the theater (*Regal Cinemas*). None involved the provision of specific goods for sale, let alone the pricing of such goods.

Plaintiffs' reasonable modification theory cannot be squared with the Title III regulations, which expressly do "not require a public accommodation to alter its inventory to include accessible

---

[8] The statute on which plaintiffs rely reads:

> For purposes of subsection (a), discrimination includes--
> . . .
> (ii) a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations . . . .

42 U.S.C. § 12182(b)(2)(A)(ii).

1  or special goods[,]" including "special foods to meet particular dietary needs." *See* 28 C.F.R.
2  § 36.307(a), (c). Plaintiffs' brief wholly ignores subsection (c), focusing instead on subsection (b),
3  which governs when a public accommodation shall order accessible or special goods at the request
4  of an individual with disabilities.[9] *See id.* § 36.307(b). But as the *Munoz* court explained, subsection
5  (b) "does not require [a coffee shop] to sell 'special goods' at the request of an individual with
6  disabilities at the same price as those goods' ostensibly non-accessible counterpart . . . ." *Munoz*,
7  2024 WL 4700646, at *5. For these reasons, the Court finds plaintiffs' reasonable modification
8  theory fails as well.

### B. California's Unruh Act

The California-based plaintiffs also sue for violation of California's Unruh Act, Cal. Civ. Code § 51(b). "A plaintiff can recover under the Unruh Civil Rights Act on two alternate theories: (1) a violation of the ADA (§ 51, subd. (f)); or (2) denial of access to a business establishment based on intentional discrimination." *Martinez v. San Diego Cnty. Credit Union*, 50 Cal. App. 5th 1048, 1059 (2020) (citing *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 670 (2009)). Plaintiffs pursue both theories. Because their ADA claim fails for the reasons stated above, the Court analyzes only whether they have stated a claim of intentional discrimination under the Unruh Act.

Here, the FAC is void of non-conclusory allegations to support a claim of intentional discrimination. While plaintiffs allege they were charged higher prices to substitute non-dairy alternatives in their Dunkin' drinks, they concede that "all customers" are charged the extra fee for non-dairy alternatives. *See* FAC ¶ 211. "[T]he California Supreme Court has held that the discriminatory effect of a facially neutral policy or action is not alone a basis for inferring intentional discrimination under the Unruh Civil Rights Act." *Martinez v. Cot'n Wash, Inc.*, 81 Cal. App. 5th

---

[9] 28 C.F.R. § 36.307(b) reads, in full:

> A public accommodation shall order accessible or special goods at the request of an individual with disabilities, if, in the normal course of its operation, it makes special orders on request for unstocked goods, and if the accessible or special goods can be obtained from a supplier with whom the public accommodation customarily does business.

1026, 1032 (2022) (citing *Koebke v. Bernardo Heights Country Club* 36 Cal. 4th 824, 854 (2005)). Plaintiffs allege they are targeted for their lactose intolerance or milk allergies, and that defendant is "disproportionately profiting" from plaintiffs' disabilities. FAC ¶¶ 187, 194. But nothing in the FAC points toward more than a facially neutral policy with a disproportionate impact. *See Cot'n Wash.*, 81 Cal. App. 5th at 1036 ("A claimant may not rely on the *effects* of a facially neutral policy on a particular group to infer *solely* from such effects a discriminatory intent.") (quoting *Koebke*, 36 Cal. 4th at 854) (internal quotation marks and alterations omitted).

"[A]bsent an ADA violation, the Unruh Civil Rights Act requires allegations supporting willful, affirmative misconduct . . . with the specific intent to accomplish discrimination on the basis of a protected trait." *Id.* (quoting *Koebke*, 346 Cal. 4th at 853-54). The FAC here contains no such allegations. And as the court noted in *Munoz*, there may be a "variety of reasons unrelated to any medical disability for which one may order non-dairy alternative milk[.]" 2024 WL 4700646, at *5. Given this, it would appear particularly important that plaintiffs articulate how the increased price for non-dairy alternatives targets them because of their disability. As the district court stated in *Chaffin* when dismissing the Unruh Act claim, "That Defendant's practice may not be financially/economically-consistent, or even make financial/economic sense . . . is seemingly a far cry from an assertion that individuals' lactose-intolerance status was a 'motivating factor' for such decision (especially considering the FAC's concession that *all* individuals asking for such additions/substitutions to their drinks are charged the extra price)." 2025 U.S. Dist. LEXIS 8207, at *18.

Because the FAC fails to plead intentional discrimination and because there is no ADA violation, the Court will dismiss the Unruh Act claim.

### C.  Unjust Enrichment/Restitution

In Count VIII, plaintiffs bring a claim for unjust enrichment/restitution. Plaintiffs assert this claim under the laws of their respective states. FAC ¶¶ 256-261. Given that the Court is dismissing without prejudice the claims of the non-California plaintiffs for lack of personal jurisdiction, *see*

Section I, *supra*, the Court will analyze this Count only under California law.[10]

"[I]n California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citations omitted). "However, unjust enrichment and restitution are not irrelevant in California law. Rather, they describe the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Id.* (quoting 55 Cal. Jur. 3d Restitution § 2). Here, where the Court has found plaintiffs' surcharge theory and intentional discrimination theories invalid, there is no mistake, fraud, coercion, or request that would support a claim of unjust enrichment. This claim is dismissed. *See Chaffin*, 2025 U.S. Dist. LEXIS 8207, at *20-22 (dismissing unjust enrichment claim with prejudice where ADA surcharge theory failed and plaintiffs had adequate remedy at law); *Munoz*, 2024 WL 4700646, at *6 (dismissing unjust enrichment claim that was based on failed claim of illegal surcharge under the ADA).

### D. Amendment

Plaintiffs ask in their papers that the Court grant them another chance at amending any dismissed claims, though they do not explain what they could add to save their claims or why they could not have included this information in the FAC, which plaintiffs filed more than six months after this Court's prior dismissal order. Moreover, the grounds for dismissal here mirror the reasons Judge Tigar gave for dismissing nearly identical claims in *Munoz v. Peet's Coffee*, where the plaintiffs were represented by the same attorneys.[11] Judge Tigar's order issued on November 5, 2024, and the FAC here was filed December 11, 2024. Thus, plaintiffs had more than one month to re-work the complaint in this case after receiving the ruling in *Munoz*. Nothing before the Court, in the papers or at the hearing, indicates that plaintiffs could save their claims through amendment. Because further leave to amend would be futile and would waste both the parties' and this Court's

---

[10] For the same reason, the Court does not address the motion to dismiss Counts III, IV, V, VI, and VII, which are discrimination claims based on the law of the states of Hawaii, New York, Massachusetts, Colorado, and Texas.

[11] The Court *sua sponte* takes judicial notice of the *Munoz* docket, which is a matter of public record and not subject to reasonable dispute. *See* Fed. R. Evid. 201.

resources, the Court declines plaintiffs' request to allow another chance at amendment.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court GRANTS Dunkin's motion to dismiss the claims of the non-California plaintiffs (Pelayo, Fitch, Mara, Premo, Medeiros, and Smith), for lack of personal jurisdiction. Dismissal of the non-California plaintiffs is without prejudice to their re-filing in an appropriate forum.

The Court GRANTS, with prejudice, the motions to dismiss the claims brought by the California-based plaintiffs (Garland, Hughes, Hernandez, and Cojom), for failure to state a claim.

Plaintiffs filed the FAC on December 11, 2024, adding the franchisee defendants. The docket sheet does not indicate when defendants Madison Food Management, LLC ("Madison") and Golden Gate Restaurant Group LLC, were served with the FAC, though Madison's counsel has filed a notice of appearance. *See* Dkt. No. 72. **No later than April 28, 2025,** plaintiffs shall file a statement regarding the status of service on these defendants and whether they intend to dismiss these defendants in light of today's Order.

**IT IS SO ORDERED**.

Dated: April 21, 2025

SUSAN ILLSTON
United States District Judge